UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAULA BAILEY, KRYSTAL
CLARK and HOPE ZENTZ,
on behalf of themselves
and others similarly situated,

        Plaintiffs,

v.

Case No. 19-13442
District Judge Victoria A. Roberts
Mag. Judge Elizabeth A. Stafford

MICHIGAN DEPARTMENT OF
CORRECTIONS, HEIDI WASHINGTON,
SHAWN BREWER, RUSSELL MARLAN,
KENNETH MCKEE, LLOYD RAPELJE,
LIA GULICK, DAVID JOHNSON, KARRI
OSTERHOUT, JOSEPH TREPPA, DAN
CARTER, RICHARD BULLARD and
TONI MOORE, in their official and
individual capacities,

        Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT [ECF No. 56]**

**I.   INTRODUCTION**

Paula Bailey ("Bailey"), Krystal Clark ("Clark"), and Hope Zentz ("Zentz") are inmates at the Women's Huron Valley Correctional Facility ("WHV"). They filed this civil rights action under 42 U.S.C. § 1983.

1

Among the Defendants are the Michigan Department of Corrections ("MDOC") and various MDOC employees ("MDOC Defendants").

Plaintiffs challenge what they describe as inhumane, dangerous, and unconstitutional conditions endured by women incarcerated at WHV. They allege that Defendants failed to remove or remedy mold conditions. Plaintiffs say this mold exposure has taken a significant toll on them, both physically and mentally.

The MDOC Defendants argue Plaintiffs failed to exhaust the grievance process, and they are entitled to summary judgment on the unexhausted claims.

The Court **DENIES** Defendants' Motion for Summary Judgment.

## II.    BACKGROUND

Plaintiffs say Defendants were aware of crumbling infrastructure at WHV and have known about mold in WHV for over the last seven years. Plaintiffs allege Defendants took no steps to remedy the situation.

Plaintiffs claim that multiple buildings at WHV are riddled with dangerous conditions, including haphazard retrofitting, leaky roofs, inoperable windows, inadequate ventilation, and outdated HVAC systems that contribute to the mold issues.

As a result, Plaintiffs complain that they suffer mold related symptoms, including skin rashes and itching, nasal stuffiness, throat irritation, constant coughing, watering eyes, wheezing, and respiratory conditions and infections. They allege that they are only able to escape these dire conditions when they leave their housing units.

### III.   STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden to inform the Court of the basis for its motion; it must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id.* at 324. Unsupported, conclusory statements are insufficient to establish a factual dispute to defeat summary judgment, as is the "mere existence of a scintilla of evidence in support of the [non-movant's] position"; the evidence must be such that a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court need only consider the cited materials, but it may consider other evidence in the record. Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

## IV. ANALYSIS

### A. Exhaustion of Administrative Remedies

#### 1. Legal Principles

Pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), a prisoner bringing an action contesting prison conditions under 42 U.S.C. § 1997e(a) must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). Prisoners must do this, even if they may not be able to obtain the specific type of relief they seek in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*,

215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

Proper exhaustion requires prisoners to complete the administrative review process within deadlines and abide by other applicable procedural rules. *See Jones v. Bock*, 549 U.S. 199 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218. An untimely or otherwise improper grievance does not satisfy the PLRA exhaustion requirement.

MDOC Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. It requires inmates to first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond their control. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.

The Policy Directive gives directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to

the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, she may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, she may appeal to Step III.

The inmate must send the Step III form within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.

Time limitations must be adhered to by the inmate and staff at all steps of the grievance process. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved...." MDOC Policy Directive 03.02.130.

### 2. Purpose of Exhaustion Requirement

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90, quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 89. The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93, quoting, *Porter*, 534 U.S. at 525.

Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id.* at 94. Additionally, the exhaustion requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 549 U.S. at 204-205.

### 3. Bailey's Grievances

Defendants contend Bailey failed to exhaust the following grievances that are part of her complaint: WHV-18-04-1116-03D; WHV-2019-10-4358-28E; and WHV-2019-08-3773-12Z. The Court believes sufficient questions of fact exist surrounding exhaustion, making summary judgment inappropriate.

### a. WHV-18-04-1116-03D

Bailey filed a Step I grievance (Identifier: WHV-18-04-1116-03D) on April 19, 2018, regarding the presence of mold in the facility. She noted her adverse symptoms.

For starters, there are 2 separate grievances with the same grievance identifier number: one addresses the mold issue in the facility; the other involves a disagreement between a corrections officer and Bailey. This disagreement had nothing to do with mold. MDOC agrees that the grievance regarding the guard was resolved on May 9, 2018. The mold grievance was not.

Although MDOC now says it has no date received or grievance identifier of Bailey's mold Step I grievance, Bailey submits a memorandum from MDOC indicating that it received her Step I grievance regarding the mold issue on April 20, 2018 and a date for a response. [ECF No.62-5,

PageID.923]. However, Bailey never received a response to this Step I grievance.

Bailey then filed a Step II grievance reiterating claims made in her Step I submission – that mold in the facility negatively impacted her health. Bailey dated her grievance on July 8, 2018. However, the MDOC receipt stamp is dated July 26, 2018. It is unclear why it took MDOC nearly three weeks to receive the grievance. Bailey's Step II grievance was rejected as untimely.

Bailey filed a Step III grievance on September 12, 2018. MDOC denied her Step III grievance; the rejections to Step II were upheld.

Next, Defendants argue that MDOC rejected Bailey's grievance because it was a joint grievance. MDOC says it is a joint grievance because it concerned an "issue that mutually impacts two or more prisoners." Pursuant to PD 03.02.130J.7, a grievance can be rejected if "two or more prisoners and/or parolees have jointly filed a single grievance regarding an issue of mutual impact or submit identical individual grievances regarding a given issue as an organized protest." Bailey filed this grievance on her own, and MDOC does not demonstrate that others filed identical grievances. In fact, the grievances highlight the alleged adverse effects of the mold in the facility on Bailey, not others. Additionally, MDOC does not provide any

evidence of an "organized protest." A reasonable jury could conclude that this was not a joint grievance.

Because the Court finds that a reasonable jury could find that Bailey properly submitted the mold grievance and that it was not a joint grievance, the Court declines to find as a matter of law, that Bailey failed to exhaust administrative remedies on this grievance.

### b. WHV-2019-10-4358-28E

MDOC contends that this grievance is defective because Bailey did not complete her Step III grievance before filing the complaint. Bailey filed her complaint on November 20, 2019.

Bailey submitted her Step III grievance appeal on December 19, 2019. The Step III grievance was completed on January 21, 2020.

Inmates should complete their grievance filings prior to filing suit, *Curry v. Scott*, 249 F.3d 493, 502 (6th Cir. 2001). However, the Sixth Circuit has refused to dismiss an action on exhaustion grounds where the administrative grievance process was only completed while an appeal was pending. *Thaddeus–X v. Wozniak*, 215 F.3d 1327 (6th Cir. 2000) (although the claims were not exhausted previously, court addressed merits of the appeal because the action could simply be refiled upon remand) (citing *Curry v. Scott*, 249 F.3d 493, 502 (6th Cir. 2001)). This reasoning is persuasive.

Dismissal without prejudice would not be in the interest of justice since Bailey would simply refile, causing further delay. Further, Bailey says the grievance process was exhausted before Defendants were served with the Complaint.

Second, Defendants argue that Bailey failed to include the names of all the Defendants in the grievance, despite MDOC's policy requirement that all names must be included in the grievance. Bailey contends her grievance properly alerted prison officials of a health related problem. *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.").

The failure to identify a person by name does not preclude a finding of exhaustion "as long as the prisoner identifies a defendant based on the factual allegations." *Thomas v. Woolum*, 337 F.3d 720, 734 (6th Cir. 2003) ("[A]n inmate need not identify each officer by name when the identities of the particular officers are unknown."); *See Binion v. Glover*, No. 07-13443, 2008 WL 4155355, at *9–11 (E.D. Mich. July 28, 2008) ( the claim was exhausted because MDOC did not rely on the failure to name a named defendant as a basis for rejecting the grievance) adopted, 2008 WL 4097407 (E.D. Mich. Aug. 29, 2008); *Shoucair v. Warren,* No. 07-12964, 2008 WL

11

2033714, at *8 (E.D. Mich. May 9, 2008) ("[N]othing in *Woodford* or *Jones* requires a grievant to somehow identify persons or information he does not have or cannot reasonably obtain.").

Prisoners may not know the names of prison officials responsible for implementing and enforcing such policies. "Where a prisoner is not able to identify all appropriate personnel in compliance with the grievance procedure, there is no failure to exhaust." *See e.g., Merriweather v. Zamora*, 2006 WL 2711809, *9 (E.D.Mich.2006), citing, *Thomas v. Woolum*, 337 F.3d 720, 734 (6th Cir.2003) ("[A]n inmate need not identify each officer by name when the identities of the particular officers are unknown."). Bailey's grievance placed Defendants on notice of the underlying mold issues and a question of fact existed as to whether there was adequate exhaustion.

Third, Defendants argue that because the grievance was rejected pursuant to MDOC's grievance procedure, the grievance was not exhausted. They rely upon *Burnett v. Howard*, 2010 WL 1286256, *1 (W.D. Mich. Mar. 30, 2010), which held, "[a]s long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." (citation and internal quotation marks omitted.). But Bailey argues that her grievance met the level of detail required

12

and was improperly rejected. An improper rejection could constitute exhaustion.

Prisoners must concisely state the issues alleged by including the "[d]ates, times, places, and names of all those involved in the issue being grieved." MDOC Policy Directive 03.02.130, ¶ R. "Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how)." *Id.* (emphasis in original).

While grievances may be rejected if they are vague or illegible, Bailey's grievance did provide the date, time, place, and names of those involved, as required by ¶ R. This raises a question of fact because an improper rejection would constitute exhaustion. *Johannes v. Washington*, 2016 WL 1253266, at \*6 (E.D. Mich. Mar. 31, 2016) (citing *Nelson v. Walsh*, No. 16-10405, 2017 WL 1212836, at \*4 (E.D. Mich. Feb. 17, 2017), report and recommendation adopted, No. 16-CV-10405, 2017 WL 1100945 (E.D. Mich. Mar. 24, 2017)). The burden is on Defendants to "show that every reasonable jury would think the rejections were proper." *Id.*

The court in *Wayne v. Heyns*, 2015 WL 736329, at \*6 (E.D. Mich. Feb. 20, 2015) rejected the MDOC Defendants' reliance on *Burnett*. "The Court cannot discern what more Plaintiff could have done to comply .... Therefore,

even though the MDOC rejected Plaintiff's Step I grievance as vague, the undersigned finds that Plaintiff's efforts to exhaust … administrative remedies were sufficient under the circumstances." *Id.* The same is true for Bailey.

### c. WHV-2019-08-3773-12Z

The Court believes sufficient questions of fact exist surrounding exhaustion for Grievance 3773. Defendants make the same arguments – untimely filing and failure to include all relevant names in grievance – that the Court rejected for Grievance 4358.

### 4. Clark and Zentz's Grievances

The grievances relevant to this suit for Clark are: (1) WHV-19-04-1981-28E, (2) WHV-19-04- 2004-28K, and (3) WHV-16-04-2219-28E.

Zentz filed one grievance – WHV-19-05-2141-28K – on April 25, 2019. She detailed that she suffered from serious health conditions related to mold exposure at WHV, including dizziness, headaches, chronic fatigue, and nose bleeds.

Defendants make three arguments to support their contention that Clark and Zentz failed to properly exhaust administrative remedies: (1) the grievances do not include the named Defendants; (2) the grievances were

rejected pursuant to MDOC policy; and (3) the content of the grievances does not address all of Plaintiff's claims.

The Court has already made a finding that Plaintiffs need not name every MDOC Defendant in administrative grievances so long as the agency is given fair notice of the basis for a claim. Clark and Zentz gave sufficient notice. They identified the specific individuals that they believed were involved in the establishment of the policy and procedures addressing mold and resulting health issues. This is enough to put staff on notice of an underlying mold issue in the prison, although Clark and Zentz did not name every individual involved in this suit.

Next, MDOC argues that it rejected the grievances pursuant to prison policy. Defendants, again, rely on *Burnett*. For the reasons discussed, the Court rejects MDOC's contention that Clark and Zentz did not properly exhaust their grievances; their efforts were sufficient under the circumstances.

Finally, Defendants say that the content of the grievances is unrelated to the claims addressed in the Amended Complaint. However, the grievances note the adverse symptoms resulting from alleged mold exposure at WHV.

The Court believes sufficient questions of fact exist surrounding exhaustion, making summary judgment inappropriate.

## V. CONCLUSION

When reviewing the propriety of summary judgment based on a failure to exhaust under the PLRA, the Court should "further analyze whether an inmate has made 'affirmative efforts to comply with the administrative procedures' and 'whether those 'efforts to exhaust were sufficient under the circumstances.'" *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (quoting *Napier v. Laurel County*, 636 F.3d 218, 223–24 (6th Cir. 2011).

Sufficient appropriate efforts to comply with administrative procedures have been demonstrated by Bailey, Clark, and Zentz to survive summary judgment.

The Court **DENIES** the MDOC Defendants' Motion for Summary Judgment.

**IT IS ORDERED**.

S/ Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated: 8/24/2020