UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAULA BAILEY, KRYSTAL CLARK,
and HOPE ZENTZ, on behalf of
themselves and others similarly situated,

       Plaintiffs,

v.

HEIDI WASHINGTON, SHAWN
BREWER, RICHARD BULLARD,
DAN CARTER, LIA GULICK, DAVID
JOHNSON, KENNETH MCKEE,
KARRI OSTERHOUT, TONI MOORE,
JOSEPH TREPPA, ED VALLAD,
JEREMY BUSH, and JEREMY
HOWARD in their individual and
official capacities,

       Defendants.

No. 2:19-cv-13442

HON. VICTORIA A. ROBERTS

MAG. ELIZABETH A. STAFFORD

**DEFENDANTS' MOTION FOR
JUDGMENT ON THE
PLEADINGS**

_____

**Marko Law, PLLC**
Jonathan R. Marko (P72450)
220 W. Congress, Fourth Floor
Detroit, MI 48226
(313) 777-7529
jon@markolaw.com

**Nichols Kaster, PLLP**
Matthew H. Morgan (MN304657)
Rebekah L. Bailey (MN 0389599)
Charles J. O'Meara (MN0402777)
Melanie A. Johnson (MN0400814)
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402
(612) 256-3200
morgan@nka.com

**Pitt, Mcgehee, Palmer, & Rivers PC**
Cary S. McGehee (P42318)

**Michigan Dep't of Attorney General**
Joshua S. Smith (P63349)
Kristin M. Heyse (P64353)
John L. Thurber (P44989)
Michael R. Dean (P71333)
Jennifer A. Foster (P75947)
Zachary A. Zurek (P80116)
Sara E. Trudgeon (P82155)
Keith G. Clark (P56050)
Assistant Attorneys General
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
smithj191@michigan.gov

_**Attorneys for Defendants Washington,
Brewer, Bullard, Carter, Gulick,
Johnson, McKee, Osterhout, Moore,**_

Beth M. Rivers (P33614)                    *Treppa, Vallad, Bush & Howard*
Channing Robinson-Holmes (P81698)
117 W. 4th Street, Ste. 200
Royal Oak, MI 48067
(248) 398-9800
cmcgehee@pittlawpc.com

**Law Offices of David S.**
**Steingold, PLLC**
David S. Steingold (P29752)
Samantha M. Baker (P83674)
500 Griswold St., Ste. 2320
Detroit, MI 48226
(313) 962-0000
detroitdefender@yahoo.com

**Excolo Law, PLLC**
Ari Kresch (P29593)
26700 Lahser Road, Ste. 401
Southfield, MI 48033
(866) 939-2656
akresch@1800lawfirm.com

**Radner Law Group, PLLC**
Solomon M. Radner (P73653)
17515 W. Nine Mile Rd Ste 1175
Southfield, MI 48075
(313) 355-3425
solomon@radnerlawgroup.com

*Attorneys for Plaintiffs and the*
*Putative Classes*

_____/

## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants Heidi Washington, Shawn Brewer, Richard Bullard, Dan Carter,

Lia Gulick, David Johnson, Kenneth McKee, Karri Osterhout, Toni Moore, Joseph

Treppa, Ed Vallad, Jeremy Bush, and Jeremy Howard, through their attorneys, for

the reasons stated in their brief in support, ask this Court to grant their motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).

Defendants' counsel sought concurrence, via an email to Plaintiffs' counsel on June 28, 2023, offering an opportunity to confer and requesting dates for a conference. Defendants previously sent Plaintiffs' counsel a copy of their draft motion to dismiss on June 9, 2023, and the matter was extensively discussed at the status conference on June 27, 2023. (ECF No. 147-2, PageID.2545–2581.) Counsel for the parties conferred, pursuant to Local Rule 7.1, on June 29, 2023. Despite these efforts, Plaintiffs' counsel indicated that they did not concur. Accordingly, Defendants bring this motion to dismiss Plaintiffs' case.

Respectfully submitted,

*/s/ Zachary A. Zurek*
Zachary A. Zurek
Assistant Attorney General
Attorney for Defendants
Michigan Dep't of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
zurekz1@michigan.gov
Dated: July 5, 2023          P80116

**CERTIFICATE OF SERVICE (EFILE)**

I hereby certify that on July 5, 2023 I electronically filed the *foregoing document(s)* together with this *Certificate of Service* with the Clerk of the Court, through the ECF system, which will provide electronic copies to counsel of record.

/s/ Zachary A. Zurek
Zachary A. Zurek (P80116)
Assistant Attorney General
Attorney for Defendants
Corrections Division

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAULA BAILEY, KRYSTAL CLARK,
and HOPE ZENTZ, on behalf of
themselves and others similarly situated,

No. 2:19-cv-13442

     Plaintiffs,

HON. VICTORIA A. ROBERTS

v.

MAG. ELIZABETH A. STAFFORD

HEIDI WASHINGTON, SHAWN
BREWER, RICHARD BULLARD,
DAN CARTER, LIA GULICK, DAVID
JOHNSON, KENNETH MCKEE,
KARRI OSTERHOUT, TONI MOORE,
JOSEPH TREPPA, ED VALLAD,
JEREMY BUSH, and JEREMY
HOWARD in their individual and
official capacities,

**DEFENDANTS' BRIEF IN
SUPPORT OF MOTION FOR
JUDGMENT ON THE
PLEADINGS**

     Defendants.

_____

**Marko Law, PLLC**
Jonathan R. Marko (P72450)
220 W. Congress, Fourth Floor
Detroit, MI 48226
(313) 777-7529
jon@markolaw.com

**Nichols Kaster, PLLP**
Matthew H. Morgan (MN304657)
Rebekah L. Bailey (MN 0389599)
Charles J. O'Meara (MN0402777)
Melanie A. Johnson (MN0400814)
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402
(612) 256-3200
morgan@nka.com

**Pitt, Mcgehee, Palmer, & Rivers PC**
Cary S. McGehee (P42318)

**Michigan Dep't of Attorney General**
Joshua S. Smith (P63349)
Kristin M. Heyse (P64353)
John L. Thurber (P44989)
Michael R. Dean (P71333)
Jennifer A. Foster (P75947)
Zachary A. Zurek (P80116)
Sara E. Trudgeon (P82155)
Keith G. Clark (P56050)
Assistant Attorneys General
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
smithj191@michigan.gov

*Attorneys for Defendants Washington,
Brewer, Bullard, Carter, Gulick,
Johnson, McKee, Osterhout, Moore,*

Beth M. Rivers (P33614)                    *Treppa, Vallad, Bush & Howard*
Channing Robinson-Holmes (P81698)
117 W. 4th Street, Ste. 200
Royal Oak, MI 48067
(248) 398-9800
cmcgehee@pittlawpc.com

**Law Offices of David S.
Steingold, PLLC**
David S. Steingold (P29752)
Samantha M. Baker (P83674)
500 Griswold St., Ste. 2320
Detroit, MI 48226
(313) 962-0000
detroitdefender@yahoo.com

**Excolo Law, PLLC**
Ari Kresch (P29593)
26700 Lahser Road, Ste. 401
Southfield, MI 48033
(866) 939-2656
akresch@1800lawfirm.com

**Radner Law Group, PLLC**
Solomon M. Radner (P73653)
17515 W. Nine Mile Rd Ste 1175
Southfield, MI 48075
(313) 355-3425
solomon@radnerlawgroup.com

*Attorneys for Plaintiffs and the
Putative Classes*

_____/

# DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

Zachary A. Zurek
Assistant Attorney General
Attorney for Defendants
Michigan Dep't of Attorney General
Corrections Division
P.O. Box 30217

Lansing, MI 48909
(517) 335-3055
zurekz1@michigan.gov
Dated:  July 5, 2023                          P80116

# TABLE OF CONTENTS

Page

Table of Contents ........................................................................................... i

Index of Authorities ..................................................................................... iii

Concise Statement of Issues Presented ...................................................... viii

Controlling or Most Appropriate Authority ............................................... viii

Statement of Facts .......................................................................................... 1

Argument ......................................................................................................... 2

I.   The Eighth Amendment claim against Defendants in their individual
     capacities should be dismissed because they are entitled to qualified
     immunity. ................................................................................................. 2

     A.   The Eighth Amendment standard. ....................................................... 5

     B.   Plaintiffs' allegations do not rise to the level of an Eighth
          Amendment violation. ....................................................................... 6

     C.   It is not clearly established that any of the types of molds
          allegedly present at WHV are sufficiently dangerous that they
          satisfy the objective component of an Eighth Amendment
          claim. ............................................................................................... 6

          1.   Ochroconis. ................................................................................. 7

          2.   Cladosporium. ............................................................................. 7

          3.   Chaetomium. ............................................................................... 9

          4.   Stachybotrys. ............................................................................... 9

     D.   It is not clearly established that the Eighth Amendment requires
          prison officials to take any specific action to prevent harm
          associated with any type of mold. ..................................................... 11

i

II.   Defendants in their official and individual capacities are entitled to
      judgment on the pleadings on the Eighth Amendment claim because
      dangerous levels of mold do not exist at WHV................................................13

      A.   This Court may consider limited evidence outside of the
           complaint when considering a motion for judgment on the
           pleadings...........................................................................................13

      B.   Dangerous levels of mold did not exist at WHV prior to
           Plaintiffs initiating this lawsuit. ........................................................16

      C.   Dangerous levels of mold are not currently present at WHV...........18

III.  The gross negligence claim against Defendants must be dismissed. ............20

      A.   Gross negligence is what a plaintiff must prove to overcome the
           Government Tort Liability Act, and not a cause of action under
           Michigan law.....................................................................................21

      B.   Under Michigan law, Plaintiffs cannot bring a gross negligence
           claim while simultaneously alleging an intentional tort. ...................23

Conclusion and Relief Requested .........................................................................25

# INDEX OF AUTHORITIES

Page

**Cases**

*Amini v. Oberlin College*,
   259 F.3d 493 (6th Cir. 2001) ................................................................14

*Anderson v. Creighton*,
   483 U.S. 635 (1987) ............................................................................4

*Arthur v. Helper*,
   No. 19-11277, 2019 WL 5103790, at *2 (E.D. Mich. Oct. 11, 2019) ................24

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011) .................................................................. viii, 4, 9

*Barber v. Miller*,
   809 F.3d 840 (6th Cir. 2015) ................................................................3

*Barkovic v. Att'y Grievance Comm'n*,
   289 F. Supp. 3d 833 (E.D. Mich. 2017) ............................................16

*Bassett v. NCAA*,
   528 F.3d 426 (6th Cir. 2008) ...................................................... viii, 14

*Baynes v. Cleland*,
   799 F.3d 600 (6th Cir. 2015) ................................................................3

*Beaudrie v. Henderson*,
   465 Mich. 124 (2001) ...........................................................................21

*Bell v. City of Southfield, Michigan*,
   No. 21-1516, 2022 WL 2128815, at *4 (6th Cir. June 14, 2022) ................... 4, 14

*Bickley v. Dish Network, LLC*,
   751 F.3d 724 (6th Cir. 2014) ..............................................................13

*Bletz v. Gribble*,
   641 F.3d 743 (6th Cir. 2011) ..............................................................23

*Chivas v. Koehler*,
   182 Mich. App. 467 (1990) ..................................................................21

iii

*City of Escondido, Cal., v. Emmons*,
  139 S. Ct. 500 (2019) ........................................................................4

*Collins v. Ferguson*,
  No. 17-cv-10898, 2017 WL 4387287, at *8 (E.D. Mich. Oct. 3, 2017) ..............24

*Crawford v. Tilley*,
  15 F.4th 752 (6th Cir. 2021) ........................................................... viii, 4

*Daniels v. Tharp*,
  No. 3:16-cv-2830, 2019 WL 400396, at *3 (N.D. Ohio Jan. 31, 2019),
  *aff'd,* No. 19-3190, 2020 WL 13561351 (6th Cir. June 22, 2020) ......................17

*Dominque v. Telb*,
  831 F.2d 673 (6th Cir. 1987) ..............................................................3

*Farmer v. Brennan*,
  511 U.S. 825 (1994) ..........................................................................5

*Fecteau v. Unknown Officers and Agents of Clinton Twp.*,
  596 F. Supp. 580 (E.D. Mich. 1984) ..................................................22

*Fox v. Michigan State Police Dep't*,
  173 F. App'x 372 (6th Cir. 2006) ......................................................14

*Hanrahan v. Mohr*,
  905 F.3d 947 (6th Cir. 2018) .............................................................18

*Helling v. McKinney*,
  509 U.S. 25 (1993) ................................................................... 5, 6, 20

*Hum. Rts. Def. Ctr. v. Washington*,
  No. 1:19-cv-12470, 2021 WL 2895192, at *10 (E.D. Mich. July 9, 2021) .........18

*In re Flint Water Cases*,
  384 F. Supp. 3d 802 (E.D. Mich. 2019), *aff'd and remanded*, 960 F.3d 303
  (6th Cir. 2020) ..................................................................... viii, 21, 22, 23

*In re NM Holdings Co., LLC*,
  622 F.3d 613 (6th Cir. 2010) .............................................................21

*Jacobson v. Patino*,
  No. CIV.A. 10-13046, 2012 WL 3870320, at *4 (E.D. Mich. July 31,

2012), *report and recommendation adopted,* No. 10-13046, 2012 WL
3870315 (E.D. Mich. Sept. 6, 2012) ............................................................. 8, 17

*Kisela v. Hughes*,
138 S. Ct. 1148 (2018) ............................................................................4

*Lippett v. Adray*,
No. 18-cv-11175, 2023 WL 3774508, at *5 (E.D. Mich. June 2, 2023) ............22

*McIntyre v. Phillips*,
No. CIV.A. 1:07-cv-527, 2007 WL 2986470, at *3 (W.D. Mich. Sept. 10,
2007) ..................................................................................................17

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) .................................................................................4

*Odom v. Wayne Cnty.*,
482 Mich. 459; 760 N.W.2d 217 (2008) ............................................................23

*Page v. Clark*,
No. 3:22-cv-142-BJB, 2022 WL 16924122, at *2 (W.D. Ky. Nov. 14,
2022) ..................................................................................................17

*Paskvan v. City of Cleveland Civil Serv. Comm'n*,
946 F.2d 1233 (6th Cir. 1991) ............................................................13

*Pearson v. Callahan*,
555 U.S. 223 (2009) ...............................................................................3

*Pettway v. Bush*,
No. 19-11201, 2019 WL 7486826, at *6 (E.D. Mich. Dec. 6, 2019), *report
and recommendation adopted*, No. 19-cv-11201, 2020 WL 60284 (E.D.
Mich. Jan. 6, 2020) ............................................................................10

*Porter v. Huffman*,
No. 4:17-cv-484-KGB-BD, 2020 WL 6268111, at *3 (E.D. Ark. Sept. 28,
2020), *report and recommendation adopted*, No. 4:17-cv-00484 KGB-BD,
2020 WL 6268080 (E.D. Ark. Oct. 23, 2020).........................................................8

*Reitmeyer v. Monroe*,
No. 1:19-cv-25, 2019 WL 549058, at *3 (W.D. Mich. Feb. 12, 2019) ..............10

*Rivas-Villegas v. Cortesluna*,
   142 S. Ct. 4 (2021) ................................................................................4

*Rogers v. MacLaren*,
   Case No. 1:20-cv-263, 2020 WL 3481541, at *7 (W.D. Mich. Jun. 26,
   2020) ..................................................................................................11

*Sanchez v. Osborne*,
   No. CIVA 4:10-cv-P35-M, 2010 WL 1663641, at *2 (W.D. Ky. Apr. 23,
   2010) ..................................................................................................17

*Shaheed v. Sherman*,
   No. 120-cv-01450SABPC, 2022 WL 3691308, at *9 (E.D. Cal. Aug. 25,
   2022) ..................................................................................................10

*Sherer v. Bank of New York Mellon*,
   2015 WL 4935614, at *3 (E.D. Mich. Aug. 18, 2015) ................................. 14, 16

*Thurmond v. Andrews*,
   972 F.3d 1007 (8th Cir. 2020) ..................................................................8

*VanVorous v. Burmeister*,
   687 N.W.2d 132 (2004) ...................................................................... viii, 23, 24

*Weiner v. Klais & Co.*,
   108 F.3d 86 (6th Cir. 1997), *overruled on other grounds, Swierkiwica v.*
   *Sorema, N.A.,* 534 U.S. 506 (2002) .......................................................15

*Wenk v. O'Reilly*,
   783 F.3d 585 (6th Cir. 2015) ....................................................................4

*White v. Pauly*,
   137 S. Ct. 548 (2017) ..............................................................................4

*Wilson v. Williams*,
   961 F.3d 829 (6th Cir. 2020) ....................................................................5

## Statutes

42 U.S.C. § 1983 ..........................................................................................23

Mich. Comp. Laws § 691.1407 ................................................................... 21, 22

**Rules**

Fed. R. Civ. P. 12(c).................................................................13

Fed. R. Civ. P. 7(a)..................................................................13

Fed. R. Civ. P. 8(a)(2)..............................................................20

## CONCISE STATEMENT OF ISSUES PRESENTED

1.   Are Defendants entitled to qualified immunity where Plaintiffs' allegations do not rise to the level of an Eighth Amendment violation and it is not clearly established that the species of mold allegedly present at WHV are actionable, or that prison officials must take any specific action to remediate any specific type of mold?

2.   Should this Court grant judgment as a matter of law to Defendants where expert testing conducted by both parties has not revealed any evidence of dangerous levels of mold at the Women's Huron Valley Correctional Facility (WHV)?

3.   Should this Court dismiss the gross negligence claim because gross negligence is not a cause of action under Michigan law, or alternatively, because a complaint alleging a State law cause of action cannot simultaneously plead a claim for negligence along with an intentional tort?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:
*Bassett v. NCAA*, 528 F.3d 426 (6th Cir. 2008);
*Crawford v. Tilley*, 15 F.4th 752, 759-760 (6th Cir. 2021);
*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011);
*In re Flint Water Cases*, 384 F. Supp. 3d 802 (E.D. Mich. 2019);
*VanVorous v. Burmeister*, 262 Mich. App. 467; 687 N.W.2d 132 (2004).

## STATEMENT OF FACTS

Plaintiffs are current and former prisoners in the custody of the Michigan Department of Corrections (MDOC) who are or were housed at WHV. (ECF No. 73, PageID.1077.) Plaintiffs Krystal Clark and Hope Zentz remain at WHV; Plaintiff Paula Bailey was released on May 4, 2023.[1] Plaintiffs alleged that Defendants, from approximately 2013 to present, failed to adequately respond to the health risks that mold at WHV presented to Plaintiffs. Plaintiffs allege in their complaint that "testing in the WHV would disclose the presence of various molds such as... Ochroconis... Cladosporium... Chaetomium... and Stachybotrys." (*Id.* at PageID.1089–1090.) The complaint also alleges Defendants failed to properly address the presence of mold through various actions and omissions, including haphazard retrofitting (*id.* at PageID.1080–1081), failed to repair leaking roofs (*id.* at PageID.1081–1083), failed to replace windows, grading, and gutters (*id.* at PageID.1083–1084), failed to remedy inadequate ventilation (*id.* at PageID.1084–1085) and failed to replace outdated HVAC systems. (*Id.* at PageID.1085–1087.)

Plaintiff Bailey alleges that visible black and brown mold was present in her housing unit, leading to a rash, wheezing, chest pain, coughing, and a respiratory infection. (*Id.* at PageID.1093–1095.) Plaintiff Clark allegedly observed black and

---

[1] *See* MDOC Offender Search, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=260559 (last accessed July 5, 2023).

brown mold, resulting in headaches, respiratory problems, and shortness of breath, chest tightness, allergies, and asthma.  (*Id*. at PageID.1096.)  Plaintiff Zentz alleges that she also observed black mold, developed a rash on her body, and experienced headaches, dizziness, trouble breathing, coughing, and a nose infection.  (*Id*. at PageID.1097–1098.)

The complaint alleges in Count I that Defendants violated the Eighth Amendment, and in Count II that Defendants were grossly negligent.  (*Id*. at PageID.1151–1157.)  As relief, Plaintiffs request injunctive relief and monetary damages.  (*Id*. at PageID.1158–1159.)

## ARGUMENT

### I.     The Eighth Amendment claim against Defendants in their individual capacities should be dismissed because they are entitled to qualified immunity.

Defendants are entitled to qualified immunity because there are not dangerous levels of mold at WHV, as argued in Section II of this brief.  Moreover, it is not clearly established that any type of mold at WHV is sufficiently dangerous to prisoners.  Even if it were clearly established that certain molds were dangerous enough to implicate the Eighth Amendment, it is not clearly established that prison officials need to take any particular action to remediate the presence of mold. While it is not Defendants' burden to demonstrate a lack of clearly established law, relevant precedents point towards an obvious conclusion—it is not clearly

established that prison officials need to do anything in particular to respond to allegations of mold in prison.

There are two questions a court must consider when deciding whether a government official is entitled to qualified immunity. "First, viewing the facts in the light most favorable to the plaintiff," the court must determine whether "the plaintiff [has] shown that a constitutional violation has occurred." *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015) (internal quotations and citation omitted). Second, a court must decide whether the alleged constitutional right was clearly established at the time of the violation. *Id.* Trial courts are permitted to exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be used first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Once a defendant invokes qualified immunity, *the plaintiff* bears the burden of showing that the defendant is not entitled to qualified immunity. *Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015) (emphasis added). It is reversible error for a district court to place the burden on defendants to demonstrate that they did not violate clearly established law. *Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987). In determining whether a right is clearly established, courts in this circuit consider "if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is *directly on point*." *Wenk v. O'Reilly*,

783 F.3d 585, 598 (6th Cir. 2015) (emphasis added). "[A] plaintiff cannot point to unpublished decisions to meet this burden." *Bell v. City of Southfield, Michigan*, No. 21-1516, 2022 WL 2128815, at *4 (6th Cir. June 14, 2022), Ex. C.

The Supreme Court has continuously reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (vacating and remanding Tenth Circuit decision for failure to conduct appropriate "clearly established" analysis); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (reversing Ninth Circuit for same reason); *City of Escondido, Cal., v. Emmons*, 139 S. Ct. 500, 503 (2019) (same); *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4 (2021) (same). The Court has noted that, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The contours of the right must be sufficiently clear such that "*every* 'reasonable official would [have understood] that what he is doing violates that right.'" *Id.* (emphasis added) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). Moreover, "'[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal *before the commencement of discovery*.'" *Crawford v. Tilley*, 15 F.4th 752, 759–760 (6th Cir. 2021) (emphasis added) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

4

### A.   The Eighth Amendment standard.

An Eighth Amendment claim has both an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "To satisfy the objective prong, an inmate must show 'that he is incarcerated under conditions posing a substantial risk of serious harm.'"  *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (quoting *Farmer*, 511 U.S. at 834).  The subjective component of an Eighth Amendment claim requires Plaintiffs to show deliberate indifference.  Under the subjective prong, an official must "know of and disregard an excessive risk to inmate health or safety."  *Wilson*, 961 F.3d at 840 (internal quotations and brackets omitted).

In *Helling v. McKinney*, 509 U.S. 25 (1993), the Supreme Court held that exposure to environmental tobacco smoke can violate the Eighth Amendment.  The Court explained that when analyzing an environmental-hazards claim, determining whether the objective component is met "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to" to the environmental hazard.  *Id*. at 36.  "It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk."  *Id.* (emphasis in original).  With respect to the subjective component, courts must examine

5

"prison authorities' current attitudes and conduct," which may change considerably over time. *Id*.

**B.      Plaintiffs' allegations do not rise to the level of an Eighth Amendment violation.**

For brevity, Defendants refer the Court to the arguments made in Section II of this brief.  As argued in Section II, dangerous levels of mold do not exist at WHV.  Defendants are entitled to qualified immunity on the first prong of the test because Plaintiffs have not, and cannot, show that a constitutional violation has occurred.  On this basis alone, Defendants are entitled to qualified immunity.

**C.      It is not clearly established that any of the types of molds allegedly present at WHV are sufficiently dangerous that they satisfy the objective component of an Eighth Amendment claim.**

It is particularly important that this Court define the specific right at issue in this case in sufficient detail, given the thousands of different species of mold that exist.  To say that there is a clearly established right to be "free from mold" would be far too general; that would be like saying there is a clearly established right to be "free from sickness" when many ailments are not sufficiently serious to implicate the Eighth Amendment.  To properly define the right at issue for purposes of qualified immunity, this Court must consider each of the types of mold referenced in the complaint that allegedly exist at WHV.

6

With respect to the objective component of an Eighth Amendment claim—whether the risk of harm is sufficiently serious—Plaintiffs cannot meet their burden of demonstrating that prison officials must eliminate any specific type of mold in order to avoid violating the Eighth Amendment.  None of the molds allegedly present at WHV–Ochroconis, Cladosporium, Chaetomium, or Stachybotrys (ECF No. 73, PageID.1089–1090)—are actionable.

### 1.   Ochroconis.

According to the complaint, "Ochroconis is known to grow principally in soil and can cause infections under the skin."  (*Id.* PageID.1089.)  Counsel for Defendants could not locate any federal case, let alone one from the Sixth Circuit or Supreme Court, holding that a prison's failure to respond to the risks that Ochroconis poses to inmates is actionable under the Eighth Amendment.  That alone demonstrates that the law is not clearly established in the Sixth Circuit.

### 2.   Cladosporium.

According to the complaint, "Cladosporium can cause extrinsic asthma, skin lesions, sinusitis, and pulmonary infections."  (*Id.*)  There is no Sixth Circuit or Supreme Court case holding that a prison's failure to respond to the risks that Cladosporium poses to inmates is actionable under the Eighth Amendment.  As with Ochroconis, no right related to Cladosporium is clearly established in the Sixth

Circuit.  And if that were not enough, as a microbiologist testified in another case against the MDOC, "Cladosporium is the most common mold in the entire world. It is ubiquitous in every environment, every niche, every temperature range, every continent, everywhere.  It is just the most ubiquitous." *Jacobson v. Patino*, No. CIV.A. 10-13046, 2012 WL 3870320, at *3 (E.D. Mich. July 31, 2012), *report and recommendation adopted,* No. 10-13046, 2012 WL 3870315 (E.D. Mich. Sept. 6, 2012), dismissing Eighth Amendment claim, where prisoner alleged water leaked into his cell creating mold, as "not sufficiently serious to warrant Eighth Amendment Protection," *id*. at *5), attached as exhibit G.

Even courts outside of the Sixth Circuit have found that prison officials are entitled to qualified immunity where it is alleged that Cladosporium is present at the prison.  *Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020) (granting qualified immunity to prison officials because it was not clearly established that the presence of Cladosporium or other common molds amounted to constitutional violation); *Porter v. Huffman*, No. 4:17-cv-484-KGB-BD, 2020 WL 6268111, at *3 (E.D. Ark. Sept. 28, 2020), *report and recommendation adopted*, No. 4:17-cv-00484 KGB-BD, 2020 WL 6268080 (E.D. Ark. Oct. 23, 2020), attached as exhibit K, (granting qualified immunity to officers because it was not clearly established that an inmate has a right to be housed in a facility free from Cladosporium, mold,

or other allergens).  This Court must grant qualified immunity to Defendants for
Plaintiffs' claims based on the presence of Cladosporium at WHV.

### 3.    Chaetomium.

According to the complaint, "[s]everal species of Chaetomium are toxigenic
and known to cause systemic, cerebral, skin (and under the skin), and pulmonary
infections."  (ECF No. 73, PageID.1089–1090.)  As with the previous two mold
types, counsel for Defendants could not locate any federal case holding that a
prison's failure to respond to the risks that Chaetomium poses to inmates is
actionable under the Eighth Amendment.

### 4.    Stachybotrys.

The complaint alleges that "[s]everal species of Stachybotrys are
toxigenic and can specifically produce Stratoxin H, which is poisonous upon
inhalation.  Individuals with chronic exposure to Stratoxin H experience cold and
flu symptoms, sore throats, diarrhea, headaches, fatigue, dermatitis, hair loss, and
general malaise.  Stratoxin H is also a liver and kidney carcinogen."  (*Id.*
PageID.1090.)  Despite the potential alleged dangers presented by Stachybotrys
(sometimes referred to in caselaw as "toxic" or "black" mold), there is no Sixth
Circuit or Supreme Court case holding that a prison's failure to respond to the risks
that Stachybotrys poses to inmates is actionable under the Eighth Amendment.

Again, that fact alone demonstrates that it is not a clearly established right. *Ashcroft*, 563 U.S. at 741 (existing precedent must have placed the constitutional question beyond debate and the right must be sufficiently clear such that "every" reasonable official would have understood that their actions violated the right).

Even if district court decisions alone could "clearly establish" the law, it would be questionable at best whether the law supports that Stachybotrys is actionable, as many courts assume without deciding that black mold meets the objective component.  *See* e.g., *Shaheed v. Sherman*, No. 120-cv-01450SABPC, 2022 WL 3691308, at \*9 (E.D. Cal. Aug. 25, 2022) ("Exposure to black mold while housed in a prison may give rise to a claim for deliberate indifference."), attached as ex. N.  At minimum, for Stachybotrys to be actionable, it must actually be present in dangerous levels.  *Id.* at \*10 (granting summary judgment to prison officials where prisoner submitted no evidence of "toxic mold" or "black mold" between 2015 to 2018, and where prison officials took various actions to repair and maintain the facility); *Pettway v. Bush*, No. 19-11201, 2019 WL 7486826, at \*6 (E.D. Mich. Dec. 6, 2019), *report and recommendation adopted*, No. 19-cv-11201, 2020 WL 60284 (E.D. Mich. Jan. 6, 2020) (denying motion for preliminary injunction where prisoner failed to show that he was subject to continuing harm from toxic black mold), Attached as exhibit J.

Even if black mold can be actionable, it must be airborne, not just present on various surfaces.  *Reitmeyer v. Monroe*, No. 1:19-cv-25, 2019 WL 549058, at *3 (W.D. Mich. Feb. 12, 2019) (dismissing prisoner's black mold claim sua sponte, because "[e]xposure to black mold that is airborne and can be inhaled into the lungs may be sufficiently serious to give rise to an Eighth Amendment claim, but exposure to black mold through skin contact is a different matter.") (collecting cases), Attached as exhibit L; *Rogers v. MacLaren*, Case No. 1:20-cv-263, 2020 WL 3481541, at *7 (W.D. Mich. Jun. 26, 2020) (same).

It is not clearly established that any of the types of the mold identified in the complaint are sufficiently serious to implicate the objective component of an Eighth Amendment claim.  This Court must grant qualified immunity to Defendants on that basis alone.

> **D.    It is not clearly established that the Eighth Amendment requires prison officials to take any specific action to prevent harm associated with any type of mold.**

Even if Plaintiffs could identify a case demonstrating that prison officials are required to take action against the types of mold alleged in the complaint, there is an independent and alternative reason why Plaintiffs cannot meet their burden of demonstrating clearly established law in this case.  With respect to the subjective component of an Eighth Amendment claim—whether prison officials were deliberately indifferent to the serious risk—it is not clearly established that the

11

Eighth Amendment requires prison officials to update facility infrastructure to prevent mold (ECF No. 73, PageID.1081), that prison officials must repair leaking roofs with any specific amount of regularity to prevent mold (*id.* at PageID.1081–1083), that prison officials must replace windows, grading, or gutters to prevent mold (*id.* at PageID.1083–1084), or that ventilation, air conditioning, or HVAC units must be replaced at specific intervals to prevent mold.  (*Id.* at PageID.1084–1087.)

Similarly, the complaint enumerates a list of alleged "failures" of each individual Defendant.  For example, the complaint alleges Deputy Warden Johnson failed to administer effective mold testing, failed to administer effective methods to eradicate mold, attempted to cover up the presence of mold, and more.  (*Id.* PageID.1114.)  Similar allegations exist with respect to every Defendant.  (*Id.* at PageID.1116–1147.)  But again, it is not clearly established—especially not in the Sixth Circuit—that the Eighth Amendment requires prison officials to take any of these actions in response to mold.[2]

Because there is no Sixth Circuit or Supreme Court case on point, nor is there a robust consensus of out-of-circuit cases that amount to clearly established

---

[2] And as a related matter, it is not clearly established that prison officials cannot paint the walls or conduct other routine maintenance such as replacing floor and ceiling tiles, which Plaintiffs have repeatedly alleged are examples of attempts to "cover up" mold at WHV.  (ECF No. 122, PageID.1869–1870, 1872, 1883–1884; ECF No. 149, Page.ID.2684.)

law on what actions prison officials must take to remediate mold, Defendants are entitled to qualified immunity.

## II. Defendants in their official and individual capacities are entitled to judgment on the pleadings on the Eighth Amendment claim because dangerous levels of mold do not exist at WHV.

At this stage of the case, Defendants argue for dismissal based on a narrow issue:  Plaintiffs cannot support the principal allegation in the complaint that dangerous levels of mold currently exist, or ever existed, at WHV.  Because the MDOC has repeatedly tested WHV for mold from 2018 to present, without finding dangerous levels of mold, and because Plaintiffs cannot support the allegation in their complaint after multiple inspections of WHV with their expert witness, this Court should dismiss both the Eighth Amendment injunctive relief and monetary damages claims against the MDOC Defendants.

### A. This Court may consider limited evidence outside of the complaint when considering a motion for judgment on the pleadings.

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law."  *Bickley v. Dish Network, LLC*, 751 F.3d 724, 733 (6th Cir. 2014) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir. 1991)).  Fed. R. Civ. P. 7(a) defines a

"pleading" as "a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served." *Fox v. Michigan State Police Dep't*, 173 F. App'x 372, 375 (6th Cir. 2006).

Nonetheless, when considering a motion for judgment on the pleadings, it is proper for courts to consider exhibits that are extrinsic to the complaint if they are central to the plaintiff's claims and referenced in the complaint. *Sherer v. Bank of New York Mellon*, 2015 WL 4935614, at *3 (E.D. Mich. Aug. 18, 2015), attached as Exhibit O (citing *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) ("In addition to evaluating the sufficiency of the factual allegations within the four corners of a complaint, courts may consider any exhibits attached to the complaint, matters of public record, and exhibits attached to a defendant's Rule 12 motion, provided that the latter are referred to in the complaint and are central to the claims therein."). *See also Bell*, 37 F.4th at 364 (considering video evidence that was produced by defendants and referenced in complaint to resolve qualified immunity issue on appeal); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). In a motion for judgment on the pleadings, "a defendant may introduce certain pertinent documents if the plaintiff fails to do so . . . Otherwise, a plaintiff with a

legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997), *overruled on other grounds, Swierkiwica v. Sorema, N.A.,* 534 U.S. 506 (2002) (internal citations omitted).

Whether testing would reveal dangerous levels of mold is central to and inextricably intertwined with the allegations in the complaint.  The complaint alleges Plaintiffs suffered from a laundry list of symptoms, ranging in seriousness from nasal stuffiness and itching to pneumonia and pulmonary hemorrhage.  (ECF No. 73, PageID.1087–1088.)  And while there are thousands of species of mold, if not more, Plaintiffs allege the presence of the following specific types of mold at WHV could have caused these symptoms: Ochroconis, Cladosporium, Chaetomium, and Stachybotrys.  (*Id.*, PageID.1089–1090.)  In their answer, the MDOC Defendants responded that:

> To the extent that this allegation purports to list what testing could reveal generally in any setting, Defendants neither admit nor deny the allegation as untrue.  To the extent that any alleged mold made the conditions at WHV unfit, the Defendants deny the allegation as untrue. To the extent the allegation alleges that the Defendants engaged in unconstitutional behavior, the allegation is denied as untrue.

(ECF No. 98, PageID.1545.)

Plaintiffs have also put in the record documents that they claim substantiate their complaints.  Plaintiffs had the opportunity to tour WHV on multiple occasions in December 2021 and February 2022 with their expert witness, James

Strobridge, which included air and surface mold testing and the taking of 3,778 photographs. (ECF No. 122, PageID.1876; ECF No. 130, PageID.2186–2187.) Defendants had their expert, Matthew Koche, conduct mold testing at WHV as well. Because Plaintiffs specifically allege that "testing in the WHV would disclose the presence of various molds," (ECF No. 73, PageID.1089–1090) and because an expert affidavit rebutting such a claim would be "central to the [Plaintiffs'] claims," *Sherer*, 2015 WL 4935614 at *3, it is appropriate for this Court to consider the declarations filed by both Koche and Strobridge earlier in this case, as well as any mold test results offered by the parties.[3]

### B.   Dangerous levels of mold did not exist at WHV prior to Plaintiffs initiating this lawsuit.

On April 19, 2018, before this lawsuit was filed, Materials Testing Consultants, Inc., (MTC) conducted air sampling for indoor air quality testing at WHV at the request of the MDOC. (Ex. A, MDOCDefs.002008.) While the test results speak for themselves, in summary, MTC tested WHV for the presence of a variety of different fungal spores and other particles. MTC concluded that "no indoor sample concentrations [of any type of mold] exceeded [6,500 spores]." (Ex.

---

[3] To the extent that this Court disagrees and finds that it may not consider declarations that are already part of the record, it should disregard them because it would be inappropriate to convert Defendants' motion to dismiss into a Rule 56 motion for summary judgment. *Barkovic v. Att'y Grievance Comm'n*, 289 F. Supp. 3d 833, 843 (E.D. Mich. 2017).

A, MDOCDefs.002009.)  According to MTC and the American Academy of Allergy, Asthma and Immunology, spore concentrations below 6,500 are considered "low" and "[o]nly individuals extremely sensitive to these pollens and molds will experience symptoms."  (Ex. A, MDOCDefs.002020.)

Significantly, MTC tested for Stachybotrys, which is perhaps the most serious species of mold mentioned in the complaint (ECF No. 73, PageID.1090), and which is commonly referred to as "black mold."  *See* e.g., *Jacobson*, 2012 WL 3870320 at *4 (Microbiologist testified at a deposition that "[t]oxic black mold is typically a genus called Stachybotrys.").  In April 2018, no Stachybotrys mold was detected at WHV in any amount.  (Ex. A, MDOCDefs.002013-002014.)

And even if "black mold" was found, as many district courts in the Sixth Circuit have reasoned when dismissing Eighth Amendment claims involving mold in prison, "some exposure to black mold is a risk that society has chosen to tolerate."  *McIntyre v. Phillips*, No. CIV.A. 1:07-cv-527, 2007 WL 2986470, at *3 (W.D. Mich. Sept. 10, 2007), attached as Exhibit H; *Sanchez v. Osborne*, No. CIVA 4:10-cv-P35-M, 2010 WL 1663641, at *2 (W.D. Ky. Apr. 23, 2010) (quoting same language), attached as Exhibit M; *Daniels v. Tharp*, No. 3:16-cv-2830, 2019 WL 400396, at *3 (N.D. Ohio Jan. 31, 2019), *aff'd,* No. 19-3190, 2020 WL 13561351 (6th Cir. June 22, 2020) (same), attached as exhibit E; *Page v.*

*Clark*, No. 3:22-cv-142-BJB, 2022 WL 16924122, at *2 (W.D. Ky. Nov. 14, 2022) (same), Attached as exhibit I.

### C.   Dangerous levels of mold are not currently present at WHV.

Even more relevant to Plaintiffs' injunctive relief claim are the mold levels that existed from the time they filed the complaint to the present. *Hanrahan v. Mohr*, 905 F.3d 947, 963 (6th Cir. 2018) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects."); *Hum. Rts. Def. Ctr. v. Washington*, No. 1:19-cv-12470, 2021 WL 2895192, at *10 (E.D. Mich. July 9, 2021), Exhibit F, (explaining that, in evaluating a First Amendment injunctive relief claim, while evidence of MDOC's lack of mail rejection notices prior to the lawsuit was filed is relevant, "even more relevant are the rejections that occurred after the beginning of the lawsuit."). Recent testing conducted by experts of both parties confirms that dangerous levels of mold are not present at WHV.

As Magistrate Judge Stafford correctly noted earlier in this case, prior to an October 2022 hearing on Defendants' motion for protective order,[4] Plaintiffs

---

[4] Defendants filed a motion for a protective order earlier in this case asking this Court to relieve them from Plaintiff's onerous preservation demands and transparent attempts to manufacture a spoliation claim. (ECF No. 122.) Due in part to Plaintiffs' failure to provide evidence of dangerous levels of mold anywhere at WHV, Defendants' motion was granted. (ECF No. 133.)

"lacked (1) any evidence of continuing contaminated air at WHV; and (2) any evidence that Strobridge's inspections and the thousands of photographs taken during those inspections were insufficient for his expert analysis."  (ECF No. 130, PageID.2190.)  Following the October 2022 hearing, Plaintiffs filed a post-hearing notice with a new declaration from Strobridge, which says in pertinent part that two ceiling tiles removed from WHV had visible water marks and moderate fungal containment levels even though no sign of mold or fungus was visible to the naked eye.  (*Id.*; ECF No. 128-1, PageID.2164.)  Defendants provided their own declaration from Koche, "disputing Strobridge's suggestions that the levels of mold spores were atypical or that the bio-tape surface samples Strobridge took could provide evidence of occupant risk," and showing that Koche's "airborne samples collected in February 2022 were consistent with a healthy building." (ECF No. 130, PageID.2191; ECF No. 129-2, PageID.2179.)

In summary, the declarations Strobridge filed earlier in this case are either completely irrelevant to mold levels (in the case of ECF No. 123-3) or are full of scientific-sounding jargon that really does not say anything about whether dangerous levels of mold are present at WHV (in the case of ECF No. 128-1).  The closest Strobridge ever comes to opining on the significance of WHV mold levels to inmate health is where he states that in some areas of WHV, samples were reported as having "moderate" fungal contaminant levels, which indicates that

19

"biological amplification is taking place."  (ECF No. 128-1, PageID.2164.)  But as Koche explains, Strobridge's reference to "biological amplification" is just a fancy way of implying there is growth at the sample site and, which according to Koche, is technically incorrect.  In any event, Strobridge does not describe any potential impact on inmate health.  Moreover, the air samples Koche took at WHV are consistent with background levels within a typical healthy building and/or those found in the outdoor environment.  (ECF No. 129-2, PageID.2176–2179.)

Plaintiffs have not, and cannot, produce any evidence to support their claim that dangerous levels of mold—that are "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk," *Helling*, 509 U.S. at 36—are present at WHV.  The Eighth Amendment claim against Defendants must be dismissed in its entirety.

### III.   The gross negligence claim against Defendants must be dismissed.

The gross negligence claim must be dismissed for two alternative and independent reasons.  First, gross negligence is not a cause of action under Michigan law.  Second, Michigan law does not allow complaints that simultaneously allege an intentional tort and a claim for negligence.

20

**A.    Gross negligence is what a plaintiff must prove to overcome the Government Tort Liability Act, and not a cause of action under Michigan law.**

The complaint pleads a claim for gross negligence, which is not an independent cause of action under Michigan law.  By purporting to plead a claim for "gross negligence," the complaint fails to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

The Government Tort Liability Act (GTLA), Mich. Comp. Laws § 691.1407, "does not create a cause of action.  Plaintiffs are still required to establish a common-law duty." *Beaudrie v. Henderson*, 465 Mich. 124, 139 (2001); *see also In re Flint Water Cases*, 384 F. Supp. 3d 802, 871 (E.D. Mich. 2019), *aff'd and remanded*, 960 F.3d 303 (6th Cir. 2020) ("Gross negligence is not an independent cause of action in Michigan.") (collecting cases).

Rather, ordinary negligence and professional negligence are causes of action under Michigan law.  "To establish a prima facie case of negligence, a plaintiff must prove: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached the duty; (3) that the defendant's breach of duty was a proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages." *Chivas v. Koehler*, 182 Mich. App. 467, 475 (1990); *In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010) (describing same elements for a professional negligence claim).

21

Gross negligence enters the equation through the GTLA, which confers governmental immunity to certain tortious government actors "unless their conduct amounted to gross negligence that was the proximate cause of a plaintiff's injuries." *In re Flint Water Cases*, 384 F. Supp. 3d at 871. "Statutory gross negligence [constitutes] an affirmative defense to be raised by a defendant." *Id*. at 872.

At the same time, Courts must look at the substance of the claim. *Lippett v. Adray*, No. 18-cv-11175, 2023 WL 3774508, at *5 (E.D. Mich. June 2, 2023), ECF No. 150-2, PageID.2808-15. Here, Plaintiffs' claim gross negligence, but fail to plead either professional or ordinary negligence. (ECF No. 73, PageID.1155.) As such, it fails to put Defendants on notice of the claims against them and, in and of itself, is grounds for dismissal. *Fecteau v. Unknown Officers and Agents of Clinton Twp.*, 596 F. Supp. 580, 583 (E.D. Mich. 1984). A complaint that purports to plead a claim for gross negligence is akin to a complaint that merely alleges that defendants are not entitled to qualified immunity (an affirmative defense that is asserted by the defendant, rather than pleaded-around in the complaint) without alleging the specific amendment of the constitution that was violated. By purporting to plead a claim for gross negligence, what the complaint is really doing is pre-emptively attempting to rebut an affirmative defense (i.e., that Defendants are immune from suit under the GTLA).

The *Flint Water* cases provide a recent example where claims for "gross negligence" were dismissed. *In re Flint Water Cases*, 384 F. Supp. 3d 802 (E.D. Mich. 2019), *aff'd and remanded,* 960 F.3d 303 (6th Cir. 2020) (hereinafter, "Flint Water"). There, Judge Levy dismissed all gross negligence claims against the defendants—Counts IV and XIII of the complaint—but allowed separate claims of professional negligence—Counts VII and VIII—to proceed. *Id.* at 866–872. The *Flint Water* court explained that "[g]ross negligence is not an independent cause of action in Michigan." *Id.* at 871. *See also Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011) (reversing district court's denial of summary judgment because gross negligence is not an independent cause of action).

To the extent other courts have previously allowed claims for "gross negligence" to slip by, this Court need not continue those mistakes and should enforce federal pleading standards. This Court should dismiss the gross negligence claim against Defendants because gross negligence is not a cause of action under Michigan law.

**B.     Under Michigan law, Plaintiffs cannot bring a gross negligence claim while simultaneously alleging an intentional tort.**

Michigan law does not allow complaints that allege both intentional torts and negligence claims, while relying on the same facts. *VanVorous v. Burmeister*, 262 Mich. App. 467; 687 N.W.2d 132 (2004), *abrogated on other grounds by*

*Odom v. Wayne Cnty.*, 482 Mich. 459, 465, 760 N.W.2d 217, 220 (2008).

Assuming arguendo the complaint sufficiently pleads a negligence claim, that

claim must nonetheless be dismissed under the *VanVorous* rule.

Michigan Courts have "rejected attempts to transform claims involving

elements of intentional torts into claims of gross negligence." *VanVorous*, 262

Mich. App. at 483.  A number of federal courts have applied the *VanVorous* rule in

§ 1983 cases to dismiss gross negligence claims under State law.  *See* e.g., *Arthur*

*v. Helper*, No. 19-11277, 2019 WL 5103790, at *2 (E.D. Mich. Oct. 11, 2019),

Attached as exhibit B, (applying *VanVorous* to dismiss gross negligence claim that

was premised on same facts as Eighth Amendment medical care claim); *Collins v.*

*Ferguson*, No. 17-cv-10898, 2017 WL 4387287, at *8 (E.D. Mich. Oct. 3, 2017)

attached as exhibit D, (applying *VanVorous* to dismiss gross negligence claim that

was premised on same facts as excessive force claim).

Both Plaintiffs' Eighth Amendment claim and their gross negligence claim

are premised on the same factual allegations—facts allegedly showing that

Defendants knew about mold at WHV and knew about the conditions causing the

mold, but failed to do anything to remedy those conditions.  There is not a separate

set of facts that apply to the gross negligence claim that are different from the

allegations that apply to the Eighth Amendment claim.  Because Plaintiffs have

brought an Eighth Amendment claim, which is an intentional tort, along with their

State law gross negligence claim, the *VanVorous* rule applies, and the gross

negligence claim must be dismissed.

## CONCLUSION AND RELIEF REQUESTED

For the reasons above, this Court should dismiss the Eighth Amendment and

gross negligence claims against Defendants with prejudice.

Respectfully submitted,

*/s/ Zachary A. Zurek*
Zachary A. Zurek
Assistant Attorney General
Attorney for Defendants
Michigan Dep't of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
zurekz1@michigan.gov
Dated:  July 5, 2023                      P80116

## CERTIFICATE OF SERVICE (EFILE)

I hereby certify that on July 5, 2023 I electronically filed the *foregoing document(s)* together with this *Certificate of Service* with the Clerk of the Court, through the ECF system, which will provide electronic copies to counsel of record.

*/s/ Zachary A. Zurek*
Zachary A. Zurek (P80116)
Assistant Attorney General
Attorney for Defendants
Corrections Division