UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAULA BAILEY, KRYSTAL CLARK,
and HOPE ZENTZ, on behalf of
themselves and others similarly situated,

      Plaintiffs,

                                  Case No. 19-13442

v.                                Honorable Victoria A. Roberts

HEIDI WASHINGTON, JEREMY
HOWARD, SHAWN BREWER, KENNETH
MCKEE, JEREMY BUSH, LIA GULICK, ED
VALLARD, DAVID JOHNSON, KARRI
OSTERHOUT, JOSEPH TREPPA, DAN
CARTER, RICHARD BULLARD, and TONI
MOORE, in their individual and official
capacities,

      Defendants.

_____/

## ORDER: (1) GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS [ECF NO. 152]; (2) DISMISSING THE AMENDED COMPLAINT; AND (3) ALLOWING PLAINTIFFS TO FILE A SECOND AMENDED COMPLAINT

## I.    INTRODUCTION

Paula Bailey, Krystal Clark, and Hope Zentz ("Plaintiffs") are

incarcerated at the Women's Huron Valley Correctional Facility ("WHV").

They allege that buildings at WHV are riddled with dangerous conditions—

including haphazard retrofitting, leaky roofs, inoperable windows, inadequate

ventilation, and outdated heating, ventilation, and air conditioning systems—which created a breeding ground for harmful fungi and spore-producing mold.

Plaintiffs bring this two-count civil rights action under 42 U.S.C. § 1983 against numerous Michigan Department of Corrections ("MDOC") employees ("Defendants").

In Count I, Plaintiffs allege Defendants violated the Eighth Amendment prohibition against cruel and unusual punishment. In Count II, Plaintiffs accuse Defendants of gross negligence.

Before the Court is Defendants' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  [ECF No. 152].

The Court **GRANTS** Defendants' Motion for Judgment on the Pleadings; **DISMISSES** Plaintiffs' Amended Complaint and allows Plaintiffs the opportunity to file a second amended complaint.

## II.    BACKGROUND

### A.    Factual Background

Plaintiffs say exposure to surface and airborne mold has taken a significant physical and mental toll on them and others incarcerated at WHV.

Particularly: (1) Bailey alleges visible black and brown mold was present in her housing unit, leading to a rash, wheezing, chest pain,

coughing, and a respiratory infection; (2) Clark claims black and brown mold caused her headaches, respiratory problems, shortness of breath, chest tightness, allergies, and asthma; and (3) Zentz alleges black mold gave her a body rash, headaches, dizziness, breathing issues, cough, and a nose infection.   Plaintiffs claim they can only escape exposure to health-challenging conditions when they leave their housing units.

According to Plaintiffs, Defendants have been aware of a crumbling infrastructure and rampant mold at WHV for years but took no steps to remedy dangerous conditions. They also say inadequate ventilation contributes to the mold problem. The allegations that Defendants failed to adequately respond to the health risks and that the unabated mold at WHV violated Plaintiffs' constitutional rights, are central to this litigation and fuel Plaintiffs' deliberate indifference claim.

### B.    Procedural Background

Plaintiffs filed a class action complaint on behalf of themselves and all others similarly situated in November 2019.   After the Court granted Defendants' motion to dismiss, Plaintiffs filed an amended complaint in September 2020 asserting the two causes of action now challenged through Defendants' motion.

The Court stayed discovery in May 2022 while the parties engaged in mediation. The parties have conducted virtually no discovery.

Defendants now seek judgment on the pleadings under Rule 12(c).

## III.   STANDARD OF REVIEW

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)."  *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020).  A motion to dismiss under Rule 12(b)(6) tests a complaint's legal sufficiency.

The federal rules require a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Indeed, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible where the facts allow the Court to reasonably infer that the defendant is liable for the misconduct alleged.  *Id.*  This requires more than "bare assertions of legal conclusions"; a plaintiff must provide the "grounds" of his or her "entitlement to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *Twombly*, 550 U.S.

at 555 (while detailed factual allegations are not required, a pleading must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

The Court must construe the complaint in the light most favorable to the plaintiff, accept as true all well-pled factual allegations, and draw all reasonable inferences in the plaintiff's favor. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). However, the Court need not "'accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (citation omitted).

The Court should grant a motion for judgment on the pleadings "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Bickley v. Dish Network, LLC*, 751 F.3d 724, 733 (6th Cir. 2014) (citation omitted).

While there is suggestion in the briefs that the Court may want to or should convert this motion to one for summary judgment, there is no need for the Court to consider matters outside the complaint to decide if Defendants are entitled to qualified immunity.

## IV. ANALYSIS

Defendants say they are entitled to judgment on the pleadings on both causes of action. They assert: (1) qualified immunity protects them from

Plaintiffs' Eighth Amendment claim; and (2) Plaintiffs' gross negligence claim must be dismissed because gross negligence is not a cause of action under Michigan law.

The Court outlines the law on qualified immunity before analyzing Plaintiffs' Eighth Amendment deliberate indifference claim. It concludes its analysis with a discussion of Plaintiffs' gross negligence claim.

## A.    Qualified Immunity Standard

### 1. Qualified immunity generally

The doctrine of qualified immunity shields government officials from liability for civil damages, litigation, and discovery, if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Myers v. City of Centerville*, 41 F.4th 746, 758 (6th Cir. 2022); *Middaugh v. City of Three Rivers*, 684 Fed. Appx. 522, 526 (6th Cir. 2017).  "This immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions, protecting all but the plainly incompetent or those who knowingly violate the law."  *Guertin v. State*, 912 F.3d 907, 916 (6th Cir. 2019) (citation and internal quotation marks omitted).

If a defendant asserts qualified immunity, the plaintiff bears the burden to show that a defendant is not entitled to such protection.  *Id.* at 917.  To

succeed, the plaintiff must show that: (1) the facts alleged, viewed in the light most favorable to the plaintiff, make out a violation of a constitutional right; and (2) the right was "clearly established" at the time of the alleged misconduct.  *Id.*; *Myers*, 41 F.4th at 757; *Rhodes v. Michigan*, 10 F.4th 665, 672 (6th Cir. 2021).

The Court is free to consider the two prongs of qualified immunity in whatever order is appropriate in light of the issues before it. *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009).

### 2.  Determining if a right is "clearly established"

To be "clearly established," a right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The Court "[does] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

The first step of the "clearly established" analysis is to define the right "at the appropriate level of specificity."  *Wilson v. Layne*, 526 U.S. 603, 615 (1999).  The Supreme Court cautions courts "not to define clearly established law at a high level of generality.  *Mullenix*, 577 U.S. at 12 (quoting *Ashcroft*,

7

563 U.S. at 742).  "[T]he right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official."  *Reichle*, 566 U.S. at 665 (internal citations and quotation marks omitted). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix*, 577 U.S. at 12 (citation omitted).

After defining the right at issue at the appropriate level of specificity, the Court must next ask whether, by virtue of existing legal precedent, "every reasonable official would have understood that what he [was] doing violate[d]" that particularized right.  *Mullenix*, 577 U.S. at 11.

Courts "must look first to decisions of the Supreme Court, then to decisions of [their circuit court] and other courts within our circuit, and finally to decisions of other circuits." *Guertin*, 912 F.3d at 932 (citing *Baker v. City of Hamilton*, 471 F.3d 601, 606 (6th Cir. 2006)). Cases that are nonbinding (e.g., district court decisions, decisions of other circuits) may be used as persuasive, but not mandatory, authority. *See Ashcroft*, 563 U.S. at 741.

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."  *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021) (citation omitted).

**B.      Count I – Eighth Amendment Claim**

1. Eighth Amendment Deliberate Indifference Framework

"When the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general wellbeing." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation omitted).

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and . . . the treatment [an incarcerated person] receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Rhodes*, 10 F.4th at 673 (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)) (internal quotation marks and citations omitted).  Pursuant to the Eighth Amendment's prohibition against "cruel and unusual punishments," U.S. Const. amend. VIII, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  *Id.* (quoting *Farmer*, 511 U.S. at 832).

"[N]ot every harm or injury suffered in prison rises to the level of cruel and unusual punishment; 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Rhodes*, 10 F.4th at 673 (citation omitted).  For conduct to be actionable, a plaintiff challenging the conditions

9

of his confinement under the Eighth Amendment must show that prison officials acted with "'deliberate indifference' to a substantial risk of serious harm." *Id.*

Deliberate indifference occurs when government officials, such as prison staff members, are aware of a substantial risk of serious harm to an incarcerated person's health or safety and consciously disregard that risk. *See id.* An Eighth Amendment deliberate indifference claim has both an objective and subjective component.  *Rhodes*, 10 F.4th at 673.

To satisfy the objective prong, an incarcerated person must show "that [s]he is incarcerated under conditions posing a substantial risk of serious harm"; "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (citation omitted).  "[T]he objective component of a conditions-of-confinement claim is proven where the . . . prisoner is denied 'the minimal civilized measure of life's necessities.'  This includes deprivations of 'adequate food, clothing, shelter, medical care, and safety.'" *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 570 (6th Cir. 2013) (internal citations and brackets omitted).

When considering the objective component, the Court must "'assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency'—that is, it 'is not

one that today's society chooses to tolerate.'" *Id.* at 568 (quoting *Helling*, 509 U.S. at 36).

On the other hand, to satisfy the subjective prong, a plaintiff must show that the prison official had "a sufficiently culpable state of mind." *Villegas*, 709 F.3d at 569. A sufficiently culpable state of mind is one in which "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Direct evidence about a defendant's knowledge is not necessary"; knowledge "can be inferred from the obviousness of the harm stemming from the risk." *Villegas*, 709 F.3d at 569. A prison official can be liable if he "disregards [substantial risk of serious harm] by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 848.

When a deliberate indifference claim intersects with a qualified immunity defense, courts must be clear in their analyses: a defendant cannot be "deliberately indifferent" to a right that is not clearly established.

### 2. Qualified Immunity Analysis

Plaintiffs argue this motion would be better positioned as a summary judgment one at the close of discovery, and that addressing qualified

immunity now is premature. However, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal quotation marks omitted). Even though Defendants curiously delayed bringing this motion for almost three years, the Court decides the issue now.

### a. Defining the right at issue

Defendants urge the Court to define the right alleged as the right to be free from each specific type of mold referenced in the complaint. [ECF No. 152, PageID.2842]. On the other hand, Plaintiffs define the right as "the right to be free from exposure to mold that poses a serious risk to an inmate's health or safety." [ECF No. 157, PageID.3200].

The Sixth Circuit cautions against being overly specific when defining the constitutional right at issue. *See Rhodes*, 10 F.4th at 680 (defining an Eighth Amendment right as whether a state actor "knowingly or recklessly disregard[ed] a known excessive risk to the prison worker's health and safety in that environment," as opposed to the "overly specific . . . right not to have a prison official recklessly fling a 40-pound laundry cart onto a prison laundry porter.").

The Court agrees with Plaintiffs' framing; it is particularized to the facts of the case and sufficiently specific. Nonetheless, the Court finds that Plaintiffs fail to meet their burden to show that the law was clearly established.

        b. Plaintiffs fail to show that the right to be free from exposure to mold that poses a serious risk to an incarcerated person's health or safety was clearly established at the time of the alleged violation.

Because Plaintiffs fail to locate "any cases of controlling authority in their jurisdiction at the time of the incident which clearly established the rule on which they seek to rely," *Wilson*, 526 U.S. at 617, they fail to meet their burden.

Plaintiffs allege in their amended complaint that Defendants began violating their rights as early as 2013. *See* [ECF No. 73, PageID.1083].  The appropriate inquiry then, is whether the right was clearly established as of 2013.

Defendants argue that: (1) it is not clearly established that any type of mold at WHV is sufficiently dangerous to incarcerated people; and (2) even if it were clearly established that certain molds were dangerous enough to implicate the Eighth Amendment, it is not clearly established that prison officials need to take any particular action to remediate the presence of mold.

13

In support of their motion, Defendants contend that Plaintiffs cannot meet their burden to demonstrate that prison officials must eliminate specific molds to avoid Eighth Amendment liability. With respect to three of the molds mentioned in the complaint—Ochroconis, Cladosporium, and Chaetomium—Defendants say they found no cases suggesting a clearly established right to be free from these molds or holding that a prison's failure to respond to the risks of these molds is actionable under the Eighth Amendment. [ECF No. 152, PageID.2842-.2847].

In response, Plaintiffs cite to no Sixth Circuit case holding that the presence of specific molds—or even mold generally—violates an incarcerated person's clearly established rights. Instead, they rely on a number of district court cases which only discuss Stachybotrys chartarum (black mold). *See* [ECF No. 157, PageID.3200-01] (collecting cases). Notably, only one of these cases is within the Sixth Circuit. *See id.* (citing *Jackson v. Ingram Cnty. Jail*, No. 1:17-CV-237, 2017 WL 2927484, at *6 (W.D. Mich. July 10, 2017).

This raises the inquiry: can a district court in the Sixth Circuit use district court or nonbinding/unpublished opinions to determine whether law is clearly established?

The Court believes the answer is no. *See Ohio Civil Serv. Emps. Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988) ("to find a clearly established constitutional right, a district court must find binding precedent"); *Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir. 2002) ("It is well-established law in this circuit that unpublished cases are not binding precedent. . . . Thus, the unpublished opinions cited in *McLaurin* could not have [clearly established the law]."); *Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828, 833 (6th Cir. 2000) ("*Ernst* is not binding precedent because the opinion is unpublished."); *Cattin v. Gen. Motors Corp.,* 955 F.2d 416, 431 n.14 (6th Cir. 1992) ("Defendants' reliance on our unpublished opinion . . . is misplaced. *Miller*, as unpublished and not a binding precedent, is clearly distinguishable from this case."); *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 944 (6th Cir. 2020) ("More importantly, though, because *Dickens* and *Turner* are unpublished decisions they are not 'precedent,' . . . and they do not bind us."); *United States v. Yates*, 866 F.3d 723, 728 (6th Cir. 2017) ("But because *Mansur* is unpublished, we are not bound by its holding.").

These decisions support that cases that are not precedent (i.e., district court cases, unpublished cases) cannot clearly establish a law.

Though Plaintiffs do not cite to this case, the Court notes that the Sixth Circuit in *McCloud v. Testa*, 97 F.3d 1536, 1555 (6th Cir. 1996) reasoned

that, in assessing whether a law was clearly established, "the use made of [unpublished Sixth Circuit] cases [in this instance] is appropriate for two important reasons. . . . We think . . . that unpublished opinions, because they show how [the Court of Appeals] dealt with concrete disputes, are more persuasive than the purely hypothetical examples we have invented and so merit consideration."). *Id.* at 1555 n.28.

At first blush, *McCloud* supports that using unpublished/nonbinding opinions to determine whether the law is clearly established in the Sixth Circuit is acceptable. But this case can be distinguished for two important reasons. First, *McCloud* was decided in 1996. A litany of Sixth Circuit cases decided after 1996 supports that a court cannot use nonbinding opinions to clearly establish law in this circuit. *See, e.g., Bell*, *Salamalekis*, *Twumasi-Ankrah*, and *Yates*, *supra*.

Second, the *McCloud* court reviewed Supreme Court decisions, Sixth Circuit published,, and a trio of unpublished *Sixth Circuit*—not district court—decisions to determine that the law was clearly established. *McCloud*, 97 F.3d at 1553-55. This distinction is important. The *McCloud* court recognized that whatever precedential value, or lack thereof, accorded unpublished Sixth Circuit decisions, they reflect actual judgments *by a panel of the circuit*, which arguably gives them more force. *See id.* Contrarily, district court

16

decisions are not decided by a panel, nor did the *McCloud* court rely on district court cases in its analysis (as Plaintiffs attempt to do here).

Further, though they have the burden, Plaintiffs direct the Court to no case law saying that a nonbinding district court opinion may clearly establish law.

Plaintiffs cite to a Seventh Circuit case to support that the right to be free from exposure to mold that poses a serious risk to an incarcerated person's health or safety was clearly established in 2013. *See Bd. v. Farnham*, 394 F.3d 469 (7th Cir. 2005). But the Sixth Circuit states "out-of-circuit precedent clearly establishes rights only in 'extraordinary cases' when the out-of-circuit decisions 'both point *unmistakably* to the unconstitutionality of the conduct complained of and [are] so clearly foreshadowed by applicable direct authority *as to leave no doubt* in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.'" *Hearring v. Sliwowski*, 712 F.3d 275, 282 (6th Cir. 2013) (internal cite omitted) (emphasis added). *Farnham* falls far short of clearly establishing the right in question.

In *Farnham*, two arrestees incarcerated in a county jail brought a civil rights action against a county sheriff and jailers, alleging their rights were violated while they were incarcerated. *Farnham*, 394 F.3d at 473. They

17

claimed the jail's poor ventilation system issued a "constant flow of black fiberglass dust" and black mold into their cells. *Id.* at 473, 486. Plaintiffs asserted that defendants failed to provide humane conditions of confinement under the Eighth and Fourteenth Amendments by failing to remedy the jail's ventilation system, which caused serious medical problems in the form of constant nosebleeds, respiratory distress, and asthma attacks. *Id.* at 475.

The district court denied defendants' summary judgment motion. *Id.* The Seventh Circuit affirmed the denial of qualified immunity, reasoning that a claim for inadequate ventilation was clearly established and plaintiffs plausibly alleged a violation of their rights. *Id.* at 487.

Relying on *Farnham*, Plaintiffs say they had a clearly established right to be free from exposure to mold that poses a serious risk to an incarcerated person's health or safety.

The Court is not persuaded. As Defendants make clear, Plaintiffs cite no Supreme Court or Sixth Circuit precedent that clearly establishes a right to be free from exposure to mold. Second, though it is true that out of circuit precedent may clearly establish a right, this only applies in extraordinary cases. Plaintiffs do not make that argument.

Finally, *Farnham* is only one case, and a single case does not "point unmistakably to the unconstitutionality of the conduct complained of," nor

18

does it "so clearly foreshadow[] applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *See Hearring*, *supra*.

Plaintiffs do not meet their burden to establish a constitutionally protected right to be free from exposure to mold that poses a serious risk of harm to inmate safety, or that "every reasonable official would have understood that what he is doing violates [Plaintiffs' clearly established] right." *Mullenix*, 577 U.S. at 11. "Existing precedent [does not place] the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.

 Defendants are entitled to qualified immunity.

Defendants also argue that there are no dangerous levels of mold at WHV. They rely in large part on expert reports and the results of 2018 mold testing. These arguments are purely factual. Their impact and usefulness will depend on the outcome of discovery. Most importantly, the Court need not address this contention in order to resolve qualified immunity.

### 3. The Court **DISMISSES** Plaintiffs' claim without prejudice and allows them the opportunity to refile.

Although the Court concludes there is no clearly established constitutional right in the Sixth Circuit to be free from exposure to mold that

poses a serious risk to an incarcerated person's health or safety, mold can be actionable in a different context. The presence of mold—to the extent it contributes to inadequate and unhealthy ventilation systems in prisons—could support a claim of unsanitary prison conditions/inadequate ventilation which violates Eighth Amendment rights.

"If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test [her] claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Inadequate ventilation is a viable claim. The *Farnham* court held that "[f]or almost two decades this court, as well as other circuit courts, have continually espoused a prisoner's right to adequate ventilation." 394 F.3d at 487 (citing *Carver v. Knox County*, 887 F.2d 1287, 1293 (6th Cir. 1989); *Shelby Cnty. Jail Inmates v. Westlake*, 798 F.2d 1085, 1087 (7th Cir. 1986); *Benjamin v. Fraser*, 343 F.3d 35, 52 (2d Cir. 2003)); *Chandler v. Baird*, 926 F.2d 1057, 1065 (11th Cir. 1991). In addition, the Supreme Court has routinely held that such a right is squarely rooted in Eighth Amendment principles. *See Helling*, 509 U.S. at 34-36.

Defendants were on notice that Plaintiffs may have alleged an inadequate ventilation claim. In the amended complaint, Plaintiffs mention inadequate ventilation at least 22 separate times. *See, e.g.,* [ECF No. 73,

20

PageID,1080] ("the prison and its bunkrooms lack proper ventilation, leading to a general moist environment and dampness in most of WHV's units. . . . In particular, the facility's haphazard retrofitting, leaky roofs, inoperable windows, inadequate ventilation, and outdated HVAC systems all contribute to the mold problem at WHV."); *id.* at PageID.1106 ("Defendants have failed . . . to replace the inadequate and failing HVAC system; instead allowing vents to fill up with mold and electing to use floor fans causing the mold to circulate in the air."); *id.* at PageID.1107 ("Defendants have failed to replace the inadequate and failing air handlers, directly contributing to poor ventilation and condensation levels that encourage mold growth.").

Defendants even acknowledge the inadequate ventilation allegations in their briefing. *See* [ECF No. 152, PageID.2837] (articulating that Plaintiffs' complaint alleges failure to remedy inadequate ventilation). Since the amended complaint already alleges inadequate ventilation, Defendants are on notice of this potential claim and will not be harmed if the Court dismisses this case as pled and allows Plaintiffs to amend the complaint.

Finally, this case is not far in the litigation cycle. The vast majority of discovery remains outstanding, making dismissal without prejudice a viable option.

The Court is satisfied that the mold facts Plaintiffs already alleged can easily fold into an inadequate ventilation cause of action.

Because Plaintiffs may potentially prove entitlement to relief based on facts already alleged, the Court **DISMISSES** their complaint without prejudice and permits Plaintiffs to amend to explicitly plead inadequate ventilation.

4. <u>Plaintiffs are not required to establish that prison officials must take a "particular" action to remediate a constitutional harm.</u>

One final dispute warrants discussion. Defendants argue that even if it were clearly established that molds were dangerous enough to implicate the Eighth Amendment, it is not clearly established that prison officials need to take any particular action to remediate the presence of mold.

To the extent that Defendants may raise this same argument against a claim for inadequate ventilation, the Court addresses it now in the interest of judicial efficiency.

Defendants' argument is not well taken. First, while Defendants may be correct that it is not clearly established that officials must respond a *particular* way to unsafe mold and/or ventilation, it is clearly established that they must "respond[] reasonably." *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020).

Defendants fail to cite any authority that, in addition to proving that a right is clearly established, a plaintiff must also prove there is clearly established law specifying the *precise* response to remedy a particular constitutional violation. Such a requirement would be overly burdensome to plaintiffs across the country, unsuitable to the body of law, and unnecessary considering that there is already clearly established law requiring government officials to "respond[] reasonably." *Wilson, supra*. Further, whether Defendants responded reasonably is a question of fact for the jury and not to be decided on pleadings.

Even if Defendants are correct that Plaintiffs must present clearly established law setting forth the precise response prison officials must make to unsafe conditions, this issue is premature. Discovery is far from complete. There has been inconsequential factual development beyond the allegations in the complaint. *See Guertin*, 912 F.3d at 917 (cautioning that: (1) "when qualified immunity is asserted at the pleading stage, . . . the precise factual basis for the plaintiff's claim or claims may be hard to identify"; and (2) "Absent any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is 'obvious' or 'squarely governed' by precedent, which prevents [the court] from determining whether the facts of

23

[the] case parallel a prior decision or not for purposes of determining whether a right is clearly established."  (citation and internal quotation mark omitted)).

Defendants' argument fails.

### C.    Count II – Gross Negligence Claim

Defendants assert that Plaintiffs' gross negligence claim must be dismissed because: (1) gross negligence is not a cause of action under Michigan law; and (2) even if it was, Michigan law will not allow complaints to move forward which simultaneously allege an intentional tort and a claim for negligence.

The Court agrees that gross negligence is not a Michigan cause of action. *In re Flint Water Cases*, 384 F. Supp. 3d 802, 871 (E.D. Mich. 2019), *aff'd and remanded*, 960 F.3d 303 (6th Cir. 2020) (collecting cases). But ordinary or professional negligence is actionable. *See id.*

Defendants argue that "Plaintiffs claim gross negligence, but fail to plead either professional or ordinary negligence. . . As such, it fails to put Defendants on notice of the claims against them and . . . is grounds for dismissal." [ECF No. 152, PageID.22].

The Court is unpersuaded. If Defendants were on notice for a claim for *gross* negligence, the Court sees no reason why Defendants would not be

on notice for *ordinary* negligence, a lesser version of the same cause of action. Defendants' argument is unfounded.

The Court allows Plaintiffs to amend their complaint to plead ordinary or professional negligence.

Defendants' second argument—that Michigan law does not allow complaints that simultaneously allege an intentional tort and a claim for negligence if the underlying facts that support each claim are the same— fails because Eighth Amendment deliberate indifference is not an intentional tort. *See Rhodes*, 10 F.4th at 675 ("It is . . . fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.") (quoting *Farmer*, 511 U.S. at 836. "With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness." *Farmer*, 511 U.S. at 836.

"[D]eliberate indifference claims contain allegations of a mental state short of full intent and similar to that in negligence claims," *Lippett v. Adray*, No. 18-CV-11175, 2023 WL 3774508, at *6 (E.D. Mich. June 2, 2023) (citing *Quigley v. Thai*, 707 F.3d 675, 685-86 (6th Cir. 2013)). Accordingly, Plaintiffs

may file separate claims for deliberate indifference and negligence based on the same underlying facts.

## V. CONCLUSION

The Court:

    (1) **GRANTS** Defendants' Motion for Judgment on the Pleadings;

    (2) **DISMISSES** Plaintiffs' amended complaint; and

    (3) Allows Plaintiffs to file a second amended complaint.

Plaintiffs have until Friday, September 15, 2023 to file a second amended complaint that alleges: 1) an Eighth Amendment violation based on inadequate ventilation; and 2) ordinary or professional negligence. After receiving the second amended complaint, Defendants can answer or otherwise plead under the federal rules of civil procedure.

If Plaintiffs fail to file a timely second amended complaint, Defendants must present a proposed judgment to the Court.

    **IT IS ORDERED**.

                                s/ Victoria A. Roberts
                                Victoria A. Roberts
                                United States District Judge

Dated: 8/25/2023