1
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

2
SOUTHERN DIVISION

3

**PAULA BAILEY, ET AL.,**

4

Plaintiffs,

5
**MAG. JUDGE ELIZABETH A. STAFFORD**

v.

6
**No. 19-13442**

**HEIDI WASHINGTON, ET AL.,**

7

Defendants.

8
_____/

9
**EVIDENTIARY HEARING**
**Wednesday, October 30, 2024**

10

11
Appearances:

12
Cary S. McGehee                    Michael R. Dean
Jennifer Lord                      William Predhomme & Allan Soros

13
Pitt, McGehee, Mirer, Palmer &     Michigan Dept. of Att. General
117 W. Fourth Street, #200         P.O. Box 30217

14
Royal Oak, Michigan  48067         Lansing, MI  48909
248.398.9800                       517.335.3055

15
cmcgehee@pittlawpc.com             deanm2@michigan.gov
  On behalf of Plaintiffs              On behalf of Defendants

16

17
Rebekah L. Bailey
Nicholas Kaster, PLLP

18
80 South Eighth Street #4700
Minneapolis, MN  55402

19
612.256.3200
Bailey@nka.com

20
  On behalf of Plaintiffs

21
        _To obtain a certified transcript, contact:_
                _Timothy M. Floury, CSR-5780_

22
                _Official Court Reporter_
            _Theodore Levin United States Courthouse_

23
                _231 West Lafayette Boulevard_
                _Detroit, Michigan  48226_

24
            _(313)234-2607 · floury@transcriptorders.com_

25
  _Transcript produced using machine shorthand and CAT software._

*Evidentiary Hearing*
*Wednesday, October 30, 2024*

**I N D E X**

Defendant's Case in Chief                                    Page   Vol.

  **Richard Russell**

      Direct Examination By Mr. Dean: ............7      1

      Cross-Examination By Ms. McGehee: .........17     1

      Redirect Examination By Mr. Dean: .........71     1

      Recross-Examination By Ms. McGehee: .......83     1

      Court Examination ..........................86     1

      Redirect Examination By Mr. Dean: .........93     1

  **Latasha Bowa**

      Direct Examination By Mr. Dean: ...........96     1

      Cross-Examination By Ms. Bailey: .........123    1

      Redirect Examination By Mr. Dean: ........152    1

Defense Rests .................................154    1

Plaintiff's Case in Chief                                    Page Vol.

  **Paula Bailey**

      Direct Examination By Ms. Bailey: ........155    1

Plaintiff Rests ...............................159    1

Certification of Reporter .....................162

-   -   -

*Evidentiary Hearing*
*Wednesday, October 30, 2024*

1

2

3                    **E X H I B I T S**

4      <u>Number</u>      <u>Description</u>                    <u>Id'd</u> <u>Rcvd</u> <u>Vol</u>.

5   *** All Exhibits Admitted Via Previous Order ***

6                          -   -   -

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Evidentiary Hearing*
*Wednesday, October 30, 2024*

*Page 4*

|    |                                                              |
|----|--------------------------------------------------------------|
| 1  | Detroit, Michigan                                            |
| 2  | Wednesday, October 30, 2024                                  |
| 3  | 10:21 a.m.                                                   |
| 4  | -   -   -                                                    |
| 5  | **THE CLERK:**  All rise.                                    |
| 6  | The United States District Court for the Eastern            |
| 7  | District of Michigan is now in session.  The Honorable      |
| 8  | Mag. Judge Elizabeth A. Stafford presiding.                 |
| 9  | You may be seated.                                           |
| 10 | Court calls Case No. 19-13442, Paula Bailey, et al.         |
| 11 | vs. Michigan Department of Corrections, et al.               |
| 12 | Counsel, make your appearances, please.                     |
| 13 | **MS. McGEHEE:**  Good afternoon, your Honor.  Cary         |
| 14 | McGehee appearing on behalf of plaintiffs.                  |
| 15 | **MS. BAILEY:**  Good morning, your Honor.  Rebekah         |
| 16 | Bailey from Nichols Kaster on behalf of the plaintiff.      |
| 17 | **MS. LORD:**  Good afternoon, your Honor.  Jennifer Lord   |
| 18 | on behalf of the plaintiff.                                 |
| 19 | **THE COURT:**  Good morning to all of you.                 |
| 20 | **MR. DEAN:**  Good morning, your Honor.  Michael Dean on   |
| 21 | behalf of the MDOC defendants.                              |
| 22 | **MR. PREDHOMME:**  Good morning.  William Predhomme on     |
| 23 | behalf of the MDOC defendants.                              |
| 24 | **MR. SOROS:**  Good morning, your Honor.  Allan Soros      |
| 25 | also on behalf of the MDOC defendants.                      |

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Evidentiary Hearing*
*Wednesday, October 30, 2024*

Page 5

1      **THE COURT:**  Good morning to all of you as well.

2      We are here for the evidentiary hearing/bench trial

3  on the issues of exhaustion, and before we start calling

4  witnesses, is there anything that needs to be addressed?

5      **MS. McGEHEE:**  Your Honor, our clients, Ms. Clark,

6  Ms. Zentz, were in a holding cell, but we didn't have a chance

7  to meet with them before and we would just ask that after the

8  defendant rests their case, before we start ours, that we have

9  an opportunity to meet with them.

10      **THE COURT:**  And what sort of time are you talking

11  about?

12      **MS. McGEHEE:**  Probably under 30 minutes.

13      **THE COURT:**  Okay.  Let's see how things go, and we'll

14  assess the time when we get there.

15      **MS. McGEHEE:**  Thank you.

16      **THE COURT:**  Anything on your side, Mr. Dean?

17      **MR. DEAN:**  No issues from us just before we start.

18      **THE COURT:**  All right.  Who are you calling as your

19  first witness?

20      **MR. DEAN:**  Richard Russell.

21      **THE COURT:**  All right.  You can go ahead and call

22  him.

23      **MS. McGEHEE:**  Your Honor, I'm just wondering

24  logistically whether there's a way -- I'm not sure if this is

25  possible -- for us to adjustment the lectern so we can see the

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Direct*
*Wednesday, October 30, 2024*

Page 6

1   witness, because I can't see him.

2           **THE COURT:**  Mr. Dean, I don't know whether you can

3   pull the lectern.  It is movable.

4           **MR. DEAN:**  Yeah, there is a limit to how far the cord

5   can go, so I'd have to move it this way to create more angle.

6           **THE COURT:**  Is there a problem with moving it that

7   way?

8           **MS. McGEHEE:**  I mean, you can plug it in here, your

9   computer.

10          **MR. DEAN:**  Yeah, I just don't know how far this is

11  going to go.

12          **THE COURT:**  Can you pull it that way?

13          **MR. DEAN:**  Which way?

14          **THE COURT:**  The way that you said.

15          **MR. DEAN:**  Yeah.

16          **THE COURT:**  Okay.  I don't want you in his lap now.

17          **MR. DEAN:**  What's that?

18          **THE COURT:**  I said I don't want you in his lap.

19          All right.  You can go ahead and swear the witness.

20                       RICHARD RUSSELL,

21          at 10:26 a.m., being first duly sworn by the

22          Court to tell the truth, was examined and

23          testified upon his oath as follows:

24

25

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Direct*
*Wednesday, October 30, 2024*

Page 7

DIRECT EXAMINATION

**BY MR. DEAN:**

**Q.**   Good morning, Mr. Russell.

Could you state your full name for the record?

**A.**   Richard Dennis Russell.

**Q.**   And what -- where are you currently employed?

**A.**   I'm employed by the Michigan Department of Corrections in the office of Legal Affairs.  I hold the position of hearings administrator and grievance section administrator.

**Q.**   And what are your duties as far as that job title?

**A.**   As far as the hearings administrator, I hear appeals from wardens or prisoners on Class 1 misconducts if they have questions of due process issues.

The grievance, I'm the -- represent the third step in the grievance process and represent the director in that regard with responding to -- to grievances that the prisoners have brought up through Steps 1 and Step 2 through Step 3.

**Q.**   Okay.  Can you briefly describe that through -- or the grievance process?  What is it designed to do?

**A.**   Well, it's designed so that the prisoner has access at the lowest level, the facility level, to try and resolve their issue at that level.  They file a grievance form with the grievance coordinator at the local facility and then that's reviewed and they are given a response to that.  If they don't agree with the response, then they have the ability to appeal

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Direct*
*Wednesday, October 30, 2024*

Page 8

1  that to the second step, and the second step then is the

2  warden, the warden's office.  So the warden, then, responds to

3  the second step grievances.  And, if again, the prisoner

4  doesn't agree with the decision, then the prisoner has the

5  ability to file directly to the -- to the central office.

6  **Q.**  And where is the central office at?

7  **A.**  It's located on the corner of Grand and Michigan Avenue in

8  downtown Lansing.

9  **Q.**  Lansing?

10  **A.**  Yes.

11  **Q.**  Okay.  Is this formalized, is this procedure formalized in

12  any kind of policy document or other document by the MDOC?

13  **A.**  Yes.  It's PDO 302130, and prisoner/parolee grievances is

14  the title.  There's a corresponding operating procedure as

15  well.

16  **Q.**  Okay.  In front of you there's a three-ring notebook, and

17  in it are tabs, alphabetical tabs.  Could you turn to the tab

18  that's the letter "I."

19        And do you recognize this document?

20  **A.**  Yes.  This is the -- the policy directive that I

21  referenced that was with the effective date of 3/18/2019.

22        **MR. DEAN:**  Your Honor, I just want to make sure if

23  you also have that three-ring binder.

24        **THE COURT:**  I do.  And based upon a previous order,

25  all the exhibits are admitted, given note that no objections

*Richard Russell - Direct*
*Wednesday, October 30, 2024*

Page 9

1   were filed in advance of this hearing.

2           **MR. DEAN:**  Okay great.  Thank you.

3   BY MR. DEAN:

4   **Q.**   You mentioned a moment ago the effective date for this.

5   What does that indicate to you?

6   **A.**   As I understand it, this is the policy that was in effect

7   at the time that the issue was raised, the issues of the

8   lawsuit occurred.

9   **Q.**   Well, actually, more specific --

10          **THE COURT:**  Your voice is very, very soft and it's

11  trailing off sometimes at the end.

12  BY MR. DEAN:

13  **Q.**   Try it again.

14  **A.**   Okay.  That date represents to me the policy that was --

15  that I understand to be in effect at the time that the issue

16  was raised.

17  **Q.**   Well, more specifically, is that the date that whatever is

18  contained in this document was effectively the policy in place

19  for the MDOC?

20  **A.**   That's correct.

21  **Q.**   And does that imply -- does that mean there were previous

22  editions of this policy directive?

23  **A.**   It does.  And this was, in fact, until the next revision.

24  **Q.**   Do you recall when the next one was revised?

25  **A.**   Not exactly.  I believe it may be 2021 or 2022.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Direct*
*Wednesday, October 30, 2024*

Page 10

**Q.**   Okay.  When you say "changes," does that mean the --
everything in the document is changed or certain things?
Language in it is changed from edition to edition?

**A.**   Generally, over time there is a need to -- to modify
language to clarify to staff and to prisoners what's the
intent -- what the intent of the policy is.  Nothing really
substantial in terms of the overall direction of the policy has
changed, but those minor changes are made --

**Q.**   Okay.

**A.**   -- periodically.

**Q.**   There's a line on that first page that says, "supersedes"
and it has the policy directive and a date, July 9th, 2007.  Is
it my understanding that that was the previous time that a
version of this policy directive was made?

**A.**   That's correct.

**Q.**   And this is the policy that directs the grievance policy
or how the MDOC handles grievances?

**A.**   Yes, it is.

**Q.**   Okay.  The first section is a policy and it's on that
first page, and it talks about definitions.  I'd like you to
look at paragraph C.  What does that paragraph entail as far as
this policy directive?

**A.**   Basically it states that -- that this process is developed
and the policy serves to exhaust the prisoner's administrative
remedies when the -- when grievances are filed through all

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Direct*
*Wednesday, October 30, 2024*

*Page 11*

1  three steps of the grievance process according to how the

2  process -- how the process is laid out in policy.

3  **Q.**   Okay.

4              **THE COURT:**  Mr. Dean?

5          **MR. DEAN:**  Yes.

6              **THE COURT:**  I will say that I want you to make your

7  case any way you want, but this is not a jury trial with jurors

8  who are completely unaware of the policy directive and what it

9  stands for --

10          **MR. DEAN:**  Yes.

11              **THE COURT:**  -- so --

12          **MR. DEAN:**  Understood.

13              **THE COURT:**  -- I don't know whether the minutia

14  detail is important.

15          **MR. DEAN:**  There's actually only about four or five

16  things that I'm going to go through.

17              **THE COURT:**  Okay.

18          **MR. DEAN:**  We're not going to work through the entire

19  policy, I just want a clear place in the record that we can

20  refer to.  So I apologize, and this will not be a --

21              **THE COURT:**  No, no need to apologize, I just wanted

22  to suggest.

23          **MR. DEAN:**  This will not be a long witness from our

24  end.

25              **THE COURT:**  Thank you.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

1  **BY MR. DEAN:**

2  **Q.**   In fact, that paragraph C says only when filed as a

3  grievance through all three steps of the grievance process in

4  compliance with the policy is it considered grieved or

5  exhausted.

6  **A.**   That's correct.

7  **Q.**   Okay.  If you'll flip to the next page, paragraph I

8  indicates that a grievant whose grievance is rejected, may

9  appeal the rejection to the next step.  Is that your

10  understanding of the policy?

11  **A.**   Yes.

12  **Q.**   It also states that a new grievance shall not be filed

13  regarding the rejection, correct?

14  **A.**   That's correct.

15  **Q.**   Okay.  And right before paragraph J there lists a number

16  of reasons for rejection of a grievance under paragraph J.

17  Specifically I just want you to confirm, No. 1, what is a

18  possible reason for rejection of a grievance under that

19  paragraph?

20  **A.**   If it's illegible, in other words, we can't read the

21  writing that the prisoner's provided.  If it is vague in the

22  sense that it doesn't provide who, what, when, how and why in

23  the grievance and it -- or there may be multiple unrelated

24  issues.

25  **Q.**   Okay.  And in paragraph 5, another reason a grievance may

*Richard Russell – Direct*
*Wednesday, October 30, 2024*

Page 13

1  be rejected is for what reason?

2  **A.**   If it's filed untimely.

3  **Q.**   Okay.  So untimely grievance means each step of the

4  grievance has certain time periods associated with it?

5  **A.**   That's correct.  At Step 1, There's actually a pre-step

6  that would require the prisoner to try and resolve the issue,

7  and there's a two-day window for that to happen.

8  **Q.**   Okay.

9  **A.**   From that point, the prisoner then, if they file a

10  grievance, they have five days from that period of time, five

11  business days, to file the grievance.

12  **Q.**   Okay.  And if you'll skip to page 4 of that, and I'm

13  looking specifically at paragraph S.

14          **THE COURT:**  Isn't that 4?

15          **MR. DEAN:**  Should be page 4 of 8.

16          **THE COURT:**  Oh, I see.

17          **MR. DEAN:**  At the top it's Page ID No. 605, if that

18  helps.

19          **THE COURT:**  And I would like, if there's a Page ID

20  number, that's the most helpful.

21          **MR. DEAN:**  Sure.  Thank you.

22  **BY MR. DEAN:**

23  **Q.**   Paragraph S talks about the requirement of what has to go

24  into a Step 1, and I think you just mentioned the who, what,

25  when, where, why and how.  Is that information that is required

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Direct*
*Wednesday, October 30, 2024*

*Page 14*

1   for a Step 1 grievance to be not rejected?

2   **A.**   That's correct.

3   **Q.**   Okay.  And paragraph T, can you tell us when a grievance

4   or a step is considered to be filed on, which date it's

5   considered to be filed on?

6   **A.**   On the date received by the department.

7   **Q.**   Okay.  So if it doesn't have an indicator that the

8   department has signed off on or put a date stamp on it, the

9   department does not consider that grievance as filed at that

10  time?

11  **A.**   That's correct.

12  **Q.**   Okay.  Paragraph W -- and I'm not going to walk all the

13  way through, but that contains the requirements for a Step 1

14  grievance.  And that's on Page ID 606 and page 5 of 8 in the

15  policy directive?

16  **A.**   That's correct.

17  **Q.**   Okay.  It gives the time frames that a prisoner has to

18  file this Step 1?

19  **A.**   That's correct.

20  **Q.**   Okay.  And moving down to the next page, Page ID 607

21  contains the requirements for a Step 2 grievance, correct?

22  **A.**   That's correct.

23  **Q.**   Okay.  And that's handled at the facility level?

24  **A.**   Yes.

25  **Q.**   Okay.  And who is responsible for providing all of the

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Direct*
*Wednesday, October 30, 2024*

Page 15

1    documents for a -- an appeal of a Step 1 to Step 2?  Is it the

2    facility or the prisoner?

3    **A.**   The prisoner, basically, they need to provide a copy of

4    their Step 1 grievance, their Step 1 response and any papers

5    they choose to provide as clarification or description of the

6    issue.

7    **Q.**   So that's in the control of the prisoner.  They gather the

8    materials and say, I want to file a Step 2 grievance and fill

9    out the paperwork?

10   **A.**   That's correct.

11   **Q.**   Okay.  And moving down to Page ID 608, and it's page 7 of

12   8 of the policy directive.  And I'm looking specifically at

13   paragraph HH.

14           This is the process for a Step 3 grievance, correct?

15   **A.**   Yes, it is.

16   **Q.**   And your office in Lansing handles Step 3 grievances,

17   correct?

18   **A.**   That's correct.

19   **Q.**   And what happens when a grievance comes in?  Does it come

20   in by mail or is it personally delivered?

21   **A.**   It's required to be either sent by intra-department mail

22   or -- or by U.S. Mail.  Intra-department mail means there are a

23   number of mail runs among certain facilities that are constant,

24   and they may be dropped off by that mail run or may go into

25   that mail run.

    *19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Direct*
*Wednesday, October 30, 2024*

Page 16

1  **Q.**   Okay.  And who is actually mailing that to central office?

2  Is it the facility or the prisoner?

3  **A.**   Well, the prisoner puts it into a mailbox at the facility

4  and then the facility, you know, collects the mail and sends it

5  out.

6  **Q.**   And is it your understanding that the prisoner gathers the

7  documents that they want contained in the Step 3 appeal and

8  they are in charge of mailing it to the facility or the central

9  office?

10  **A.**   Yes.  They are required to do that under policy.

11          **MR. DEAN:**  That's all I have.  Thank you.

12          **MS. McGEHEE:**  Give me one moment, your Honor.

13          **THE COURT:**  Sure.

14          **MS. McGEHEE:**  Mind if I close that?

15          If I may your Honor, may I approach the witness?

16          **THE COURT:**  You may.

17          **MS. McGEHEE:**  I'm going to provide you with --

18          **MR. DEAN:**  Cary, is that the plaintiffs' exhibits?

19          **MS. McGEHEE:**  Yes.

20          **MR. DEAN:**  We have a folder with your exhibits

21  already up there if you -- you can give that back to me and use

22  yours; that's fine.

23          **MS. McGEHEE:**  That's fine.  Why don't we use ours.

24          Your Honor, you also have one with you?

25          **THE COURT:**  I do, thank you.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

*Page 17*

1        **MS. McGEHEE:**  Okay.  Thank you.

2                          -   -   -

3                                              (10:41 a.m.)

4                        **CROSS-EXAMINATION**

5    BY MS. McGEHEE:

6    **Q.**   Good morning, Mr. Russell?

7    **A.**   Morning.

8    **Q.**   My name is Cary McGehee and I represent the plaintiffs in

9    this case.

10           Have you ever met Ms. Clark?

11   **A.**   No.

12   **Q.**   Krystal Clark?

13   **A.**   No.

14   **Q.**   Have you met Ms. Hope Zentz?

15   **A.**   No.

16   **Q.**   Have you ever met his Paula Bailey?

17   **A.**   No.

18   **Q.**   They're the plaintiffs in this case and have filed a

19   lawsuit against the Michigan Department of Corrections

20   officials associated with health conditions that they suffered

21   as a result of poor ventilation system.  Are you aware of that?

22   **A.**   I'm not aware of the particular case details, no.

23   **Q.**   Have you bothered to read the lawsuit that was filed in

24   this action?

25   **A.**   No.

    *19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 18

1        THE COURT:  Again, we're going to need you to speak

2   up.

3        THE WITNESS:  No, I have not read the lawsuit.

4   BY MS. McGEHEE:

5   Q.   Okay.  Well, as you're aware, the purpose of a grievance,

6   the process that you just spoke about, was to give a prisoner

7   an opportunity to identify issues that need to be corrected and

8   give the prison notice so that they can take appropriate

9   corrective action to prevent litigation; isn't that correct?

10  A.   That's -- that's correct.

11  Q.   And --

12  A.   Not just to prevent litigation, but to provide solution

13  for the prisoners.

14  Q.   To provide meaningful solutions for the prisoners so they

15  don't have to come here in court to get justice, right?

16  A.   That's correct.

17  Q.   That's right.

18        And you've been with the department the corrections

19  for many, many years, haven't you?

20  A.   I have.

21  Q.   How many?

22  A.   I started in 1985.

23  Q.   And you currently held your position as hearings

24  administrator and grievance section manager for how long?

25  A.   The grievance section manager, that position I took over

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 19

1    in 2009, and the hearings administrator position I added to my

2    responsibilities in 2011.

3    **Q.**   Okay.  And as part of that responsibility, you're

4    responsible for reviewing and revising the grievance policy,

5    correct?

6    **A.**   That's correct.

7    **Q.**   Okay.  And Mr. Dean just went through the grievance policy

8    with you.  It was marked, I believe, as -- hold on one

9    second -- as Exhibit I to defendants' exhibits, correct?

10   **A.**   I believe.

11   **Q.**   We've also marked it as Exhibit 31 to plaintiffs'

12   exhibits.

13         And so this policy that you were talking about is --

14   it says it was dated effective March 18, 2019, correct?

15   **A.**   That's correct.

16   **Q.**   Okay.  Did you write this?

17   **A.**   Not myself, no.  I -- you know, yes, I'm responsible for

18   the oversight of updating the policy.  Policy was written long

19   before I took on the position, and during my tenure, I've been

20   the responsible party to lead a team and be a subject matter

21   expert in revising the policy.

22   **Q.**   Okay.  So one of your jobs is to read this very carefully,

23   I assume, and make sure that it's clear as to what a prisoner

24   needs to do in order to exhaust their administrative remedies,

25   correct?

    *19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

*Page 20*

**A.**    That, along with the operating procedure, that's correct.

**Q.**    Okay.  And you want to make sure you do that because you want to be fair to the prisoner to give them the opportunity to have their issue heard and corrective action taken if necessary, correct?

**A.**    That's correct.

**Q.**    Okay.  So you want to make sure, I assume that when you review this, that if there's some ambiguities or anything like that, that you want to clarify that so the prisoner doesn't get confused, right?

**A.**    We try to do that, yes.

**Q.**    Okay.  And you understand prisoners sometimes -- some are very educated, some or not, right?  So you have various different education levels, right?

**A.**    Yes, I understand that.

**Q.**    And so you want to make sure that this is clear enough so that an ordinary prisoner could discern and navigate the process, correct?

**A.**    Yes.

**Q.**    Okay.  Were you aware -- do you remember back some time ago there was a class action lawsuit filed against the Michigan Department of Corrections on behalf of a class of juveniles who were placed in housing units with adults and raped?  Do you remember that case?

**A.**    Yes, I remember it.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 21

1  **Q.**   Yeah, you probably do remember that case, because one of

2  the big issues in that case was the grievance policy that

3  Michigan Department of Corrections required these prisoners to

4  follow in order to exhaust their administrative remedies.  You

5  remember that, don't you?

6  **A.**   I don't remember the particulars of the case, no.

7  **Q.**   Okay.  Do you remember a Sixth Circuit decision that came

8  down finding by our Court of Appeals, that that policy was

9  Orwellian doublethink and did not make an available remedy

10  because no ordinary prisoner could discern or navigate the

11  process?  Do you remember that decision?

12        **MR. DEAN:**  Object to foundation.  He is not an

13  attorney and this is beyond the scope of what we've been

14  discussing.

15        **THE COURT:**  I am actually wondering the relevance.

16        **MS. McGEHEE:**  Well, we're going into this grievance

17  process, your Honor, and I'm asking him, the person who's

18  responsible for reviewing and revising it, his understanding of

19  how it is interpreted and whether it's discernible to an

20  ordinary prisoner.

21        **THE COURT:**  My concern is that those are court

22  opinions that I'm already familiar with --

23        **MS. McGEHEE:**  Right.

24        **THE COURT:**  -- by the way, and I don't know whether

25  this is a witness to talk about the legal holdings of the Sixth

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

Page 22

1   Circuit.

2           **MS. McGEHEE:**  Uh-huh.

3           **THE COURT:**  And I also am not -- I believe the case

4   you're talking about was talking about the PREA policies, and I

5   don't know what relevance that has to the decisions I have to

6   make here, and so I am going to ask that the questions be

7   related to the decisions that we have to make here.

8           **MS. McGEHEE:**  Thank you, your Honor.  I'll move on.

9   **BY MS. McGEHEE:**

10  **Q.**   How many times, Mr. Russell, have you testified in court

11  regarding the grievance policy?

12  **A.**   I can't tell you exactly; between a half a dozen and a

13  dozen times.

14  **Q.**   How many depositions have you given regarding the

15  grievance policy?

16  **A.**   Again, I can't tell you exact number; probably less than a

17  half a dozen times.

18  **Q.**   Okay.  Let's look at the grievance policy.  If you want to

19  turn to Plaintiffs' Exhibit 31.

20          And if you want to take that out.  It might be a

21  little bit more manageable for you, but it's up to you.

22  **A.**   It's fine.

23  **Q.**   Okay.  So if you would turn to page 4 of 8, paragraph T.

24  **A.**   I'm there.

25  **Q.**   Okay.  And so this particular paragraph states -- and I'll

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

Page 23

1  just read it -- "Grievances and grievances -- grievance appeals

2  at all steps shall be considered filed on the date received by

3  the department.  All grievances and appeals shall be date

4  stamped upon receipt."

5        Did I read that right?

6  **A.**   That's correct.

7  **Q.**   "Time frames for responding to grievances are set forth in

8  the policy directive."

9        Did I read that correctly?

10 **A.**   That's correct.

11 **Q.**   Okay.  So according to is this policy, in order for an

12 appeal to be timely, it has to be not only sent, but it has to

13 be received by the department and has to be timestamped.

14 **A.**   That's correct.

15 **Q.**   Within that 10 days, if it's a Step 2, right?

16 **A.**   That's correct.

17 **Q.**   Okay.

18 **A.**   Unless there are other circumstances.

19 **Q.**   Okay.  And so if you would turn to pages 5 of 8 going to

20 Step 1, paragraph W.

21 **A.**   Yes.

22 **Q.**   This one says, "Within five business days after attempting

23 to resolve a grievance issue with staff, a grievant wishing to

24 advance a grievance must send a completed prisoner/parolee

25 grievance form (CSJ-247A) to the Step 1 grievance coordinator

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

*Page 24*

1  designated for the facility or other office being grieved."

2          That's what -- did I read that right?

3  **A.**   Yes, you did.

4  **Q.**   So this one -- this paragraph says the prisoner has to

5  send it within five-days, but paragraph T says it's got to be

6  filed, received and stamped.

7  **A.**   That's correct.

8  **Q.**   Different.

9          Let's go to paragraph D, Double D.

10  **A.**   Yes.

11  **Q.**   Reading this, "A grievant" -- this is regarding Step 2,

12  right?

13  **A.**   Yes, it is.

14  **Q.**   It says, "A grievant may file a Step 2 grievance if he or

15  she is dissatisfied with the response received at Step 1 or if

16  she didn't receive a timely response."

17          So let me just move on.

18          "To file a Step 2 grievance, The grievance must

19  request a prisoner/parolee grievance appeal (CSJ-247B) from

20  Step 1 grievance coordinator, and send the completed form to

21  the Step 2 Grievance Coordinator designated for the facility,

22  field house or other office being grieved within 10 days after

23  receiving the Step 1 response, or if no response was received,

24  within 10 business days after the date the response was due."

25          Did I read that right?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

*Page 25*

1  **A.**   Yes.

2  **Q.**   So that one says send, right?

3  **A.**   Yes.

4  **Q.**   Send within 10 business days, right?

5  **A.**   Yes, it does.

6  **Q.**   Okay.  Now, let's go to paragraph HH, Step 3 on page 7

7  of 8.

8          "A grievant may file a Step 3 grievance if he or she

9  is dissatisfied with Step 2 response or does not receive a

10  timely response.  To file a Step 3 grievance, the grievant must

11  send a completed prisoner parole grievance appeal form

12  (CSJ-247B) to the grievance section within ten business days

13  after receiving the Step 2 response, or if no response was

14  received, within 10 business days after the date the response

15  was due, including any extensions."

16          Did I read that right?

17  **A.**   Yes.

18  **Q.**   Okay.  Again, send.

19          Okay.  Let's go to section "U."

20          This reads -- and this has to do with, generally, the

21  grievance process, correct, pages 4 of 8?

22  **A.**   I'm sorry, on the wrong page here.

23  **Q.**   Paragraph U.

24  **A.**   I'm sorry, we're moving backwards?

25  **Q.**   Yep.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 26

**A.**   Yes, I'm there now.

**Q.**   So this days, "If a grievant chooses to pursue a grievance that he --" I'm sorry -- "that has not been responded to by staff within required time frames, including any extension granted, the grievant may, for the grievance to the next step of the grievance process within 10 business days after the response deadline expired, including any extensions that have been granted."

Did I read that right?

**A.**   Yes, you did.

**Q.**   So this says "may," "The grievant may move forward with the grievance in the next step within 10 days," right?  Says "may," correct?

**A.**   It says that because prisoners are not required to file the next step.

**Q.**   Well, that's an interesting interpretation.

Let's talk about mail.  Okay?

**A.**   Not my area.

**Q.**   Pardon me?

**A.**   That's not my area.

**Q.**   Not your area.  Okay.

**THE COURT:**  Why don't you wait until you hear the question before you address whether you can answer it.

**THE WITNESS:**  Yes, your Honor.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 27

**BY MS. McGEHEE:**

**Q.**   So, it's interesting you say that, sir, "mail," and you say "it's not my area."  Okay?  But mail, in the processing of a grievance, is an integral issue as it relates to the grievance process, isn't it?

**A.**   Yes.

**Q.**   So it would be probably a good idea, as a person in charge of reviewing and revising the grievance process, that you understand the mail process at a facility.

So let's just see what you know about the mail process at Washtenaw and Huron Valley Correctional Facility. Have you ever been to that facility?

**A.**   Probably.

**Q.**   Ever talk to anybody, the warden or anybody about, hey, how does this mail work?

**A.**   No.

**Q.**   Okay.  So the prisoner gets a grievance form, right?

**A.**   Yes.

**Q.**   Okay.  And then they fill that out.  And according -- according to your policy, they're supposed to send it -- right? -- to the grievance coordinator?

**A.**   That's correct.

**Q.**   Okay.  And it's correct to say, they can't hand it to the grievance coordinator; that's not permitted.  It has to go through the mail process, doesn't it?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

1 **A.**   Depends on what you call a mail process.

2 **Q.**   Well --

3 **A.**   It goes into a collection box, one of many that are posted

4 around the facility.

5 **Q.**   So you do know that much?

6 **A.**   I do know that much.

7 **Q.**   That there's a mail slot that these women at the Huron

8 Valley Correctional Facility could put their mail in and it

9 would include putting their grievance in, which, at the first

10 step they got five days -- five days for that to be sent --

11 according to one of the provisions, or according to another

12 provision, they got five days for it to be sent, received and

13 timestamped, depending on how you interpret it.  Okay?  But at

14 any rate, let's just say it has to be sent.  Okay?

15        They put it in the mail -- right? -- the mail slot.

16 Okay?  Do you know what else goes in that mail slot at Huron

17 Valley Correctional Facility?

18 **A.**   I have no idea.

19 **Q.**   Okay.  Well, let me just see if this refreshes your

20 memory, maybe.  Kites -- do you know what a kite is?

21 **A.**   Yes, I know what a kite is.

22 **Q.**   Can you explain to us what a kite is?

23 **A.**   It's a request for some accommodation that the prisoner

24 wants.

25 **Q.**   Okay.  This is a way that prisoners can also alert prison

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 29

1   officials about issues that they're having, correct?

2   **A.**   Correct.

3   **Q.**   Kites are pretty common, right?

4   **A.**   They are.

5   **Q.**   Right.  So this is one place that goes in that mail slot

6   is kites.

7   **A.**   I don't know that --

8   **Q.**   Okay.

9   **A.**   -- in fact whether it's a separate box or the same.

10  **Q.**   Okay.  You don't know?

11  **A.**   No.

12  **Q.**   But your policy really relies on mail and timing

13  associated with mail.  That's interesting to me.

14          So -- okay.  So, then, also, did you know that in

15  that mail slot that these women are supposed to put their

16  grievance, also regular U.S. Mail goes in there.  Did you know

17  that?

18  **A.**   No.

19  **Q.**   Okay.  And so we have kites, U.S. Mail, grievances, and

20  this goes in --

21          **MR. DEAN:**  Object to foundation.  She's putting facts

22  in evidence that the witness.

23          **THE COURT:**  Overruled.  Overruled.  We have -- the

24  issue is whether Mr. Russell understands how grievance mail is

25  processed and what would interfere with it being sent, received

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

Page 30

1  and timestamped and so I'm going to permit the questioning.

2        **MS. McGEHEE:**  Thank you, your Honor.

3  BY MS. McGEHEE:

4  **Q.**   Do you know what happens when it goes in the mail?  Do you

5  know who sorts it at the Washtenaw Huron Valley Correctional

6  Facility?

7  **A.**   I have no idea.

8  **Q.**   Do you know how many staff members are responsible for

9  going through that mail?

10  **A.**   No.

11  **Q.**   Do you know, and I bet you do know, that when they go

12  through the mail, they're responsible for reading some of that

13  mail, aren't they?

14  **A.**   I don't know what their responsibilities are.

15  **Q.**   Do you know whether they're supposed to also check for

16  contraband?

17  **A.**   I imagine they are, but I don't know their -- who does

18  what.

19  **Q.**   Right.  All part of the process of sorting mail and

20  processing mail; you're not sure what that process is.

21  **A.**   Correct.

22  **Q.**   But, according to policy, "T," got to put it in the mail.

23  It's got to get to the department.  It's got to be timestamped

24  within five days, or if it's Step 2, got to be within 10 days.

25  **A.**   Business days, yes.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

*Page 31*

**Q.** Right.  And so, then, once the grievance comes -- is responded to by the grievance coordinator.  Goes to the grievance coordinator first, right?

**A.** They don't respond to it.  They channel it to whoever it is that needs to respond to the issue.

**Q.** Well --

**A.** So they log it in, they enter it in their database system, which automatically generates a notice to the prisoner that it's been received, and then they forward it to whoever, you know, needs to answer the merits.

**Q.** That's -- that's a merits response, right?

**A.** That's correct.

**Q.** You've just told us a merits response.  But if the grievance coordinator determines that it should be rejected, he or she has the authority to do that, right?

**A.** Yes, because that's a technical issue; it's not being responded to on the merits.

**Q.** And if --

**A.** It's rejected because it doesn't comply with policy.

**Q.** Right.  And so if it's rejected, then the grievance coordinator makes that decision and there's no processing, no investigation, no interview, no determination of the merits; is that correct?

**A.** That's correct.

**Q.** Thank you.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

Page 32

1    And, then, so let's just say in the situation where

2 it's rejected by the grievance coordinator, then the grievance

3 coordinator then sends the response to the prisoner through the

4 mail, right?

5 **A.**   That's correct.

6 **Q.**   Okay.  And then the prisoner gets that and they're

7 responsible for responding -- appealing within 10 days of the

8 date that the grievance coordinator rejected their grievance,

9 right?

10 **A.**   No.  It's from the date they receive the --

11 **Q.**   Okay.  So the date they receive, they have 10 days.  And

12 then --

13 **A.**   Ten business days.

14 **Q.**   Ten business days.  Thank you.

15    **THE COURT:**  Can we look at the language?  I just want

16 to see the language.

17    **MS. McGEHEE:**  Sure.  I'm talking about the process,

18 Step 2, and so it's on page 6 of 8, starting at DD.

19    **THE WITNESS:**  I'm there.

20    **THE COURT:**  I have a question for Mr. Russell.

21    Mr. Russell?

22    **THE WITNESS:**  Yes.

23    **THE COURT:**  It says, if no response was received

24 wherein 10 days after the date that the response was due, how

25 do you -- how would someone know when that 10 days started if

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 33

1  they don't know when their grievance was received by?

2  **THE WITNESS:**  They get notice of when it's received.

3  It's on the slip that's sent to them out of the computer that

4  says it was received on such-and-such date.

5  **THE COURT:**  Okay.  Thank you.

6  **THE WITNESS:**  Uh-huh.

7  **BY MS. McGEHEE:**

8  **Q.**  Well, that's if they get a response, right?

9  **A.**  That's correct.

10  **Q.**  But the fact of the matter is, under your grievance

11  policy, the Michigan Department of Corrections doesn't have to

12  respond, do they?

13  **A.**  They are required to respond.  It doesn't always happen

14  within that 10-day period.

15  **Q.**  Oh.  But if they don't respond within the 10-day period,

16  the prisoner is still responsible for appealing within ten days

17  of when they should have gotten a response that they didn't get

18  a response; is that correct?

19  **A.**  They should know by policy that it's -- that it's due

20  within ten days of the date that they filed it.

21  **Q.**  Okay.

22  **A.**  Business days.

23  **MS. McGEHEE:**  And so they --

24  **THE COURT:**  No, 10 days after it was received.

25  **THE WITNESS:**  Pardon?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 34

1          **THE COURT:**  The policy says it's 10 days after it was

2    received by the department.

3          **THE WITNESS:**  It says if it's 10 days after -- from

4    the date received; or if it's not received, within 10 days then

5    they get to file.

6          **THE COURT:**  No, it says 10 days.

7          **THE WITNESS:**  Where exactly are we talking about?

8          **THE COURT:**  Step 2, paragraph DD, it says, "Within 10

9    days after the date the response was due," and what I'm trying

10   to figure out is if the MDOC, if the department does not notify

11   the prisoner, we've received this grievance, how they're

12   supposed to know when to start counting.

13         **THE WITNESS:**  Because the Step 1, on the response

14   form it tells them, gives them a date when it's due, when the

15   response is due.  They can count from that response date to --

16         **THE COURT:**  Okay.  I'm going to tell you what I'm

17   confused about.  I'm not going to keep going, but -- so that

18   Mr. Dean or, you know, you can address what I'm confused about,

19   is that under the policy, it's received after -- when it's --

20   when it's received, is when that 10-day clock starts, is my

21   understanding.  Is that accurate?

22         **THE WITNESS:**  Yes.  If they've received one, yes,

23   correct.

24         **THE COURT:**  So if the prisoner put it in the mail and

25   it's received on a date the prisoner doesn't know, then how is

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 35

1 the prisoner supposed to know when to start counting?

2          So if the department does not respond, how is the

3 prisoner supposed to know when to start counting based upon the

4 sentence that says, if you don't receive it, then you must file

5 your Step 2 appeal?

6          **THE WITNESS:**  The policy says that they are to expect

7 a response within, I think it's 15 business days of the --

8 filing their grievance.

9          **THE COURT:**  And can you point me to the language in

10 the policy directive that provides that guidance?

11          **THE WITNESS:**  It's paragraph T of the policy.  It's

12 on page 4 of 8, reference page 605 correctly.  I'm sorry,

13 that's -- I'm sorry, that's for an extension.

14          It's paragraph Z, which is on page 606, or 5 of 8.

15 It says Step 1 grievance shall be responded to within 15

16 business days after receipt of the grievance unless an

17 extension is granted.

18          **THE COURT:**  And, again, the prisoner may not know

19 when the grievance was received.

20          **THE WITNESS:**  Yes, they -- no, they do know, because

21 they get an automatically-generated notice from the database

22 that we have received it and the date that we've received it on

23 and when it's due, when the response is due.

24          **THE COURT:**  You can go ahead.

25

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

*Page 36*

1  BY MS. McGEHEE:

2  **Q.**   Okay.  So looking at Z, it says, "A Step 1 grievance shall

3  be responded to within 15 business days after receipt of the

4  grievance."  That's a "shall," right?

5  **A.**   Yes.

6  **Q.**   Yet in paragraph DD, it says that the prisoner is required

7  to file their Step 2 grievance within 10 business days of

8  receiving the Step 1 response, or if no response received,

9  within 10 business days after the date the response was due.

10         So, in essence, the prisoner has to act and appeal

11  something they haven't even received within this time frame

12  based on them having to calculate when it should have been due,

13  because it should have been due 15 days after receipt, and now

14  I haven't gotten a response, but I'm still required to file my

15  appeal within 15 days.  That's what this reads.

16  **A.**   No, it does not.

17  **Q.**   Oh, no.  Okay.  So what's the difference?

18  **A.**   It's because it's within 10 business days after the 15-day

19  required.

20  **Q.**   I gotcha.  It's 10.  I said 15.

21  **A.**   No, you said that it was within the 15 days, and that's

22  incorrect.

23  **Q.**   Okay.  So they file their grievance, they're supposed to

24  get a response within 15 days.

25  **A.**   And they're notified of that on the slip that's generated

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

Page 37

1   by the database.

2   **Q.**   They're told when it was received?

3   **A.**   That's correct.

4   **Q.**   And --

5   **A.**   And when the response is due.

6   **Q.**   In 15 days.

7           **THE COURT:**   Stop.

8           Mr. Russell, don't start to answer the question until

9   the question is finished.

10          And, Ms. McGehee, don't start to ask him the question

11  until Mr. Russell is done.  We have a court reporter who's

12  taking this down and if you're talking over each other,

13  it'll -- the transcript will be confusing.

14          **THE WITNESS:**   Yes, your Honor.

15  **BY MS. McGEHEE:**

16  **Q.**   Okay.  So, Step 1, the prisoner sends a grievance, has

17  five days for it to be received timestamped.  They send it

18  through the internal mail.  Then they get notice as to when it

19  was received?

20  **A.**   Yeah, five business days, and they receive a notice saying

21  when it was received and there's a calculation in there that

22  says, here's the date that it's -- that you must -- that the

23  response is due back to you.

24  **Q.**   Right.  And so the prisoner knows, okay, I'm supposed to

25  get a response from the Michigan Department of Corrections

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

Page 38

1  regarding my grievance within 15 days of the date they received

2  it.  I don't get a response; that's okay.  That's not a

3  violation of policy that they didn't get a response to their

4  grievance within 15 days --

5  **A.**    Correct.

6  **Q.**    -- is not a violation of the policy.  The Michigan

7  Department of Corrections can do that.

8  **A.**    That's correct.

9  **Q.**    But, still, the prisoner has to appeal their failure to

10  respond within 10 days, correct?

11  **A.**    Within 10 days of not receiving a response.

12  **Q.**    Okay.  So let's look at DD again, because I want to ask

13  about this.

14        So the prisoner on Step 1 gets a response.  When they

15  get a response, they have 10 days to file an appeal, and in

16  that 10 days, first of all, they have to -- and I'm going to

17  read here.  It says, second sentence of DD, "To file a Step 2

18  grievance, the grievant must request a prisoner/parolee

19  grievance appeal (CSJ-247B) from Step 1 grievance coordinator

20  and send the completed form to the Step 2 grievance coordinator

21  designated for the facility, field office or other office being

22  grieved within 10 business days within receiving the Step 1

23  response, or, if no response was received, within 10 days after

24  the date the response was due, including any extensions."

25        So the first thing they have to do is request a form,

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 39

1   right?

2   **A.**   Correct.

3   **Q.**   They request a form through the mail system, don't they?

4   **A.**   I don't know how they -- you'll have to ask the grievance

5   coordinator that.

6   **Q.**   Well, isn't that kind of important in terms of making a

7   policy fair, to know how they're having to request a form with

8   the clock ticking for them, because they can't do anything

9   until they get the form back.

10  **A.**   That's correct.

11  **Q.**   Okay.  So they have to request through the mail from the

12  grievance coordinator, a form.  It would be true, sir, that

13  these women have no control on how fast a grievance coordinator

14  gives them a form, correct?

15  **A.**   That's correct.

16  **Q.**   And then once they get the form back, tick, tick, tick, 10

17  days is ticking, then they have to fill out the form, appeal if

18  they want to appeal, and then they have to take that form and

19  they have to send it in the mail again, correct?

20  **A.**   Correct.

21  **Q.**   And then that form, Step 2, has to then get to this -- to

22  the warden within the 10 days from the date that they receive

23  the rejection or the denial, right?

24  **A.**   Correct.

25  **Q.**   Thank you.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

*Page 40*

1  Then, once the warden gets it, he then has 15 days to

2  respond to it and get his response to the prisoner, correct, or

3  15 days to respond, not get it to the prisoner, he just has 15

4  days to respond, right?

5  **A.**  Unless there's an extension.

6  **Q.**  But he doesn't have to respond within 15 days because

7  that's not a requirement of the policy, right?

8  **A.**  That's correct.

9  **Q.**  Yeah.  Okay.  And, so, then, assuming that the prisoner

10  gets the Step 2 response, once they receive the Step 2

11  response, they then have 10 days to fill it out and get it to

12  you.

13  **A.**  Would you repeat that again?  I lost track there.

14  **Q.**  Sure.

15  Once they get the Step 2 response, if they believe

16  it's not fairly rejected or denied and they want to appeal it,

17  then they have 10 days from the date they receive that Step 2

18  denial or rejection to fill it out and mail it to you.

19  **A.**  Ten business days, correct.

20  **Q.**  Ten business days.

21  And, so, again, they fill it out and they place it in

22  that mail slot, right?

23  **A.**  I'm assuming, yes.

24  **Q.**  Yeah.  And now it's U.S. Mail, right?  It doesn't -- it's

25  not even internal.  It has to go out into the U.S. Mail system?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 41

1  **A.**   No, that's not, correct.  I said there's two different

2  ways.  It's either the intra-departmental mail or the U.S.

3  Mail.

4  **Q.**   Okay.  So it's two different ways; might be the U.S. Mail,

5  might be an internal, one of the two.

6          But the fact is, it's true to say, Mr. Russell, that

7  these women have no control on how fast it takes to process the

8  mail, do they?

9  **A.**   No, they don't.

10  **Q.**   Okay.  Thanks.

11          When it gets to Lansing, is there a mailroom?

12  **A.**   Yes, there is.

13  **Q.**   Do you know anything about that mailroom?

14  **A.**   I know that it delivers twice a day to us everything that

15  comes in.

16  **Q.**   Okay.

17          **THE COURT:**  Mr. Russell, the mail's stamped in the

18  mailroom?

19          **THE WITNESS:**  I'm sorry, I'm not -- I don't think

20  that it's stamped there.  We stamp the documents when we

21  receive the documents in our office.  They may or may not put a

22  stamp on the envelope, I'm not sure.

23  **BY MS. McGEHEE:**

24  **Q.**   So going back to the Step 3, once they receive the Step 2

25  back, if it's denied or rejected, the prisoner -- the time

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

*Page 42*

1   starts to run for them to appeal within the 10 business days

2   and they have to request a form for that appeal, too, correct?

3   **A.**   No.

4   **Q.**   The form is there.

5   **A.**   It's the same form as the Step 2.

6   **Q.**   Right.

7        Okay.  Let's look at the grievance policy, page 5 of

8   8, paragraph Y.

9        **THE COURT:**  And, again, if you can use the Page ID

10  number, that's very helpful.

11       **MS. McGEHEE:**  Sure, Page ID No. 606.

12  **BY MS. McGEHEE:**

13  **Q.**   So reading that paragraph, it says, "After receipt of the

14  grievance, the grievance coordinator shall determine if the

15  grievance should be rejected pursuant to this policy.  If the

16  grievance is rejected, the grievance responses shall state the

17  reason for the rejection without addressing the merits of the

18  grievance."

19       Is that correct?

20  **A.**   That's correct.

21  **Q.**   And we look at paragraph J, 2 of 8 of Exhibit 31, and

22  Page ID 603.

23       This is the reason for rejections -- rejection,

24  correct?

25  **A.**   Yes.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

Page 43

1  **Q.**   And there's 14 of them, right?

2  **A.**   Yes.

3  **Q.**   And the grievance coordinator has the authority to make

4  that determination and reject a prisoner's grievance, correct?

5  **A.**   Correct.

6  **Q.**   And if the grievance coordinator makes that decision to

7  reject the prisoner's grievance, then there is no interview

8  with the prisoner, correct?

9  **A.**   That's correct.

10  **Q.**   There is no investigation.

11  **A.**   That's correct.

12  **Q.**   There is no corrective action.

13  **A.**   I don't know that that's the case.

14  **Q.**   Uh-huh.  I know you have never met Ms. Bailey or Ms. Zentz

15  or Ms. Clark, but I believe the record will reflect, and we can

16  verify this through exhibits, that between 2013 and 2023, these

17  women filed 60 grievances.  Let's look at the results.

18       I want you to turn to Clark -- I'm sorry -- to

19  Plaintiffs' Exhibit 23, if you would.

20       **MS. McGEHEE:**  And, your Honor, can we, for

21  efficiency, just offer all of plaintiff's exhibits that haven't

22  been objected to into evidence?

23       **THE COURT:**  All the evidence -- all the exhibits are

24  admitted --

25       **MS. McGEHEE:**  Okay.  Thank you.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 44

1      **THE COURT:**  -- based upon the prior order requiring

2   the parties to indicate any objections by a date, which was

3   last week -- I don't remember the exact date -- I heard no

4   objections.

5      **MS. McGEHEE:**  Thank you, your Honor.

6   **BY MS. McGEHEE:**

7   **Q.**   So if we look at Exhibit 23, sir, do you recognize this

8   document?

9   **A.**   Yes, I do.

10  **Q.**   It says, "MDOC Prisoner Step 3 Grievance report."

11  **A.**   Correct.

12  **Q.**   Right?

13      In fact, there is a grievance report system,

14  computerized system that exists within the Michigan Department

15  of Corrections, correct?

16  **A.**   There is a separate system at facility level and in the

17  central office.

18  **Q.**   Okay.  At the facility level, the grievance coordinator is

19  required to give monthly reports regarding the number of

20  grievances file and the -- the subject matter of the grievance

21  and whether or not it was rejected, correct?

22  **A.**   That's correct.

23  **Q.**   Okay.  So let's look at this report.  It tells us whether

24  it was processed to Step 3, correct?

25  **A.**   Yes.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

*Page 45*

1  **Q.**    Gives us a grievance identifier.

2  **A.**    Yes.

3  **Q.**    Gives us the facility.

4  **A.**    Yes.

5  **Q.**    Category, Step 1 receive date, whether it was resolved,

6  whether it was partially resolved, whether it was denied,

7  whether it was rejected, whether it was closed and the date

8  mailed, correct?

9  **A.**    Correct.

10 **Q.**    In this particular report that we're looking at,

11 Exhibit 23, is for Krystal Clark; is that correct?

12 **A.**    That's correct.

13 **Q.**    Prisoner No. 435064, correct?

14 **A.**    That's correct.

15 **Q.**    Okay.  And, so, if we look at this document, on the first

16 page there's four grievances listed, correct?

17 **A.**    That's correct.

18 **Q.**    Every one of them is rejected, correct?

19 **A.**    Yes, that's correct.

20 **Q.**    And then we look at the next page.  There is four

21 grievances listed.

22 **A.**    Yes.

23 **Q.**    Every one is rejected, correct?

24 **A.**    That's correct.

25 **Q.**    And then we look at the next page.  There's four

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

Page 46

1  grievances, correct?

2  **A.**   Yes.

3  **Q.**   One is denied and three are rejected, correct?

4  **A.**   That's correct.

5  **Q.**   Then we look to the next page.  There's four grievances,

6  right?

7  **A.**   Yes.

8  **Q.**   One is denied, three is rejected, correct?

9  **A.**   That's correct.

10 **Q.**   Go to the next page.  There's four grievances, correct?

11 **A.**   Correct.

12        **THE COURT:**  Ms. McGehee, before you go on, I just

13 have a quick question.

14        I see this is ECF No. 177, and I don't know whether

15 there's a dash something.  If you don't know what the supp.

16 folder is, that's fine.

17        **MS. McGEHEE:**  We can probably find that out for you,

18 your Honor.  Give us a second.

19        **THE COURT:**  Okay.

20        **MS. McGEHEE:**  Can I proceed?

21        **THE COURT:**  Go ahead.

22 BY MS. McGEHEE:

23 **Q.**   Okay.  So we're looking at the next page, which is 9 of

24 180, Page ID 3671.  There are four grievances listed here,

25 correct?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 47

1   **A.**   Correct.

2   **Q.**   All of them are rejected.

3   **A.**   That's correct.

4   **Q.**   Then we go to the next page, Page ID 3672.  There's four

5   grievances listed.  They're all rejected, correct?

6   **A.**   That's correct.

7   **Q.**   Then we go to the next page, Page ID 3673.  There's four

8   grievances listed.  Three are rejected, one is denied.

9   **A.**   We're on page --

10  **Q.**   3673, ID No. 11 of 180?

11  **A.**   There are two that are answered on the merits and two

12  denied, or two rejected.  You said three rejected, I believe.

13  **Q.**   You're looked at 3673?

14  **A.**   Yes.

15  **Q.**   Page 11 of 180?

16  **A.**   Yes.

17  **Q.**   Okay.  I show four grievances.

18  **A.**   Yes.

19  **Q.**   Three are rejected and one is denied?

20  **A.**   No.  The two rejections are 28E and the 28A.  The 17Z and

21  the 17Zs are both answered on the merits.

22  **Q.**   Where are you seeing that?

23  **A.**   Under grievance category.

24  **Q.**   Where they have a number, 28E, 17Z?

25  **A.**   Uh-huh.  I'm looking at the coding.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 48

1   **Q.**   Oh.  So you're saying that coding means something?

2   **A.**   Yes.

3   **Q.**   It means it was resolved?

4   **A.**   No.

5   **Q.**   It means --

6   **A.**   A various number of things, but I know in this particular

7   case, that those 17, the two codes that were rejection, you

8   might find a rejection, are 28s and 29s, so --

9   **Q.**   And they mean what?

10   **A.**   Those are the two coding categories that contain all of

11   the rejections.

12   **Q.**   Okay.  So, according to this particular document, it says

13   that 28E, the first grievance, was rejected, correct?

14   **A.**   That was -- yes, that would be a rejection.

15   **Q.**   Okay.  The next one, which is 17Z under the category, it

16   says it was denied.

17   **A.**   That's correct.

18   **Q.**   The next one, 28A, it says it was rejected.

19   **A.**   The coding is that it was rejected, yes.

20   **Q.**   Okay.  And the next one is 17Z.  It says it was rejected.

21   **A.**   Yes.  And it's -- that's the box that's checked there, but

22   the coding is -- says it was answered on the merits.

23   **Q.**   Oh.

24   **A.**   So that may be a, you know, an error in entry, and I don't

25   know.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

*Page 49*

1   **Q.**   So we don't know --

2   **A.**   Right.

3   **Q.**   -- who's right, rejection or merits.

4   **A.**   No.

5   **Q.**   Okay.  We'll move on.

6            Next page, Page ID 3674, I show four grievances, all

7   rejected, right?

8   **A.**   Correct.

9   **Q.**   Okay.  Next one, Page ID 3675, page 13 of 18.  I show four

10  grievances, all rejected, right?

11  **A.**   Correct.

12  **Q.**   Okay.  Then go to the next page, page No. 3676, 14 of 180.

13  I show four grievances, one denied, four -- three rejected,

14  correct?

15  **A.**   Again, we -- let's see.  Yes, you're correct.

16  **Q.**   Okay.  Thanks.

17           So, going to the next page, page 3677, 15 of 18.  I

18  see four grievances, all rejected.

19  **A.**   Correct.

20  **Q.**   Uh-huh.  And then we go to the next page, page 3678.  I

21  see one grievance and it's rejected, correct?

22  **A.**   That's correct.

23  **Q.**   Okay.  So according to this document, Ms. Clark filed 45

24  grievances.  Of the 45, 41 were rejected and four were denied.

25  Not one was resolved or partially resolved.  That's what this

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 50

1   document says, doesn't it?

2   **A.**   That's what it says.

3   **Q.**   Thank you.

4          By the way, it's 177-2, your Honor.

5          **THE COURT:**   Thank you.

6   **BY MS. McGEHEE:**

7   **Q.**   Okay.  I'd like you to turn now to page -- or Exhibit 25.

8   Whoops, I'm sorry, Exhibit 26.

9          Are you there?

10  **A.**   Yes, I am.

11  **Q.**   Okay.  This is another MDOC prisoner Step 3 grievance

12  report, correct?

13  **A.**   Correct.

14  **Q.**   By the way, just -- and the document speaks for itself,

15  but with respect to all of the grievances that we just went

16  through for Ms. Clark, every one was processed to Step 3,

17  correct?

18  **A.**   Yes.

19  **Q.**   Okay.  Thanks.

20         All right.  So looking at this one, Page ID 3863,

21  5 of 34, it says -- on the first page for Ms. Bailey I see that

22  she filed four grievances and two were rejected and two were

23  denied, correct?

24  **A.**   That's correct.

25  **Q.**   Then go to the next page, Page ID 3864, pages 6 of 34.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

*Page 51*

| | |
|---|---|
| 1 | **MR. DEAN:**  Your Honor, I'm going to object here |
| 2 | because this is not one of the three plaintiffs, this is a |
| 3 | cherrypicked prisoner's record.  If we're going to do this for |
| 4 | all thousands of WHV prisoners, it's just not fair to have |
| 5 | somebody who's not -- it's not relevant to this case. |
| 6 | **MS. McGEHEE:**  It's Paula Bailey.  She's a named |
| 7 | plaintiff. |
| 8 | **MR. DEAN:**  The copy I've got from you does not -- |
| 9 | it's got missing letters in there. |
| 10 | **THE COURT:**  There's missing letters that -- |
| 11 | **MR. DEAN:**  Withdrawn. |
| 12 | **THE COURT:**  You can go ahead, Ms. McGehee. |
| 13 | **BY MS. McGEHEE:** |
| 14 | **Q.**  Sorry.  This particular document, I will say for clarity, |
| 15 | for whatever reason, the last name -- there's a "B" missing on |
| 16 | the first page, and on the first name, there's a "U" missing, |
| 17 | but this is Paula Bailey? |
| 18 | **MR. DEAN:**  Got it.  Thank you.  My apologies. |
| 19 | **BY MS. McGEHEE:** |
| 20 | **Q.**  So just, again, going to Page ID 3864 for Ms. Bailey, I |
| 21 | see that there were four grievances that she filed and all were |
| 22 | rejected, correct? |
| 23 | **A.**  That's correct. |
| 24 | **Q.**  And then go to the next page, page 3865, pages 7 through |
| 25 | 34.  And there was four grievances filed and all were rejected, |

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 52

1  correct?

2  **A.**    That's correct.

3  **Q.**    And then go to the next page, page 3866, page 8 of 34.

4  There were four grievances filed by Ms. Bailey and three were

5  rejected and one was denied, correct?

6  **A.**    That's correct.

7  **Q.**    And going to the next became, Page ID 3867, page 9 of 34.

8  There was one grievance filed by Ms. Bailey and it was denied,

9  correct?

10  **A.**    Correct.

11  **Q.**    So I add up that she filed 17 grievances.  12 were

12  rejected and five were denied.  Not one was resolved or

13  partially resolved, correct?

14          **THE COURT:**  Will you state those numbers again,

15  please?

16          **MS. McGEHEE:**  Sure.

17          Based on Exhibit 25, Ms. Bailey filed 17 grievances.

18  Twelve were rejected and five were denied.  Not one were

19  resolved or partially resolved.

20          **THE COURT:**  And I think you mean Exhibit 26.

21          **MS. McGEHEE:**  26.  Thank you, Judge, for . . .

22  **BY MS. McGEHEE:**

23  **Q.**    Now, I want you to move to page -- Exhibit 8.  And this is

24  also another MDOC prisoner Step 3 grievance report; is that

25  correct?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 53

**1**   A.   Yes, it is.

**2**   Q.   And it is ECF 56-6.  And just for the record, your Honor,

**3**   Exhibit 26 is ECF 177-4.

**4**        **THE COURT:**  Thank you.

**5**   BY MS. McGEHEE:

**6**   Q.   So looking at this report, this is for Hope Zentz,

**7**   correct?

**8**   A.   Yes, that's correct.

**9**   Q.   Okay.  And looking at this first page, I see that there

**10**  are five grievances filed, correct?

**11**  A.   Correct.

**12**  Q.   And for -- three were rejected and one denied and one

**13**  resolved, correct?

**14**  A.   Yes, that's what's indicated here.

**15**  Q.   And then go to the next page, Page ID 785, 6 of 20, shows

**16**  that she filed three grievances and that three were denied,

**17**  correct?

**18**  A.   That's correct.

**19**  Q.   And with respect to all of these grievances, they were

**20**  processed to Step 3, correct?

**21**  A.   They were processed to Step 3.  Doesn't mean that they --

**22**  any of the grievances process, the Step 2 that you saw were

**23**  rejected there, could have been rejected at Step 3 because they

**24**  were untimely or, you know, had other violations of policy.

**25**  Q.   Yeah.  Well, we know that when it gets -- according to

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 54

1  these documents, they were all rejected, right?  I mean, the

2  ones that were rejected or denied, those were upheld, right?

3  **A.**    Yes.

4  **Q.**    Those rejections or denials were all upheld at the Step 3

5  level, correct?

6  **A.**    Either upheld or invoked at the Step 3 level, that's

7  correct.

8  **Q.**    Okay.  And that would be your level?

9  **A.**    Yes.

10  **Q.**    Would you have been the person who was responsible for

11  reviewing all of these and --

12  **A.**    No.

13  **Q.**    Okay.  Who else from your office does it?

14  **A.**    I have three grievance specialists that respond to the

15  grievances.

16  **Q.**    Who are those?

17  **A.**    The names?

18  **Q.**    Yes.

19  **A.**    Sean Lockhart, Octaves (phonetic) Long, and Kent Austin.

20  **Q.**    And so with respect to the 60 grievances that we just went

21  through --

22  **A.**    Uh-huh.

23  **Q.**    -- sir, for all of the ones that were rejected, there was

24  no investigation, no interview, correct?

25  **A.**    There wasn't a -- any investigation under the grievance

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 55

1    process.

2    **Q.**    Uh-huh.

3            **THE COURT:**  Well, I want you to fill out that

4    thought.

5            **THE WITNESS:**  Okay.

6            **THE COURT:**  If there were no investigation, no

7    interview under the grievance process, what else is available?

8    And that's my first question.

9            **THE WITNESS:**  Okay.  Every rejection is required to

10   be sent to the warden's office or up the chain of command and

11   it's reviewed for issues of merit, and those are responded to,

12   and either the warden's office, or if it's a health care, to

13   health care, it's sent to health care, and they take action on

14   any issues of merit that they see in the grievance and they

15   record that either in the health record or in the

16   administrative record.

17           **THE COURT:**  Do you know what happened after the

18   rejection of the 60 grievances described here?

19           **THE WITNESS:**  I don't know.  I can just tell you what

20   is required.

21           **THE COURT:**  All right.  Thank you.

22           **THE WITNESS:**  Yes.

23   **BY MS. McGEHEE:**

24   **Q.**    So let's turn to Exhibit 6.

25           **THE COURT:**  You said 6?

     *19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 56

1        **MS. McGEHEE:**  Yes, your Honor.

2             And I'm going to ask that the witness turn to the

3    last page of Exhibit 6, which is ECF 56-6, Page ID, 789.

4    **BY MS. McGEHEE:**

5    **Q.**   And have you seen this grievance before, sir?

6    **A.**   No.

7    **Q.**   By the way, what do you do when you receive a Step 3

8    appeal to review the record?

9    **A.**   I don't understand your question.

10   **Q.**   Sure.

11             Prisoner sends a Step 3 appeal of a grievance that's

12   been rejected, what do you do?  What's your process for

13   reviewing that?

14   **A.**   I still don't understand your question.  Are you asking

15   that -- on a -- something where it's already been rejected at

16   Step 3 and they're trying to appeal it, or are you asking --

17   **Q.**   Well, you can't appeal from Step 3, right?

18   **A.**   That's correct.  That's why I was confused about your

19   question.

20   **Q.**   You're responsible, one of the people responsible for

21   reviewing Step 3 appeals, correct?

22   **A.**   I'm responsible for overseeing the unit that does that,

23   that's correct.

24   **Q.**   Okay.  And so your signature is on Step 3 decisions, isn't

25   it?

     *19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 57

**A.**   Yes.  That verifies the date that it was sent.  That's all
that signature verifies.

**Q.**   So you don't have anything to do with reviewing whether
the appeal has merit or not?

**A.**   That's correct.

**Q.**   Somebody else from your office does that?

**A.**   Specialist names that I gave you, they have the
responsibility of doing that.

**Q.**   So you check behind them to see what they're doing to make
sure that they're --

**A.**   Yes, I do.

**Q.**   How do you do that?

**A.**   I review a number of responses that they provide.  I, you
know, have been involved in their training.  Any one of them
comes -- brings what they consider to be a complicated issues
to me to discuss, so that's -- that oversight is given in that
way.

**Q.**   And then you're responsible for making decisions on
whether the rejection, if it is a rejection, is upheld or just
signing off on it.

**A.**   As I said, my signature is just verifying the date that it
was mailed.

**Q.**   Uh-huh.  Okay.

         Okay.  Let's look at this exhibit.  This is
Exhibit 6.  And the last page of Exhibit 6, which I already

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

*Page 58*

1  identified, is a grievance filed by Hope Zentz, correct?

2  **A.**   Yes, that's correct.

3  **Q.**   Okay.  And --

4  **A.**   Yes, that's correct.

5  **Q.**   Okay.  And so I'm going to just read this into the record.

6  It says, "What attempts did you make to resolve this issue

7  prior to writing this grievance?  On what date?"  It says

8  "April 20, 2019."  And it says, "If none, explain why."  And

9  this is Ms. Zentz's handwriting, but I'm going to read it.  It

10  says, "Kited at H/C, HUM.  Spoke to chain of command.  Sent

11  letter to Warden Brewer."  Did I read that right?

12  **A.**   Yes.

13  **Q.**   H-U-M, what is that, housing unit manager?

14  **A.**   No, that's the health unit manager.

15  **Q.**   Health unit manager?

16  **A.**   H/C is health care.

17  **Q.**   And what is H/C, do you know?

18  **A.**   That's health care.

19  **Q.**   That's health care.

20        And the next section says, "State problem clearly.

21  Use separate grievance form for each issue."  And I'm not going

22  to read the rest of that, but I'm going to read what she wrote.

23  "I'm grieving the warden, WHVC:  MDOC Sherman Brewer, Chief

24  Medical Officer, Carmen McIntyre, Health Care Unit Manager,

25  Ms. Fisher, for violation of my Eighth Amendment Constitutional

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

Page 59

1    right and deliberate indifference as my plan of treatment is

2    not effective.  I'm experiencing twitching of my eyes.  When

3    I'm in any building on ground, constant headaches, dizziness,

4    seeing spots, film on my eyes, chronic fatigue, nosebleeds,

5    sinus infection and coughing in my sleep.  I know without a

6    doubt from my experience in construction that this is caused

7    from exposure to big levels of mold and I'm forced to be

8    susceptible to this health hazard."

9            Did I read that correctly?

10   **A.**   Yes.

11   **Q.**   And she signed it and dated it April 25, 2019, correct?

12   **A.**   Yes.

13           **THE COURT:**  May I see counsel at sidebar?  Something

14   has come to my attention that I have to address.

15       (At side bar on the record as follows:)

16           **THE COURT:**  I have this conflict issue that can creep

17   up at any moment.  My cousin is Carmen McIntyre.  And, so, if

18   she is sued and I recuse myself -- sometimes her name pops up,

19   and so I just want to, before we go forward, know whether you

20   all have any objection to me continuing with this proceeding

21   knowing, you know, she's not a defendant.

22           **MS. McGEHEE:**  Right.

23           **MR. DEAN:**  She is the defendant.

24           **MS. McGEHEE:**  No, no, she's an --

25           **MR. DEAN:**  Sorry.

        *19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

Page 60

1      **MS. McGEHEE:**  She's not a defendant.

2          Will you give us a moment to confer and we'll tell

3  you?

4          **THE COURT:**  Sure.

5      (Discussion held off the record.)

6          **MS. McGEHEE:**  We don't have an objection.  She's not

7  a defendant.

8          **THE COURT:**  Okay.  I just wanted to make sure.

9              (End of discussion at sidebar.)

10         **THE COURT:**  All right.  You can go ahead.

11         **MS. McGEHEE:**  Okay.  Thank you, your Honor.

12 BY MS. McGEHEE:

13 **Q.**  So, I read this grievance, and then it has a response

14 section and it says, "Grievant interviewed?"  And then there's

15 a checkmark "no," correct?

16 **A.**  Correct.

17 **Q.**  And then it says, "If no, give explanation."  And then

18 it's written in there, "Reject," exclamation point, I think.

19 "Joint grievance by two or more prisoners."

20         That's what it says, correct?

21 **A.**  Correct.

22 **Q.**  Okay.  So in this particular grievance, does Ms. Zentz

23 mention any other inmate being part of this grievance?

24 **A.**  I -- I don't see that.

25         **THE COURT:**  Mr. Russell, I can't hear you at all.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

Page 61

1       **THE WITNESS:**  I don't see a name there.  This is one

2  of the reasons for rejection, filed by two or more prisoners --

3  **BY MS. McGEHEE:**

4  **Q.**   Sure.

5  **A.**   -- and that it doesn't have to be in this document.  We

6  could have gotten, you know, two or more grievances on the same

7  subject, and often it's duplicate language.  That is also filed

8  by two or more prisoners.

9  **Q.**   I see.

10  **A.**   In that case, what then is recommended to the prisoners

11  when we reject it for this reason, is that they take that issue

12  to the warden's forum --

13  **Q.**   Uh-huh.

14  **A.**   -- because it's a bigger issue --

15  **Q.**   Yeah.

16  **A.**   -- that, you know, the warden would want to deal with the

17  multiple --

18       **THE COURT:**  Mr. Russell, I'm going to again ask you

19  to move the microphone closer.  I heard you but it's very, very

20  hard.

21  **BY MS. McGEHEE:**

22  **Q.**   Okay.  So, this particular grievance, Ms. Zentz is

23  complaining about her medical condition, her eyes twitching,

24  her headaches, her seeing spots, her chronic fatigue, her

25  nosebleed, her sinus infection.  It's very specific to her

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

Page 62

1  particular medical condition, isn't it?

2  **A.**   It is.

3  **Q.**   And she's also pointing out that she believes it's due to

4  exposure to mold, correct?

5  **A.**   Correct.  It also could have been --

6  **Q.**   I don't have a question.  I don't have a question.  Thank

7  you.

8         And, then, this particular grievance was appealed by

9  Ms. Zentz, correct?  If you want to go to the second page of

10  the document, which is ECF 56-6, Page ID 787.

11  **A.**   Yes, she appealed it.

12  **Q.**   Okay.  And the reason stated under Step 2, reason for

13  appeal, she writes, "Prison officials have an obligation to

14  protect prisoners from the risk of diseases.  Prisoner

15  officials had actual knowledge of an objectively cruel

16  condition and did not respond reasonably to the risk.  Issue

17  still remains."

18         Did I read that correctly?

19  **A.**   Yes.

20  **Q.**   Okay.  And then if it we go to the next page after this

21  one, Page ID 788, ECF 56-6, there's a Step 2 grievance

22  response --

23  **A.**   Yes.

24  **Q.**   -- by Shawn Brewer, the warden, correct?

25  **A.**   Correct.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 63

1  **Q.**   Who is also mentioned in the grievance, correct?

2  **A.**   Correct.

3  **Q.**   Mr. warden is -- I'm sorry.  Mr. Brewer is the warden of

4  Washtenaw Huron Valley Correctional Facility, at least he was

5  at this time, correct?

6  **A.**   Correct.

7  **Q.**   And he would have authority to make decisions associated

8  with the operations of that facility, correct?

9  **A.**   Correct.

10 **Q.**   Okay.  And he also rejected it, or rejection is upheld as

11 a joint grievance, correct?

12 **A.**   Correct.

13 **Q.**   Okay.  And then if we go to the page after that one

14 document we were looking at a moment ago, page 787, ECF 56-6,

15 this shows that Ms. Zentz appealed this to Step 3, correct?

16 **A.**   Correct.

17 **Q.**   And it says, "Reason for appeal:  Issue remains.  Staff

18 was deliberate and different to the issues raised as stated in

19 Step 1 and Step 2."  Correct?  She does that?

20 **A.**   Yes.

21 **Q.**   And then if we go to the next page, which is the first

22 page of Exhibit 6, Page ID 786, ECF 56-6.  This is a Step 2

23 grievance decision, correct?  Or Step 3, I'm sorry, Step 3

24 grievance decision?

25 **A.**   Correct.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 64

1  **Q.**   And in this particular document, it indicates the

2  rejection is upheld, correct?

3  **A.**   Correct.

4  **Q.**   And your signature is there, correct?

5  **A.**   Correct.

6  **Q.**   Okay.  So this particular grievance by Ms. Zentz was

7  processed through Step 3, correct?

8  **A.**   It was.

9  **Q.**   Okay.  Thank you.

10         I want to turn your attention to Exhibit 2 of

11  Plaintiffs' Exhibits.

12         And if you go, again, to the last page of the

13  exhibit, which is the original grievance form, Page ID 734, ECF

14  56-5?

15         **THE COURT:**   I'm sorry, say that --

16         **MS. McGEHEE:**   Yep.  It's the last page of Exhibit 2,

17  and it's Page ID 734, ECF 56-5.

18  **BY MS. McGEHEE:**

19  **Q.**   And I'm going to read this also into the record.

20         So it says, "What attempt did you make to resolve the

21  issue prior to writing this grievance on what day."  She's --

22  and it says, "Last:  April 9, 2019."

23         And then she has written in here, "I have sent

24  numerous kites to both Warden Stewart and Warden Brewer with no

25  response.  I also kited Heidi Washington and D.W. Housing with

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 65

1   no response.  Last kite was April 9, 2019."

2           Did I read this correctly?

3   **A.**    Yes.

4   **Q.**    Okay.  Heidi Washington is the director of the Michigan

5   Department of Corrections, correct?

6   **A.**    That's correct.

7   **Q.**    And She has authority over the entire department, correct?

8   **A.**    Correct.

9   **Q.**    Okay.  And the wardens, obviously, also have authority to

10  make decisions regarding operations and so forth for the

11  facility, itself, correct?

12  **A.**    Correct.

13  **Q.**    And then it says, "State problem clearly."  And I'm going

14  to read this.

15          It says, "I request no retaliation.  I'm grieving

16  Warden Shawn Brewer due to the inhumane living conditions

17  related to the dangerous -- the dangers of living around mold.

18  Exposure to mold, especially living around mold, is the second

19  leading cause of breathing illnesses, Asthma, COPD, et cetera.

20  I have heart condition.  My chest hurts.  I'm short of breath.

21  It's difficult to breathe.  My hearth races.  I have headaches.

22  Health care has put me on more than one inhaler and they are

23  not effective in treating my asthma.  Exposure to mold

24  irritants is very detrimental to my health.  I have Wolf

25  Parkinson White Syndrome and chronic asthma."

     *19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Cross*
*Wednesday/October 30, 2024*

*Page 66*

1    That's what she says, doesn't she?

2  **A.**   Yes.

3  **Q.**   And then it says, under response, whether the grievance

4  was interviewed, it says, "No," right?

5  **A.**   Yes.

6  **Q.**   And then this was rejected, again, joint grievance by two

7  or more prisoners, correct?

8  **A.**   Correct.

9  **Q.**   All right.  Great.  Thanks.

10    And then going to the first page of Exhibit 2, it

11  shows that Ms. Clark appealed this to Step 3, which was

12  received on October 9, and that the rejection was upheld.

13  **A.**   That's correct.

14  **Q.**   Okay.  So no investigation conducted.

15  **A.**   Under the grievance process.

16  **Q.**   Yep.

17    You said you've been to the Washtenaw Huron Valley

18  Correctional Facility?

19  **A.**   I said I'm not sure.

20  **Q.**   You're not sure whether you've been there?

21  **A.**   I've been in the department a long time and I've had many

22  positions and I've down to lots of facilities, so I can't tell

23  you all of them I've been to.

24  **Q.**   Were you aware in 2018 that the Washtenaw Huron Valley

25  annual physical plant report recommended replacing the HVAC

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 67

1   system in housing units, one, two, three, four and five, noting

2   the typical life expectancy of an industrial --

3          **MR. DEAN:**  I'm going to object to relevance.

4          **MS. McGEHEE:**  Can I finish my question?

5          **MR. DEAN:**  Object to relevance, your Honor.

6          **MS. McGEHEE:**  Well, can I finish my question and then

7   maybe you can object?

8          **THE COURT:**  I don't want you all arguing.

9          **MS. McGEHEE:**  I'd just like to finish my question.

10         **THE COURT:**  You can finish your question and you can

11  respond to the objection.

12         **MS. McGEHEE:**  Thank you.

13  **BY MS. McGEHEE:**

14  **Q.**   So going back, just since I was interrupted, are you aware

15  that in 2018 the Washtenaw Huron Valley annual physical plant

16  report recommended replacing the HVAC system and housing units

17  one, two, three, four and five, noting the typical life

18  expectancy of an industrial commercial HVAC system is 20 to 25

19  years with proper maintenance, and that the WHV ventilation

20  system is 43 years old and recommending the entire HVAC system

21  needs to be replaced.

22         Were you aware of that report?

23         **MR. DEAN:**  Objection.  Relevance and foundation.

24         **THE COURT:**  Ms. McGehee, I first want to deal with

25  the objection before Mr. Russell answers.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 68

1      **MS. McGEHEE:**  Well, it's certainly relevant to this

2  case.  This whole case involves these women complaining about

3  the ventilation system that existed that was causing them

4  health conditions, and this is the person who's responsible for

5  responding to grievances and upholding or not upholding

6  rejections associated with complaints made about that system,

7  so I think him understanding what's going on is important.

8      **THE COURT:**  Mr. Dean, I am going to overrule the

9  objection.  I think it's relevant to whether there was an

10  access to the grievance system for issues related to the HVAC

11  system.

12      You can go ahead, Ms. McGehee.

13      **MS. McGEHEE:**  Thank you, Judge.

14  BY MS. McGEHEE:

15  Q.   Are you aware, Mr. Russell, as to whether that system has

16  been replaced to date?

17  A.   I have no knowledge of the system.

18  Q.   You're a registered nurse?

19  A.   I have held that in the past.  I no longer keep my

20  license.

21  Q.   So you have some medical background?

22  A.   Yes, that's correct.

23  Q.   In fact, you're owner of the Correctional Health Care

24  Systems Consulting since 2005, aren't you?

25  A.   Yeah.  That's -- I no longer do consulting work.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Cross*
*Wednesday/October 30, 2024*

Page 69

1   **Q.**   Okay.  But you did.

2   **A.**   I did.

3   **Q.**   For how long?  How many years?

4   **A.**   About seven years.

5   **Q.**   About seven years.  And was that -- were you providing

6   services to the Michigan Department of Corrections?

7   **A.**   No.

8   **Q.**   Okay.  That would have been a conflict?

9   **A.**   Well, they have my services.

10  **Q.**   What type of services was your consulting service

11  providing?

12  **A.**   It was providing evaluation of health care systems in

13  other departments of corrections, county jails, through the

14  sister agency of ASCA, The Association of Corrections

15  Administrators.  And also under the Obama administration, I was

16  responsible for being part of the review of detention

17  facilities and health care given to detainees within those

18  facilities.

19  **Q.**   Okay.  So we reviewed during the course of this

20  examination 60 grievances in terms of the processing of 60

21  grievances filed by these women, many of them addressing their

22  concerns about health problems with mold and ventilation and

23  its adverse effects on their health, and each instance, their

24  grievances have been rejected or denied and there's been no

25  investigation, no interview.  It's really not hard to

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Redirect*
*Wednesday/October 30, 2024*

*Page 70*

 1  understand why we're here today and why they've taken the

 2  courage to file a lawsuit to try to get some justice, is it?

 3         **THE COURT:**  Ms. McGehee, this sounds like argument

 4  for me rather than a question to Mr. Russell, so I'd ask you to

 5  direct questions to Mr. Russell.

 6         **MS. McGEHEE:**  Thank you.

 7         One moment, your Honor.

 8         Can you give me just one second?

 9         I don't have anything else, your Honor.

10         Thank you, Mr. Russell.

11         **THE COURT:**  Mr. Dean, any redirect?

12         **MR. DEAN:**  I do have redirect.

13         Can we take five or 10 minutes just to go to the

14  restroom?

15         **THE COURT:**  Let's make it five.

16         **MR. DEAN:**  That's fine.

17         **THE CLERK:**  All rise.

18         Court is in recess five minutes.

19      (Recess at 11:59 a.m. until 12:06 p.m.)

20         **THE CLERK:**  All rise.

21         Court is back in session.

22         Be seated.

23         **THE COURT:**  Go ahead.

24         **MR. DEAN:**  Thank you.

25                         -    -    -

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Redirect*
*Wednesday/October 30, 2024*

Page 71

1               (12:07 p.m.)

2               **REDIRECT EXAMINATION**

3       **BY MR. DEAN:**

4       **Q.**   Mr. Russell, I am in the Plaintiff's Exhibit No. 8.   If

5       you could turn to that.   This was the Step 3 grievance report

6       for Ms. Zentz, and I want to talk about some of these

7       categories that you're -- that are on here that you were asked

8       about.   You have a category called "resolved," another

9       category, "partly resolved," "denied," "rejected" and "closed."

10              Let's start with "resolved."   Why would a grievance

11      on a Step 3 grievance report be marked as resolved?

12      **A.**   It wouldn't.

13      **Q.**   Okay.  But we have, on this particular exhibit, it's --

14      and we're on Page ID 784.  The 5415 grievance, the box was

15      checked resolved?

16      **A.**   I stand corrected.  If it -- if it has been resolved at a

17      lower level and indicated so, we check it as resolved.

18      **Q.**   Okay.  And how does a resolved -- how does a grievance get

19      resolved?  What does that indicate?

20      **A.**   It indicates that we've done everything we can according

21      to policy to address the issue and, you know, it's resolved at

22      that point.

23      **Q.**   Okay.  So it's not resolved in the sense that the prisoner

24      says, oh, I guess I was wrong to bring this grievance.  That's

25      not it at all, is it?

         *19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Redirect*
*Wednesday/October 30, 2024*

Page 72

1    **A.**    Correct.

2    **Q.**    So the fact that this got to Step 3 means that the

3    prisoner said, I'm going to keep resolving -- or appealing each

4    decision because I don't think it's resolved, correct?

5    **A.**    That's right.  In fact, even if the prisoner agrees that

6    it's resolved at Step 1, it doesn't mean that they can't,

7    again, change their mind and then appeal it to Step 2 or Step

8    3.

9    **Q.**    Okay.  Now, I want to clear this up as well:  Does every

10   single Step 1 grievance that any prisoner files, do they always

11   get -- go all the way to Step 3?

12   **A.**    No, many more are resolved at Step 1.

13   **Q.**    Many more?

14   **A.**    Yes.

15   **Q.**    Okay.  Either the prisoner is satisfied with the response

16   at an earlier level?

17   **A.**    That's correct.

18   **Q.**    Or the prisoner says, I don't want to pursue this anymore?

19   **A.**    Correct.

20   **Q.**    Okay.  But a Step 3 grievance report does not indicate

21   that this is the whole world of grievances that the MDOC sees?

22   **A.**    No.  We're looking at a very small part of the --

23   **Q.**    Okay.

24   **A.**    -- total number of grievances.

25   **Q.**    You were directed to look at the Step 3 grievance reports

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Redirect*
*Wednesday/October 30, 2024*

Page 73

1  of all three prisoners, and some of them had quite a few, 80

2  plus grievances.  All of those grievances were pursued by the

3  prisoner to Step 3.

4  **A.**   Correct.

5  **Q.**   Okay.  You were asked several times that when a grievance

6  is rejected at the Step 1 level, you were asked, is there no

7  investigation or interview with the prisoner?  Can you explain

8  why that -- or let me ask it this way:  What other remedies

9  does a prisoner have?  If they're rejected at Step 1, can they

10  still proceed with the grievance?

11  **A.**   They can still proceed with the grievance and it's not --

12  you know, the issue that they're raising isn't a dead issue

13  because it's been rejected.

14  **Q.**   Okay.  So they're not roadblocked at the Step 1 if they

15  get rejected; they can file a Step 2 appeal.

16  **A.**   That's correct.

17  **Q.**   Okay.  And in that appeal, they can point out, hey, you

18  got it wrong.  This should not have been rejected.  This is my

19  Step 2 appeal and the reasons why; is that correct?

20  **A.**   That's correct.

21  **Q.**   And the facility, then, can look at it and go, yeah, we

22  got this wrong.  We're going to let you proceed with the

23  grievance, but we're still going to deny it.  Is that an

24  option?

25  **A.**   That's an option.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Redirect*
*Wednesday/October 30, 2024*

Page 74

1    **Q.**    Okay.

2    **A.**    Well, it's an option that after review they may change it

3    from a rejection to a response on the merits --

4    **Q.**    Okay.

5    **A.**    -- and address the issue.

6    **Q.**    And on Exhibit 8, on Page ID 74 where we note in the

7    ensuing pages and the other Step 3 grievance reports, there

8    were a lot of boxes checked "rejected," correct?

9    **A.**    Correct.

10   **Q.**    But standing here today, you can't look at that and say

11   which step that grievance was rejected, can you?

12   **A.**    No, I cannot.

13   **Q.**    Okay.  So it's possible it could have been rejected at

14   Step 1?

15   **A.**    Correct.

16   **Q.**    It also could have proceeded past, got a merits-based

17   response and rejected at Step 2?

18   **A.**    It's possible, yes.

19   **Q.**    Okay.  And then, so, you can't tell just looking at any of

20   these forms where it was rejected at?

21   **A.**    That's correct.  You can only see the final answer.

22   **Q.**    Okay.  I want to turn back to Exhibit No. 6.  And we

23   are -- I'm looking at -- it would be the second page of that

24   exhibit and it's Page ID No. 787.

25              So this is Exhibit -- or I'm sorry -- it's a Step 2

        *19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Redirect*
*Wednesday/October 30, 2024*

Page 75

1    grievance, correct?

2    **A.**    Yes.

3    **Q.**    And just to orientate you, it's Grievance No. 2141?

4    **A.**    Yes, it is.

5    **Q.**    Okay.  A prisoner files a Step 1 grievance.  They

6    articulate the who, what, where, why, when.  It's resolved at

7    Step 1 by a response.  If the prisoner doesn't like that

8    response, they can go to Step 2.

9    **A.**    That's correct.

10   **Q.**    And if they don't like that Step 2, this bottom page on

11   the Step 3 is the reason for appeal to Step 3 and they've got

12   to give you a -- the who, what, where, why, when, correct?

13   **A.**    Yes.

14   **Q.**    This particular grievance, if you look at the sentence

15   that she argues, "Because staff failed to delouse prisoners

16   coming from" -- I can't read that word -- "from the outside, is

17   a violation of my Eighth Amendment Constitutional right."

18           Did I read that correctly?

19   **A.**    That appears to be correct.

20   **Q.**    Okay.  Let's go a couple of pages back to Step 1 --

21           **MS. McGEHEE:**  You know, your Honor, I just object to

22   the extent that Mr. Dean is reading a portion of this grievance

23   that the grievant actually crossed out, so I don't think that's

24   appropriate.

25           **MR. DEAN:**  I don't see where it's crossed out there.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Redirect*
*Wednesday/October 30, 2024*

Page 76

1   My copy of Page ID 787, it clearly is able to be read, "because

2   staff failed to delouse prisoner."

3              **THE COURT:**  What's the exhibit again?

4              **MR. DEAN:**  It is Exhibit 6, and it's Page ID 787.

5              **THE COURT:**  And there is --

6              **MR. DEAN:**  At the bottom of that page there is her

7   Step 3 reasons for appeal.

8              **THE COURT:**  There -- I started to talk and then you

9   started talking over me, and the issue is -- continues.

10             The portion that says -- in the copy that I have

11  says, "Forcing me to take medication because staff failed to

12  delouse prisoners coming from the prison."  That part is

13  crossed out and initialed in the copy that I have.

14             **MR. DEAN:**  Okay.  Because this is the copy that we

15  have, and I have the Page ID number and I can show the Court

16  and opposing counsel.

17             **THE COURT:**  You can go ahead.

18             **MR. DEAN:**  Okay.  I can go ahead and ask him

19  questions or --

20             **THE COURT:**  Why don't you show it to opposing counsel

21  and then you can let me see it.

22        (Discussion held off the record.)

23             **MR. DEAN:**  Your Honor, I think the dispute is, we

24  think it's underlined and not crossed out.

25             **THE COURT:**  It very much looks crossed out to me.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Redirect*
*Wednesday/October 30, 2024*

Page 77

1      **MR. DEAN:**  Okay.

2      **THE COURT:**  And I don't know why it would be

3  initialed if it was just underlined.

4      **MS. McGEHEE:**  Right.

5      Thank you, your Honor.

6  **BY MR. DEAN:**

7  **Q.**  I'm going to flip to Exhibit No. 31.

8      **THE COURT:**  And they're obviously talking about the

9  plaintiffs, because you don't have as many exhibits.  I just

10  want to clarify who's Exhibits you're referring to.

11      **MR. DEAN:**  Yes.  Exhibit -- we use letters and

12  plaintiffs used numbers.

13      **THE COURT:**  Okay.

14      **MR. DEAN:**  I just wanted to continue the redirect

15  from the exhibit that plaintiff used.

16      **THE COURT:**  That's fine, I just wanted to make the

17  record clear.

18  **BY MR. DEAN:**

19  **Q.**  You were asked what would happen if the prisoner did not

20  receive a response from the facility and ask what their

21  timeline would be, so I want to clarify that.

22      Paragraph Z, which is on Page ID 606.

23  **A.**  Okay.

24  **Q.**  Okay.  That requires the MDOC to respond to a Step 1

25  grievance within 15 days after receipt, correct?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Redirect*
*Wednesday/October 30, 2024*

Page 78

1    **A.**   Correct.

2    **Q.**   So in the best-case scenario, the MDOC would timestamp a

3    grievance the day that it was received by the prisoner,

4    correct?

5    **A.**   Correct.

6    **Q.**   But that doesn't always happen, right?

7              **THE COURT:**   Timestamp it on the day it was received

8    by the prisoner?

9              **MR. DEAN:**   By the MDOC.

10             **THE COURT:**   All right.

11   **BY MR. DEAN:**

12   **Q.**   The date of received by the MDOC.

13   **A.**   Yes, that's correct.

14   **Q.**   Okay.  So in a perfect world, a prisoner would turn in a

15   grievance at Step 1 and it would be date stamped and a receipt

16   given by the MDOC that same day.

17   **A.**   Yes.

18   **Q.**   To your knowledge, that doesn't always happen.

19   **A.**   Correct.

20   **Q.**   Okay.  So for a prisoner, would they not look at their day

21   of turning it in as 15 days from the first day that they sent

22   it in?

23   **A.**   They may.  That's --

24   **Q.**   To be safe?

25   **A.**   Yes.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Redirect*
*Wednesday/October 30, 2024*

Page 79

1            **THE COURT:**  Mr. Russell -- Mr. Russell, I don't think

2       that what you're asking Mr. -- I'm sorry, Mr. Dean.  What

3       you're asking Mr. Russell does not comport with his statement

4       earlier that he doesn't know what happens, what period of time,

5       how the mails work.  Now you're sort of leading him in

6       questions suggesting that the day that the prisoner puts the

7       grievance in the mail slot, or whatever it is, that it should

8       be received the same day.  And, so, can you establish a

9       foundation for that before you continue to ask questions

10      suggesting that the date of the -- that it's sent by the

11      prisoner and the day it's received by the department are the

12      same day?

13           **MR. DEAN:**  Yeah.  And I'd like to approach that with

14      a hypothetical, and I thought I was trying to do that, but,

15      obviously, not.

16           **THE COURT:**  Well, it's just not -- it's inconsistent

17      with the testimony that Mr. Russell gave earlier that he's not

18      familiar with the mail processes, and so before you go down

19      this line of questioning, I just need some clarification of the

20      foundation for any questions --

21           **MR. DEAN:**  Okay.

22           **THE COURT:**  -- suggesting that those are the same

23      day.

24      BY MR. DEAN:

25      Q.   Well, let me clarify by saying, we're not really asking

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Redirect*
*Wednesday/October 30, 2024*

Page 80

1  you about whether you know about the mail, I just want to know

2  when a prisoner should start thinking that they have what their

3  time level would be when they don't receive a response from the

4  MDOC.  So we know the MDOC has to respond within 15 days.  If

5  the prisoner --

6          **MS. McGEHEE:**  Just object to the extent that it's

7  inconsistent with policy, what he's saying, because the policy

8  says they don't have to respond within --

9          **THE COURT:**  It does say that she shall be responded

10  to within 15 days, so --

11          **MS. McGEHEE:**  But --

12          **THE COURT:**  So I overrule that objection, and you'll

13  be able to address any discrepancies that you see later on.

14          **MS. McGEHEE:**  Thank you, your Honor.

15  **BY MR. DEAN:**

16  **Q.**   So in Paragraph Z where it says a Step 1 grievance shall

17  be responded within 15 business days after receipt, a prisoner,

18  who has not received a response in 15 days when they turned it

19  in, could reasonably expect that there's a problem, could they

20  not?

21          **MS. McGEHEE:**  Objection.  Leading.

22          **MR. DEAN:**  Would they --

23          **THE COURT:**  Sustained.

24          And your redirect has been leading.

25          **MR. DEAN:**  Okay.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Redirect*
*Wednesday/October 30, 2024*

Page 81

1  BY MR. DEAN:

2  **Q.**   What recourse would a prisoner have if they have not

3  received a response in 15 days?

4  **A.**   We would hope that they would send a kite to the grievance

5  coordinator asking, you know, where is my response?  I haven't

6  received a response.  That would prompt the grievance

7  coordinator to check records, and if they haven't gotten a

8  response, then to have -- have that -- cause that to move

9  forward and to communicate back with the prisoner, here's

10  what -- but, again, the policy still requires them to file a --

11  **Q.**   And how many time would they have after that 15 days has

12  gone by to file their Step 2 response?

13  **A.**   Ten business days.

14  **Q.**   And if they fail to do that, it could be rejected, or

15  would it?

16  **A.**   It could be rejected as untimely.

17  **Q.**   And what would a prisoner's options be at that point if

18  they were rejected at Step 2 as being untimely?

19  **A.**   They can appeal to Step 3, and if they have issues with

20  the time frames, they should be putting that in the Step 3

21  appeal.  For example, I -- you know, I didn't get this Step 2

22  form until such and such a date, and that's why, you know, I'm

23  appealing late to Step 3.

24  **Q.**   Okay.

25  **A.**   We take that into consideration.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Redirect*
*Wednesday/October 30, 2024*

Page 82

1   **Q.**   Thank you.

2           And I turn to Exhibit 23.  This was Ms. Clark's

3   Step 3 grievance report starting on Page ID 3667.

4           Opposing counsel pointed out a number of rejections

5   in this Step 3 report, correct?

6   **A.**   Correct.

7   **Q.**   But you have no way of knowing why, without looking at the

8   grievance, itself, why Ms. Clark's grievances were rejected

9   without looking at the Step 1 grievance?

10  **A.**   That's correct.

11  **Q.**   Okay.  Or it could have happened at Step 2.

12  **A.**   It could have happened at Step 2.

13  **Q.**   Okay.  And I want to point out Exhibit No. 10 in

14  Plaintiffs' Exhibit book.

15          If you look at page 2, and that's Page ID 923, do you

16  recognize what that document is?

17  **A.**   This is the receipt I spoke about that's automatically

18  generated from the local database, once they enter that into

19  the database at the facility.  This is the information that's

20  then sent back to the prisoner.

21  **Q.**   Okay.

22  **A.**   And it notifies them that, you know, your Step 1 grievance

23  has been received and what the dates are.

24  **Q.**   Okay.  So it gives a received date of the Step 1 grievance

25  in it?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Recross*
*Wednesday/October 30, 2024*

Page 83

1  **A.**   Correct.

2  **Q.**   And it gives a date due to it?

3  **A.**   Due date.  That's the date where we're obligated to give a

4  response back.

5  **Q.**   Okay.  And so this is what a prisoner would receive if

6  they -- to know that the MDOC received their grievance?

7  **A.**   That's correct.

8  **Q.**   And that's usually done how long after they receive the

9  grievance?

10  **A.**   I don't know how soon gets back to them, but as soon as

11  it's put in the database, the database generates this form

12  automatically.

13  **Q.**   Okay.

14  **A.**   That's my understanding.

15          **MR. DEAN:**  All right.  No further questions.

16          **THE COURT:**  Any brief cross-examine?  I ask that we

17  not go over information that you've already covered on your

18  cross.

19          **MS. McGEHEE:**  All right.  I won't, your Honor.

20                          -   -   -

21                                          (12:24 p.m.)

22                   **RECROSS-EXAMINATION**

23  BY MS. McGEHEE:

24  **Q.**   Just looking at the document that you were just looking

25  at.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Recross*
*Wednesday/October 30, 2024*

*Page 84*

1  **A.**   I'm sorry, can you --

2  **Q.**   Exhibit 10, Plaintiffs' Exhibit 10, the ECF 62-5 and

3  Page ID 923.

4  **A.**   Yes.

5  **Q.**   We have many grievances, but we don't have a form like

6  that for each of the grievances.  Is that something that is

7  always sent?  Do you know?

8  **A.**   Well, the prisoner may not have included it in their

9  package sent to the central office.  That's all I can tell you.

10  **Q.**   But we've asked for documents in this case and we haven't

11  received this type of memorandum for all the grievances we got.

12  **A.**   I -- I have no knowledge of who you asked and what you

13  asked.

14  **Q.**   All right.  And, so, turning your attention to Exhibit 31,

15  again, Plaintiffs' Exhibit 31, the grievance procedure policy

16  directive, Paragraph U, Page ID 605.

17  **A.**   Yes, I'm there.

18  **Q.**   So we already know that, according to the Michigan

19  Department of Corrections policy directive, they don't have to

20  respond within 15 days, even though the policy says they shall

21  respond in 15 days.  And this particular paragraph says, "If a

22  grievant chooses to pursue agreements that has not been

23  responded to by staff within required time frames, including

24  any extensions, the grievant may forward the grievance to the

25  next step of the grievance process within ten business days

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

1 after the response deadline expires."

2          That's what that says, correct?

3 **A.**    Correct.

4 **Q.**    And so you said that if a prisoner doesn't get a response

5 from the MDOC within 15 days, even though you're supposed to

6 get your response within 15 days, then what the prisoner could

7 do, they could kite their grievance coordinator and ask, what's

8 going on?  Why haven't I got a response?  That's what they

9 could do.

10 **A.**    That's what they could do, yes.

11 **Q.**    That would be their responsibility to check on why the

12 Michigan Department of Corrections hasn't done its job.

13 They're supposed to check on why that happened, correct?

14 **A.**    Yes.

15 **Q.**    And, meanwhile, the 10 days is ticking; is that correct?

16 **A.**    Theoretically.

17 **Q.**    What do you mean "theoretically?"  Ten days is ticking

18 from the time that they have to file an appeal --

19 **A.**    Not ticking.  If there's a reason for interruption and

20 they've kited us and we found out that they didn't get it and

21 then we, you know, correct that by sending them a Step 2 form

22 and -- or a response and, you know, they're still obligated,

23 then, to follow the time frame from the point at which they get

24 that if they've intervened.  If they haven't intervened, then,

25 you know, we can't do anything but just follow the timelines in

*Richard Russell - Court Exam*
*Wednesday/October 30, 2024*

Page 86

1   policy.

2   **Q.**   I see.  So if they haven't intervened, it's their fault

3   that the Michigan Department of Corrections didn't do its job

4   and file a response within 15 days?

5   **A.**   No, it's not they're fault.

6           **MS. McGEHEE:**  I don't have anything further.

7           **THE COURT:**  I have some questions for Mr. Russell

8   before you step down.

9           **THE WITNESS:**  Sure.

10                                                  (12:28 p.m.)

11  **BY THE COURT:**

12  **Q.**   I want to look at ECF No. -- I mean, Exhibit 2, and --

13  **A.**   In plaintiffs'?

14  **Q.**   In the plaintiffs', and ask the person who oversees the

15  creation of the grievance policy -- and I'm looking at, first

16  of all, the policy directive J7 describing the reasons for

17  rejection.  It says, "Two or more prisoners and parolees have

18  jointly filed a single grievance regarding a -- an issue of

19  mutual impact or submit identical individual grievances

20  regarding a given issue as an organized protest."

21          Now, looking at Exhibit 2, Page ID 734, is it your

22  opinion that that agreement -- that grievance constituted a

23  joint grievance?

24  **A.**   Again, I didn't see the other --

25  **Q.**   Mr. Russell, you need to --

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Court Exam*
*Wednesday/October 30, 2024*

Page 87

**A.**   I'm sorry.  I didn't see -- I would have to see all the
grievances that --

**Q.**   Well --

**A.**   -- the grievance coordinator looked at --

**Q.**   J7 said a single grievance.  So are you saying that when
the grievance coordinator is looking at whether it's a single
grievance, they can look at multiple grievances?

**A.**   What the policy says is, or duplicate grievances, not just
a single grievance.

**Q.**   That's not what the rejection is.  The rejection is joint
grievance, not duplicate grievance.

**A.**   Yeah.  Well, I'll take back the "duplicate" and substitute
the word "joint" in there.  The "joint" means they've filed on
the same issue with the same language, and those are issues
that we prefer to go to the warden forum, that's why we do it
that way.

**Q.**   Okay.  And so if they go to the warden's forum --

**A.**   Yes.

**Q.**   So let's have a hypothetical.  A number of prisoners say,
our food is poisoned.  We think there's rat poisoning in the
food, and they file grievances saying, I've been sick from rat
poisoning.  If they -- if multiple prisoners file a grievance
saying the food is making me sick, I think its poisoned, they
cannot file individual grievances?

**A.**   Again, it comes down to the language used on each

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Court Exam*
*Wednesday/October 30, 2024*

Page 88

1  grievance.  And I can't tell you, again, what the language is

2  here; however, in the case of every rejection, as I said

3  before, this goes through two paths.  Every rejection, it goes

4  up the administrative line to look at merits.  If it's got

5  health care concerns, then it goes to health care.  So each one

6  of the grievances filed, each individual grievance, whether

7  it's considered to be a joint or not, each one of them goes up

8  that line to look for issues of merit.

9  **Q.**   And I'm trying to -- I understand that there was agreement

10  at every level, that these were joint grievances, and I'm just

11  trying to figure out the limits of that or the lack of limits

12  of that.

13         So if there are -- and in the grievance that is shown

14  here, Page ID 734, the -- Ms. Clark is talking about her having

15  asthma, COPD.  She's talking about the fact that she has a

16  heart condition, that her chest hurts, that she's short of

17  breath, it's difficult to breathe, her heart races.  Because

18  other prisoners also say that they are experiencing symptoms

19  that they relate to the air, those are considered to be a joint

20  grievance?

21  **A.**   Again, I'd have to --

22  **Q.**   But this is the policy.

23  **A.**   You're asking me what I would do?

24  **Q.**   No.

25  **A.**   I'm telling you I can't -- no, I can't answer that

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Court Exam*
*Wednesday/October 30, 2024*

Page 89

1  question without seeing all the grievance on the issue.

2  **Q.**   Mr. Russell, I'm not asking you what you would do, I'm

3  asking you for your interpretation of the policy as someone who

4  is charged with overseeing the development of the policy

5  directive and any changes to it.  So I'm asking you that --

6  whether under the policy, under J7, if you look at the

7  definition, how -- a prisoner or a reviewer in court looks at

8  this and says this is a joint grievance.  There has to be a

9  basis for a reviewing court to be able to understand the basis

10  of the procedural rejection.

11  **A.**   Okay.  Again, I do not respond to these directly.  I have

12  specialists with the responsibility.  They --

13  **Q.**   I'm not asking you -- I'm asking you for your

14  interpretation.  I'm not asking you what other people did, I'm

15  asking you for your interpretation of J -- of paragraph J7 and

16  whether, looking at this grievance signed by one person who

17  described her symptoms, whether this looks to you to be a joint

18  grievance.

19  **A.**   My response is, I can't tell without looking at the whole

20  context, and I didn't do that at Step 1; I didn't do that at

21  Step 3 --

22  **Q.**   So --

23  **A.**   -- so I can't give you --

24  **Q.**   Where in the policy directive does it say that procedural

25  rejections can be based on the totality of circumstances rather

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Court Exam*
*Wednesday/October 30, 2024*

Page 90

1  than on the grievance that's submitted?

2  **A.**   It says it in the paragraph talking about joint

3  grievances.

4  **Q.**   It says that the grievance coordinator can look at other

5  factors other than what's in the four corners, and the policy

6  directive talks about things that need to be confined on the

7  page -- the grievance needs to be confined on the form,

8  including things like who -- the who, what, when, where, why.

9  They have to be confined in the form.  Are you saying that the

10  grievance coordinator can decide whether to reject the

11  grievance based upon factors or information that's not confined

12  in the form that is drawn from some other information that's

13  not spelled out?

14  **A.**   When a grievance response is put together, it's put

15  together not just on what's there.  That's the prisoner's view

16  of it, but it's until the context of policy and procedure,

17  so --

18  **Q.**  You're saying that a grievance can be rejected on

19  policy -- on procedural grounds for reasons that are not on the

20  form?

21  **A.**   They're in policy, as we listed here the reasons for

22  rejection in the policy.

23  **Q.**   Well, the rejection here -- I'm asking you a specific

24  rejection.  It says, "Joint grievance by two or more

25  prisoners."

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

1  **A.**    Yeah.

2  **Q.**    And that appears to be based upon information that is not

3  confined in the form.  Whereas the policy directive describes

4  the need that the prisoner can find his or her grievance, that

5  the -- the necessary information to the form.

6  **A.**    And I'm saying I don't know what the grievance coordinator

7  considered when they made that decision.

8  **Q.**    I'm asking you what the grievance coordinator is permitted

9  to consider under the policy.

10 **A.**    And I'm saying that they're permitted to look at a

11 number -- they've got a number of grievances on the same issue,

12 then they can use that.

13 **Q.**    So when it says -- when J7 says, a single grievance -- it

14 says, a single grievance regarding an issue, then the grievance

15 coordinator can look at multiple grievances and decide that

16 they're a single grievance?

17 **A.**    I don't understand your question.

18 **Q.**    The definition refers to -- of a joint grievance, refers

19 to a single grievance, but you're saying the grievance

20 coordinator can look at multiple grievances by multiple

21 prisoners and decide that it's a single grievance?

22 **A.**    They can look at it only in the context of that one reason

23 for rejection, and it's their judgment call whether that --

24 whether this is one of many that they've received, and the

25 administrative remedy by the department is to send it to the

*Richard Russell – Court Exam*
*Wednesday/October 30, 2024*

Page 92

1    warden's forum.

2    **Q.**   Let's take it back to the same thing, the hypothetical I

3    raised before.   Somebody is poisoning the food.   Multiple

4    prisoners say, "I'm poisoned.   I'm eating this food; it's

5    poisoning me."

6    **A.**   Uh-huh.

7    **Q.**   And the grievance coordinator can say, they're all

8    complaining about food poisoning, so reject it?

9    **A.**   So the administrative remedy for that is taking it to the

10   warden's forum, that's correct.

11   **Q.**   I'm talking about the grievance coordinator.

12   **A.**   Right.

13   **Q.**   So the grievance coordinator could say, you all need to

14   take this to the warden's forum; I'm going to reject this as a

15   grievance?

16   **A.**   That's correct.

17   **Q.**   And so -- and I understand this is not your -- that you're

18   not a lawyer.   How does a prisoner grieve?   How do they exhaust

19   their administrative remedies?

20   **A.**   They take it to the -- they exhaust it by taking it to the

21   warden's forum.

22   **Q.**   Okay.   So -- so, Mr. Russell, is it your understanding

23   that a prisoner can grieve an issue that they've taken to the

24   grievance -- to the warden's forum, that they can appeal to the

25   federal court?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Redirect*
*Wednesday/October 30, 2024*

Page 93

1  **A.**   I -- I'm not a lawyer, as you say.

2  **Q.**   Okay.  All right.  Thank you.

3  **A.**   My understanding is --

4  **Q.**   Okay.  Do you want to --

5  **A.**   Any administrative remedy that's been fully realized by

6  the prisoner, once that's done, they then have the ability to

7  appeal to court.

8       **THE COURT:**  Mr. Dean, you can follow-up if you like.

9                         -    -    -

10                                           (12:40 p.m.)

11                    **REDIRECT EXAMINATION**

12  **BY MR. DEAN:**

13  **Q.**   On paragraph J7 of that policy, the first part of that

14  sentence talks about two or more prisoners filing a joint

15  grievance, correct?

16  **A.**   Correct.

17       **MS. McGEHEE:**  Just object.  It's leading.

18       **THE COURT:**  No.  He -- the question has not been

19  asked.  He -- the question was referring to the definition, and

20  so you can go ahead with a non-leading question, Mr. Dean.

21  **BY MR. DEAN:**

22  **Q.**   Okay.  So in the middle of that paragraph 7, there is an

23  "or" in sentence, correct?

24  **A.**   Yes.

25  **Q.**   And the continuation of that sentence is, if they -- "or

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell – Redirect*
*Wednesday/October 30, 2024*

*Page 94*

1  if they submit identical individual grievances regarding a

2  given issue as an organized protest."

3          Is that what that says?

4  **A.**   Yes.

5  **Q.**   Okay.  So this paragraph 7, it's talking about two

6  different situations.

7  **A.**   That's correct.

8  **Q.**   One where two or more prisoners sign off on a single

9  grievance.

10  **A.**   That's correct.

11  **Q.**   Or the other situation is multiple prisoners file

12  identical grievances that are seen to be an organized protest.

13  **A.**   Yes.

14  **Q.**   So in the judge's hypothetical, if multiple people came

15  down with food poisoning and they're all legitimately sick and

16  filed identical grievances, would that be considered an

17  organized protest?

18  **A.**   Yes.

19  **Q.**   It would?

20  **A.**   Yes.

21  **Q.**   Why would it be considered an organized protest?

22  **A.**   Well, I -- again, what we're looking for, the grievance

23  coordinator is looking for, is the same language, you know,

24  copied from grievance to grievance.

25  **Q.**   Okay.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Richard Russell - Redirect*
*Wednesday/October 30, 2024*

Page 95

1   **A.**   That would be considered an organized --

2   **Q.**   But what's the significance of that, "an organized

3   protest" language in that paragraph?

4   **A.**   I'm not sure I understand the question.

5           **MR. DEAN:**  Okay.  Then that's all I have.  Thank you.

6           **THE COURT:**  Well, Mr. Russell, can you tell us what

7   an organized protest means under the policy?

8           **THE WITNESS:**  If multiple people use the -- pardon

9   me.  If multiple people use the same language in their

10  grievance at the same time on a singular issue, that would be

11  considered a protest under this, under this policy.

12          **THE COURT:**  So if there's an organized protest about

13  food poisoning, they can't grieve it?

14          **THE WITNESS:**  No.  They have all the grievance

15  process available to them all through Steps 1, 2 and 3.

16          **THE COURT:**  It will be rejected for procedural

17  reasons.

18          **THE WITNESS:**  And it goes up the chain to the warden

19  and it goes to the warden's forum and it goes to health care

20  for each individual issue that each individual states in there

21  with respect to any health care concern, and the merits are

22  considered and dealt with and the facility is obligated to

23  respond to those issues on every single rejection that has

24  merits.

25          **THE COURT:**  You're not getting to the merits.  All

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

Page 96

1   right.  I'm done with my questions.

2          Anyone -- are we going to let Mr. Russell go?  I

3   think so.

4          **MS. McGEHEE:**  Nothing else, your Honor.  Thank you

5   very much.

6          **THE COURT:**  Mr. Dean, who's your next witness?

7          **THE WITNESS:**  Ms. Latasha Bowa.

8                      LATASHA BOWA,

9          at 12:44 p.m., being first duly sworn by the

10         Court to tell the truth, was examined and

11         testified upon her oath as follows:

12                 DIRECT EXAMINATION

13  BY MR. DEAN:

14  **Q.**  Can you state you're name for the Court, Ms. Bowa?

15  **A.**  Latasha Bowa.

16  **Q.**  And are you currently employed by the MDOC?

17  **A.**  Yes.

18  **Q.**  And so what's your position, again, with the MDOC?

19  **A.**  Grievance coordinator.

20  **Q.**  And how long have you been with the MDOC?

21  **A.**  Since 2001.

22  **Q.**  And how long in the grievance coordinator position?

23  **A.**  Since 2010.

24  **Q.**  Okay.  You're familiar with the grievance process.  How

25  it's done at the women's Huron Valley prison?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

Page 97

**A.**   That's correct.

**Q.**   Is that where you've been for your entire grievance coordinator?

**A.**   Yes.  As grievance coordinator, yes.

**Q.**   Okay.  You haven't worked at any other facilities?

**A.**   I worked at Ryan Correctional Facilities and Huron Valley Men's.

**Q.**   Okay.  I'm going to start showing you some exhibits that we've submitted and ask you to walk us through the process of them.

         The first one I have is Exhibit A.  It's the grievance by Ms. Bailey, and the grievance identifier is 1116.  And I'm scrolling down to the page -- or the Step 1 grievance and I want to walk through the provisions on this.

         This is Page ID 668.  And, yeah, actually, if you want to look in the black box for --

**A.**   You know what, I left my glasses --

**Q.**   It's Tab No. A.  And if you see the numbers on the top, there's a 668 on the page.  If you look up here.  So it's 664.  Just scroll to 668, or flip over?

**A.**   Okay.

**Q.**   So there are a couple things on this grievance that once we go past, we won't have to go through on the other grievances.  But this grievance identifier at the top looks like it's handwritten.  Would you identify what that number is?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

Page 98

1   **A.**    Yeah.  The grievance identifier number is, the WHV

2   represents our facility.  18 is the year.  04 represents the

3   month.  And 1116 is the actual grievance identifier number that

4   the computer database generates.  And 03D is the code.

5   **Q.**    The code?

6   **A.**    Yeah.

7   **Q.**    What is the code on a grievance?

8   **A.**    Well, the code is what identifies what the complaint is.

9   So in this case the 03D is conditions complaint.

10  **Q.**    Okay.

11  **A.**    Uh-huh.

12  **Q.**    So if you see a number of grievances from the Women's

13  Huron Valley, you're going to see the year, the month and then

14  this four-digit code is the unique identifier for it?

15  **A.**    That's correct.

16  **Q.**    So would it be confusing if I just referred to it as the

17  1116 grievance?

18  **A.**    Well, there's 1116 for every year, so, yeah.

19  **Q.**    Just for purposes of our discussion.

20  **A.**    Yeah, for today, yeah, 1116 is fine.  I'll know.

21  **Q.**    Okay.  To the left of that I see a date received at

22  Step 1, and it looks like a stamped date.  What does that date

23  signify to you?

24  **A.**    Well, that date is usually the date that the grievance

25  coordinators have taken it from the mailbox and received it in

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

1  the office.

2  **Q.**   Okay.  And let's talk about that.

3        What's the procedure for collecting grievances at

4  Step 1 at the Huron Valley prison?

5  **A.**   So, we have the entire -- every department has their own

6  mailbox.  And so we have our main mailroom and they separate

7  all of the mail that goes throughout -- that's distributed

8  through all the different sections, and so the grievance

9  coordinators have a box.  So we basically just get our mail out

10  of the box.

11  **Q.**   And, so, a prisoner who wants to drop off a Step 1

12  grievance goes just to the grievance coordinator's box or --

13  **A.**   They have, like, a main box, I believe, where all of the

14  mail that's going throughout the institution goes.  So, like,

15  kites and stuff like that.

16  **Q.**   Okay.

17  **A.**   And then it gets picked up by staff.

18  **Q.**   And are there any boxes in any of the housing units to

19  drop off?

20  **A.**   Yeah, I believe all the boxes have a housing unit box.

21  **Q.**   Okay.  So a prisoner doesn't need to walk all the way to

22  the grievance coordinator to drop --

23  **A.**   No.

24  **Q.**   Okay.  This box is secured?

25  **A.**   Yes.

1  **Q.**   Okay.  Where do they get the blank Step 1 forms to fill

2  out?

3  **A.**   The unit.  Their unit.  Each unit has them.

4  **Q.**   Okay.  So they can just go up to an officer and ask for a

5  Step 1 grievance?

6  **A.**   Yes.

7  **Q.**   Okay.  This particular grievance looks like it has a

8  section filled in by the prisoner, but it's typed in.  Are

9  typewriters, is at the norm for grievances by prisoners?

10  **A.**   Yes.

11  **Q.**   Okay.  Can they handwrite them?

12  **A.**   Yes.

13  **Q.**   Okay.  That's not going to stop it from being accepted?

14  **A.**   No.

15  **Q.**   In this particular box underneath it has the name for

16  prisoner, their prisoner number, the date of incident and

17  today's date.  What are those two dates on the grievance?

18  **A.**   The date of incident would be the date that the prisoner

19  is alleging the complaint happened on, and then today's date

20  would be the day that they would have sent it, I'm assuming.

21  **Q.**   Okay.

22  **A.**   Yeah.

23  **Q.**   There's a section below that, on what attempt did you make

24  to resolve the issue.  What is supposed to be accomplished by

25  that?

**A.**    They're expected to try to attempt to resolve whatever the issue is with the staff.  If not on the line staff, maybe that supervisor or somebody else that's involved in the process.  So they have to try to attempt to resolve it first.

**Q.**    Okay.  The next section starts off with "state problem clearly."  Is this where the prisoner puts the actual, what they're grieving the system about?

**A.**    Yes.

**Q.**    And they're supposed to include information in that that would enable the department to know who they're grieving?

**A.**    Yes.

**Q.**    How specific do they need to be about the problem that they have?

**A.**    Well, when it says "clearly," we take that to mean clearly, so the who, what, when, where, why, how, what the issue is.  Usually it's all contained in that spot.

**Q.**    Okay.  Could you take a moment to look at this grievance and identify the prison officials that are named in it?

**A.**    I can't believe I walked in here and left my glasses out there.

**Q.**    Sorry.

**A.**    I see officer Miss Payne's name in here.

**Q.**    Okay.  Are there any other officials named in that grievance than Officer Payne?

**A.**    I don't see another name, just --

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

*Page 102*

1   **Q.**   Okay.

2   **A.**   -- officer Payne.

3   **Q.**   And moving on, there's a section for the response, and

4   that is handwritten.

5   **A.**   Yeah.

6   **Q.**   Who writes that in?

7   **A.**   The person that answered the grievance, so the respondent.

8   In this case, it was the prison counselor.

9   **Q.**   Okay.  And they -- that's where they would reject or

10  approve or resolve the issue is right there?

11  **A.**   They would write the response there, yes.

12  **Q.**   Okay.  I see -- if you flip the page, and it's

13  Page ID 669.  It has an official Step 1 grievance response.

14          And let me back up.  The page before, she is grieving

15  that Ms. Payne instructed her to get water from the mop closet

16  or the utility room?

17  **A.**   Yes.

18  **Q.**   Okay.

19  **A.**   That's what this one says.

20  **Q.**   So the response on the next page, on Page ID 669, is

21  talking about the misunderstanding between the prisoner and the

22  officer.

23  **A.**   That's correct.

24  **Q.**   Okay.  It was about drinking water, correct?

25  **A.**   Yes.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

Page 103

**Q.**   Okay.  I'm going to have you go to the next book, which is the Plaintiffs' Exhibit -- actually, that one right there.  And on tab No. 11, which is their Exhibit No. 11.

**A.**   Okay.

**Q.**   And for the Court, it starts on Page ID 3996.

This particular grievance form does not have any of the identifier numbers that we saw before, does it?

**A.**   No.

**Q.**   Does it have a grievance identifier written in?

**A.**   It does not.

**Q.**   Okay.  Does it have a "Received at Step 1" stamp on that?

**A.**   No.

**Q.**   Okay.  Down below in the section for response, is there anything from an MDO official that you can see on that?

**A.**   No.

**Q.**   Okay.  Is there any indication on this that anybody from the Department of Corrections ever saw this document?

**A.**   No.

**Q.**   Okay.  And I'm going to have you flip to page or Exhibit No. 10, which, for the Court, starts on page 922.

That first page has the same lack of grievance identifier, correct?

**A.**   Yes.

**Q.**   And the actual grievance, itself, is talking about a rash on the prisoner's face, right?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

*Page 104*

**A.** Yes.

**Q.** Okay. And, again, there's no indication that this was received by anybody from the MDOC because there's no identification that it was date stamped or in any other way?

**A.** That's correct.

**Q.** Okay. The next page over, which is Page ID 9123. Do you recognize what that document is?

**A.** This is a first step grievance receipt.

**Q.** Okay. When are those given out?

**A.** So, when we receive the Step 1 grievance, we issue it a number in the system and the prisoner gets this so that they realize we've received it and this is the number that has been assigned, and it has the due date on it and tells them when it's received.

**Q.** Okay.

**A.** Yep.

**Q.** If you'll flip to the next page, which is Page ID 924. Do you recognize what this document is?

**A.** So this one is a delay letter.

**Q.** What is that?

**A.** So that's when usually the responding staff has asked for an extension for one reason or another. You can get a 15-business-day extension, so this is alerting the prisoner that it's been extended for 15 business days.

**Q.** Okay.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

Page 105

**A.**   Yep.

**Q.**   And if you'll flip to the next page, which is Page ID 925.
This one does have an identifier number, doesn't it?

**A.**   It does.

**Q.**   Up at the top, 1116?

**A.**   Yes.

**Q.**   Okay.  There's no date stamp, though, there next to it,
right?

**A.**   No.

**Q.**   And there's a handwritten grievance coordinator and a
7/17/18, right?

**A.**   Yes.

**Q.**   Okay.  But the Step 2 appeal is talking about health care
refusing to interview her on this grievance at Step 1, and then
talk to you about black mold in this one, correct?

**A.**   Yes.

**Q.**   Okay.  So this 1116, I want to compare back in the
Defendant's Exhibit A, and the Page ID number, Page ID 668.
This is also listed an 1116, 03D grievance, correct?

**A.**   Yes.

**Q.**   But the grievance in this one is about a dispute between
an Officer Payne and the prisoner writing the grievance,
correct?

**A.**   That's correct.

           **MS. BAILEY:**  Objection, your Honor.  This is all

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

Page 106

1   leading.

2          **THE COURT:**  It's -- overruled.

3   **BY MR. DEAN:**

4   **Q.**   The two grievances, are they the same grievances at

5   Step 1, the same information provided?

6   **A.**   The information provided on the Step 1 is different from

7   the information provided on the appeal.

8   **Q.**   Okay.  And, in fact, the Step 1 on Exhibit 10 in the

9   plaintiff's that has no grievance identifier is also different,

10  correct?

11  **A.**   Yes.

12  **Q.**   Okay.  Can you think of any reasons why that would happen?

13         **THE COURT:**  Why what would happen?

14         **MR. DEAN:**  That there would be two Step 1's that are

15  different that are followed up at Step 2.

16         **THE WITNESS:**  No.

17  **BY MR. DEAN:**

18  **Q.**   Okay.  All right.  If you'll look in the Defendant's

19  Exhibit B?

20         **THE COURT:**  I want to stick with Exhibit 10 for a

21  moment and look at Page ID 926.  And it looks like it says

22  respondent's name, respondent's signature.

23         Is that the signature of a grievance coordinator?

24         **MR. DEAN:**  Which exhibit?

25         **THE COURT:**  Exhibit 10, and this is ECF No. 62-5,

       *19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

Page 107

1    Page ID No. 926.  There's a stamp saying received on July 23rd,

2    2018, and there's a signature next to Step 2 response, or

3    under -- in a section where it says Step 2 response.

4            So how do we have a stamp there, the received stamp?

5    That's my first question.  And the second question is whether

6    that is a signature in the area for Step 2 response, whether

7    that is a signature of a grievance coordinator.

8            **THE WITNESS:**  Is this for me to answer?

9            **THE COURT:**  Yes.

10           **THE WITNESS:**  Okay.  So the signature on that one is

11   the warden's signature.  That's Warden Brewer.  And the date

12   stamp indicates that this is a copy that we must have received,

13   because that's our signature, that stamp.

14           **THE COURT:**  Thank you.

15           **THE WITNESS:**  No problem.

16   **BY MR. DEAN:**

17   **Q.**   And going back on that, the person who sends the Step 1

18   appeal to the Step 2 grievance coordinator is who?  Who

19   actually sends the Step 1 appeal?

20   **A.**   The appeal, when they request it from us, the grievance

21   coordinators, we mail it out to the prisoner.

22   **Q.**   And then the prisoner fills it out?

23   **A.**   Yes.

24   **Q.**   And --

25   **A.**   And they send it back.

        *19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

Page 108

**Q.**   Okay.  So it's the prisoner providing the documents to the Step 2 respondent --

**A.**   Correct.

**Q.**   -- that they would want to be viewed at the Step 2 appeal?

**A.**   Right.

**Q.**   So back on Exhibit A, then, the Step 2 was received, and I want you to look -- and this is Page ID 666.

Are you there?

**A.**   Yes.

**Q.**   In the conclusion, what was the reason why this grievance was rejected?

**A.**   It says, "I have reviewed the Step 1 grievance and Step 2 grievance appeal forms, along with the respondent's investigation information.  The grievance was rejected in accordance with PDO 302130, prisoner/parolee grievances."

So it's considered rejected at Step 2.

**Q.**   Due to what?

**A.**   Based on that it's rejected.

**Q.**   I'm looking at the -- I'm sorry.  Right before the collusion, that last sentence, what was the reason stated for rejection?

**A.**   Before it says it's rejected at Step 2 due to an untimely request.

**Q.**   Okay.  Thank you.

And on Exhibit B, this is grievance -- and I'm

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

Page 109

1   looking at page 627.  You're there?

2   **A.**   Yes.

3   **Q.**   This is a grievance identifier for Grievance No. 4358.  Do

4   you see that?

5   **A.**   I do.

6   **Q.**   Okay.  And look down at Step -- let's go to the

7   Page ID 631.

8   **A.**   Okay.

9   **Q.**   Are you there?

10  **A.**   Yes.

11  **Q.**   What was the reason for the rejection on this grievance?

12  **A.**   So, it says untimely.

13  **Q.**   Okay.  And that would be because they didn't file it in

14  time?

15  **A.**   Correct.

16  **Q.**   The grievance procedure?

17  **A.**   Correct.

18  **Q.**   Okay.  And the page before that on 630, it was rejected at

19  Step 1 as being untimely.  Would that be fair?

20  **A.**   That's correct.

21  **Q.**   Okay.  I'm going to -- would have you turn to Exhibit C in

22  the book, and I want to scroll down to exhibit --

23       **THE COURT:**  I'm sorry, I want to stick with

24  Exhibit B, and Page ID 630.

25       It says that the date of the incident was the 17th,

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

*Page 110*

1   September 17th.  The date of signing the grievance was

2   September 22nd, and it was received on September 30th.

3           So, Ms. Bowa, is it untimely -- was it deemed

4   untimely because it was received on September 30th?  Is that

5   the -- what was untimely about it?

6           **THE WITNESS:**  So, that alone does put it outside of

7   the time frame.  And then also within the body of it, it says

8   August 2019, so it's referencing some more dates that's pushing

9   it further away from the allowable time limits.

10          **THE COURT:**  I'm sorry, I'm not seeing where you're --

11          **THE WITNESS:**  So if you look down into where it says,

12  "State the problem clearly," it's referencing August 2019 in

13  there.

14          **THE COURT:**  Well, first it says on September 17th and

15  before.

16          **THE WITNESS:**  And that's still outside of the time

17  frame if we received it on September 30th.

18          **THE COURT:**  All right.  Thank you.

19          **THE WITNESS:**  Yes, ma'am.

20  **BY MR. DEAN:**

21  **Q.**   And Exhibit C -- and I'm at Page ID 635.

22          **MS. BAILEY:**  I'm sorry, Mr. Dean, what grievance are

23  you on?

24          **MR. DEAN:**  Sorry.  On I'm Exhibit C.  Is that what

25  you're -- Sorry.  And it's Page ID 635, the Step 1.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

1  BY MR. DEAN:

2  **Q.**   This particular grievance, could you tell us who was the

3  person being grieved in it?

4  **A.**   It says nurse/ARNP Ms. Pamela Olmstead.  Also, the nurse

5  supervisor, Mr. B. Tinsley, RN.

6  **Q.**   Okay.

7  **A.**   That's all the names I can see.

8  **Q.**   And I'm going to switch over to Exhibit H in the book.

9  **A.**   Okay.

10  **Q.**   And it is at Page ID 789.  And I'm going to -- the writing

11  is kind of light on it, but can you tell who the person is

12  that's being grieved in this grievance?

13  **A.**   I see a Hum, Hum and Warden Brewer.  I see Ms. Fisher,

14  Carmen McIntyre, and I think those are all the names I can see.

15  **Q.**   Okay.  And now I'm going to switch to Exhibit G, and I am

16  on Page ID 3876.  This is a grievance by prisoner Bailey; is

17  that correct?

18  **A.**   Yes.

19  **Q.**   Okay.  And I want you to look down at the problem stated

20  clearly.  Who is the person being grieved in that grievance?

21  **A.**   On this one, looks like Mr. Jackson, Huron Valley

22  maintenance.

23  **Q.**   Okay.

24  **A.**   That's all I see for names in here is Mr. Jackson.

25  **Q.**   And just raise your voice a little bit.

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

Page 112

1   **A.**   Mr. Jackson from maintenance.

2   **Q.**   Okay.  Anyone else?

3   **A.**   I don't see another name.

4   **Q.**   Okay.  I'm switching over to Exhibit D and I'm at

5   Page ID 730 at the top.

6            And just for clarification, this is --

7            **THE COURT:**  Mr. Dean, I'm sorry, I do need to go back

8   to Exhibit G.

9            **MR. DEAN:**  Okay.

10           **THE COURT:**  I don't see the response on ECF No. 3876.

11  I don't see the Step 1 response.

12           **MR. DEAN:**  You're looking at Exhibit G, your Honor?

13           **THE COURT:**  G, as in girl.

14           **MR. DEAN:**  Yes.  It looks -- Page ID 3877.

15  **BY MR. DEAN:**

16  **Q.**   Are you there, Ms. Bowa?

17  **A.**   Yeah.

18  **Q.**   What is this form?

19  **A.**   The response form?

20  **Q.**   Yeah.

21  **A.**   3877?

22  **Q.**   Yes.

23  **A.**   Yep.  This is a Step 1 response for that 929 grievance

24  that we were looking at before.

25  **Q.**   Yeah.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

Page 113

1        **THE COURT:**  I'm not seeing whether it was denied

2   or --

3        **MR. DEAN:**  I'll ask the witness.

4   BY MR. DEAN:

5   **Q.**   There's a box there called "Decision summary."

6   **A.**   Yes.

7   **Q.**   What does that say?

8   **A.**   It says the issue is unresolved.

9   **Q.**   And is that considered the response at that level?

10  **A.**   Not really.

11  **Q.**   Okay.  Well, can you expand on that?

12  **A.**   Well, it should be resolved, denied, partially resolved.

13  **Q.**   Okay.

14  **A.**   Basically.

15  **Q.**   But if -- there was a Step 2 appeal to this, correct?

16  **A.**   I'd have to look and see.

17  **Q.**   Well, if you look at Page ID 3874.

18  **A.**   Yes.

19  **Q.**   Okay.

20       **THE COURT:**  So it looks like on 3875 it was rejected

21  at Step 2 as untimely.

22       **THE WITNESS:**  Yes, ma'am.

23       **THE COURT:**  But there's no -- at Step 1, just to

24  clarify, there was no rejected, denied or resolved at Step 1?

25       **THE WITNESS:**  Correct.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

*Page 114*

1        **THE COURT:**  Okay.  Thank you.

2        You can go ahead.

3  **BY MR. DEAN:**

4  **Q.**   Okay.  On Exhibit D, I am at Page ID 730.

5  **A.**   Okay.

6  **Q.**   And this is grievance No. 1981; is that correct?

7  **A.**   Yes.

8  **Q.**   Okay.  Who were the individuals that were named in this

9  grievance in the "State the problem clearly" section?

10  **A.**   So, it says -- I see the Hum, medical director, Warden

11  Brewer, Heidi Washington.  And those are all the names I see.

12  **Q.**   Okay.  And then if you'll look at Exhibit E in the book.

13  And I am at Page ID 734?

14        **THE COURT:**  B, as in boy?

15        **MR. DEAN:**  E, as in eagle, I think.  Yep.

16  Page ID 734.

17        **THE WITNESS:**  Yes.

18  **BY MR. DEAN:**

19  **Q.**   This is a Step 1 grievance?

20  **A.**   Yes.

21  **Q.**   And on this particular one, who were the individuals named

22  in the grievance?

23  **A.**   So you have Warden Stewart, Warden Brewer, Heidi

24  Washington.  And those are all the names I see listed.

25  **Q.**   Okay.  And if you'll scroll up or flip back to

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

Page 115

1   Page ID 732.

2   **A.**   Okay.

3   **Q.**   And this is the Step 2 appeal?

4   **A.**   Yes.

5   **Q.**   Okay.  And it looks like the next page over, at

6   Page ID 733, what is this document?

7   **A.**   You said 733.  Hang on.

8           So, 733 looks like the Step 2 response --

9   **Q.**   Okay.

10  **A.**   -- to that grievance.

11  **Q.**   And what were the reasons for being rejected?

12  **A.**   It says it was rejected as being untimely.

13  **Q.**   Okay.  At Step 2?

14  **A.**   At Step 2.

15  **Q.**   Okay.  And if you'll look in the book on Exhibit F.  And

16  I'm at Page ID 738.

17  **A.**   Okay.

18  **Q.**   If you're looking down on that Step 1 grievance, can you

19  tell me who the person being grieved is?

20  **A.**   This just says, "Spoke with the COs."

21  **Q.**   And what's that HU4?

22  **A.**   H-U usually can mean housing unit.

23  **Q.**   Okay.

24  **A.**   I don't see it on here, though.

25  **Q.**   If you look --

    *19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

Page 116

1   **A.**   Oh, I do.

2   **Q.**   Okay.

3   **A.**   CO of Housing Unit 4.

4   **Q.**   Okay.  It doesn't name any individual by name

5   specifically?

6   **A.**   No, it does not.

7   **Q.**   Okay.  And if you'll scroll or flip back to page -- just

8   take a look real quick.

9          Okay.  On Page ID 737, right before the conclusion,

10  the sentence or two above that, does that give the reason why

11  this appeal was rejected?

12  **A.**   So this one says the grievance complaint is vague.

13  **Q.**   And that would be at Step 1, correct?

14  **A.**   Yes.

15  **Q.**   Okay.

16  **A.**   That was -- yes.

17  **Q.**   What about -- if you look down right before the

18  conclusion, they talk about the Step 2 investigation.  What was

19  the reason for rejection?

20  **A.**   It says the investigation reveals that the Step 2

21  grievance appeal was due to the grievance coordinator on

22  6/14/2016.  The grievance coordinator did not receive the

23  Step 2 grievance appeal form for this grievance until

24  7/27/2016.

25  **Q.**   Okay.  And what's the next sentence after that?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

Page 117

| | |
|---|---|
| 1 | **A.**   "The Step 2 appeal is, therefore, untimely." |
| 2 | **Q.**   Okay.  And if you'll look at Exhibit J. |
| 3 | I'm sorry, skip that one. |
| 4 | Okay.  Yeah, Exhibit J.  Sorry. |
| 5 | This one does not have a Page ID identifier.  Do you |
| 6 | know the reason for that? |
| 7 | **A.**   This is -- looks like the Step 3 decision. |
| 8 | **Q.**   Okay. |
| 9 | **A.**   Yeah.  They don't usually have it at the top.  It's listed |
| 10 | in the block down there under grievance ID number. |
| 11 | **Q.**   Can you flip through to the second-to-last page? |
| 12 | **A.**   Okay. |
| 13 | **Q.**   You know, I don't have any questions on that one. |
| 14 | **A.**   Okay. |
| 15 | **Q.**   I want to turn to the Plaintiffs' exhibits briefly, so if |
| 16 | you want to switch to that notebook.  And I'd like you to look |
| 17 | at their Exhibit No. 16. |
| 18 | **THE COURT:**  I don't have anything under 16. |
| 19 | **MR. DEAN:**  Did you guys give her a book? |
| 20 | **THE COURT:**  I have a book, but my -- there's nothing |
| 21 | under Tab 16.  I'm sure that was just a mistake, but I don't |
| 22 | have it. |
| 23 | **MS. LORD:**  I can give you my copy. |
| 24 | **THE COURT:**  Thank you. |
| 25 | **MS. LORD:**  Sorry about that, your Honor. |

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

Page 118

1      **THE COURT:**  It happens.

2      Thank you.

3  BY MR. DEAN:

4  **Q.**   So I'm looking at Exhibit 16, and it should be

5  Page ID 3732 on that.

6  **A.**   32.  Okay.

7  **Q.**   Can you identify -- and this is grievance No. 0081, and

8  it's Plaintiffs' Exhibit 16.  Can you identify who is being

9  grieved in this grievance?

10  **A.**   So it lists Officers Clement and Christian, Director

11  Jones, Hum Tinsley, Nurse Trainer, Thomas, McIntyre, Robertson,

12  RCA Williams, Dr. Alloys, Lieutenant Perell, Rum Paige

13  (phonetic).

14  **Q.**   Okay.

15  **A.**   And I think that's everybody.

16  **Q.**   Thank you.

17      And if you look at the page right before that, it's

18  Page ID 3731.

19  **A.**   Okay.

20  **Q.**   Is there a reason for rejection for the Step 2?

21  **A.**   It says the grievance was rejected and recoded at Step 2

22  as grievance is untimely.

23  **Q.**   Okay.  Now, if you'll flip in the book to Exhibit 17.

24      Can you tell me when this -- I'm at Page ID 3687.

25      Can you tell me when this grievance was date stamped

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

*Page 119*

1  at Step 1 being received by the MDOC?

2  **A.**   July 17th, 2023.

3  **Q.**   Okay.  And can you look below and tell me who is being

4  grieved in this one?

5  **A.**   This one lists Dr. Ellis, Ann Tran and Jeremy Howard and

6  Heidi Washington.  And I think that's it.

7  **Q.**   Okay.  I want you to turn to Exhibit No. 18.  And I'm at

8  page 3817.

9         Can you tell me the date that this was received by

10 the MDOC at Step 1?

11 **A.**   July 30th, 2020.

12 **Q.**   Okay.  And can you tell from the grievance who is being

13 grieved in this one?

14 **A.**   Director Heidi Washington, Warden Howard, Deputy Walton,

15 Rum Jackson, and I think that's everybody.

16 **Q.**   Okay.  And then below it was rejected for having multiple

17 issues.  What does that mean?

18 **A.**   Means that there were multiple complaints contained in the

19 one grievance.

20 **Q.**   Okay.  And are grievances in the MDOC required to have

21 only a single issue?

22 **A.**   That's correct.

23 **Q.**   Okay.  If you'll flip to Exhibit No. 19.  And --

24        **THE COURT:**   I want to ask you about Exhibit 18.

25        **THE WITNESS:**   Okay.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Direct*
*Wednesday, October 30, 2024*

Page 120

1          **THE COURT:**  All right.  The allegation is these are

2     unsanitary living conditions that Ms. Clark said exacerbated

3     her health issues.  I'm wondering how she should have grieved

4     those issues.  Are you saying that those should have been --

5     and I don't know whether you're the one to respond to this,

6     that she should have had one grievance for feces and urine on

7     the floor and the walls, a separate one for black mold in the

8     shower cells?  How should these allegations of unsanitary

9     living conditions been grieved in order to avoid it being

10    considered multiple issues?

11         **THE WITNESS:**  Well, it's left up to interpretation

12    for the grievance coordinator who is reading and coding it at

13    Step 1.  In this case it was Miss Henderson at that time, but

14    there is an assumption that they'll kind of stick clear to one

15    issue.  And so even though she's listed, just from reading from

16    what I can see, a couple of different issues with the room, she

17    also mentioned, like, health care, health issues, and so it's

18    almost, like, it's tying all that into one grievance, which

19    would look like multiple issues.

20         **THE COURT:**  When you say that it's left to the

21    discretion of the grievance coordinator whose reading it, might

22    one grievance coordinator see this as a single grievance that

23    the living conditions are exacerbating her health issues?

24         **THE WITNESS:**  I mean, you could, honestly.  It just

25    depends on what they see when they read it.  And in this case,

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

Page 121

1   she saw that it represented multiple issues.

2           **THE COURT:**   Okay.   All right.   Thank you.

3   BY MR. DEAN:

4   **Q.**   Does a prisoner in that case, if it's rejected and they

5   don't agree with that rejection reason, do they have recourse?

6   **A.**   The kite for an appeal.

7   **Q.**   Okay.   For a Step 2 appeal?

8   **A.**   For a Step 2 appeal.

9           **THE COURT:**   And as I said, Mr. Dean, I've handled

10  probably hundreds of these, and so you don't have to go through

11  the basics.

12          **MR. DEAN:**   Absolutely.

13  BY MR. DEAN:

14  **Q.**   On 19, looking at Page ID 3772.   First of all, when was

15  this grievance received at Step 1 by the MDOC?

16  **A.**   This is December 1st, 2020.

17  **Q.**   Okay.   And who was being grieved in it?

18  **A.**   This was shift command, Nurse Terrell, Officer Holsey.   I

19  think that's it.

20  **Q.**   Okay.   And what was the subject matter of this grievance?

21  **A.**   Do you want me to read it or do you want me to --

22  **Q.**   No, just summarize it.

23  **A.**   It looks like she's saying that she was awakened by the

24  officer, told to pack up, she was being moved to the infirmary,

25  and was informed that this decision was made by the nurse.

    *19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Direct*
*Wednesday, October 30, 2024*

Page 122

1    She goes on to say, "I have been rereleased from the

2    hospital" -- or "released from the hospital" -- I'm sorry --

3    "and had no knowledge that other prisoners were being released

4    from the infirmary."

5    **Q.**   What's the last sentence of that?

6    **A.**   The last sentence says, "This move was made in

7    retaliation, as I had previously filed a grievance against

8    Nurse Terrell."

9    **Q.**   Okay.  And can you turn to Exhibit 20 in your book?

10   **THE COURT:**  Did you say 20?

11   **MR. DEAN:**  20, yep.

12   **BY MR. DEAN:**

13   **Q.**   And I am at Page ID 3821.

14   **A.**   Yep.

15   **Q.**   Okay.  First of all, what was the date this was received

16   by the MDOC at Step 1?

17   **A.**   August 4th, 2020.

18   **Q.**   Okay.  And who were the individuals being grieved in this?

19   **A.**   So this one says nurse supervisor, doctor, Sergeant Hales,

20   Rum Jackson, Dr. Sheridan, and PC Valdez, Rum Jackson, Ares

21   Hill.  And I think that might be everybody.

22   **Q.**   Okay.  And if you would turn to Exhibit 21.  And I'm

23   almost finished.  And I am specifically at Page ID 3784.

24   And my first question, once you're there, when was

25   this received at Step 1 by the MDOC?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 123

1   **A.**   November 10th, 2020.

2   **Q.**   Okay.  And who were the individual or individuals who were

3   being grieved in this particular grievance?

4   **A.**   It says COs, the nurses, Dr. Sheridan and Sergeant Walker.

5   And that's it.

6   **Q.**   Okay.

7            **MR. DEAN:**  That's all the questions I have for you

8   right now.

9            **THE WITNESS:**  Okay.

10           **THE COURT:**  Who's cross-examining.

11           **MS. BAILEY:**  I am, your Honor.

12                          -   -   -

13                                                        (1:30 p.m.)

14                        **CROSS-EXAMINATION**

15   **BY MS. BAILEY:**

16   **Q.**   Good afternoon, Ms. Bowa.

17   **A.**   Hi.

18   **Q.**   Hello.  My name is Ms. Bailey.  And earlier today you

19   testified that you have worked as a grievance coordinator at

20   WHV facility since approximately 2010, right?

21   **A.**   That's correct.

22   **Q.**   How many grievance coordinators were there with you at WHV

23   between 2016 and 2020?

24   **A.**   The -- we have two assigned.  We didn't have two full time

25   during the whole time, though.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 124

1   **Q.**   So for a period of time, it was just you?

2   **A.**   That's correct.

3   **Q.**   When was that?

4   **A.**   I don't know right off the top of my head, I just know

5   that in that time frame, the partner that I originally had was

6   off and he hadn't vacated the position yet, so they hadn't

7   filled it yet.

8   **Q.**   Do you recall for how long you were the only grievance

9   coordinator, approximately?

10  **A.**   About 18 months.

11  **Q.**   And how many grievance -- grievances does the grievance

12  coordinators receive on a daily basis, on average?

13  **A.**   Daily, it can range right now anywhere from 4 to 10.

14  **Q.**   And that's all steps?

15  **A.**   Well, at all steps, it depends.  So for each day,

16  somewhere roughly around 10, I guess you could say, for both,

17  yeah.

18  **Q.**   And those are coming to you through the mail system,

19  right?

20  **A.**   That's correct.

21  **Q.**   And as I understand it, the forms are available in various

22  locations for Step 1 for the -- for the inmates to grab to fill

23  out.  For example, the housing units is one place they can get

24  it, right?

25  **A.**   That's correct.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 125

1 **Q.**   And they can't hand their filled-out Step 1 grievance to

2 you or drop it in your office, right?

3 **A.**   That's correct.

4 **Q.**   They have to put it in the mailbox?

5 **A.**   Yes.

6 **Q.**   You testified earlier that there are mailboxes for them to

7 submit grievances in the housing units?

8 **A.**   I believe so.  I know we have mailboxes there, but to be

9 honest with you, I'm not a hundred percent sure that those are

10 strictly for grievances.  I know that we have mailboxes in a

11 central location in between the east and the west, like, by the

12 chow hall, and so that may be where they put those.  I'm not a

13 hundred percent sure.

14 **Q.**   Okay.  And is your answer the same from 2016 to 2020,

15 because that's the time period I'm looking at?

16 **A.**   Yeah.

17 **Q.**   Okay.  So you're not a hundred percent sure if they're

18 allowed to submit the grievances in the housing units?

19 **A.**   I'm not, only because I haven't been in the housing units

20 in so long, I don't know.  I know we used to use those boxes

21 for that back when it was mens, though.

22 **Q.**   And that's before the time period we're interested in?

23 **A.**   Right, exactly.

24 **Q.**   Okay.  So the inmates or the grievants can submit their

25 Step 1s in the mail system, it gets sent to mail, central mail,

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 126

1  right?

2  **A.**   Right.

3  **Q.**   In the facility.

4  **A.**   Yes.

5  **Q.**   And they are responsible for sorting the mail, correct?

6  **A.**   That's correct.

7  **Q.**   Do you know what they're sorting it -- what else they're

8  sorting besides grievances going to the grievance coordinator?

9  **A.**   All the mail.

10  **Q.**   Okay.  So U.S. Mail is in the same place?

11  **A.**   That's correct.

12  **Q.**   And kites are in the same place?

13  **A.**   That's correct.

14  **Q.**   And maybe even Step 3s that are not going to you but are

15  going to Lansing, those are in the same place?

16  **A.**   Yes.

17  **Q.**   And some of that mail is getting -- having to get looked

18  at or reviewed, especially outgoing mail, correct, for

19  contraband?

20  **A.**   Yes.

21  **Q.**   Okay.  And so when you receive a Step 1, if it gets

22  rejected, are you sending the notice of the rejection back to

23  the inmate through the mail?

24  **A.**   Yes.

25  **Q.**   If it goes -- if you are sending a Step 1 to a respondent

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

1   to respond, so not a rejection but is actually getting looked

2   at by respondent, are you sending that Step 1 to the respondent

3   through the mail?

4   **A.**   They have the mailbox, so all the staff have individual

5   mailboxes, so that's where it would go, in the staff's mailbox.

6   **Q.**   Okay.  And when the respondent makes a determination, is

7   that sent back to you before it's sent to the grievant?

8   **A.**   Yes, that's correct.

9   **Q.**   Okay.  And, then, so you send that out to the grievant,

10  the determination at Step 1, right?

11  **A.**   That's correct.

12  **Q.**   Through the mail?

13  **A.**   Yes.

14  **Q.**   So if a grievant is waiting to receive a Step 2 response,

15  they can kite you to ask for an update, right?

16  **A.**   Yes.

17  **Q.**   Have you ever represented to grievants that, you know,

18  it's coming and they won't be penalized if it's taking a while

19  to get a response back?

20  **A.**   Say that again.

21  **Q.**   Have you ever represented to a grievant that their

22  response to their Step 1 isn't ready yet, it's going to come

23  and they won't be penalized if it's late?

24  **A.**   Yeah.  They're never penalized.  The prisoner is never

25  penalized if the Step 1 response is late.  That's not on them.

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 128

1   **Q.**   It doesn't impact the response time frame at Step 2?

2   **A.**   No, because they can still go to Step 2.  They have that

3   due date, and so that due date in the policy says that you can

4   kite to go to the next step even if you haven't received it.

5   **Q.**   So they have to -- not -- they can't just check with you

6   on the status of the Step 1, they have to affirmatively ask you

7   for the Step 2 so that they can fill that out and submit it

8   before the 10-day window after the 15-day response time, right?

9   **A.**   Right.

10  **Q.**   Okay.

11  **A.**   Well, after the response was due, yes.

12  **Q.**   Right.  And they have to kite that through the mail?

13  **A.**   Yes.

14  **Q.**   And they get the Step 2 form back from you through the

15  mail?

16  **A.**   Yes.

17  **Q.**   And then they have to fill it out, right?

18  **A.**   Yes.

19  **Q.**   And then they send it to you through the mail?

20  **A.**   Yes.

21  **Q.**   Can any -- at any point in this back and forth, can a

22  grievant hand it to you?

23  **A.**   No.

24  **Q.**   Have you ever had anyone try?

25  **A.**   I can't say that I have, because we have an

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

*Page 129*

1    interdepartmental mail process, and that's what we use.

2    **Q.**    Your expectation is they're going to use the mail for the
3    grievance process?

4    **A.**    That's correct.

5    **Q.**    Okay.  So when they get a response back at Step 2, you are
6    sending that to them through the mail?

7    **A.**    That's correct.

8    **Q.**    And they are filling out Step 3 right there on that form
9    if they're going to proceed to Step 3, correct?

10   **A.**    That's correct.

11   **Q.**    And then they're putting it back in the mail to be sent to
12   Lansing for review by Mr. Russell's team, right?

13   **A.**    Right.

14   **Q.**    Okay.  We're going to look at a couple of these.  I can't
15   do it in the same order as Mr. Dean because he went too fast
16   for me.  So if you can go ahead and the white, the white
17   binder, yep.  We're going to look at Plaintiffs' Exhibit 24
18   first.  That's ECF 177-4.  And I'm going to direct you to
19   Page ID 3876.

20            And this is a Step 1 grievance form for grievance
21   numbers ending 0929, right?

22   **A.**    Yes.

23   **Q.**    Okay.  So -- and the today's date, that's filled out by
24   Ms. Bailey, right?

25   **A.**    Yes.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 130

1    **Q.**   And she has it as February 26th, 2020, right?

2    **A.**   Yes.

3    **Q.**   And she, in the first, like, box here when she attempted

4    to resolve the issue, she's describing a conversation she had

5    with Mr. Jackson/maintenance on February 24th, right?

6    **A.**   Yes.

7    **Q.**   Okay.  And she -- if you read this, you'll see that she

8    asked for Mr. Jackson's supervisor's name, right?

9    **A.**   It does say that, yes.

10   **Q.**   And he declined to give it to her?

11   **A.**   No, I cannot give you that information.  Yes, that's what

12   it says.

13   **Q.**   And it looks like she also asked the housing unit officer

14   for the name of the maintenance supervisor as well and was

15   unsuccessful in obtaining it, right?

16   **A.**   Yes.

17   **Q.**   Okay.  So then in the next section, state problems

18   clearly, she outlines her grievance, correct?

19   **A.**   Yes.

20   **Q.**   And it says here that the -- I'm paraphrasing -- that the

21   housing unit ventilation system in Dickinson was shut off and

22   that she confronted Mr. Jackson about it, right?

23   **A.**   Yes.

24   **Q.**   Okay.  And she asked him to turn it back on, correct?

25   **A.**   Turn the ventilation back on, yeah.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

**Q.**   That's okay.

**A.**   I'm just trying to read it.  I don't know what it says
unless I read it.

**Q.**   This is flexible if you want to pull it down to your mouth
and not your nose.  There you go.

**A.**   So, yeah, I can see where she's talking about the
Dickinson ventilation being shut off.  Mr. Jackson stated, "I
know," and he's not turning it back on, it says.

**Q.**   And then she writes here, "I informed Mr. Jackson that it
is very difficult to breathe and I am an asthmatic.  I'm
experiencing coughing, shortness of breath, nosebleeds,
tightness in my check, et cetera."

          Do you see that?

**A.**   Yes, I do see that.

**Q.**   She also states -- I'm skipping a little bit here -- "The
air inside of my -- of the housing units are thick and has a
musty odor.  The windows cannot be opened to let in flesh air.
There is no fresh air circulating within the housing unit."

          Do you see that?

**A.**   I do.

**Q.**   And skipping kind of to the bottom, she grieves that
Mr. Jackson/maintenance has knowingly violated her Eighth
Amendment rights, and she states a case law here.  And then do
you see that?  Do you see here?

**A.**   I do.

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

*Page 132*

1  **Q.**   Okay.  And then the next paragraph she identifies a policy
2  that's being -- that's not being followed, right?
3  **A.**   Yes.
4  **Q.**   The humane treatment policy?
5  **A.**   Yep.
6  **Q.**   Okay.  And she signs this on February 26th, 2020, right?
7  **A.**   Yes.
8  **Q.**   Okay.  And if you go to the next page, Page ID 3877.  You
9  looked at this earlier.  This is the -- this is the grievance
10  response form, right?
11  **A.**   Yes.
12  **Q.**   So she wasn't rejected at Step 1 here, correct?
13  **A.**   No.
14  **Q.**   Okay.  We looked at the decision summary.  It says, "This
15  issue is unresolved," right?
16  **A.**   Yes.
17  **Q.**   And so it hasn't been rejected, but it also hadn't been
18  denied, correct?
19  **A.**   That's correct.
20  **Q.**   All right.  If you look at the investigation summary, it
21  says that they emailed Mr. Jackson.  He doesn't recall this
22  conversation, and there's reference to an attachment.  Do you
23  see that?
24  **A.**   Where?  Hang on.  I don't see that.  Is that on the
25  response here?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 133

1   **Q.**   In the investigation summary there's, like, two

2   paragraphs.

3   **A.**   Okay.

4   **Q.**   The first one's much skinnier.  At the end of it is a

5   parentheses that says, "See the attached statement."

6           Do you see that?

7   **A.**   Oh, it does say, "See attached statement," yeah.

8   **Q.**   I don't have an attached statement, are you aware of one

9   being in the record?

10  **A.**   Not from 2020, no, ma'am.  I don't -- I don't know.

11  **Q.**   Okay.  So this issue is unresolved, what does that mean?

12  What --

13  **A.**   I'm not really sure.

14  **Q.**   Is there anything in the policy?  Is there a designation

15  in the policy for unresolved?

16  **A.**   There is not.

17  **Q.**   Okay.  Okay.  So if we go to the Step 2 appeal form, we

18  see that at Page ID 3874, so a few pages before this.

19          Okay.  And in this appeal Ms. Bailey says, "I'm

20  appealing at Step 2 due to the fact that the grievance was not

21  resolve at Step 1 and the investigation summary at Step 1 is

22  incorrect," and she proceeds to explain why it's incorrect,

23  right?

24  **A.**   Right.

25  **Q.**   And she signs this and she inputs today's date as being

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 134

1   May 21st, 2020, right?

2   **A.**   Today's date, yes.

3   **Q.**   And then the date received, the date that your office

4   stamps is June 1st, 2020, right?

5   **A.**   Yes.

6   **Q.**   And the date it's due, this grievance coordinator is -- it

7   says June 2nd, 2020, correct?

8   **A.**   That's correct.

9   **Q.**   Is this timely, looking at it right now?

10  **A.**   Let me look.  From the dates that are here from when we --

11  grievance received and stamped it and when it was due, it

12  appears to be within a timeframe, so I'm just looking at that,

13  yeah.

14  **Q.**   Okay.  Go to the next page, Page ID 3875, we see that it's

15  rejected as untimely, right?

16  **A.**   Yes.

17  **Q.**   Okay.  Now, let's go to her Step 3, so going forward,

18  again, to 3873.

19  **A.**   Okay.  Okay.

20  **Q.**   Okay.  And so she makes a Step 3 appeal, right?

21  **A.**   Yes.

22  **Q.**   Okay.  And then if you go to the first page, we see that

23  the rejection's upheld at Step 3, correct?

24  **A.**   The response for the 3?

25  **Q.**   Yes.  The first page, yeah.  Excuse me, Page ID 3872.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 135

1   **A.**   Yeah, I see it.

2   **Q.**   Okay.

3   **A.**   So, rejection.

4   **Q.**   Yeah, it's upheld.

5   **A.**   The rejection is upheld, yeah.

6   **Q.**   As untimely.  I mean, he's upholding the Step 2

7   determination that it's untimely.

8   **A.**   Yes.

9   **Q.**   It doesn't -- it -- it doesn't look untimely to you

10  looking at it right now, does it?

11  **A.**   Well, just looking at those two dates, looking at the date

12  that we got it and the date that it was due, I don't see it,

13  but looking at the date of incident, 2/24/2020, and today's

14  date, 5/21, that's quite a gap.  So my guess is that's why it

15  was marked untimely.

16  **Q.**   Okay.  We go to the last page of this exhibit, page 3877.

17  We look at it already.  This decision summary is unresolved was

18  signed on March 23rd, 2020, right?

19  **A.**   Yes.

20  **Q.**   Okay.  So they haven't resolved her Step 1.  So she is

21  untimely at Step 2 because she didn't advance her Step 2 appeal

22  once she wasn't receiving a response?

23  **A.**   I don't know.  That's -- that's what it says here.  I

24  don't know.

25  **Q.**   So if she -- if she was waiting on a Step 1 response or

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 136

1  checking in on a Step 1 response, your understanding is that's

2  not sufficient under the policy?

3  **A.**   Yeah, but you wouldn't wait for a Step 1 response because

4  the due date that's on that receipt when you get it, policy

5  dictates that you are able to request an appeal whether you

6  received it or not by that due date.

7          **THE COURT:**  Let me ask you a question, Ms. Bowa.

8          **THE WITNESS:**  Yes, ma'am.

9          **THE COURT:**  On Page ID 3874 --

10          **THE WITNESS:**  Okay.

11          **THE COURT:**  -- it says, "If you decide to appeal the

12  Step 1 grievance response, your appeal should be directed to

13  grievance coordinator 6/2/20."

14          Who would have put that date in that the due date was

15  6/2/20.

16          **THE WITNESS:**  The grievance coordinator that issued

17  it would have said that was the date that it was due back.

18  **BY MS. BAILEY:**

19  **Q.**   So that's the due date as far as the grievant knew?

20  **A.**   That this appeal was due back, yes --

21  **Q.**   Okay.

22  **A.**   -- to the office.

23  **Q.**   Okay.  Let's go ahead and look at Plaintiff Exhibit 12 in

24  the white binder.

25          **THE COURT:**  I'm sorry, Exhibit where?

         *19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 137

1    **MS. BAILEY:**  12 in the white binder.

2    **BY MS. BAILEY:**

3    **Q.**  This is ECF No. 56-3, and I'm going to go ahead and start

4    us on Page ID 630.

5           I'll give you a second to kind of look at it.

6    **A.**  Okay.

7           **THE COURT:**  Will you remind me of what page?

8           **MS. BAILEY:**  Page ID 630.

9           **THE COURT:**  Okay.

10   **BY MS. BAILEY:**

11   **Q.**  So answer when you're really, but in this grievance,

12   Ms. Bailey is stating that she was forced to scrub black mold

13   in the middle of the night, right?

14   **A.**  Yes.

15   **Q.**  Okay.  And she states this happened throughout the month

16   of August, between 11:30 and 5:30 a.m., right?

17   **A.**  Yes.

18   **Q.**  Okay.  And then if you read a little bit further down --

19   and I'm in the "state problems clearly" section for the

20   record -- she identifies two HUOs in this grievance, right,

21   Ms. Hines and Ms. Williams?

22   **A.**  I might not have gotten that far yet.  I don't see the

23   names.

24   **Q.**  Sure.  So after 11:30 p.m. and 5:30 a.m., the third shift

25   officers --

     *19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 138

1   **A.**   Oh, I see Ms. Hines, Ms. Williams, yep.

2   **Q.**   That's the housing unit officers?

3   **A.**   Okay.

4   **Q.**   And so just kind of skipping down a little bit here, she

5   says, "Per Mr. Shawn Brewer, warden/WHVC."  So her

6   understanding was that the directive that they scrub black mold

7   at night is coming from Shawn Brewer, correct?

8   **A.**   Yes.

9   **Q.**   And she goes on to complain that -- well, actually --

10  yeah, she goes on to complain that they had to do this without

11  the special cleaning supplies and without protective coverings

12  like face masks to protect their upper respiratory system.

13          Are you tracking that?

14  **A.**   Yes.

15  **Q.**   So Officers Hines and Williams, that's -- those are two

16  people that could have been interviewed had this grievance been

17  investigated rather than rejected, right?

18  **A.**   Had it been assigned to staff to respond, yeah, they may

19  have.  I don't know, they could have.

20  **Q.**   There's a possibility?

21  **A.**   Yes.

22  **Q.**   I'm not asking whether there were or not.

23  **A.**   Right.

24  **Q.**   Someone could have followed up on that, right?

25  **A.**   Yes.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 139

1   **Q.**   Someone could have also followed up with the warden to see

2   if this was, indeed, a directive coming from him, right?

3   **A.**   Yes.

4   **Q.**   So that could have been investigated?

5   **A.**   Yes.

6   **Q.**   Okay.  Continuing on here, she says that Warden Brewer

7   has -- make sure I'm following along -- shown a clear and

8   convincing case of a deliberate indifference by knowingly

9   exposing me to dangerous conditions/toxic black mold and other

10  toxic substances in violation of my Eighth Amendment rights.

11          Do you see that?

12  **A.**   Yes.

13  **Q.**   So it's clear what she's -- issue she's taking with this,

14  right?

15  **A.**   Yes.

16  **Q.**   And then she goes on to list a number of symptoms she's

17  experiencing.  Do you see that?  "I'm experiencing hair

18  loss" --

19  **A.**   Difficulty breathing, rash, yeah, I see it.

20  **Q.**   Okay.  All right.  And then after the -- after she tells

21  us of, you know, her difficulty breathing, coughing while

22  sleeping, et cetera, she says, "The housing units here at Huron

23  Valley Correctional Facility, the staff is fully aware of the

24  mold."

25          Do you see that?

   *19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 140

**A.**   I do.

**Q.**   She says, "The cell I live in keeps a strong musty smell and the cell windows stay cloudy, wet/damp between the panes, and has a musty odor."

     Do you see that?

**A.**   I do.

**Q.**   Okay.  And then she accuses Mr. Brewer of violating the policy -- she listed numbers here -- for humane treatment, right?

**A.**   Yes.

**Q.**   Okay.  And she even, if you kind of skip down to the end here, she -- she identifies even some case law about unreasonable risk of serious harm to her health and wellbeing, right?

**A.**   Yes.

**Q.**   Okay.  And this, as we see on the bottom of this page and then on the next page, it's rejected as untimely.

**A.**   That's correct.

**Q.**   Okay.  Now she signs this on 9/22, right?

**A.**   Yes.

**Q.**   And she's saying that -- well, this has been happening throughout the month of August, but she's complaining about a time she was woken up on September 17th, right?

**A.**   Right.

**Q.**   And it's received on September 30th, at least that's what

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 141

1   the stamp says, right?

2   **A.**   That's what it says, yes.

3   **Q.**   Okay.  So you're looking at the stamp of September 30th to

4   determine that her grievance is untimely, right?

5   **A.**   Because, again, I am not the respondent in this case.  I

6   can't say for certain.  I'd have to add the days up, but it

7   looks like that August 2019 may have been the date that we

8   looked at.  I'm not really sure.  I don't know.

9   **Q.**   I'm sorry, are you saying August 30th?

10  **A.**   It's in the body, August 2019, yeah.

11  **Q.**   Okay.  But Ms. Bailey signed this on September 22nd, so

12  she doesn't have any control over how long it takes to get from

13  her to you in the mail, correct?

14  **A.**   That's true.

15  **Q.**   Okay.

16  **A.**   Yep.

17  **Q.**   In your experience, have you -- looking at the today's

18  date population filled out by grievants and the timestamps, are

19  you seeing that these grievances can take a week, two weeks to

20  get you to through the mail?

21  **A.**   Not really.  Not two weeks, no.

22  **Q.**   No?

23  **A.**   That's not common at all.

24  **Q.**   What about this situation where the delta between whether

25  she signed it and the date received is eight days?  Is that

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 142

1    common?

2    **A.**    Which one is that?

3    **Q.**    Well, I'm just looking at her signature date of

4    September 22nd, and the date received of September 30th.

5    **A.**    September 2nd -- 30th?  No.  I don't know.  I can't see

6    it, but it's not usually common that it would take that long.

7    **Q.**    Okay.  So it's unusual to you?

8    **A.**    Yes.

9    **Q.**    Okay.  You have no reason one way or another to

10   second-guess the date that Ms. Bailey has represented that she

11   execute executed this form, right?

12   **A.**    I mean, I can only go by the dates that we get them out of

13   the mail and stamp them; that's what we go by.

14   **Q.**    Okay.  And there's no grace period for the mail, right?

15   **A.**    There is grace period.  If it -- if there's a reason for

16   us to have it.  Like, so if we know, say, a holiday is in

17   there, so we would, you know, consider that a reason for a

18   grace.  I've received kites where prisoners have gone out to

19   court, stuff like that, where they weren't there to physically

20   fill it out and submit it in time, so that would be a reason,

21   or a hospital, stuff like that.

22   **Q.**    Does the policy directive speak to grace periods?

23   **A.**    I don't think that it does.  I think we just pretty much

24   know from legal affairs' office that if there's no reason or no

25   explanation or reason for it to be late, and those are

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 143

1  generally the reasons why it would be late.

2  **Q.**   Is that written anywhere, like --

3  **A.**   Yeah, I think it is.  Yeah, it is.  I'd have to get it and

4  pinpoint it, but it says that there's no reasonable explanation

5  for a delay.  I think that's the term that is used.

6  **Q.**   Okay.  And you're not sure where this is written?

7  **A.**   No, but I know it's written, yeah.

8  **Q.**   Okay.  And what qualifies -- you gave me a couple of

9  examples of things that may qualify as reasonable explanations,

10  and those are all external things, for example, and inmate

11  having to go to court or a federal holiday, right?

12  **A.**   Right, yeah.

13  **Q.**   Are there ever grace periods given if an explanation is

14  provided directly from the grievant, itself, something they

15  were unable to do because they were held up for a reason?

16  **A.**   If a reasonable explanation was provided, then, yes, that

17  would be considered.

18  **Q.**   Is this grace period policy, I'm just going to call it,

19  written anywhere for the inmates to see so that they know that

20  this exists and that they could request a grace period under

21  certain circumstances?

22  **A.**   So all the policies are available in the library.

23  **Q.**   But it's not the policy that deals with the grievances?

24  **A.**   If you got it here, we can look, but I believe it is in

25  there, yeah.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

*Page 144*

1  **Q.**   Well, I'll just give you a second to look at Exhibit 31,

2  because this is the grievance policy, or at least it was the

3  grievance policy effective March 18th, 2019.

4  **A.**   Okay.  So, on page 2 of 8, reasons for rejection, J.

5  No. 5 says, "The grievance is filed in an untimely manner.  The

6  grievance shall not be rejected if there is a valid reason for

7  the delay."  So I think that's the part that I remember that I

8  referenced.

9  **Q.**   How long is the grace period?  That doesn't say "grace."

10  **A.**   It doesn't give you a day or a time or it doesn't even use

11  the term "grace period," no, it doesn't.

12  **Q.**   Okay.  That's just something that's kind of up to the

13  discretion of the grievance coordinator who's looking at the

14  grievance?

15  **A.**   Valid reason for delay.  That's -- that's what we take it

16  as, if there's a valid reason for delay listed.

17  **Q.**   Okay.  But there is no definition for "valid reason for

18  delay," so it's up to the discretion --

19  **A.**   Not beyond this, no.

20  **Q.**   Okay.  All right.  We're going to go back to Exhibit 12

21  just a little bit longer here.

22       Okay.  So if we look to Step 2, which is Page ID 628.

23  **A.**   Okay.

24  **Q.**   And so here we see at Step 2 that Ms. Bailey addresses the

25  allegations that her grievance is untimely, right?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 145

1  **THE COURT:**  I'm sorry, what exhibit?

2  **MS. BAILEY:**  We're still on Exhibit 12, sorry,

3  Page ID 628.

4  **THE COURT:**  I had gone to the policy directly, so --

5  **MS. BAILEY:**  Understood.

6  **BY MS. BAILEY:**

7  **Q.**  And we're looking at the Step 2 portion here.

8  So Ms. Bailey here directly addresses the rejection

9  being untimely, correct?

10  **A.**  She says it's rejected.  Found my client untimely.  Yeah.

11  **Q.**  Okay.  And she's referencing the date she filled out the

12  form, correct?

13  **A.**  Yes.

14  **Q.**  Okay.  And her Step 2 is the rejection upheld at Step 2.

15  We see that on Page ID 629 just reciting the original untimely

16  rejection at Step 1, correct?

17  **A.**  629.  What did you say, again?

18  **Q.**  We just see that they're upholding the original rejection

19  at Step 1 for untimely, right?

20  **A.**  That's correct.

21  **Q.**  And when this is provided to the inmates, they're not --

22  there's no explanation given, right?

23  **A.**  Well, "untimely" is considered --

24  **Q.**  They don't elaborate on that?

25  **A.**  -- an explanation, yeah.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 146

1   **Q.**   There's no one, for example, telling her, well, we're

2   really looking at, not the date that you signed it, but the

3   date we stamped received.  No one -- that's not being explained

4   in the rejection.

5   **A.**   No.

6   **Q.**   Okay.  And then we just -- the first page in this exhibit,

7   Page ID 627, is the upholding that Step 3, correct?

8   **A.**   The Step 3 --

9   **Q.**   Yes.

10   **A.**   -- decision?  Yes.

11   **Q.**   Okay.  Last one, turn to Plaintiffs' Exhibit 13.  And I'm

12   going to first direct you to Page ID 635.  And this is a Step 1

13   grievance for grievance number ending 3773.

14   **A.**   Yes.

15   **Q.**   Okay.  So here -- and, you know, look at it if you need

16   to, but here Ms. Bailey is grieving because she requested an

17   allergy test to see if she's allergic to mold, right?

18   **A.**   Yes, it appears so.

19   **Q.**   Okay.  And the first box about her attempts to resolve the

20   issue.  She identifies a nurse and a nurse supervisor by name,

21   Olmstead and Tinsley, as persons she had talked to, right?

22   **A.**   Yes.

23   **Q.**   Okay.  And then she explains -- she kind of details that

24   conversation.

25          **THE COURT:**  I need to one moment, please.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

1    We need to take a break.  We need a take a restroom

2  break --

3         **MS. BAILEY:**  Okay.

4         **THE COURT:**  While -- you can go ahead.

5         I am going to ask counsel how much longer you think

6  you'll be.

7         **MS. McGEHEE:**  If you could give us a minute, you

8  know, like maybe 10 minutes to kind of go over things, we

9  might -- we could probably give you a better idea of how much

10  longer we're going to be.

11         **THE COURT:**  How many witnesses are there, total?

12         **MR. DEAN:**  We're done after Ms. Bowa.

13         **MS. BAILEY:**  And just depending how the rest of the

14  evidence goes, we may not have a witness.  We may have one; we

15  may have none, so --

16         **THE COURT:**  I'm wondering whether we want to go ahead

17  and have a quick lunch break and then you can talk to the

18  plaintiffs?

19         **MS. McGEHEE:**  That would be a good idea.

20         **THE COURT:**  Okay.  All right.  So do you think if we

21  say 2:45, is that enough time for everybody?

22         **MR. DEAN:**  Sure.

23         **THE COURT:**  Mr. Dean?

24         **MR. DEAN:**  Yes.  Sorry.

25         **THE COURT:**  Okay.  All right.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Cross*
*Wednesday/October 30, 2024*

Page 148

1          **THE WITNESS:**

2          **THE CLERK:**  All rise.

3          Court is in recess until 2:45.

4      (Recess at 2:04 p.m. until 2:54 p.m.)

5          **THE CLERK:**  All rise.

6          The United States District Court is back in session.

7          You may be seated.

8          **THE COURT:**  Thank you.

9          Ms. Bailey, you can continue.

10          **MS. BAILEY:**  Thank you, your Honor.

11  **BY MS. BAILEY:**

12  **Q.**   Hello, Ms. Bailey.

13          All right.  Before we took a break, we were looking

14  at plaintiff Exhibit 13.  Could you put that in front of you

15  again?

16  **A.**   Is it page 635.

17  **Q.**   We're going to start on Page ID 635, yes, correct.

18          So this is the Step 1 of this grievance, Grievance

19  3773, right?

20  **A.**   This is Step 1, yes.

21  **Q.**   And this relates to her request for an allergy test

22  because she believes she's allergic to mold, correct?

23  **A.**   Yes.

24  **Q.**   Okay.  If we look at the next Page ID, 636, we see that

25  this grievance went to a respondent.  So it wasn't rejected by

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

Page 149

1  the grievance coordinator, correct?

2  **A.**   That's correct.

3  **Q.**   Okay.  So there's a summary grievant complaint, not

4  receiving further testing for allergies.  There's an

5  investigation summary.  That's their summary of her grievance,

6  right?

7  **A.**   Yes.

8  **Q.**   And then they identify -- they put the whole policy and

9  then they give their decision summary, correct?

10  **A.**   Yes.

11  **Q.**   Okay.  And she's denied because she's being treated for

12  her symptoms, right?

13  **A.**   Yes.

14  **Q.**   So, then, if we look at Page ID 633, this is -- this

15  contains the Step 2 grievance, correct?

16  **A.**   633?

17  **Q.**   Yes.

18  **A.**   Two for 3773, yes.

19  **Q.**   Okay.  And then, so we see on Step 2, Ms. Bailey explains,

20  yes, I'm getting treated for my symptoms, but I'm asking for an

21  allergy test and the reasons why, correct?

22  **A.**   Yes.

23  **Q.**   Okay.  If you look at the next page, 634, Page ID, we see

24  the response from Step 2.

25         Are you there?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

*Page 150*

**A.**   That's correct.

**Q.**   And so this, again, her Step 2 wasn't rejected, but it was sent to a respondent for a response, correct?

**A.**   Correct.

**Q.**   Okay.  And so there's a summary of her response in, like, the first large box.  You see that?

**A.**   Yes.

**Q.**   Okay.  And the last sentence it says, "You are encouraged to access health care through the kite process to address any current health concerns."

        Do you see that?

**A.**   Yes.

**Q.**   And then we have a summary of the Step 2 investigation in the next large box.  Do you see that?

**A.**   Yes.

**Q.**   Okay.  And after the large paragraph, we see a stand-alone sentence here.  It says, "Also Mr. Bailey" -- I think they meant Ms. -- Ms. Bailey, custody oversees your housing unit. Please discuss your concerns regarding your unit with them."

        Do you see that?

**A.**   I do.

**Q.**   So these respondents were encouraging Ms. Bailey to address her concerns about housing to the extent housing contains mold directly with custody, correct?

**A.**   Yes.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa - Cross*
*Wednesday/October 30, 2024*

*Page 151*

1  **Q.**   And that's what she was rejected -- or excuse me --

2  directed to do, one of the things she was directed to do at

3  Step 2, right?

4  **A.**   Yes.

5  **Q.**   And then she was also encouraged to talk to her M.D. at

6  her next appointment about getting a mold test, right?

7  **A.**   Right.

8  **Q.**   Okay.  And then just the first page of this exhibit,

9  Page ID 623, after Ms. Bailey submits Step 3 to the grievance,

10  her appeal was denied, right?

11  **A.**   Yes.

12  **Q.**   Okay.  Staying on this exhibit, let's just go back to the

13  first Step 1 again really quick here, Page ID 635.

14         I'm just looking at the form, itself.  All the way at

15  the bottom in small print we see distribution.  We see white;

16  green; canary; pink, process to Step 1; goldenrod, grievant.

17         Do you see that?

18  **A.**   Yes.

19  **Q.**   What is that?

20  **A.**   That's the distribution for the multipart form.  So this

21  particular form has that many copies on there.  Each copy

22  represents the copy that is distributed.

23  **Q.**   So they're carbon copied?

24  **A.**   Yes.

25  **Q.**   So can the grievant keep a copy for herself?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Redirect*
*Wednesday/October 30, 2024*

Page 152

1    **A.**    Yes.

2    **Q.**    I understand your office is close to the law library; is

3    that right?

4    **A.**    Yes, it is, in the same building.

5    **Q.**    Are you aware of inmates ever making copies at the law

6    library of their grievances?

7    **A.**    Yes.

8    **Q.**    For their own records?

9    **A.**    Yes.

10   **Q.**    Okay.  So before it's -- before Step 1 is ever submitted

11   to your office, when it's filled out, it's certainly possible

12   that grievant can either keep a copy from that carbon copy

13   document or make a copy at the law library for their own

14   records, right?

15   **A.**    Yes.

16   **Q.**    Okay.

17          **MS. BAILEY:**  I have no further questions.

18          **THE COURT:**  Thank you.

19          Any redirect, Mr. Dean?

20          **MR. DEAN:**  Just briefly, your Honor.

21                      -   -   -

22                                          (3:00 p.m.)

23                   **REDIRECT EXAMINATION**

24   BY MR. DEAN:

25   **Q.**    Ms. Bowa, can you turn to Exhibit 12 in your book there?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Latasha Bowa – Redirect*
*Wednesday/October 30, 2024*

*Page 153*

1  And specifically I'm looking for the Page ID 630.  And I want

2  to direct your attention to the top left corner where the date

3  stamp is September 30th, 2019.

4         What is the expected turnaround time for a grievance

5  that's submitted in the box to be received by somebody in the

6  office and date stamped?  Is there an expectation for that?

7  **A.**   Generally, between three to five days at best, five being

8  rare, and about three days.

9  **Q.**   Okay.

10  **A.**   The turnaround, usually, from the mail.

11  **Q.**   And if you look to the right on today's date, the grievant

12  put the date as September 22nd, 2019, right?

13  **A.**   Yes.

14  **Q.**   But this isn't a notarized document, right?

15  **A.**   No.

16  **Q.**   So is there any way that you can tell, looking at that,

17  that that was the actual date that this prisoner submitted the

18  grievance?

19  **A.**   No.

20  **Q.**   Okay.  And under the policy directive, a prisoner has how

21  long between the date of incident until the day they have to

22  file a grievance?

23  **A.**   I believe it's like a total of five.

24  **Q.**   Five business days?

25  **A.**   Yes.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

1   **Q.**   Looking at this where the date of incident is 9/17, the

2   prisoner knows that they have to put September 22nd or it would

3   be untimely; would that be fair?

4          **THE COURT:**   Mr. Dean?  Mr. Dean, there was a question

5   of Ms. Bowa earlier about whether she had reason to doubt the

6   date.  Do you have any evidence that -- because it sounds like

7   you're suggesting that this was not the true date.

8          **MR. DEAN:**   What we want to suggest is that there's no

9   way to determine just looking at that, whether that was

10  actually the date that it was filed.

11         **THE COURT:**   Well, I understand that, but without

12  proof, I am -- it sounds like you're suggesting that this was a

13  false date without proof, because Ms. Bowa already -- unless

14  you have proof, she already testified that she had no reason to

15  doubt that that was an accurate date.

16         **MR. DEAN:**   Understood, your Honor.  Thank you.

17         And we have no further questions.  Thank you.

18         **THE COURT:**   Okay.  Thank you.

19         **MS. BAILEY:**   I have no follow up.

20         **THE COURT:**   Thank you.

21         Mr. Dean, do you have any other witnesses?

22         **MR. DEAN:**   We do not, your Honor.

23         **THE COURT:**   Thank you.

24         Ms. McGehee.

25         **MS. McGEHEE:**   Well, we don't -- it's -- we don't have

*Paula Bailey – Direct*
*Wednesday, October 30, 2024*

*Page 155*

1    any witnesses as part of the defendant's case, but we do have

2    one witness to call as part of our case.

3              **THE COURT:**  Well, that's what I'm giving you the

4    chance to do.

5              **MS. McGEHEE:**  I apologize.

6              We'd like to call Paula Bailey.

7              **THE COURT:**  All right.

8                          PAULA BAILEY,

9              at 3:03 p.m., being first duly sworn by the

10             Court to tell the truth, was examined and

11             testified upon her oath as follows:

12                      DIRECT EXAMINATION

13   **BY MS. BAILEY:**

14   **Q.**   Good afternoon, Ms. Bailey.

15   **A.**   Hi.

16   **Q.**   No relation.

17             Do you have your reading glasses with you?

18   **A.**   Oh, yes.

19   **Q.**   Okay.  Were you ever incarcerated at Women's Huron Valley

20   Correctional Facility?

21   **A.**   Yes.

22   **Q.**   When were you released?

23   **A.**   May of 2021.

24   **Q.**   And how have you spent your time since your release?

25   **A.**   Well, I live in Lansing.  I bought a home in Lansing.  I'm

*Paula Bailey – Direct*
*Wednesday, October 30, 2024*

*Page 156*

1   married to a wonderful guy.  I spend a lot of time with my

2   grandkids and my grown daughter.  We love to go fishing, and I

3   do a lot of gardening, because we've got a big backyard, and we

4   got a little dog, a little Chihuahua named Peanut.

5   **Q.**   When were you first incarcerated at Women's Huron Valley?

6   **A.**   In 2009.

7   **Q.**   Okay.  And where did you come from where Women's Huron

8   Valley?

9   **A.**   Scott's Correctional Facility.

10  **Q.**   Okay.  At Huron Valley, did you ever grieve any issues

11  that you had through the grievance process?

12  **A.**   Yes.

13  **Q.**   And how did you come about learning how to do that?

14  **A.**   Reading the grievance policy procedure at the law library,

15  first at Scott's, then when I got to Huron Valley, I read

16  theirs, because they differ.

17  **Q.**   Right.  And we looked at a few of your grievances here

18  today; is that correct?

19  **A.**   Yes.

20  **Q.**   And you weren't looking at them with us, but I can

21  represent that they were typed.  Did you type your grievances?

22  **A.**   Yes.

23  **Q.**   And did you have a typewriter?

24  **A.**   Yes.

25  **Q.**   In your room?

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Paula Bailey – Direct*
*Wednesday, October 30, 2024*

Page 157

1   **A.**   Yes.

2   **Q.**   Okay.  All right?

3   **A.**   I purchased one.

4   **Q.**   Was it your practice to retain copies of the grievances

5   you submitted?

6   **A.**   Yes, because a lot of times I would go to the law library

7   to pull the policy and procedures to include in my grievances,

8   like inhumane treatment and so on and so on.  All that

9   information was in the law library.

10  **Q.**   Great.

11           I'm going to ask you a question about a document in

12  that white binder in front of you.  If you wouldn't mind

13  flipping to Tab 10, which is Plaintiffs' Exhibit 10.

14           Okay.  I might --

15  **A.**   Here we go.

16  **Q.**   It's acting up.

17  **A.**   Yeah.

18  **Q.**   Okay.  Are you on Plaintiffs' Exhibit 10?

19  **A.**   Yes.

20  **Q.**   Okay.

21           **MS. BAILEY:**  Your Honor, can I approach?  I think

22  she's on the wrong tab and I think I can help with that.

23           **THE COURT:**  Yes.

24           **MS. BAILEY:**  For the record, she was looking at

25  Exhibit 9.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Paula Bailey – Direct*
*Wednesday, October 30, 2024*

Page 158

**BY MS. BAILEY:**

**Q.**   So we're looking at Plaintiffs' Exhibit 10.  I'm going to ask you about this first page.  Take whatever time you need just to refresh your memory about this document, but I'm going to ask you if you've seen it before.

**A.**   Yes.

**Q.**   Okay.  And this is your personal copy of a grievance, right?

**A.**   Yes.

**Q.**   Did you submit this grievance while you were incarcerated at Women's Huron Valley?

**A.**   Yes.

**Q.**   You signed this document April 19th, 2018.  Do you see that?

**A.**   Yes.

**Q.**   Was it your practice when you grieved at Women's Huron Valley to -- to submit your grievances on the date that you signed them?

**A.**   Yes.

**Q.**   Or shortly thereafter?

**A.**   Either the day of or the very next day.

**Q.**   Okay.

**A.**   Because the -- the mailbox where we put the grievances in the regular mail was in front of the chow hall, so I had to wait until I went to chow.

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Paula Bailey – Direct*
*Wednesday, October 30, 2024*

Page 159

1 **Q.** The next time you went to the chow hall, then?

2 **A.** Yes.

3 **MS. BAILEY:** Okay. I have no further questions,

4 Ms. Bailey.

5 **THE WITNESS:** Okay.

6 **THE COURT:** Thank you.

7 Mr. Dean?

8 **MR. DEAN:** No, your Honor.

9 **THE COURT:** Okay. Thank you, Ms. Bailey.

10 Ms. McGehee, do you have any other witnesses?

11 **MS. McGEHEE:** No, your Honor, we don't have any

12 witnesses, and we rest.

13 **THE COURT:** Thank you.

14 Mr. Dean, what are -- how do you want to proceed now?

15 **MR. DEAN:** I would suggest that we have time to get

16 the transcripts made of this and then schedule a post-hearing

17 brief, a set time after the transcripts are done.

18 **MS. McGEHEE:** We have no objection to that.

19 **THE COURT:** All right. What I'm going to want --

20 this is alternatively called an evidentiary hearing and a bench

21 trial, and I do want to treat it like a bench trial. I'd like

22 for each grievance, for there to be proposed findings of fact

23 and conclusions of law. That does not mean that you can't have

24 a section that generally talks about the grievance, the law

25 surrounding the grievances. At the same time, I don't want it

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Paula Bailey – Direct*
*Wednesday, October 30, 2024*

Page 160

1   to be a treatise.  I don't want it to be an examination of all

2   issues that arising in grievance-related cases.  I'd like you

3   to home in on the issues raised here, things like the

4   timeliness, the joint grievances, the issues that I'm going to

5   have to tackle rather than, as I said, an overall treatise of

6   the grievance process or the law about exhaustion that we're

7   all familiar with.

8          Is someone going to be ordering the transcript from

9   the court reporter.

10         **MR. DEAN:**  We will be, your Honor.

11         **THE COURT:**  And, Mr. Dean, will you be ordering the

12   transcript to be transcribed in the usual course or would you

13   like it expedited?

14         **MR. DEAN:**  I don't know that expedited will

15   particularly help, but just because we're going into

16   Thanksgiving and I've got a trial in between then and

17   Christmas, so if it takes a few weeks, I was going to suggest

18   that we set a briefing schedule into the new year, if that's

19   possible.

20         **THE COURT:**  That's -- that seems pretty long.

21         **MR. DEAN:**  Okay.  Let's go off the record for a

22   moment.

23      (Whereupon an off-the-record discussion

24       was held.)

25         **THE COURT:**  30 days would take us through

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Paula Bailey – Direct*
*Wednesday, October 30, 2024*

Page 161

1    Thanksgiving.

2           Now, Mr. Dean, you mentioned the trial.  When is your

3    trial?

4           **MR. DEAN:**  It is December -- the week of

5    December 12th.  Or, I'm sorry, the 18th.  I'm sorry.  The week

6    before Christmas.

7           **THE COURT:**  All right.  Well, we can -- we can

8    then -- I can give you all until January 10th.  I do think that

9    is a long while, but at the same time, there are the holidays.

10          Mr. Dean, do you have objections to that?

11          **MR. DEAN:**  No, your Honor.

12          **THE COURT:**  And, Ms. McGehee?

13          **MS. McGEHEE:**  No, your Honor, that's fine.  Thank

14   you.

15          **THE COURT:**  Okay.  I am wondering whether, as a

16   result of the testimony and the questions that have been

17   raised, the parties might agree to take some of the grievances

18   off of the table.  I'm not -- I'm not going to order that, but

19   if there are grievances that defendants agree should be treated

20   as exhausted or if there are grievances that the plaintiffs

21   believe should be treated as unexhausted after these -- after

22   the testimony today, then I welcome you to stipulate.  But if

23   you do not believe that the testimony or examination of the

24   evidence has changed your perspective, that's fine, too.

25          **MR. DEAN:**  Okay.  We would certainly take a look at

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*

*Paula Bailey – Direct*
*Wednesday, October 30, 2024*

Page 162

1   that, your Honor.  I'm not opposed -- I'm not inclined to argue

2   issues that I don't believe have enough merit, so . . .

3           **THE COURT:**  Okay.  Well, now you'll have some time to

4   have those discussions if you think it will be worthwhile.

5           **MR. DEAN:**  True.

6           **THE COURT:**  All right.  Is there anything else that

7   you think we should be addressing before we close the record

8   today, Mr. Dean?

9           **MR. DEAN:**  I have nothing, your Honor.  Thank you.

10          **THE COURT:**  How about you, Ms. McGehee?

11          **MS. McGEHEE:**  Nothing, your Honor.

12          Thank you for your time.

13          **THE COURT:**  Thank you, all.

14          **THE CLERK:**  All rise.

15          Court is in recess.

16      (At 3:15 PM, proceedings adjourned.)

17                          -   -   -

18                  **C E R T I F I C A T I O N**

19          I certify that the foregoing is a correct

20   transcription of the record of proceedings in the

21   above-entitled matter.

22

23   s/ Timothy M. Floury, CSR-5780          11/25/2024
     Timothy M. Floury, CSR-5780             Date
24   Official Court Reporter

25                          -   -   -

*19-13442; Paula Bailey, et al. v. Heidi Washington, et al.*