# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| PAULA BAILEY, individually, and KRYSTAL CLARK, and HOPE ZENTZ, on behalf of themselves and others similarly situated, | ) ) ) ) ) |  |
|  | ) | Case No. 2:19-cv-13442 SJM-EAS |
| Plaintiffs, | ) | Dist. Judge Stephen J. Murphy, III |
| v. | ) | Mag. Judge Elizabeth A. Stafford |
|  | ) |  |
| HEIDI WASHINGTON, *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

---

**MARKO LAW, PLLC**
Jonathan R. Marko (P72450)
220 W. Congress, Fourth Floor
Detroit, MI 48226
P: (313) 777-7LAW
jon@jmarkolaw.com

**NICHOLS KASTER, PLLP**
Matthew H. Morgan (MN304657)
Rebekah L. Bailey (MN0389599)
Grace I. Chanin (MN0399969)
80 South Eight Street, Suite 4700
Minneapolis, MN 55402
P: (612) 256-3200
morgan@nka.com
bailey@nka.com
gchanin@nka.com

**PITT MCGEHEE PALMER BONANNI & RIVERS PC**
Cary S. McGehee (P42318)
Beth M. Rivers (P33614)

**MI DEP'T OF ATTY GEN.**
Joshua S. Smith (P63349)
Kristen M. Southerland (P64353)
Michael R. Dean (P71333)
Jennifer A. Foster (P75947)
Sara E. Trudgeon (P82155)
John L. Thurber (P44989)
William J. Predhomme II (P81527)
MDOC Division
P.O. Box 30217
Lansing, MI 48909
P: (517) 335-3055
smithj191@michigan.gov

***Attorneys for Defendants***

Channing Robinson-Holmes (P81698)
117 W. 4th Street, Suite 200
Royal Oak, MI  48067
P: (248) 398-9800
cmcgehee@pittlawpc.com
brivers@pittlawpc.com
crobinson@pittlawpc.com

**LAW OFFICES OF DAVID S. STEINGOLD, PLLC**
David S. Steingold (P29752)
Samantha Baker (P83674)
30300 Northwestern Hwy, Suite 111
Farmington Hills, MI 48334
P: (313) 962-0000
detroitdefender@yahoo.com

**EXCOLO LAW, PLLC**
Solomon M. Radner (P73653)
26700 Lahser Road, Suite 401
Southfield, MI 48033
P: (866) 939-2656
sradner@excololaw.com

***Attorneys for Plaintiffs and the Putative Class***

**PLAINTIFFS' PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW FOLLOWING AN EVIDENTIARY HEARING ON DEFENDANTS' "FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES" AFFIRMATIVE DEFENSE**

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION ................................................................................................... 1

PROCEDURAL HISTORY ..................................................................................... 1

FINDINGS OF FACT .............................................................................................. 5

   I)  WHV's GRIEVANCE PROCEDURE ................................................................. 5

      A)  The Grievance Steps ................................................................................ 6
      B)  Rejection as Untimely .............................................................................. 9
      C)  Rejection as a Joint Grievance .............................................................. 12

   II)  PLAINTIFF HOPE ZENTZ'S GRIEVANCE ................................................... 13

   III) PLAINTIFF KRYSTAL CLARK'S GRIEVANCES............................................ 15

      A)  WHV-904-2004-28K ("2004"), Pls.' Ex. 2 ......................................... 15
      B)  WHV-19-04-1981-28E ("1981"), Pls.' Ex. 1 ...................................... 16
      C)  WHV-16-04-2219-28E ("2219"), Pls.' Ex. 3 ...................................... 18
      D)  WHV-07-3305-28C ("3305"), Pls.' Ex. 18 ......................................... 19
      E)  WHV-23-01-0081-28E ("0081"), Pls.' Ex. 16 ...................................... 20

   IV) PLAINTIFF PAULA BAILEY'S GRIEVANCES ............................................ 21

      A)  WHV-2020-03-0929-03E / WHV-2020-03-0929-28E ("0929"),
          Pls.' Ex. 24 ............................................................................................ 21
      B)  WHV-2019-10-4358-28E ("4358"), Pls.' Ex. 12 .................................. 24
      C)  WHV-2019-08-3773-12Z / WHV-2019-08-3773-28E ("3773")
          (ECF No. 56-3 PageID.632–636), Pls.' Ex. 13 ..................................... 26
      D)  Pls.' Ex. 10, ECF 62-5 .......................................................................... 28

CONCLUSIONS OF LAW ................................................................................... 31

   I)  PLAINTIFFS MADE AFFIRMATIVE EFFORTS TO COMPLY, AND WHV'S
      GRIEVANCE PROCEDURE WAS AN UNAVAILABLE REMEDY............................ 33

   II)  DEFENDANTS DID NOT PROVIDE A CONTROLLING GRIEVANCE POLICY
      FOR TWO OF THE GRIEVANCES AT ISSUE. ...................................................... 37

   III) DEFENDANTS IMPROPERLY REJECTED PLAINTIFFS' GRIEVANCES.................. 38

      A)  Defendants Failed to Establish that Plaintiffs' Grievances Were
          Joint. ...................................................................................................... 39
      B)  Defendants Failed to Establish That Plaintiffs' Grievances Were

      Vague...................................................................................................40

   C)  Defendants Failed to Establish that Plaintiffs' Grievances Were
      Duplicative.........................................................................................41

   D)  Defendants Failed to Establish Plaintiff Clark's Grievance Related
      to Multiple Issues. .............................................................................42

   E)  Defendants Failed to Establish that Plaintiffs' Grievances were
      Untimely. ...........................................................................................42

IV) The Court Should Consider Grievances Filed after
    Plaintiffs Initiated this Lawsuit..............................................43

V) Plaintiffs Sufficiently Notified Defendants. .......................................44

VI) Plaintiffs' Grievances Sufficiently Address The Subject
    Matter Of This Lawsuit. ........................................................47

CONCLUSION ..................................................................................................48

CERTIFICATE OF SERVICE .........................................................................49

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Bates v. Winn*,
 No. 2:16-cv-14324, 2019 WL 7900706 (E.D. Mich. Nov. 12, 2019),
 *adopted*, 2020 WL 674288 (E.D. Mich. Feb. 11, 2020)....................................38

*Binion v. Glover*,
 No. 07-13443, 2008 WL 4155355 (E.D. Mich. July 28, 2008),
 *adopted*, 2008 WL 4097407 (E.D. Mich. Aug. 29, 2008)..................................45

*Booth v. Churner*,
 532 U.S. 731 (2001)........................................................................................34

*Chandler v. Crosby*,
 379 F.3d 1278 (11th Cir. 2004) ........................................................................32

*Hartman v. Duffey*,
 88 F.3d 1232 (D.C. Cir. 1996)..........................................................................33

*Hattie v. Hallock*,
 8 F. Supp. 2d 685 (N.D. Ohio 1997) .................................................................33

*Johannes v. Washington*,
 No. 14-11691, 2016 WL 1253266 (E.D. Mich. Mar. 31, 2016)........................38

*Johnson v. Johnson*,
 385 F.3d 503 (5th Cir. 2006) ............................................................................45

*Jones v. Bock*,
 549 U.S. 199 (2007)..........................................................................................46

*Lee v. Willey*,
 789 F.3d 673 (6th Cir. 2015) ..............................................................................1

*Merriweather v. Zamora*,
 No. 04 CV 71706 DT, 2006 WL 2711809 (E.D. Mich. Sept. 21, 2006) ...........45

*Miller v. Norris*,
   247 F.3d 736 (8th Cir. 2006) ..............................................................................33

*Morgan v. Trierweiler*,
   67 F.4th 362 (6th Cir. 2023) ........................................................................38, 45

*Napier v. Laurel Cnty.*,
   636 F.3d 218 (6th Cir 2011) .............................................................................34

*Nelson v. Walsh*,
   No. 16-10405, 2017 WL 1212836 (E.D. Mich. Feb. 17, 2017),
   *report and recommendation adopted*,
   2017 WL 1100945 (E.D. Mich. Mar. 24, 2017)..................................................37

*Porter v. Nussle*,
   534 U.S. 516 (2002)...........................................................................................31

*Reed-Bey v. Pramstaller*,
   603 F.3d 322 (6th Cir. 2010) .......................................................................31, 45

*Risher v. Lappin*,
   639 F.3d 236 (6th Cir. 2009) .............................................................................33

*Ross v. Blake*,
   578 U.S. 632 (2016)......................................................................................33–34

*Sedore v. Campbell*,
   No. 19-10311, 2021 WL 405987 (E.D. Mich. Feb. 5, 2021) .............................41

*Sedore v. Greiner*,
   No. 19-10311, 2020 WL 8837441 (E.D. Mich. Sept. 21, 2020) .......................41

*Shoucair v. Warren*,
   No. 07-12964, 2008 WL 2033714 (E.D. Mich. May 9, 2008)......................45–56

*Surles v. Andison*,
   678 F.3d 452 (6th Cir. 2012) .............................................................................31

*Thaddeus–X v. Wozniak*,
   215 F.3d 1327 (6th Cir. 2000) ...........................................................................44

iv

*Thomas v. Woolum*,
   337 F.3d 720 (6th Cir. 2003) ...............................................................45

*Wayne v. Heyns*,
   No. 13-14495, 2015 WL 736329 (E.D. Mich. Feb. 20, 2015) ....................37–38

*Williams v. Winn*,
   No. 18-11060, 2019 WL 2252012 (E.D. Mich. Feb. 27, 2019),
   *report and recommendation adopted*,
   No. 18-CV-11060, 2019 WL 1417166 (E.D. Mich. Mar. 29, 2019).................40

*Woodford v. Ngo*,
   548 U.S. 81 (2006)........................................................................46–47

## STATUTES, REGULATIONS, RULES

42 U.S.C. § 1997e, *et seq.*...................................................................1, 31

## INTRODUCTION

Defendants assert that Plaintiffs failed to exhaust their administrative remedies pursuant to the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e, *et seq.*, requiring dismissal of this lawsuit. Defendants bear the burden to prove this affirmative defense. Defendants requested an evidentiary hearing and bench trial as the Court is the trier of fact on this defense. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). The Court held the hearing on October 20, 2024. Based on the testimony and evidence presented, as set forth below, this Court should find that Defendants failed to meet their burden of proof, Plaintiffs exhausted their administrative remedies and, therefore, their claims against Defendants should proceed.

## PROCEDURAL HISTORY

On November 20, 2019, Plaintiffs Krystal Clark, Hope Zentz, and Paula Bailey ("Plaintiffs")[1] filed a putative class action complaint under 42 U.S.C. § 1983 for unlawful conditions of confinement in violation of incarcerated women's 8th Amendment Constitutional Rights and for negligence relating to the living conditions, specifically the presence of mold, at the Women's Huron Valley Correctional Facility ("WHV"). (Compl., ECF No. 1.)

---

[1] Plaintiffs Zentz and Clark are Putative Class Representatives of a proposed Injunctive Relief class. (2d Am. Class Compl. ¶¶ 19–20, ECF No. 161.) Plaintiff Bailey has since been released and therefore is no longer seeking to be appointed as a class representative.

On April 20, 2020, Defendants Heidi Washington, Shawn Brewer, Russell Marlan, Kenneth McKee, Lloyd Rapelje, Lia Gulick, David Johnson, Karri Ousterhout, Joseph Treppa, Dan Carter, Richard Bullard, Toni Moore, Ed Vallard, Jeremy Bush, Jeremy Howard, and Joel Dreffs ("Defendants") moved for summary judgment relating to exhaustion.[2] (ECF No. 53; *see also* ECF No. 56.) Judge Victoria A. Roberts denied the motion. (ECF No. 69.) The Court found sufficient disputes of material fact. As to particular grievances, the Court specifically held:

> a.      WHV-2019-10-4358-28E was not defective simply because Step III was finished after the initiation of the lawsuit, *id.* at PgID.1019–20;

> b.      WHV-2019-10-4358-28E,      WHV-2019-08-3773-12Z, WHV-19-05-2141-28K,  WHV-19-04-1981-28E,  WHV-19-04-2004-28K, and WHV-16-04-2219-28E all "placed Defendants on notice of the underlying mold issues and a question of fact existed as to whether there was adequate exhaustion", rejecting Defendants' arguments about the fact that the grievances did not name every Defendant, *id.* at PgID.1021–24 ("**Clark and Zentz gave sufficient notice. They identified the specific individuals that they believed were involved in the establishment of the policy and procedures addressing mold and resulting health issues. This is enough to put staff on notice of an underlying mold issue in the prison, although Clark and Zentz did not name every individual involved in this suit.**" (emphasis added)); and

---

[2] Defendants also moved to dismiss on the same day, when discovery had not yet commenced. (*See* Defs.' Dismiss Motion., ECF No. 52.) A more detailed description of motion practice, discovery, and stays for settlement discussions in this matter can be found in Plaintiff's response in opposition to Defendants' emergency motion to stay discovery pending resolution of their motion for judgment on the pleadings, (ECF No. 186 at PgID.4128–34).

      c.     As to vagueness challenges to WHV-2019-10-4358-28E, WHV-19-05-2141-28K, WHV-19-04-1981-28E, WHV-19-04-2004-28K, and WHV-16-04-2219-28E, the grievances were "sufficient under the circumstances," *id.* at PgID.1022–24.

Plaintiffs subsequently filed a second amended class action complaint, (ECF No. 161 at PgID.3376), to address the Court's order relating to Defendants' motion for judgment on the pleadings. This complaint reframes Plaintiffs' pleading to clarify that Defendants violated Plaintiffs' clearly established right to adequate ventilation. (*See* Order, ECF No. 160 at PgID.3362–66 (granting motion for judgment on the pleadings, allowing amendment, and acknowledging a clearly established right to adequate ventilation).)

Defendants moved again for summary judgment relating to exhaustion, (ECF No. 177), and Judge Stephen J. Murphy denied the motion, (ECF No. 191). Judge Murphy directly incorporated the Court's order on Defendants' first motion for summary judgment and held that the reasoning found in the Court's prior order still applied to the reframed pleading. (*Id.* at PgID.4281–82 ("**[T]he grievances here provided WHV with a fair opportunity to investigate the health conditions and the mold exposure—which naturally should involve an investigation into the cause of the mold and the cause of the health conditions at issue**." (emphasis added)).) The Court held **"Plaintiffs demonstrated 'sufficient appropriate efforts to comply with administrative procedures' to survive summary judgment."** (*Id.* at PgID.4282–83 (emphasis added) (quoting ECF No. 69 at PgID.1025).)

Undeterred, Defendants filed a motion on July 10, 2024, requesting a bench trial or an evidentiary hearing on the exhaustion question specifically, or in the alternative reconsideration of the Court's order on summary judgment. (ECF No. 192.) Plaintiffs did not oppose the former request, and Plaintiffs did not respond to the latter pursuant to Local Rule 7.1(h)(3). (ECF No. 193.)

The Honorable Magistrate Judge Elizabeth Stafford conducted the evidentiary hearing on October 30, 2024. The Court admitted Defendants' exhibits A-J, and Plaintiffs' exhibits 1 through 31. (Hr. Tr. at 8:23–9:1, ECF No. 213 at PgID.4566–67.) The Court heard testimony from Defendants' witnesses Richard Russell and Latosha Boa,[3] and Plaintiffs' witness Plaintiff Paula Bailey.

While the parties identified multiple grievances in briefing summary judgment of the exhaustion issue, Plaintiffs now submit that they properly exhausted the following grievances, as relating to the allegations at issue in this case, through Step III of Defendants' Grievance Policy—the necessary prerequisite for Plaintiffs filing the present lawsuit in federal court:

- Clark Grievance – WHV-19-04-1981-28E ("1981") (ECF No. 56-5 at PgID.727–30), Defs.' Ex. D, Pls.' Ex. 1;

- Clark Grievance – WHV-19-04-2004-28K ("2004") (ECF No. 56-5 at PgID.731–34), Defs.' Ex. E, Pls.' Ex. 2;

---

[3] The hearing transcript refers to Latasha Bowa, but the Defendants' witness list and relevant exhibits identify the witness as Latasha Boa.

4

- Clark Grievance – WHV-16-04-2219-28E ("2219") (ECF No. 56-5 at PgID.735–39), Defs.' Ex. F, Pls.' Ex. 3;

- Clark Grievance – WHV-23-01-0081-28E ("0081") (ECF No. 177-2 at PgID.3729–32), Pls.' Ex. 16;

- Clark Grievance – WHV-07-3305-28C ("3305") (ECF No. 177-2 at PgID.3814–17), Pls.' Ex. 18;

- Zentz Grievance – WHV-19-05-2141-28K ("2141") (ECF No. 56-6 at PgID.786–89), Defs.' Ex. H, Pls.' Ex. 6;

- Bailey Grievance – WHV-2018-04-1116-03D / WHV-2018-04-1116-28E ("1116-28E") (ECF No. 56-3 at PgID.664–72), Defs.' Ex. A, Pls.' Ex. 9, along with, Bailey Grievance – WHV-2018-04-1116-03D / WHV-2018-04-1116-28E ("1116-03D") (ECF No. 62-5 at PgID.922–27), Pls.' Ex. 10, and Bailey Grievance dated 4.19.18 (ECF No. 181-5 at PgID.3996), Pls.' Ex. 11;

- Bailey Grievance – WHV-2019-10-4358-28E ("4358") (ECF No 56-3 PageID.627–31), Defs.' Ex. B, Pls.' Ex. 12;

- Bailey Grievance – WHV-2019-08-3773-12Z / WHV-2019-08-3773-28E ("3773") (ECF No. 56-3 PageID.632–636), Defs.' Ex. C, Pls.' Ex. 13; and

- Bailey Grievance – WHV-2020-03-0929-03E / WHV-2020-03-0929-28E ("0929") (ECF No. 177-4 PageID.3872–3877), Defs.' Ex. G, Pls.' Ex. 24.

Plaintiffs' proposed findings of fact and conclusions of law are set forth below:

## FINDINGS OF FACT

### I)   WHV'S GRIEVANCE PROCEDURE

1.   The relevant procedure for WHV is the Michigan Department of Corrections grievance policy directive 03.02.130 (hereafter the "Grievance Policy"

or "Policy"). (Pls.' Ex. 31, ECF No. 56-2; Hr. Tr. 8:11–:15, ECF No. 213 at PgID.4566.)

2.      The Policy that Defendants submitted was last revised on March 18, 2019. Defendants did not submit an earlier policy for the Court's consideration. (*See* Pls.' Ex. 31, ECF No. 56-2.)

3.      According to the Policy, "Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement that personally affect the grievant, including alleged violations of this policy and related procedures." (*Id.* pt. F, PgID.602.)

4.      The Grievance Policy is designed to provide incarcerated persons with meaningful solutions to their issues at the facility level. (Hr. Tr. 7:18–8:5, 18:14–:17, ECF No. 213 at PgID.4565–66 & 4576.)

5.      Richard Russell, the hearings coordinator and grievance section administrator for the MDOC in Lansing Michigan, is responsible for reviewing and revising the Grievance Policy. (*Id.* at 7:6–:9, 8:6–:9, 19:3–:6, PgID.4565–66, 4577.)

**A)      The Grievance Steps**

6.      The Grievance Policy includes three steps, and all three steps must be completed for a grievance to be considered exhausted. (*Id.* at 7:18–8:5, 12:2–:6, PgID.4565–66, .4570.)

7.     Step I grievances must be brief and concise, and they must state the facts (the who, what, when, where, why, and how). (Pls.' Ex. 31, pt S, ECF No. 56-2 at PgID.605.) Information about dates, times, places, and names of those involved should be included, but the information should be confined to a box on the form that is approximately 3.25 by 8.5 inches in size. (*See id.* ("[G]rievants are encouraged to limit the information to the grievance form itself.").)

8.     If an incarcerated woman is unsatisfied with the results of her grievance, she may timely appeal to the next step. (*Id.* pt. DD, PgID.607.)

9.     Step II decisions are signed off by the warden or other enumerated individuals. (*Id.* pt. FF, PgID.607–08.)

10.     Step III decisions are signed off by Richard Russell in Lansing. (Hr. Tr. 7:10–:17, ECF No. 213 at PgID.4565.)

11.     A grievance, at any stage, may either be rejected by the grievance coordinator or, if not rejected, responded to by an assigned respondent within 15 business days.[4] (Pls.' Ex. 31 pts. Y–Z, ECF No. 56-2 at PgID.606.)

12.     As part of the response, the respondent "shall interview" the incarcerated woman—though an interview is not required for a rejection. (*Id.* pt. AA,

---

[4] There is no stated deadline for a rejection, only a response.

PgID.607.) A supervisor reviews the response at each step of the process. (*Id.* pt. BB, PgID.607.)

13.   When a grievance is rejected (as opposed to responded to), there is no investigation, interview, or determination on the merits. (Hr. Tr. 43:1–:11, ECF No. 213 at PgID.4601.)

14.   The Grievance Policy enumerates 14 specific grounds for rejection, including: (1) "It is vague, illegible, or contains multiple unrelated issues," (2) "It raises issues that are duplicative of those raised in another grievance filed by the grievant," (3) "The grievance is filed in an untimely manner," and (4) "Two or more prisoners . . . have jointly filed a single grievance regarding an issue of mutual impact or submit identical individual grievances regarding a given issue of an organized protest." (Pls.' Ex. 31 pt. J, ECF No. 56-2 at PgID.603–04.) The Grievance Coordinator issues rejections, and their supervisor approves them. (*Id.* pt. Y, PgID.606.)

15.   According to Defendants' Step III grievance reports—issued from January 1, 207 to October 12, 2023 for Plaintiffs Bailey and Clark, and issued January 1, 2013 to April 3, 2020 for Plaintiff Zentz—of all the grievances Plaintiffs submitted through step three during this time (70 in total), 56 were rejected, 13 were denied, 0 were partially resolved, and only one was resolved. (*See* Pls.' Exs. 8, 23, 26; Hr. Tr. 44:18–55:20, ECF No. 213 at PgID.4602–.4613.)

**B)      Rejection as Untimely**

16.      Although one of the grounds for rejection is untimeliness, the Policy is unclear as to what is considered timely.

17.      Specifically, paragraphs W, DD, and HH of the Policy conflict with paragraph T, making it difficult for an ordinary prisoner to discern and navigate the grievance process.

18.      Paragraph W (addressing Step I grievances) requires incarcerated women to complete and "send" the required form to the grievance coordinator within five business days after attempting to resolve the issue with the staff. (Pl.'s Ex. 31 pt. W, ECF No. 56-2 at PgID.606.) Section DD, dealing with Step II, also uses "send" and requires it to be done within ten business days, and Section HH similarly requires incarcerated women to "send" step III appeals within ten business days. (*Id.* at PgID.607–08.) These paragraphs give the impression that a grievance or an appeal is submitted (and therefore the time clock stops ticking) when the form is **sent**.

19.      However, paragraph T, addressing all steps, states that grievances are "considered filed on the date received by the department." (*Id.* at PgID.605.) Under this definition, a grievance is "filed", for the purpose of counting and determining timeliness, only after it is filled out and sent by the grievant and **received and date stamped by the department**. (Hr. Tr. 23:7–:16, ECF No. 213 at PgID.4581.)

20.     There is a meaningful distinction between the date a grievance is sent and the date a grievance is received because WHV requires incarcerated women to submit and request such paperwork through the prison mail system.

21.     The required five business days for incarcerated women to submit at Step I and the ten business days for Steps II and III necessarily include the time it takes for the grievance to be sent through the prison mail system and sorted from other prison mail (like kites) and U.S. mail and sent to the grievance office.[5] (*Id.* at 30:22–:25, 124:11–127:13, ECF No. 213 at PgID.4589, .4682–85.)

22.     Incarcerated women cannot submit their grievances by hand. (*Id.* at 128:21–:23, PgID.4686.)

23.     Incarcerated women do not have control over the length of time it takes for a grievance to make its way through the mail.

24.     This is particularly problematic at Step II. The ten-business day deadline includes the time for the response to be sent to an inmate (by mail), the time for the inmate to request (by mail) and receive (by mail) the Step II form, and the

_____

[5] Paragraph U further gives the impression that the timelines for appeals provides a minimum timeline rather than a mandatory cutoff, stating: "If a grievant chooses to pursue a grievance that has not been responded to by staff within required time frames, including any extensions granted, the grievant *may* forward the grievance to the next step of the grievance process within ten business days after the response deadline expired . . . ." (Pl.'s Ex. 31, ECF No. 56-2 at PgID.605 (emphasis added); *see also* Hr. Tr. 26:11–:16, ECF No. 213 at Pg.ID.4584.)

time for the inmate to fill out and send back the Step II form to the department (again, by prison mail). (*Id.* at 38:12–39:24, ECF No. 213 at PgID.4596–97.)

25.    Also, to be considered timely, Step III must arrive at the main office in Lansing, Michigan, outside the facility, where it must be sorted and delivered to the appropriate office, within the ten business days. (*Id.* at 41:4–:9, PgID.4599.)

26.    Mr. Russell, tasked with overseeing the Grievance Policy, testified that the prison mail system was "not his area" of expertise, and he seemed unsure of the details of the mail process at WHV, despite his Policy's strong reliance on the mail system for determining the timeliness of grievances. (*Id.* at 26:17–27:6, 28:2–20:21, PgID.4584–85 ("Q: But mail, in the processing of a grievance, is an integral issue as it relates to the grievance process, isn't it? A: Yes.").)

27.    Incarcerated women face rejection for untimeliness, but WHV personnel are not beholden to the same strict timelines.

28.    Although Part U of the Policy states that WHV personnel "shall" respond within fifteen business days, Mr. Russell testified that it does not violate the Policy when WHV misses its own response deadlines. (*Id.* at 37:24–38:11, PgID.4595–96.)

29.    When WHV's responses are late, incarcerated women are still required, however, to adhere to the strict deadlines imposed upon them for filing appeals *even though* they do not yet know WHV's decision or its reasoning because they have not

yet received responses or rejections. (*Id.* at 32:23–35:24, 37:24–38:11, 40:1–:8, PgID.4590–93, .4595–96, & .4598.)

**C)   Rejection as a Joint Grievance**

30.   A grievance is considered "joint" when "[t]wo or more prisoners and parolees have jointly filed a single grievance regarding an issue of mutual impact or submit identical individual grievances regarding a given issue as an organized protest." (Pls.' Ex. 31 pt. J, ECF No. 56-2 at PgID.603.)

31.   Mr. Russell testified: "'joint' means they've filed on the same issue with the same language, and those are issues that we prefer to go to the warden forum, that's why we do it that way." (Hr. Tr. 87:10–:16, ECF No. 213 at PgID.4545.)

32.   When pressed, Mr. Russell stated that, in denying a grievance as "joint", the grievance coordinator can reject a grievance based on the totality of the circumstances or based on information not contained on the form. (*Id.* at 89:24–92:1, PgID.4647–4650 ("[I]t's their judgment call whether that—whether this is one of many that they've received, and the administrative remedy by the department is to send it to the warden's forum").)

33.   The Policy itself, however, does not provide a mechanism for exhausting administrative remedies through the warden's forum. (*See generally* Pls.' Ex. 31, ECF No. 56-2.)

34.     To further understand the meaning of "joint," the Court posed the

following hypothetical to Mr. Russell:

> A number of prisoners say, our food is poisoned. ["]We think there's
> rat poisoning in the food,["] and they file grievances saying, ["]I've
> been sick from rat poisoning.["] If they -- if multiple prisoners file a
> grievance saying ["]the food is making me sick, I think its poisoned,["]
> they cannot file individual grievances?

(Hr. Tr. 87:19–:24, ECF No. 213 PgID.4645.) Mr. Russell responded in the

affirmative, stating that "the administrative remedy for that [situation] is taking it to

the warden's forum." (*Id.* at 92:2–:16, PgID.4650.)

35.     When pressed, Mr. Russell clarified that two or more identical

grievances in the Court's rat poisoning hypothetical would qualify as an "organized

protest" and therefore would be rejected as an impermissible joint grievance under

the Policy. (*Id.* at 94:5–96:1, PgID.4652–54.)

## II)    PLAINTIFF HOPE ZENTZ'S GRIEVANCE

36.     Plaintiff Hope Zentz submitted one grievance at issue: WHV-19-05-

2141-28K ("2141"). (Pls.' Ex. 6, ECF No. 56-6 at PageID.786–89.)

37.     Plaintiff Zentz submitted grievance 2141 on April 25, 2019. She states:

> I am grieving the Warden, WHVC, MDOC Sherman Brewer, chief
> medical officer Carmen McIntyre, Healthcare unit manager Ms. Fisher
> for Violation of my 8th Amendment Constitutional Right and deliberate
> indifference as my plan of treatment is not effective. I'm experiencing
> twitching of my eyes. When I'm in any Building on ground, constant
> headaches, dizziness, seeing spots, film on my eyes, chronic Fatigue,
> nose bleeds, sinus infection & couphing [sic] in my sleep. I Know
> without a Doubt from my experience in construction that this is caused

from exposure to high levels of mold and I'm Forced to be subseptable [sic] to this health hazard.

(*Id.* at PgID.789.)

38.     Plaintiff Zentz described her pre-grievance efforts to resolve as involving a kite to healthcare, her housing unit manager, "spoke to chain of command," and she sent a letter to Warden Brewer. (*Id.*)

39.     WHV rejected the grievance at Step I for qualifying as a "Reject! Joint grievance by 2 or more prisoners." (*Id.*)

40.     The grievance itself does not identify any other incarcerated women by name; it is not signed by any other incarcerated women; and Defendants did not present at the hearing any similar grievances or attachments purporting to be jointly submitted by any other incarcerated women. (*See* Hr. Tr. 60:22–61:15, ECF No. 213 at PgID.4618–.4619.)

41.     Plaintiff Zentz appealed to Step II, writing: "Prison officials have an obligation to protect prisoners from the risk of diseases. Prisoner officials had actual knowledge of an objectively cruel condition and did not respond reasonably to the risk. Issue still remains." (Pls.' Ex. 5, ECF No. 56-6 at PgID.787.)

42.     Warden Brewer upheld the rejection at Step II. (*Id.* at PgID.788.)

43.     Plaintiff Zentz submitted Step III on June 12, 2019, and Mr. Russell upheld the rejection on August 6, 2019. (*Id.* at PgID.786.)

44.     No additional reasoning for rejections were provided at Step II or Step

III.

45.     Plaintiff Zentz exhausted this grievance through Step III.

**III)   PLAINTIFF KRYSTAL CLARK'S GRIEVANCES**

46.     Plaintiff Clark submitted five grievances at issue: Plaintiffs' Exhibits

1–3, 16 & 18.

**A)     WHV-904-2004-28K ("2004"), Pls.' Ex. 2**

47.     Plaintiff Clark submitted grievance 2004, executed on April 14, 2019.

She states:

> I am grieving Warden Shawn Brewer due to the **inhumane living conditions related to the dangers of living around mold**. Exposure to <u>mold</u>, especially living around mold is the second leading cause of breathing illnesses – asthma, copd, etc. **I have a heart condition, my chest hurts, I'm short of breath- it's difficult to breathe, my heart races, I have headaches**. Health Care has put me on more than one inhaler & they are not effective in treating my asthma. Exposure to the mold irritants is very detrimental to my health. I have Wolf [sic] Parkinson White syndrome & chronic asthma.

(Pls.' Ex. 2, ECF No. 56-5 at PgID.734 (emphasis added).)

48.     Plaintiff Clark attempted to resolve the issue before grieving, stating:

"I have sent numerous kites to both Warden Stewart and Warden Brewer with no response. I also kited Heidi Washington[, Director of Michigan Department of Corrections,] and D.W. Housing with no response. Last kite was April 9, 2019." (*Id.*)

49.     At Step I, WHV replied: "Reject! Joint grievance by 2 or more prisoners[.]" (*Id.*)

50.    When asked at the evidentiary hearing whether, in his opinion, this grievance qualified as a joint grievance, Mr. Russell testified that he would "have to see all the grievances" to answer the question. (Hr. Tr. 86:14–89:1, PgID.4644–45.)

51.    The grievance itself does not identify any other incarcerated women by name; it is not signed by any other incarcerated women; and Defendants did not present any similar grievances or attachments purporting to be jointly submitted by any other incarcerated women along with or similar to grievance 2004.

52.    Plaintiff Clark appealed to Step II, noting: "Issue remains. I made numerous attempts to receive step II, yet was untimely received by mac staff." (Pls.' Ex. 2, ECF No. 56-5 at PgID.732.)

53.    Warden Brewer upheld the original rejection and identified the Step II as untimely. (*Id.* at PgID.733.)

54.    Plaintiff Clark appealed to Step III, noting she continues to be exposed to mold, and it continues to impact her health negatively. (*Id.* at PgID.732.) Mr. Russell upheld the rejection. (*Id.* at PgID.731.)

55.    Plaintiff Clark exhausted this grievance through Step III.

**B)    WHV-19-04-1981-28E ("1981"), Pls.' Ex. 1**

56.    Plaintiff Clark submitted grievance 1981, executed on April 17, 2019. (ECF No. 56-5 at PgID.727–30.). She states:

> I am grieving healthcare, HUM Regional Medical Director, Warden
> Brewer & Heidi Washington for the following reasons: Inhumane

16

Treatment. I have Wolf [sic] Parkinson White Syndrome & Chronic Asthma. All my symptoms, shortness of breath, chest pains, headaches-very bad, dizziness, racing heart/palpitations having been getting increasin[g]ly worse. I've explained this to the doctors & instead of doing any EKG or sending to what I need/ a <u>cardiologist</u>, she is teaching relaxation techniques "Lie down/rest." My condition is very serious and can be fatal. Given the ongoing dirty/stinking water/mold I have to shower in, I can't relax! It's endangering my health.

(*Id.* at PgID.730.)

57.   WHV rejected the grievance at Step I as a duplicate.

58.   Defendants did not offer or make clear at the evidentiary hearing which grievance 1981 had duplicated.

59.   Plaintiff Clark submitted Step II, indicating the issue remains, and WHV upheld the rejection at Step II. (*Id.* at PgID.728–29.) WHV did not list any other additional bases for rejection.

60.   Plaintiff Clark submitted Step III, stating:

The responses received are unsatisfactory and the issue remains unresolved. **The mold situation still exists in the housing unit in which I reside and I continue to be adversely affected**. My health is significantly impacted as a result of the toxicity of the mold. Despite the medications I have been given, my health continues to deteriorate because I am continually exposed to an environment rife with mold.

(*Id.* at PgID.728 (emphasis added).)

61.   Mr. Russell upheld the rection. (*Id.* at PgID.727.)

62.   Plaintiff Clark exhausted this grievance through Step III.

**C)**   **WHV-16-04-2219-28E ("2219"), Pls.' Ex. 3**

63.     Plaintiff Clark submitted grievance 2219, executed on April 10, 2016. (Pls.' Ex. 3, ECF No. 56-5, PageID.735–39.)

64.     The grievance provides that Plaintiff Clark "spoke with the c/o of [housing unit] 4 about the black mold that is growing at a rapid rate in the showers." She complains that "**Black mold is very dangerous and is putting my life at danger**." Ms. Clark's grievance complains of inhumane treatment, lack of proper cleaning supplies, "which has allowed the black mold to grow out of control," and that it "is affecting [her] breathing." (*Id.* at PgID.738 (emphasis added).)

65.     WHV rejected the grievance at Step I as "vague." (*Id.*) The form states the rejection was returned to Plaintiff Clark on April 19, 2016, but the Step II grievance was marked by the grievance coordinator as due on June 14, 2016, indicating acknowledgement of significant delay between the steps. (*Compare id.* at PgID.738, *and id.* at PgID.736.) No reason was provided for this delay.

66.     Plaintiff Clark submitted Step II, making clear that "there is an 'INADEQUATE AMOUNT OF 'CAUSTIC' for cleaning- creating a high risk for further issues. Inhumane treatment in staff is aware of issue of sanitation but fails to correct problem . . . ." (*Id.* at PgID.736.)

67.     WHV stamped Step II as received July 27, 2016, and WHV rejected Step II as untimely. (*Id.* at PgID.737 & .739.)

18

68.    Plaintiff Clark appealed to Step III, and the rejection was upheld. (*Id.* at PgID.735–36.)

69.    Plaintiff Clark exhausted this grievance through Step III.

**D)     WHV-07-3305-28C ("3305"), Pls.' Ex. 18**

70.    Plaintiff Clark submitted grievance 3305 on July 25, 2020. (ECF No. 177-2 at PgID.3814–17.)

71.    Plaintiff Clark's grievance concerns the bathroom in housing unit Gladwin B. She complains about feces and urine on the floor and walls, and further states that, "**There is black mold in all shower stalls, coming through the blower, which does not [help] remove steam from the shower area**. These unsanitary living conditions exacerbate my health issues, which include chronic dry cough, chronic bronchitis, and moderate persistent asthma with [] (a heart condition)." (*Id.* at PgID.3817 (emphasis added).)

72.    WHV rejected the grievance at Step I as dealing with multiple issues. (*Id.*)

73.    Plaintiff Clark appealed to Step II, stating:

This grievance was <u>not</u> multiple issues. It was only one issue – namely the unsafe toxic, unsanitary conditions I am forced to live in which is jeopardizing my health. The black mold, urine, and feces on the ceiling, walls, and floors is creating this toxic environment. I have lung disease which prohibits me from exposure to the black mold spores because it causes me to cough, have chest pains, shortness of breath, respiratory infections, and rash all over my body.

19

(*Id.* at PgID.3815.)

74.     WHV upheld the initial rejection at Step II. (*Id.* at PgID.3816.)

75.     Plaintiff Clark submitted to Step III, and Mr. Russell upheld the rejection. (*Id.* at PgID.3814.)

76.     Plaintiff Clark exhausted this grievance through Step III.

**E)     WHV-23-01-0081-28E ("0081"), Pls.' Ex. 16**

77.     Plaintiff Clark submitted grievance 0081, executed on December 25, 2022. (Pls.' Ex. 16, ECF No. 177-2 at PgID.3729–32.)

78.     Plaintiff Clark grieved about being required to stay in a cell in the Kent unit while she received IV antibiotic treatments, stating "the last time I did, I had a severe allergic reaction to the mold & mildew & had to be stuck with an EPIPEN, & immediately rushed to the hospital." (*Id.* at PgID.3732.) Ms. Clark reported she attempted first to resolve the issue with Ofcrs Clements & Christian, Dir. Jones, HUM Tinsley, Nurses Shrainer, Thomas, McEntire, and Robertson, and RCA Williams, Dr. Ellois, Lt. Perrell, and RUM Paige . . . ." (*Id.*)

79.     WHV rejected the grievance at Step I as vague. (*Id.*)

80.     Plaintiff Clark requested a Step II form, and the form indicates the Step II appeal was due to the grievance coordinator on April 12, 2023. (*Id.* at PgID.3730.) Plaintiff Clark's Step II was date stamped received on April 12, 2023. (*Id.*) WHV, however, rejected her Step II as untimely. (*Id.* at PgID.3731.)

81.     Plaintiff Clark appealed to Step III, stating "How is step 2 untimely? It was rec'd 4/12/23 the actual due date. See above [circling the two dates]" (*Id.* at PgID.3730.)

82.     Mr. Russell upheld the rejection. (*Id.* at PgID.3729.)

83.     Plaintiff Clark exhausted this grievance through Step III.

## IV)   PLAINTIFF PAULA BAILEY'S GRIEVANCES

84.     Plaintiff Bailey submitted four grievances at issue: Plaintiffs' Exhibits 25, 12–13, and 10.

### A)   WHV-2020-03-0929-03E / WHV-2020-03-0929-28E ("0929"), Pls.' Ex. 24

85.     Plaintiff Bailey submitted grievance 0929 signed on February 26, 2020. (Pls.' Ex. 24, ECF No. 177-4 at PgID.3872–77.)

86.     Plaintiff Bailey states:

On 2-24-2020, time 9:30 a.m. at the front door [of] Dickinson B, Housing Unit… I informed, Mr. Jackson-Huron Valley Maintenance that, **the Housing Unit Dickinson Ventilation System was (OFF)**. Mr. Jackson stated: ((I Know) I asked Mr. Jackson would he please re-set the Ventilation? On 2-22-2020, the Fire Alarm Triggered the Ventilation System, to shut down… Mr. Jackson stated: ((I'm not turning the Ventilation System back on, because you Inmates keep doing F***ked up S**t to make it shut Off))…((Like setting Off the Fire Alarms…)) I informed Mr. Jackson that, it's very difficult to Breath, and I am Asthmatic[.] I am experiencing, Coughing, Shortness of Breath, Nose Bleeds, Tightness in my Chest… I informed, Mr. Jackson that without the Ventilation System on, the Air inside of The Housing Units are, thick, and has A Musty Odor… The Windows cannot be opened to l[e]t in Fresh Air, there is no fresh air Circulating inside the Housing Unit. I informed Mr. Jackson that, My Medical

21

Issues/Asthma, only gets worse when he refuse[s] to re-set – and turn the Ventilation System back on. Mr. Jackson stated: ((I don't care, your health issues is not my problems)) I stated: (I'm going to grieve it!) Mr. Jackson replied: ((I don't give A damn, grieve it!)) Mr. Jackson/Maintenance has knowingly violated my Eighth Amendment Rights – Under… Inadequate Ventilation,.. See, Board-V-Farnham, 394F 3d 469, 485, 86 (7th Cir. 2005) . . . .

Mr. Jackson, willful act of, Inhumane Treatment, and lack of care has A significant bearing on the Health Of A Prisoner… It has been proven that, poor Ventilation, and Inadequate Ventilation within A Dwelling, Or No Ventilation, causes Upper Respiratory issues, in which I suffer from. It is clear from the statements that Mr. Jackson made Of 2-23-202 THAT, His Actions are Personal…Which violates PD Policy 03.03.130.

(*Id.* at PgID.3876 (emphasis added).)

87.     Plaintiff Bailey represents that she attempted to resolve the issue with maintenance worker Jackson, and she attempted to obtain Mr. Jackson's supervisor's name, but neither Jackson nor the housing unit officer would not provide her with this information. (*Id.*)

88.     Grievance 0929 was not automatically rejected at Step I. Investigator PC Gaines emailed with Jackson about the grievance, but Jackson apparently did not recall the incident. (*Id.* at PgID.3877.) P.C. Gaines did not interview Plaintiff Bailey.[6] (*Id.*) The grievance was neither denied nor accepted, but rather it was classified as "unresolved." (*Id.*)

---

[6] The grievance response form references an attachment related to the email with Mr. Jackson, but the record contains no such attachment.

89.    The Grievance Policy does not mention an "unresolved" classification. (*See generally* Pls.' Ex. 31, ECF No. 56-2.) Grievance coordinator Boa testified to not knowing what the designation means. (Hr. Tr. 133:11–:16, PgID.4691 ("I'm not really sure.").)

90.    Plaintiff Bailey submitted a Step II appeal because "the grievance was not resolved at step 1 and the investigation summary at Step 1 is incorrect . . . ." (Pls.' Ex. 24, ECF No. 177-4 at PgID.3874 (proceeding to explain why the investigation summary was incorrect).)

91.    Plaintiff Bailey's Step II appeal was due by June 2, 2020, according to the form executed by the grievance coordinator. (Hr. Tr. 133:17–134:8, PgID.4691–92.) Plaintiff Bailey signed her Step II appeal on May 21, 2020, and the grievance coordinator's office stamped the Step II as received June 1, 2020. (*Id.*) Therefore, on the face of the exhibit, Plaintiff Bailey's Step II was received within the required time frame.

92.    WHV, however, rejected Plaintiff Bailey's Step II as untimely. (Pls.' Ex. 24, ECF No. 177-4 at PgID.3875.)

93.    Plaintiff Bailey appealed her grievance to Step III, and Mr. Russell upheld the rejection. (*Id.* at PgID.3872.)

94.    Plaintiff Bailey exhausted this grievance through Step III.

95.     The Dickinson Housing Unit Ventilation System remained off through the summer and until approximately October. (Paula Bailey Decl. ¶ 22, ECF 68 at PgID.3991.)

**B)     WHV-2019-10-4358-28E ("4358"), Pls.' Ex. 12**

96.     Plaintiff Bailey submitted grievance 4358 signed on September 22, 2019. (Pls.' Ex. 12, ECF No. 56-3 at PgID.627–631.)

97.     Plaintiff Bailey states:

On 9-17[-]19, and prior, time 2:20 a.m. through out the month of August 2019 times between 11:30 p.m. up until 5:30 a.m. the 3rd. Shift Officers, Ms. Hines and Ms. Williams ordered us Prisoners out of our Beds to clean the Housing Unit… **Which consisted of, Scrubbing Toxic Black Mold, inside the Shower Area's…along with other Bio-Hazardous Waste** – Per,.. Mr. Shawn Brewer, Warden/WHVC. I am not qualified to [] clean Hazardous Materials… After Hours of cleaning, we are not allowed to take A Shower, you must return to your Cell/Bed…Staff does not provide us Prisoners with Special Cleaning Supplies…Like, Gloves, A [] Face Mask, to cover our mouth and Nose to protect our (Upper Respiratory System) The Warden, Mr. Brewer has shown A clear and convincing case of Deliberate Indifference…By Knowingly, Exposing me to Dangerous Conditions/Toxic Black Mold, and other Toxic Substances, which is A violation of my Eighth Amendment Rights. **I am expereincing [sic], Hair Lost[,] Rashes, Difficulty Breathing, Shortness of Breath, Coughing when Sleep…Muscle Spasms, Muscle Fatigue. The Housing Unit's here at Huron Valley Correctional Facility the Staff is fully aware of Mold. The Cell I live in Keeps A strong musty smell. The Cell Windows stay cloudy and wet/damp between the Panes. And has a musty odor**. Mr. Shawn Brewer, Warden, along with this[]Administration has violated PD Policy 03.03.130 Humane Treatment and Living Conditions For Prisoners,… Which clearly states: All Prisoners committed to the jurisdiction of the Department shall be treated humanely and with dignity in matters of Health Care, personal safety and (General Living Condition) Mr. Shawn Brewer has

24

exposed me to a condition that poses an unreasonable risk of serious harm to my present future Health and safety… Please See, Helling-V-Mckinney, 509 U.S. 25, 35 (1993)

(*Id.* at PgID.630 (emphasis added).)

98.     At Step I, the grievance coordinator rejected this as untimely. (*Id.*) The grievance is stamped received on September 30, 2019, which was 6 business days after her signature. The specific incident reported was on September 17th, which was 9 business days before WHV stamped the form as received.

99.     Plaintiff Bailey testified that it was her practice to sign her grievances the day of or the day before she put them in the mail to the grievance coordinator. (Hr. Tr. 158:13–159:2, ECF No. 213 at PgID.4716–17.) Coordinator Boa testified that she had "no reason one way or another to second-guess the date that Ms. Bailey has represented that she . . . executed" the form. (*Id.* at 142:9–:13, ECF No. 213 at PgID.4700 ("I can only go by the dates that we get them out of the mail and stamp them; that's what we go by.").)

100.     Again, Plaintiff Bailey cannot control the time it takes for her grievances to get through the prison mail system and to the coordinator's office.

101.     Plaintiff Bailey submitted a Step II appeal, addressing the untimeliness rejection: "If you read the Complaint filed at Step One, you would clearly read that, I stated: On 9-17-19, and prior, I tried to resolve the issue, to no avail… So, on 9-

22-19, I grieved the Issue… which was in A timely manner from the date of the last incident." (Pls.' Ex. 12, ECF No. 56-3 at PgID.628.)

102.   WHV upheld the original rejection as untimely at both Step II and Step III. (*Id.* at PgID.627–28.) The rejections do not elaborate or explain on the determination beyond labeling it as "untimely."

103.   Plaintiff Bailey exhausted this grievance through Step III.

**C)   WHV-2019-08-3773-12Z / WHV-2019-08-3773-28E ("3773") (ECF No. 56-3 PageID.632–636), Pls.' Ex. 13**

104.   Plaintiff Bailey submitted grievance 3773 signed on August 17, 2019. (Pls.' Ex. 13, ECF No. 56-3 at PgID.632–36.)

105.   Plaintiff Bailey states in part:

On 8-14-19, I informed Ms. Pamela Olmstead that, my difficulty breathing, shortness of breath, Coughing when I sleep, has become worse…My symptoms are an indication that I am Allergic to something. I asked to be sent out to be tested for an Allergy to Mold, or what ever maybe causing the above symptoms? I was told that, It would not be approved.

(*Id.* at PgID.635.) Plaintiff Bailey also stated that she spoke with "Nurse / ARNP, Ms. Pamela Olmstead" and "Nurses Supervisor, Mr. B. Tinsley, RN" about the request. (*Id.*)

106.   Grievance 3773 was not rejected at Step I. Instead, it was assigned to an investigator. (*Id.* at PgID.636.) The investigation further summarized the issue and ultimately denied the grievance because WHV was already treating Plaintiff

Bailey's symptoms. (*Id.* ("Your grievance has been denied. You are being treated for the symptoms you are experiencing. If the treatments are not working, please notify health care so further assessments can be completed.").)

107.   Plaintiff Bailey grieved the issue to Step II; where she further clarifies in part:

> They are correct, I am being treated for some of the Symptoms I am experiencing… But, the [] ((Issue at Step One)) Clearly indicates that, **I'm asking to be seen by an Allergist, to be tested for Toxic Black Mold. I need to know what is causing my Symptoms**? Not only am I experiencing Coughing when ever I am sleeping, but I have, []Difficulty Breathing when I take A Shower, Hair Lost, Muscles Spasms, Muscle Fatigue, Rashes, Chest Pain… . . . I am also experiencing Seizers. I do understand that this [] Facility cannot provide me with an Allergist, to be tested for Toxic Black Mold…But, PD Policy 03.04.100 clearly states: A Prisoners whose Health Care needs cannot be met at the Facility where the Prisoner Housed shall be transferred to A Facility where[] those needs can be met! Health Care has violated my Eighth Amendment Rights, which states: I have A right to be free from cruel and unusual punishment.

(*Id.* at PgID.633 (emphasis added).)

108.   Plaintiff Bailey's Step II was not rejected. She received a response, in part stating:

> At this time, this grievance will be considered denied, as you will need to discuss your health care concerns with the MP. Grievant is currently scheduled to see the MP, within less than two weeks and she can discuss her concerns at that upcoming MP visit. The MP determines if a referral to an outside provider is indicated. . . .
> Also, **Mr. [sic] Bailey, custody oversees your housing unit, please discuss your concerns regarding your unit with them**.

> Grievant is encouraged to access health care through the kite process to
> address any current health care concerns and to constructively discuss
> his [sic] concerns with Health Care Staff at scheduled appointments.

(*Id.* at PgID.634 (emphasis added) ("Grievant is also encouraged to discuss her concerns regarding her housing unit with custody.").) In other words, MDOC directed Plaintiff Bailey to resolve her issues outside the grievance process rather than address her problems.

109.   Plaintiff Bailey submitted her grievance to Step III, indicating her continued symptoms, but her Step III was rejected as untimely. (*Id.* at PgID.632–33.)[7]

110.   Plaintiff Bailey exhausted this grievance through Step III.

**D)    Pls.' Ex. 10, ECF 62-5**

111.   Plaintiff Bailey testified that she submitted the grievance represented in Plaintiffs' Exhibit 10, signed on April 19, 2018. (Pls.' Ex. 10, ECF No. 62-5 at PgID.922–27; Hr. Tr. 158:1–:12, ECF No. 213 at PgID.4716.)

---

[7] The form indicates the Step II response was returned to Plaintiff Bailey November 1, 2019, through prison mail, then she received, filled out, and signed her Step III appeal by November 11, 2019, and she sent it back through the prison mail. (*Id.*) The time stamp indicates it was received in Lansing on November 25, 2019, which is the 15th business day after the response was put in the mail to be returned to Plaintiff Bailey (accounting for Veteran's Day).

112.   The version submitted as an exhibit is from Plaintiff Bailey's personal records, (Hr. Tr. 158:1–:12, ECF No. 213 at PgID.4716), as Defendants' records do not contain a copy of this grievance.

113.   Plaintiff Bailey testified to keeping copies of the grievances she submitted to WHV as part of her typical practice. (Hr. Tr. 157:4–:9, ECF No. 213 at PgID.4715.)

114.   In the grievance in question, Plaintiff Bailey states in part:

> I am also suffering with upper respiratory infections, difficulty breathing, for the last several months… I was treated in February 2018 at Health Care. I was once again verbally told by the Nurses that my reoccurring skin rashes and upper respiratory infections are related to Mold…. . . . . I am allergic to Mold!
> **The inadequate Ventilation System along with the Black Mold, in the Housing Units through out WHVC Facility, is having A deteriorating effect on my Health. . .Which is A clear violation of my Eighth Amendment Rights, which clearly states: I have A right to be free from Cruel and Unusual Punishment. . . . .**
> On 4-13-18, I discussed the with A Maintenance Guy who told me that they were instructed to Paint over the Black Mold inside of the various Housing Units/Showers.

(*Id.* at PgID.922 (emphasis added).)

115.   The Grievance was never rejected or responded to. Plaintiff Bailey attempted to escalate the grievance to Step II, but WHV appears to have mixed this grievance up with another one that dealt with an irrelevant drinking water issue, which was resolved at Step I. (*See id.* at PgID.925 ("The Black Mold through out the Housing Units are still imply [sic] being ignored, and Painted over in the Shower

Areas. The inadequate Ventilation System along with the Black Mold, in the Housing Units through out the WHVC Facility, is having A deteriorating [e]ffect on my Health . . . .").)

116.   Step II was rejected as untimely, and Ms. Bailey appealed to Step III, stating that she kited the grievance coordinator "several times" after she did not receive a response to Step I. She indicates she was told by Ms. Boa "Don't worry about it, I will get them to you, I do not have any help right now, and I have been off for awhile. Your not going . . ." (*Id.* at PgID.926).[8]

117.   Mr. Russell upheld the rejection without further comment. (*Id.* at PgID.927.)

118.   Plaintiff Bailey exhausted this grievance through Step III.

---

[8] Neither parties' copies of this Step III includes the backside where the remainder of the appeal is written.

## CONCLUSIONS OF LAW

1.     The Prison Litigation Reform Act ("PLRA") requires incarcerated persons to exhaust available administrative remedies before filing lawsuits. 42 U.S.C. § 1997e(a).

2.     The purpose of this exhaustion requirement is to "afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002); *see also Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) ("The point of the PLRA exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court.").

3.     The United States Supreme Court has held that the failure to exhaust is an affirmative defense under the PLRA and that the burden of both proof and persuasion rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012).

4.     Defendants argue that Plaintiffs have failed to exhaust their administrative remedies because:

        a.    Plaintiffs' grievances were rejected, thereby precluding suit;

    b.    Some of Plaintiff Bailey's grievances were untimely;

    c.    All Plaintiffs' grievances failed to name every Defendant; and

    d.    The Grievances did not address the full extent of Plaintiffs' Claims.

(*See* Order, ECF 191 at PgID.4281.)

5.    As to the first two arguments, Defendants did not present evidence sufficient to show that Plaintiffs failed to exhaust their administrative remedies at the October 30, 2024, evidentiary hearing.

6.    As to the second two arguments, the Court has already held as a matter of law that Plaintiffs need not name every Defendant to exhaust, that their grievances were "sufficient under the circumstances," and that grievances about mold and related medical difficulties were sufficient to put Defendants on notice of issues surrounding inadequate ventilation. This is the law of the case. The Court declines to disturb these rulings, and it instead applies these holdings to all grievances presently at issue.

7.    Defendants have thus failed to sustain their burden of proof for no fewer than six reasons, as explained further below.

8.    Further, as Plaintiffs Clark and Zentz are putative class representatives, their successful exhaustion of administrative remedies allows them to maintain this action on behalf of the putative class. *Chandler v. Crosby*, 379 F.3d 1278 (11th Cir. 2004) (holding that a single class representative satisfied the exhaustion

requirements for the class, permitting the case to proceed); *see also Hattie v. Hallock*, 8 F. Supp. 2d 685, 689 (N.D. Ohio 1997) (quoting *Hartman v. Duffey*, 88 F.3d 1232, 1235 (D.C. Cir. 1996)).

**I)     PLAINTIFFS MADE AFFIRMATIVE EFFORTS TO COMPLY, AND WHV'S GRIEVANCE PROCEDURE WAS AN UNAVAILABLE REMEDY.**

9.      Before turning to Defendants' particular arguments or Plaintiffs' particular grievances, the Court takes a moment to acknowledge the flaws in the MDOC's Grievance Policy that necessarily frustrate incarcerated persons' ability to effectively utilize the grievance process.

10.     Although the PLRA requires that incarcerated persons exhaust available remedies, they "need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642–43 (2016) ("When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy."); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2006) (holding the PLRA "does not require exhaustion of all remedies; it requires the exhaustion of such administrative remedies as are available." (citation omitted)).

11.     "When a prisoner makes affirmative efforts to comply with the administrative grievance process but does not succeed," the court analyzes whether those "efforts to exhaust were sufficient under the circumstances." *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2009).

12.     As long as the prisoner "did *something*" to try to comply with administrative procedures, courts should examine the circumstances to determine if those efforts were sufficient. *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir 2011) (emphasis in original).

13.     An administrative scheme cannot be so opaque that "it becomes, practically speaking, incapable of use[.]" *Ross*, 578 U.S. at 643. In this situation, some mechanism exists to provide relief, but no ordinary incarcerated person could discern or navigate it. *Id.* The remedy becomes unavailable. *Id.*

14.     Put another way, an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643 (citing *Booth v. Churner*, 532 U.S. 731, 736, 738 (2001)).

15.     Here, the Michigan Department of Corrections administrative procedure for the Grievance Policy is so opaque, confusing, and contradictory that no ordinary incarcerated person can discern or navigate it, and thus it does not provide an available remedy.

16.     The Grievance Policy is vague. It is unclear to a reasonable reader whether the timing requirements relate to the time to "send" the grievance or the time to "file"—which is defined in one paragraph as the time it takes to execute,

34

send and be marked received by the grievance coordinator. (*Compare* Pl.'s Ex. 31 pts. W, DD, & HH, ECF No. 56-2 at PgID.606–08, *with id.* pt. T, PgID.605.) It is also unclear whether the time requirement for submitting a Step II appeal mandates or suggests submission within 15 business days. (*Id.* pt. U, PgID.605.) This lack of clarity does not sufficiently put incarcerated women on notice of their responsibilities to exhaust.

17.    The Grievance Policy is also unfair. WHV respondents have fifteen business days to respond to the incarcerated person (and no deadline when they are rejecting the grievance), and their failure to timely respond does not violate the Policy, effectively giving WHV an indefinite time to respond. (Hr. Tr. 37:24–38:11, ECF No. 213 at PgID.4595–96.) On the other hand, incarcerated women must file/send grievances within five or ten business days depending on the step, and incarcerated women must still timely appeal *even if* WHV fails to timely respond or to reject. (*Id.* at 32:23–35:24, 37:24–38:11, 40:1–:8, PgID.4590–93, .4595–96, & .4598.) It is unclear what anyone could meaningfully state in an appeal when they have yet to receive WHV's answer. How do they know what to rebut? But if inmates do not appeal the non-answer, their grievance can be rejected as untimely. This process is one-sided and difficult for anyone to comply with.

18.    Further, the Grievance Policy is designed to fail because the timing requirements are at the mercy of the prison mail system—something wholly outside

of incarcerated women's control and a system that the person responsible for updating and overseeing the Policy does not fully appreciate or comprehend. Grievances must be sent through the mail, and responses sent through the mail, appeal forms requested, received, and sent back through the mail. All the while, the clock is ticking. The above grievances demonstrate that even diligent grievances can be received late and thus considered untimely.

19.     Last, the Grievance Policy is written and enforced in a way that makes collective action impossible. Grievances are automatically rejected as "joint" if the underlying issue could be grieved by more than one incarcerated woman. (Pls.' Ex. 31 pt. J, ECF No. 56-2 at PgID.603.) Instead, incarcerated women are encouraged to raise those such issues with the Warden's Forum, (Hr. Tr. 89:24–92:1, ECF No. 213 at PgID.4647–4650), but addressing at the Warden's Forum does not qualify as exhausting administrative remedies under the PLRA. Issues such as those addressed in the underlying action—those challenging conditions that impact more than one woman—are rendered impossible to exhaust under this Policy.

20.     Given all this, the Grievance Policy's administrative procedure operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to Plaintiffs. Thus, the Grievance Policy does not provide an available remedy.

21.     With the above identified grievances, and considering these deficiencies in the Grievance Policy, each Plaintiff exhausted to Step III to the best of her ability and thus satisfied the PLRA's requirements.

22.     As the Court stated *Wayne v. Heyns*, No. 13-14495, 2015 WL 736329, at *6 (E.D. Mich. Feb. 20, 2015), and as this Court adopted in *Nelson v. Walsh*: "The Court cannot discern what more Plaintiff could have done to comply with [MDOC] PD 03.02.130[.]" No. 16-10405, 2017 WL 1212836, at *4 (E.D. Mich. Feb. 17, 2017), *report and recommendation adopted*, 2017 WL 1100945 (E.D. Mich. Mar. 24, 2017).

23.     Defendants cannot sustain their burden to demonstrate that Plaintiffs failed to exhaust their administrative remedies because the underlying process is not a truly available remedy.

## II)    DEFENDANTS DID NOT PROVIDE A CONTROLLING GRIEVANCE POLICY FOR TWO OF THE GRIEVANCES AT ISSUE.

24.     Additionally, Clark 2219 and Bailey's grievance identified in Plaintiff's Exhibit 10 were submitted in April 2016 and April 2018 respectively.

25.     Defendants' submitted Grievance Policy was last updated March 18, 201<u>9</u>. (Pls.' Ex. 31, ECF No. 56-2.)

26.     Defendants have not submitted an earlier policy, and therefore no policy by which the Court may evaluate these earlier grievances.

27.     For this reason alone, Defendants cannot meet their burden with respect to Clark Grievance 2219 or Bailey's grievance identified in Plaintiffs' Exhibit 10.

## III)   DEFENDANTS     IMPROPERLY     REJECTED     PLAINTIFFS' GRIEVANCES.

28.     Even if the Grievance Policy provided an adequate method for exhausting the PLRA, and even if the offered Grievance Policy applied to all grievances at issue, each Plaintiff nonetheless sufficiently exhausted.

29.     Improper rejections of grievances can still constitute exhaustion. *See Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *6 (E.D. Mich. Mar. 31, 2016) (rejecting defendants' "implication that whenever a grievance is rejected as duplicative, it is not properly exhausted as a matter of law"); *Wayne*, 2015 WL 736329, at *6 (finding plaintiff sufficiently exhausted his administrative remedies even though defendant MDOC rejected his Step 1 grievance as vague).

30.     Further Rejection rationales Defendants failed to raise during the grievance process are waived by merits-based responses. *Morgan v. Trierweiler*, 67 F.4th 362, 371 (6th Cir. 2023) (holding that, "because prison officials responded to Morgan's grievance on the merits, they have waived their own procedural bar," specifically arguments plaintiff did not name all defendants in the grievance); *Bates v. Winn*, No. 2:16-cv-14324, 2019 WL 7900706 (E.D. Mich. Nov. 12, 2019) (holding a "merits-based response waives all procedural objections"), *adopted*, 2020 WL 674288 (E.D. Mich. Feb. 11, 2020).

31.    The rejections plaguing the above grievances were improper for the following reasons:

**A)    Defendants Failed to Establish that Plaintiffs' Grievances Were Joint.**

32.    Defendants also rejected two of the grievances at issue, Hope 2141 and Clark 2004, as joint grievances (an issue that mutually impacts two or more prisoners).

33.    But Defendants' Grievance Section Administrator, Richard Russell, could not explain at the evidentiary hearing how either of the grievances at issue were joint.

34.    The grievances themselves do not identify any other incarcerated women by name, and they are not signed by any other woman.

35.    Defendants did not present any similar grievances or attachments purporting to be jointly submitted by any other incarcerated woman and therefore could not establish that any other grievance was "identical" to or part of an "organized protest" with Zentz 2141 or Clark 2004.

36.    Russell could not discern what made them joint without looking at other records—records that have not been submitted to this Court and that Plaintiffs would not have had access to when they submitted their grievances.

37.    Defendants cannot carry their burden to prove that the Plaintiffs failed to exhaust their administrative remedies because their grievances were joint.

**B)** **Defendants Failed to Establish That Plaintiffs' Grievances Were Vague.**

38.    Defendants rejected Clark 2219 (Pls.' Ex. 3), and Clark 0081, (Pls.' Ex. 16), as vague.

39.    To succeed, Defendants must explain how Plaintiffs' grievances were vague. *See Williams v. Winn*, No. 18-11060, 2019 WL 2252012, at *7 (E.D. Mich. Feb. 27, 2019) (finding certain grievances improperly rejected because "[d]efendants do not explain the more specific basis for their rejection"), *report and recommendation adopted*, No. 18-CV-11060, 2019 WL 1417166 (E.D. Mich. Mar. 29, 2019).

40.    Defendants fail to meet their burden to establish these grievances were vague. A plain reading of the grievances belies the rejections.

41.    The issue in 2219 involved a report Plaintiff Clark made to the correction officer in housing unit 4 on April 8, 2016 "about the black mold that is growing at a rapid rate in the showers," and about the lack of proper cleaning supplies to eradicate it. (the who, what, where, and when). (Pls.' Ex. 3, ECF No. 56-5, PageID.738.) Plaintiff Clark explains that the black mold, which WHV "has allowed the black mold to grow out of control," "is affecting [her] breathing." (*Id.*)

42.    The issue in 0081 involved "OBS staff," (the who), and took place "On 12/21/22" (the when). (Pls.' Ex 16, ECF No. 177-2 at PgID.3932.) Plaintiff Clark explained she was forced to stay in a Kent cell despite past issues she had with mold

in Kent, (the what and the where). The mold exposure caused her medical problems, and she also reported she believed this to be retaliation for her mold grievances and lawsuit, (the why). (*Id.*)

43.    These are not vague. Defendants inappropriately rejected these grievances.

### C)    Defendants Failed to Establish that Plaintiffs' Grievances Were Duplicative.

44.    Defendants must undertake a comparison of grievances before deeming them duplicative. *See Sedore v. Greiner*, No. 19-10311, 2020 WL 8837441, at *4 (E.D. Mich. Sept. 21, 2020) (defendants failed to carry their burden to demonstrate they properly rejected the grievances as duplicative as they "did not undertake a comparison of the grievances"), *report and recommendation adopted sub nom. Sedore v. Campbell*, No. 19-10311, 2021 WL 405987 (E.D. Mich. Feb. 5, 2021).

45.    Defendants rejected Clark 1981 as duplicative. (Pls.' Ex. 1, ECF No. 56-5 at PgID.730.)

46.    Neither in the rejection itself nor at the hearing before this Court did Defendants identify the other grievance that Clark 1981 duplicates.

47.    Defendants cannot meet their burden, and therefore this rejection was improper.

41

48.    Furthermore, Plaintiff Clark continued to experience ongoing issues with her health caused by her living environment. Because the problems continued, she should be permitted to grieve the issue on an ongoing basis if it is not resolved.

**D)    Defendants Failed to Establish Plaintiff Clark's Grievance Related to Multiple Issues.**

49.    Defendants also rejected Clark 3305 as involving multiple issues.

50.    It is clear on the face of the grievance that a single issue—the environment in a particular bathroom which included mold—was the subject of the grievance.

51.    Defendants cannot meet their burden as to Clark 3305.

**E)    Defendants Failed to Establish that Plaintiffs' Grievances were Untimely.**

52.    As stated above, Defendants rejected many grievances at various steps as untimely.

53.    For the reasons provided in in Part One, Plaintiffs had little control over the timeliness of their appeals given the Policy's heavy reliance on the prison mail system and given the delay they experienced in receiving back responses from WHV. This provides sufficient grounds to reject Defendants' untimeliness arguments.

54.    This is particularly true when grievances, such as with Clark 2004 and Bailey, Plaintiffs' Exhibit 10, show significant delay of multiple months between

when Plaintiffs submitted Step I, and the WHV assigned date for Plaintiffs to submit Step II. This indicates to the Court that WHV was slow in getting Plaintiffs their Step I responses or rejections, which would form the foundation of any Step II appeal.

55.    Moreover, two grievances appear to be timely according to the face of the documents——Clark 0081 and Bailey 0929.[9]

56.    Defendants do not establish how either of these grievances qualified as late.

57.    Timeliness therefore was not a sufficient basis for rejection of the grievances at issue.

## IV)   THE COURT SHOULD CONSIDER GRIEVANCES FILED AFTER PLAINTIFFS INITIATED THIS LAWSUIT.

58.    To the extent Defendants challenge Clark 3305, Clark 0081, Bailey 0929, Bailey 4358, and/or Bailey 3773 because they were exhausted after the initiation of this lawsuit, this Court has already rejected this challenge with respect

---

[9] When pressed about Bailey 0929, Coordinator Boa speculated that perhaps Step II was rejected as untimely because of the time gap between Step I and Step II. (Hr. Tr. 135:9–136:20, ECF No. 213, PgID.4693–94.) But Step I was neither rejected nor denied; it was marked as "unresolved," and left waiting in limbo by WHV. And, when the coordinator identified the due date for Step II, she wrote June 2nd, waiving any right to argue that anything submitted before June 2nd was untimely. A Step II marked received on June 1st is therefore timely even under the most limited reading of the Policy requirements.

to Bailey 4358 and 3773. (Order, ECF No. 69 at PgID.1019–20; *see also* Order, ECF No. 191 at PgID.4281–82 ("[T]o the extent Defendants' arguments are duplicative of the arguments made in its first motion, ECF 56, the Court will incorporate in full the reasoning in its previous Order, ECF 69.").)

59.     Citing *Thaddeus–X v. Wozniak*, 215 F.3d 1327 (6th Cir. 2000), the Court declined to entertain Defendants' arguments about the grievances' timing, holding: "Dismissal without prejudice would not be in the interest of justice since Bailey would simply refile, causing further delay." *Id.* ("Further, Bailey says the grievance process [for 4358] was exhausted before Defendants were served with the Complaint.").

60.     Given that more than four years have gone by since the Court made this observation, the Court will extend its previous holding and accept Clark 3305, Clark 0081, Bailey 0929, Bailey 4358, and/or Bailey 3773 despite that these grievances were exhausted after the initiation of this action. Refiling and restarting this action now would not be in the interest of justice.

## V)     PLAINTIFFS SUFFICIENTLY NOTIFIED DEFENDANTS.

61.     To the extent Defendants maintain that Plaintiffs failed to include the names of all the Defendants in their grievances, this argument should again fail. Indeed, Plaintiffs' grievances do not name every Defendant. But they do not need to.

62.    Defendants waive their right to advance such an argument with grievances where they responded on the merits. *Morgan*, 67 F.4th at 371 (citing *Reed-Bey*, 603 F.3d at 324).

63.    Also, "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued[.]" *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2006); *see also Binion v. Glover*, No. 07-13443, 2008 WL 4155355, at *9–11 (E.D. Mich. July 28, 2008) ("[H]ow would a prisoner know who is responsible for participating in the post-exposure review process mandated by the exposure control plan or implementing any appropriate corrective action? Under these circumstances, there does not appear to be any reasonable means for a prisoner to know, with any specificity, during the grievance process, who he may later sue. Plaintiff's grievance gave prison officials "fair notice" of the misconduct alleged . . . ."), *adopted*, 2008 WL 4097407 (E.D. Mich. Aug. 29, 2008).

64.    Where a prisoner is not able to identify all appropriate personnel in compliance with the grievance procedure, there is no failure to exhaust. *See Merriweather v. Zamora*, No. 04 CV 71706 DT, 2006 WL 2711809, at *9 (E.D. Mich. Sept. 21, 2006); *see also Thomas v. Woolum*, 337 F.3d 720, 734 (6th Cir. 2003) ("[A]n inmate need not identify each officer by name when the identities of the particular officers are unknown."); *Shoucair v. Warren*, No. 07-12964, 2008 WL

2033714, at *8 (E.D. Mich. May 9, 2008) ("[N]othing in *Woodford*[ *v. Ngo*, 548 U.S. 81 (2006)] or *Jones*[*v. Bock*, 549 U.S. 199 (2007)] requires a grievant to somehow identify persons or information he does not have or cannot reasonably obtain.").

65.     On the face of the grievances themselves, it does not appear that Defendants rejected any of them for failure to identify proper parties. The three grievances rejected as vague all identified persons with whom Plaintiffs discussed the issues. (*See* Pls.' Ex. 3, ECF No. 56-5, PageID.735–39; Pls.' Ex. 16, ECF No. 177-2 at PgID.3729–32.)

66.     Plaintiffs are not necessarily in a position to know who is ultimately responsible for the housing environment or housing placement. Plaintiffs provided sufficient information under the circumstances, often naming the Warden, Heidi Washington, and the persons whom they interacted with regarding the problem.

67.     Moreover, the Court has previously held that Plaintiffs' grievances— Hope 2141, Clark 1981, Clark 2004, Clark 2219, Bailey 4358, and Bailey 3773— put Defendants on notice of issues with their conditions of confinement, rejecting Defendants' argument with respect to naming each Defendant. (Order, ECF No. 69 at PgID.1021, 1023–24.)

68.     Nothing presented at the evidentiary hearing disturbs this holding; in fact, it should be extended to all the grievances that are the subject of this ruling according to the same reasoning.

69.    Defendants failed to produce any evidence that Plaintiffs' grievances in this case did not alert Defendants to a problem with the ventilation, or resulting environmental and/or medical symptoms, described in those grievances. Each grievance provided names of persons Plaintiffs knew to be responsible when possible, and/or provided sufficient information to allow Defendants to know where to look to investigate the allegations and identify responsible persons. This is sufficient.

## VI)    PLAINTIFFS' GRIEVANCES SUFFICIENTLY ADDRESS THE SUBJECT MATTER OF THIS LAWSUIT.

70.    Finally, to the extent Defendants still maintain grievances about mold and symptoms caused by mold exposure do not sufficiently relate to poor ventilation, the Court has already rejected these arguments as a matter of law in denying Defendants' most recent motion for summary judgment.

71.    This Court ruled that grievances that noted "adverse symptoms resulting from alleged mold exposure at WHV" "provided WHV with a fair opportunity to investigate the health conditions and the mold exposure—which naturally should involve an investigation into the cause of the mold and the cause of the health conditions at issue." (Order, ECF No. 191 at PgID.4282 (citing Order, ECF 69 at PgID.1024 and *Woodford*, 548 U.S. at 94).) This Court further noted that "the PLRA does not require Plaintiffs to differentiate between the consequences of

the conditions and its cause," acknowledging that "the mold, ventilation, and underlying health conditions are all the same 'condition' or 'issue.'" (*Id.*)

72.   The Court sees no reason to disturb this ruling.

## <u>CONCLUSION</u>

For the above reasons, the Court rules that Defendants failed to meet their burden of proof and finds that Plaintiffs have properly exhausted their administrative remedies and their legal claims against Defendants are permitted to proceed in federal court.


IT SO ORDERED.

Date: _____        _____
                                     Honorable Elizabeth A. Stafford
                                     U.S. Magistrate Judge


SUBMITTED BY:

Date: January 24, 2025               */s/Rebekah L. Bailey*
                                     Rebekah L. Bailey (0389599)
                                     Attorney for Plaintiffs

48

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2025, I electronically filed the foregoing

paper with the Clerk of the Court using the ECF system which will send notification

and provide electronic copies of such filing to counsel of record.


*/s/Rebekah L. Bailey*
Rebekah L. Bailey