**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PAULA BAILEY, individually, and KRYSTAL CLARK, and HOPE ZENTZ, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

HEIDI WASHINGTON, *et al.*,

Defendants.

Case No. 2:19-cv-13442 SJM-EAS
Dist. Judge Stephen J. Murphy, III
Mag. Judge Elizabeth A. Stafford

---


**MARKO LAW, PLLC**
Jonathan R. Marko (P72450)
220 W. Congress, Fourth Floor
Detroit, MI 48226
P: (313) 777-7LAW
jon@jmarkolaw.com

**NICHOLS KASTER, PLLP**
Matthew H. Morgan (MN304657)
Rebekah L. Bailey (MN0389599)
Grace I. Chanin (MN0399969)
80 South Eight Street, Suite 4700
Minneapolis, MN 55402
P: (612) 256-3200
morgan@nka.com
bailey@nka.com
gchanin@nka.com

**PITT MCGEHEE PALMER BONANNI & RIVERS PC**
Cary S. McGehee (P42318)
Beth M. Rivers (P33614)

**MI DEP'T OF ATTY GEN.**
Joshua S. Smith (P63349)
Kristen M. Southerland (P64353)
Michael R. Dean (P71333)
Jennifer A. Foster (P75947)
Sara E. Trudgeon (P82155)
John L. Thurber (P44989)
William J. Predhomme II (P81527)
MDOC Division
P.O. Box 30217
Lansing, MI 48909
P: (517) 335-3055
smithj191@michigan.gov

***Attorneys for Defendants***

Channing Robinson-Holmes (P81698)
117 W. 4th Street, Suite 200
Royal Oak, MI 48067
P: (248) 398-9800
cmcgehee@pittlawpc.com
brivers@pittlawpc.com
crobinson@pittlawpc.com

**LAW OFFICES OF DAVID S. STEINGOLD, PLLC**
David S. Steingold (P29752)
Samantha Baker (P83674)
30300 Northwestern Hwy, Suite 111
Farmington Hills, MI 48334
P: (313) 962-0000
detroitdefender@yahoo.com

**EXCOLO LAW, PLLC**
Solomon M. Radner (P73653)
26700 Lahser Road, Suite 401
Southfield, MI 48033
P: (866) 939-2656
sradner@excololaw.com

***Attorneys for Plaintiffs and the Putative Class***

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION**

---

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..................... ii

INTRODUCTION ..................... 1

STATEMENT OF FACTS ..................... 2

LEGAL STANDARD ..................... 6

ARGUMENT ..................... 7

I) RESPONSE TO OBJECTION #1: AFTER REVIEWING ALL THE EVIDENCE, THE REPORT AND RECOMMENDATION CORRECTLY DETERMINED THAT DEFENDANTS FAILED TO MEET THEIR BURDEN. ..................... 7

II) RESPONSE TO OBEJCTION #2: THE REPORT AND RECOMMENDATION CORRECTLY CONCLUDED THAT THE WARDEN'S FORUM DOES NOT PROVIDE AN AVENUE TO EXHAUST CONDITIONS OF CONFINEMENT CLAIMS. ..................... 11

III) RESPONSE TO OBJECTION #3: IT IS FOR FUTURE COURTS IN FUTURE CASES TO DETERMINE THE IMPACT THAT THE REPORT AND RECOMMENDATION MAY HAVE ON OTHER LITIGATION INVOLVING THE SAME MDOC POLICY. ..................... 14

CONCLUSION ..................... 16

CERTIFICATE OF SERVICE ..................... 17

# TABLE OF AUTHORITIES

## CASES

*Berryman v. Haas*,
No. 19-1484, 2020 WL 6325553 (6th Cir. May 11, 2020) ................................12

*Blanton v. Elo*,
186 F.3d 712 (6th Cir. 1999) ..........................................................................10

*Hill v. Durion Co.*,
656 F.2d 1208 (6th Cir. 1981) ..........................................................................7

*Huducek v. Kijakazi*,
No. 2:22-CV-11672-SJM, 2023 WL 5706213 (E.D. Mich. Sept. 5, 2023) .........6

*Kloss v. RBS Citizens, N.A.*,
996 F. Supp. 2d 574 (E.D. Mich. 2014) .......................................................6–7, 14

*Lardie v. Birkett*,
221 F. Supp. 2d 806 (E.D. Mich. 2002) ............................................................7

*Thomas v. Arn*,
474 U.S. 140 (1985)..........................................................................................6–7

*United States v. Vaughn*,
429 F. Supp. 3d 499 (E.D. Tenn. 2019)..............................................................12

*Vanhorn v. Palmer*,
No. 209-CV-10492-SJM, 2010 WL 1463012 (E.D. Mich. Apr. 12, 2010) .........7

*Whitehead v. Wetzel*,
720 F. App'x 657 (3d Cir. 2017) ........................................................................9

## STATUTES, REGULATIONS, RULES

28 U.S.C. § 636(b)(1)..........................................................................................7

42 U.S.C. § 1997e(a)............................................................................................1

Fed. R. Evid. 403 .......................................................................................10

Fed. R. Civ. P. 72(b)(2).......................................................................................7

**OTHER AUTHORITIES**

12 Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 3070.2 (1997) .......................................................................................7

# INTRODUCTION

After conducting an evidentiary hearing at Defendants' behest, Magistrate Judge Elizabeth Stafford determined that Defendants[1] failed to prove that Plaintiffs Krystal Clark, Hope Zentz, and Paula Bailey[2] did not exhaust their administrative remedies under the Prison Litigation Reform Act. 42 U.S.C. § 1997e(a). With this, she recommends that the Court deny Defendants' request to dismiss this action on administrative exhaustion grounds.

Defendants now object to the report and recommendation on three bases, arguing: (1) Defendants provided some evidence supporting their claims; (2) their witness did not misrepresent the Grievance Policy,[3] he just made a mistake; and (3) the report reaches conclusions about the Michigan Department of Corrections ("MDOC") broader than the issues framed.

---

[1] Heidi Washington, Shawn Brewer, Russell Marlan, Kenneth McKee, Lloyd Rapelje, Lia Gulick, David Johnson, Karri Ousterhout, Joseph Treppa, Dan Carter, Richard Bullard, Toni Moore, Ed Vallard, Jeremy Bush, Jeremy Howard, and Joel Dreffs (collectively, "Defendants").

[2] Plaintiffs Zentz and Clark are Putative Class Representatives of a proposed Injunctive Relief class. (2d Am. Class Compl. ¶¶ 19–20, ECF No. 161.) Plaintiff Bailey has since been released and therefore is no longer seeking to be appointed as a class representative.

[3] MDOC Policy Directive 03.02.130 describes a three-step procedure that incarcerated people must follow to complete the administrative review process and properly exhaust grievances. (R. & R., ECF No. 223 at PgID.4853 (citing ECF No. 56-2).)

The report and recommendation's reasoning is sound, correct, and consistent with the record. The report shows that the Court considered all material evidence in arriving at a decision. And it rightly explains that the women could not have exhausted their administrative remedies through the Warden's Forum, as propelled by Defendants' witness. While the report's conclusion may have lasting impact—reaching beyond the Women's Huron Valley Correctional Facility ("WHV")—that is not uncommon for judicial decisions. Nor is it a basis for which to reject it. This Court should overrule Defendants' objections, accept and adopt the report and recommendation, and hold Defendants failed to meet their burden on their administrative exhaustion affirmative defense.

## STATEMENT OF FACTS

Defendants have exposed and continue to expose Plaintiffs to hazardous and unhygienic conditions of confinement while incarcerated at WHV. (2d Am. Class Compl. ¶¶ 3, 7–12, 38, ECF No. 161.) WHV is poorly maintained with inadequate ventilation, leaky roofs, and air handling units run decades past their useful life. (*Id.* ¶¶ 47–49, 58–64, 89–90, 110–114.) This has created a breeding ground for biological contaminants and led to dangerous breathing conditions, causing women to suffer from respiratory infections, coughing, wheezing, rashes, dizziness, and fatigue, and worse. (*Id.* ¶¶ 6, 9, 47–49, 58–64, 89–90, 110–114.) Women's complaints have fallen on deaf ears for years. (*Id.* ¶¶ 8, 10.) Finally, in November 2019, Plaintiffs

filed this class action lawsuit, alleging that Defendants violated their Eighth Amendment rights under 42 U.S.C. § 1983, as well as engaged in common law negligence. (Compl., ECF No. 1.)

In April 2020, before any discovery occurred, Defendants moved for summary judgment relating to exhaustion. (ECF No. 53; *see also* ECF No. 56.) The Court denied the motion, finding a fact question. (ECF No. 69.) Defendants moved again for summary judgment relating to exhaustion in March 2024, (ECF No. 177), and the Court again denied the motion, (ECF No. 191). The Court held "Plaintiffs demonstrated 'sufficient appropriate efforts to comply with administrative procedures' to survive summary judgment." (*Id.* at PgID.4282–83 (quoting ECF No. 69 at PgID.1025).)

Defendants moved for a bench trial or evidentiary hearing to resolve remaining issues of fact regarding whether Plaintiffs have exhausted their administrative remedies, or in the alternative, reconsideration of the Court's order on summary judgment. (ECF No. 192 at PgID.4287.) Plaintiffs did not oppose the former request, and Plaintiffs did not respond to the latter under Local Rule 7.1(h)(3). (ECF No. 193.) The Court granted the first request and referred the matter to Magistrate Judge Stafford. (ECF No. 200.) The Court conducted an evidentiary hearing on exhaustion on October 30, 2024. The Court admitted Defendants' exhibits A through J, and Plaintiffs' exhibits 1 through 31. (Hr. Tr. at 8:23–9:1, ECF

No. 213 at PgID.4566–67.) The Court heard testimony from Defendants' witnesses Richard Russell and Latasha Boa,[4] and Plaintiffs' witness Plaintiff Paula Bailey. (R. & R., ECF No. 223 at PgID.4861, .4865; Hr'g Tr., ECF No. 213 at PgID.4713.) The parties subsequently filed competing proposed findings of fact and conclusions of law. (ECF Nos. 215–16.)

In March 2025, Magistrate Judge Stafford issued a report and recommendation, concluding that "Defendants failed to sustain their burden of showing by a preponderance of the evidence that plaintiffs failed to exhaust their administrative remedies. . . . Thus, defendants' request to dismiss this action on exhaustion grounds should be denied." (R. & R., ECF No. 223 at PgID.4883.) The 38-page report expounds:

- "Defendants . . . offered no evidence that plaintiffs' grievances failed to put defendants on notice of the claims in the complaint or that plaintiffs' failure to name the specific defendants here is dispositive." (*Id.* at PgID.4862.)

- "[P]laintiffs elicited testimony during the evidentiary hearing to support their claim that the PD is 'so opaque, confusing, and contradictory that no ordinary incarcerated person can discern or navigate it, and thus it does not provide an available remedy.'" ECF No. 215, PageID.4765." (R. & R., ECF No. 223 at PgID.4864.)

- "The evidence shows that MDOC repeatedly rejected grievances as untimely despite gaps of more than five days between the date the

[4] The hearing transcript refers to Latasha Bowa, but the report & recommendation, Defendants' witness list, and relevant exhibits identify the witness as Latasha Boa. (R. & R., ECF No. 223 at PgID.4861.)

prisoner wrote that they sent the grievances and when they were received by the Step II respondent. . . . Russell had reason to question whether grievances were untimely because of delays in the mail processing time or other factors outside the prisoners' control. He had to know that using the receipt date to determine whether grievances were timely filed resulted in prisoners being denied access to the grievance system despite their best efforts." (*Id.* at PgID.4870.)

- "Even when prisoners have done all that could reasonably be expected to get their grievances timely filed, their grievances will be considered untimely if circumstances well beyond the prisoners' control cause the grievances to be delivered outside the PD's tight deadline. . . . For those prisoners, the grievance process is unavailable." (*Id.* at PgID.4873 (citations omitted).)

- "Neither of defendants' witnesses testified to knowing the factual basis for the rejections of the grievances under ¶ J7. … Russell's answers suggest that grievance screeners have carte blanche to reject grievances according to unexplained and unsupported interpretations of the policy." (*Id.* at PgID.4876.)

- "So for prison conditions that harm more than one prisoner, MDOC imposes an unwritten policy that deviates from the plain language of ¶ J7 and operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. . . . And as Russell agreed, when grievances are rejected, "there is no interview with the prisoner" and "no investigation." . . . The result is perverse: the more prisoners harmed by a condition of confinement, the more likely that MDOC will steer them to the warden's forum. But when those harmed prisoners file an action in court, MDOC defendants will argue that the plaintiffs failed to exhaust their administrative remedies. Thus, MDOC officials stymy the prisoners' efforts to get relief either through the grievance system or in court, and they do so without needing to interview the plaintiffs or investigate their claims. (*Id.* at PgID.4881 (citation omitted).)

Defendants lodge three objections to Magistrate Judge Stafford's report and recommendation. Those objections should all be overruled for the reasons provided below.

**LEGAL STANDARD**

A party may file timely objections to a report and recommendation. "Each objection must be labeled . . . and must specify precisely the provision of this report and recommendation to which it pertains. . . . The response must be concise and proportionate in length and complexity to the objections . . . ." (R. & R., ECF No. 223 at PgID.4883.) "Overly broad objections do not satisfy the objections requirement." *Kloss v. RBS Citizens, N.A.*, 996 F. Supp. 2d 574, 581 (E.D. Mich. 2014) (citation omitted). The objections must be clear enough that the district court can "discern those issues that are dispositive and contentious." *Id.* "Objections that merely challenge the correctness of the magistrate's recommendation but fail to specify what findings were erroneous are insufficient." *Id.*

"Federal Rule of Civil Procedure 72(b) governs the review of a magistrate judge's report." *Huducek v. Kijakazi*, No. 2:22-CV-11672-SJM, 2023 WL 5706213, at *1 (E.D. Mich. Sept. 5, 2023). The district court's "standard of review depends on whether a party objects to the report." *Id.* The district court "need not undertake any review of portions of a report to which no party objected." *Id.* (citing *Thomas v. Arn*, 474 U.S. 140, 149–50 (1985)). "De novo review is required, however, if the

parties 'serve and file specific written objections to the proposed findings and recommendations.'" *Id.* (quoting Fed. R. Civ. P. 72(b)(2)). "De novo review in these circumstances requires at least a review of the evidence before the magistrate judge; the [district c]ourt may not act solely on the basis of a magistrate judge's report and recommendation." *Vanhorn v. Palmer*, No. 209-CV-10492-SJM, 2010 WL 1463012, at *1 (E.D. Mich. Apr. 12, 2010) (citing 12 Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 3070.2 (1997), and *Hill v. Durion Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981)). After reviewing the evidence, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge." *Id.* (quoting 28 U.S.C. § 636(b)(1)). If the district court accepts a report and recommendation, it need not state with specificity what it reviewed; it is sufficient for it to state that it engaged in a de novo review of the record. *Kloss*, 996 F. Supp. 2d at 581 (citing *Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002)).

## ARGUMENT

### I) RESPONSE TO OBJECTION #1: AFTER REVIEWING ALL THE EVIDENCE, THE REPORT AND RECOMMENDATION CORRECTLY DETERMINED THAT DEFENDANTS FAILED TO MEET THEIR BURDEN.

Defendants object to the report and recommendation because they contend they "provided evidence in support of their claims." (Defs.' Objs., ECF No. 226 at PgID.4904.) Defendants highlight the nine exhibits they submitted to the Court,

including the grievances themselves, as well as testimony about certain grievances. Of course, the report does acknowledge and incorporate Defendants' exhibits and testimony in arriving at its recommendation. (*See* R. & R., ECF No. 223 at PgID.4855–60, 4862–63.) It is clear when the report is read in its totality that Magistrate Judge Stafford reviewed and considered all the evidence in making her recommendation. The report even devotes nearly five pages to outlining these grievances in question. (*Id.* at PgID.4855–59.)

Read in context, the passage to which Defendants object makes the point that Defendants did not submit any new evidence or elicit testimony at the evidentiary hearing that actually addressed the fact questions previously identified by the Court in the two previous orders on summary judgment. This section goes on to state:

> Defendants also offered no evidence that plaintiffs' grievances failed to put defendants on notice of the claims in the complaint or that plaintiffs' failure to name the specific defendants here is dispositive. . . . Neither witness enlightened the Court about the specific reasons grievance screeners rejected the grievances at issue. Rather, the witnesses testified that the screeners had discretion to reject the grievances even for reasons that were plainly improper under the language of the PD. And in their proposed findings and conclusions, defendants simply regurgitated boilerplate legal arguments that Judge Roberts and Judge Murphy already rejected. *See* ECF No. 216, PageID.4799-4806.[5]

---

[5] Defendants once again rehash these same arguments that have already been repeatedly rejected, like the lack of named defendants in the grievances and failure to include certain causes of the conditions such as leaky windows, HVAC system, etc. (*See* Defs.' Objs., ECF No. 226 at PgID.4907–08.)

(R. & R., ECF No. 223 at PgID.4862.) In other words, the witnesses simply restated and summarized the policy and grievances that were already submitted to the Court at summary judgment. They did nothing to further demonstrate the rationale behind the rejections or any true deficiencies with the information provided in the grievances.

Citing an out-of-circuit case, Defendants argue that their evidence alone was sufficient to sustain their burden to show that Plaintiffs failed to exhaust their administrative remedies under the Prison Litigation Reform Act. (Defs.' Objs., ECF No. 226 at PgID.4906 (citing *Whitehead v. Wetzel*, 720 F. App'x 657, 662–63 (3d Cir. 2017)).) But *Whitehead* differs factually and procedurally. There, the Third Circuit affirmed a grant of summary judgment where the plaintiff had "forged the signatures of prison staff on two of the grievances and completely fabricated another grievance." 720 F. App'x at 660. Defendants here could not meet the burden on summary judgment—either time—and did not elaborate further at the bench trial. Defendants' witness expressly stated that she had no reason to doubt the dates written on Plaintiff Bailey's grievances. (R. & R., ECF No. 223 at PgID.4869.) And, unlike *Whitehead*, this report and recommendation finds that the Grievance Policy *as a whole* does not provide an available remedy. (*Id.* at PgID.4864.)

Defendants made a strategic decision that did not pan out: putting up the same case at the hearing as they did at summary judgment. (Defs.' Objs., ECF No. 226 at

PgID.4906.) To justify this mistake, Defendants mention that additional evidence could have been deemed unnecessarily cumulative and excluded under Fed. R. Evid. 403. (*Id.* (citing *Blanton v. Elo*, 186 F.3d 712, 716 (6th Cir. 1999)).) But what was presented was not and had never been enough. Defendants must carry the weight of proving their defenses.

Defendants assert that Plaintiffs Clark and Zentz failed to grieve ventilation or any of the other issues in the case, and thus, must be dismissed from the case. (Defs.' Objs., ECF No. 226 at PgID.4908.) The Court has already rejected this argument several times. (*See* R. & R., ECF No. 223 at PgID.4855, PgID.4881, n.4 ("Each plaintiff here grieved the ventilation and humidity specifically as it applied to herself . . . ."); ECF No. 69 at PgID.1024 ("Defendants say that the content of [Clark and Zentz's] grievances is unrelated to the claims addressed in the Amended Complaint. However, the grievances note the adverse symptoms resulting from alleged mold exposure at WHV."); ECF No. 191 at PgID.4282 ("Defendants argued that the grievances should have expressly identified ventilation. . . . But the Court already ruled that 'grievances that noted the adverse symptoms resulting from alleged mold exposure at WHV' are sufficient to support Plaintiffs' claims of mold exposure. . . . The same principal applies here, even when Plaintiffs have identified poor ventilation as the cause of the mold exposure and as a contributing cause of their health issues. . . . And the grievances here provided WHV with a fair

opportunity to investigate the health conditions and the mold exposure—which naturally should involve an investigation into the cause of the mold and the cause of the health conditions at issue.”).)

## II) RESPONSE TO OBEJCTION #2: THE REPORT AND RECOMMENDATION CORRECTLY CONCLUDED THAT THE WARDEN’S FORUM DOES NOT PROVIDE AN AVENUE TO EXHAUST CONDITIONS OF CONFINEMENT CLAIMS.

Defendants also object to the report and recommendation because “MDOC witness Richard Russell [MDOC’s grievance section administrator] did not misrepresent MDOC policy” (Defs.’ Objs., ECF No. 226 at PgID.4908.) The report describes:

> Russell, the MDOC official charged with overseeing the development of the [Policy], wrongly testified that plaintiffs’ grievances about the allegedly poor ventilation and humid conditions here could have exhausted their administrative remedies through the warden’s forum. His interpretation is supported neither by the plain language of the [Policy] nor by the courts interpreting the policy. It is a misrepresentation.

(R. & R., ECF No. 223 at PgID.4881.)

Defendants’ entire argument as to the accuracy of the finding hinges on the meaning of the word “misrepresentation.” They admit that Russell made a mistake. (Defs.’ Objs., ECF No. 226 at PgID.4911.) But they insist that it was not a

misrepresentation because he had no intent to deceive. (*Id.* at PgID.4911.) Defendant props up this frail conclusion with dictionary definitions.[6]

Defendants' word parsing is insufficient to challenge the Court's assessment of Russell's testimony. Magistrate Judge Stratford sat as the factfinder of the evidentiary hearing, with authority to assess the witness and make credibility determinations. *See United States v. Vaughn*, 429 F. Supp. 3d 499, 506–07 (E.D. Tenn. 2019) ("The Magistrate Judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting her in the best position to determine the witnesses' credibility. . . . The Magistrate Judge's assessment of the witnesses' testimony is therefore entitled to deference." (citations omitted)). This Court should not override her judgment.

Defendants also underscore factual differences between this case and *Berryman*–a case cited by Magistrate Judge Stafford in challenging this finding. (R. & R., ECF No. 223 at PgID.4879 (citing *Berryman v. Haas*, No. 19-1484, 2020 WL 6325553, at *2 (6th Cir. May 11, 2020)).) The report and recommendation's point, however, in citing *Berryman* is that the women in WHV cannot exhaust their

---

[6] But even one of Defendants' definitions makes plain that a misrepresentation does not *always* have an intent to deceive. *Misrepresentation*, Merriam-Webster, https://www.merriam-webster.com/dictionary/misrepresentation (to misrepresent is "to give a false or misleading representation of *usually* with an intent to deceive or be unfair" (emphasis added).) With this, their objection crumbles.

administrative remedies related to a condition of confinement claim through the Warden's Forum at all because the Grievance Policy itself reserves that venue for challenging procedures and policies—not conditions of confinement. (Pls.'s Ex. 31 pt J9, ECF No. 56-2 at PageID.603 (stating an incarcerated women's "concern with the content of a policy or procedure" may direct her concerns to the warden's forum.).) Defendants do not contest this. And, thus, Russell's testimony that a hypothetical incarcerated person could exhaust their conditions of confinement claim through the Warden's Forum is "plainly wrong," whether he meant to deceive the Court or not. (R. & R., ECF No. 223 at PgID.4879.)

Further, Defendants point out that Russell is not an attorney and does not know what constitutes exhaustion under the Prison Litigation Reform Act. But Magistrate Judge Stafford understood that and rejected his interpretation about how Plaintiffs could have exhausted their administrative remedies. (*Id.* ("With the caveat that he is not a lawyer, Russell testified that …."); *Id.* at PgID.4881.) So, this is of no impact. But it is troubling that the person in charge of maintaining the Grievance Policy—called by Defendant to testify about the Grievance Policy because of his position—would not know the impact on encouraging grievants to take a course of action that does not qualify as exhaustion under the Prison Litigation Reform Act.

## III) RESPONSE TO OBJECTION #3: IT IS FOR FUTURE COURTS IN FUTURE CASES TO DETERMINE THE IMPACT THAT THE REPORT AND RECOMMENDATION MAY HAVE ON OTHER LITIGATION INVOLVING THE SAME MDOC POLICY.

Defendants finally object to the report and recommendation because "[t]he report and recommendation reaches conclusions about MDOC as a whole that are broader than the issues presented." (Defs.' Objs., ECF No. 226 at PgID.4912.) Here, Defendants do not specify which findings are erroneous under this argument as required. Nor do they cite a single case supporting their position that the potential for rippling impact of the report makes it objectionable. They simply disagree with the result, which is insufficient. *See Kloss*, 996 F. Supp. 2d at 581.

Defendants also miss the mark. The issue before the Court, at Defendants' request, was whether Plaintiffs[7] exhausted their administrative remedies. To answer this question, one must look to the administrative remedy itself, here: the Grievance Policy. When analyzing whether Plaintiffs reached each step outlined, the report and recommendation recognizes that the Grievance Policy "is so opaque, confusing, and

---

[7] While the Court only need to look at whether the three named plaintiffs exhausted their administrative remedies, this class action concerns the inhumane conditions of confinement at WHV, impacting hundreds of women housed within. Defendants note that, despite six years of litigation, Plaintiffs have not yet moved for class certification. (Defs.' Objs., ECF No. 226 at PgID.4912, n.4.) This is ironic since it is Defendants who have kept this case perpetually in a state of preliminary motion practice. Before moving for class certification, Plaintiffs need at least some discovery.

contradictory that no ordinary incarcerated person can discern or navigate it, and thus it does not provide an available remedy." (R. & R., ECF No. 223 at PgID.4864 (quoting ECF No. 215 at PgID.4765).) The report's well-reasoned conclusion stemmed from testimony Plaintiffs elicited during the hearing, as well as arguments advanced in their post-hearing briefing. (*See id.* at PgID.4864.) Magistrate Judge Strafford's comments on the prison mailbox rule likewise flowed from her own analysis of Defendants' position that certain grievances were rejected as untimely under the Grievance Policy. *(Id.* at PgID.4869–70.) Not only were these issues properly before the Court, Defendants advanced them. They cannot now complain that the Court has indeed analyzed and ruled on these issues.

Of course, Magistrate Judge Strafford's conclusions about the obscureness of the Grievance Policy may have effects reaching beyond WHV's walls, as the Grievance Policy applies to other MDOC facilities. But that is always true when a court analyzes a governmental policy that applies to more than one agency or facility. And its conclusion may sway future judges and litigants alike. Although Defendants want to limit the reach of this conclusion, that is not a reason to reject Magistrate Judge Stafford's well-reasoned report and recommendation. Defendants' concerns are best left to future courts in future cases.

## CONCLUSION

Magistrate Judge Stafford's conclusions are factually based and legally sound. Plaintiffs respectfully request that the Court overrule Defendants' objections, accept and adopt Magistrate Judge Stafford's report and recommendation as the opinion of this Court, and deny Defendants' request to dismiss this case on exhaustion grounds.

SUBMITTED BY:

Date: April 16, 2025

*/s/Grace I. Chanin*
Grace I. Chanin (MN0399969)
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification and provide electronic copies of such filing to counsel of record.

*/s/Grace I. Chanin*
Grace I. Chanin