UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAULA BAILEY, et al.,

               Plaintiffs,

v.

HEIDI WASHINGTON, et al.,

               Defendants.

Case No. 2:19-cv-13442

HONORABLE STEPHEN J. MURPHY, III

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS [184]

The case involves allegedly dangerous conditions at the Huron Valley Correctional Facility for Women. *See* ECF No. 161 (amended complaint). Plaintiffs, who are or were incarcerated at Huron Valley, sued multiple employees of the Michigan Department of Corrections (MDOC). Plaintiffs alleged that, due to the lack of adequate ventilation at Huron Valley, they suffered from long-term exposure to mold, toxins, and allergens. *Id.* at PageID.3373. The mold allegedly "caused respiratory infections, coughing, wheezing, rashes, dizziness, and fatigue." *Id.* at PageID.3374. Defendants allegedly knew about the hazardous conditions, tried to cover them up, and still have not fixed the problem.

Defendants, in turn, moved for judgment on the pleadings. ECF No. 184. They argued: (1) that qualified immunity bars Plaintiffs' 42 U.S.C. § 1983 claims for money damages, (2) that the complaint does not contain sufficient facts to demonstrate personal involvement by the Defendants, (3) that Plaintiffs lack standing for their

1

§ 1983 claims seeking injunctive relief, (4) that the state-law negligence claims against Defendants in their official capacities must be dismissed pursuant to Michigan's Court of Claims Act, and (5) that Defendants were not grossly negligent and were not the proximate cause of Plaintiffs' injuries. ECF No. 184, PageID.4020–4021. Plaintiff disagreed with four out of the five arguments. For the reasons below, the Court will deny most of the motion.

## BACKGROUND[1]

### A.   Conditions at Huron Valley

Huron Valley is infested with mold. The mold eats through bricks and door frames. ECF No. 161, PageID.3400. It drips off the ceiling. *Id.* at PageID.3390, 3407, 3410, 3414. It falls out of air vents. *Id.* at 3402. It bubbles and bursts through paint. *Id.* at PageID.3429. And it leads to a parade of horrible medical conditions—respiratory infections, wheezing, skin rashes, etc. *Id.* at PageID.3402, 3409, 3412.

Prison officials have seen the mold. *Id.* at PageID.3399–3400, 3428. And seasoned MDOC guards won't work in buildings with serious mold issues. *Id.* at PageID.3403. Defendant Shawn Brewer even banned inmates from talking about the "mold problem," and others noted that allowing inmates to discuss mold could "cause a riot." *Id.* at PageID.3432. To protect guards, Defendants instructed them to wear protective gear like masks and gloves to minimize the impact of mold exposure. *Id.*

---

[1] The Court takes as true the allegations in the complaint. *See JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) ("For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.") (quotation omitted).

at PageID.3426. At the same time, inmates, lacking even paper towels or mops, have resorted to scrubbing cells with menstrual pads. *Id.* at PageID.3430. One guard went so far as to order inmates to scratch the mold off shower tiles with their fingernails. *Id.* at PageID.3430.

Mold is not Huron Valley's only problem. Ventilation can be minimal or nonexistent. *Id.* at PageID.3390. An industrial hygienist observed visibly filthy air return vents at Huron Valley, some of which are were completely blocked, as well as air handling units with "filthy coils, damaged fiberglass insulation, debris, and corrosion." *Id.* at PageID.3391, 3389. And Huron Valley's roof leaks, so naturally it has water damage too. *Id.* at PageID.3372, 3383–3386.

Huron Valley's own reports detail the crumbling infrastructure: old, rusty, and leaky steam piping and condensate lines; obsolete motor control centers in every housing unit that were damaged from "excessive atmospheric moisture over the years due to past steam leaks and poor ventilation"; and a half-century-old HVAC system that is 25–30 years beyond its peak life expectancy. *Id.* at PageID.3385, 3392. Defendants still haven't fixed the conditions, which continue to harm the women at Huron Valley. *See id.* at PageID.3372–3373.

Instead of fixing the conditions, Defendants focused on concealing issues before inspections. They removed around twenty buckets that had been catching water in the law library and shower curtains that had been protecting books "so that the inspectors would not examine the problem more closely." *Id.* at PageID.3426. They painted over mold and corrosion/rust damage in the middle of the night to conceal

issues before a morning inspection. *Id.* at PageID.3428. And they waited until hours before an inspection to finally replace visibly filthy air filters—two years *after* the start of this case. *Id.* at PageID.3429.[2]

### B.    The Complaint

Plaintiffs Paula Bailey, Krystal Clark, and Hope Zentz sued in 2019. Each Plaintiff alleged various ailments attributable to the poor conditions at Huron Valley. As noted above, the Court takes those allegations as true.

Bailey suffered from "sneezing, constant coughing, shortness of breath, wheezing, dry, scaly skin, nosebleeds, weight gain, muscle cramping, headaches, hair loss, rashes that would blister and scar, chest pain, fatigue, frequent upper respiratory infections, and difficulty breathing issues." ECF No. 161, PageID.3406. In the shower, brown and black mold dripped onto Bailey's face and body, and visibly scarred her. *Id.* at 3407. Bailey developed a respiratory infection for several months in 2018. *Id.* at 3408. And after her release from prison in 2021, nurses confirmed that Bailey's medical conditions were caused by "the poor ventilation and related mold" at Huron Valley. *Id.* at PageID.3409. During her time at Huron Valley, Bailey's

---

[2] The present case is not the only lawsuit related to poor conditions at Huron Valley. *See Pearson v. Mich. Dep't of Corr.*, No. 2:19-cv-10707, 2024 WL 2131718, at *1 (E.D. Mich. May 13, 2024) (Murphy, J.) (discussing allegations that inmates at Huron Valley were regularly denied access to adequate medical care and were exposed to a parasitic mite outbreak).

symptoms "subsided only when she had opportunities to leave the Filmore-B Building." *Id.* at PageID.3408.[3]

> Clark alleged similar symptoms:
>
> severe respiratory issues, uncontrollable asthma, shortness of breath, breakouts on her face, rashes on her arms, legs, and ankles, weight gain, nosebleeds, incessant coughing, headaches, dizziness, bacterial infections, severe eye infections that have resulted in having to wear an eye patch, and most recently, ear infections that caused hearing loss and a white residue to grow and leak from her ears.

*Id.* at PageID.3410. Clark observed brown and black mold in the shower area that would drip down on people as they showered. *Id.* Today, it is hard for Clark to breathe anywhere at Huron Valley. *Id.* at PageID.3411. In 2015, she was hospitalized for relentless coughing and breathing issues, and she was diagnosed with bronchitis. *Id.* at PageID.3412. An allergist has since confirmed that Clark has a severe allergy to mold and that her symptoms are due to mold exposure. *Id.* Dr. Tran at Huron Valley has said that Clark probably won't heal until she leaves the facility. *Id.* at PageID.3413. Clark has been diagnosed with pneumonia twice while at Huron Valley, and she is on three different inhalers and six different medications to cope with her symptoms. *Id.*

Like Bailey and Clark, Zentz suffers from the following: "rash, a continuous cough, sore and scratchy throat, severe sinus issues (that she's suffered with since entering the unit in 2011), mental fogginess, dizziness, vision problems, hair loss,

---

[3] Bailey also suffers from seizures. According to one doctor, Bailey's "seizures could have been caused by an infection in her brain from mold or environmental issues while at [Huron Valley]." ECF No. 161, PageID.3409.

nosebleeds, lethargy, body cramps, and nausea." *Id.* at PageID.3415. Around 2019, Zentz suffered from a two-month-long nose infection, coupled with eye-twitching, vision problems, and dizziness. The same year, she developed a rash of hard bumps, filled with liquid, across her arms, legs, and stomach. *Id.* at PageID.3416–3417. After several months, the rash crept onto her neck and face, accompanied with "extreme itching." *Id.* Zentz was ultimately diagnosed with a fungal infection on her face. *Id.* Zentz's symptoms "tend to subside" when she goes outside. *Id.* at PageID.3415.

### C.    *Procedural Background*

Four years after being sued, Defendants moved for judgment on the pleadings, and the Court granted the motion. *Bailey v. Washington*, No. 19-cv-13442, ECF No. 160, 2023 WL 5511181 (E.D. Mich. Aug. 25, 2023) (Roberts, J.). The Court dismissed the constitutional claims because of qualified immunity and found that the right "to be free from exposure to mold that poses a serious risk to an incarcerated person's health or safety" was not clearly established in the Sixth Circuit. *Id.* at *7.  In doing so, however, the Court gave Plaintiffs permission to file an amended complaint because "[t]he presence of mold—to the extent it contributes to inadequate and unhealthy ventilation systems in prisons—could support a claim of unsanitary prison conditions/inadequate ventilation." And the Court wrote that "[i]nadequate ventilation is a viable claim." *Id.*

Soon thereafter, Plaintiffs filed an amended complaint framed in terms of ventilation and the case was reassigned. ECF No. 161. Defendants then filed a motion for summary judgment based on exhaustion as well as this motion for judgment on

the pleadings. ECF Nos. 177, 184. In August 2024, the Court referred the exhaustion issue to Magistrate Judge Elizabeth A. Stafford. ECF No. 200. The parties agreed to stay discovery until the Court resolved both motions. *See* ECF No. 206, PageID.4545.

After an evidentiary hearing, Judge Stafford issued a report and recommendation and found that Defendants "failed to sustain their burden of proof on whether [P]laintiffs sufficiently exhausted their administrative remedies." ECF No. 223, PageID.4848. On March 19, 2025, while awaiting any objections to Judge Stafford's Report, the Court held a hearing on the motion for judgment on the pleadings. Then, on May 29, 2025, the Court overruled the objections from Defendants and adopted the Report. ECF No. 229.

## LEGAL STANDARD

Motions for judgment on the pleadings are subject to the same standard for motions to dismiss for failure to state a claim. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001). The Court may grant the motion if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in the nonmoving party's favor. *Bassett*, 528 F.3d at 430. But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of

7

law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must dismiss it. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## DISCUSSION

The Court will address each of Defendants five arguments below.

I.    <u>Qualified Immunity</u>

In their motion for judgment on the pleadings, Defendants invoked qualified immunity as a defense to Plaintiffs' Eighth Amendment claims. ECF 184, PageID.4030–4040. "Qualified immunity is an affirmative defense" to a § 1983 claim. *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citation omitted). It "'shield[s]' public officials from money-damages liability if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Once defendants assert qualified immunity, plaintiffs bear "the burden of showing that defendants are not entitled to qualified immunity." *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018). To overcome qualified immunity, plaintiffs must plead facts showing (1) that defendants violated a constitutional right, and (2) "that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quotation omitted).

Plaintiffs must demonstrate that "every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7,

11 (2015) (quotation marks and quotation omitted). The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011). Courts should not "define clearly established law at a high level of generality." *Id.* at 742. The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Mullenix*, 577 U.S. at 12 (quotation omitted).[4]

A.   *Eighth Amendment Violation*

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. The prohibition requires that "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Rhodes v. Michigan*, 10 F.4th 665, 673 (6th Cir. 2021) (quotation marks and quotation omitted). "[A] prison official's deliberate indifference to conditions that pose a substantial risk to an inmate's health and safety violates the Eighth Amendment." *Finley v. Huss*, 102 F.4th 789, 805 (6th Cir. 2024).

Eighth Amendment deliberate indifference claims must satisfy a two-part test with an objective and subjective component. "The objective prong asks whether the inmate was incarcerated under conditions posing a substantial risk of serious harm."

---

[4] Plaintiffs argued that Judge Roberts already decided that the lack of ventilation at Huron Valley constituted an objectively serious harm. ECF No. 187, PageID.4233. But the Court's prior decision was based on a previous complaint that lacked many of the details in the most recent complaint. And the previous briefing focused on slightly different issues. The Court thus finds that law of the case does not apply. *Cf. Balsley v. Thermo Power Corp.*, 151 F. Supp. 2d 872, 876–77 (E.D. Mich. 2001).

*Id.* "The subjective prong then asks whether officials knew of and disregarded that excessive risk to the inmate's health or safety." *Id.* Here, Plaintiffs satisfy both prongs.

> i.     Objective Prong

Under the objective prong, the Court considers whether a "detainee faced a substantial risk of serious harm . . . that society chooses not to tolerate." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 569 (6th Cir. 2013).

Defendants argued that Plaintiffs failed to show a substantial risk of serious harm. ECF No. 184, PageID.4034–4036. Defendants suggested that the poor conditions at Huron Valley are part of the routine discomforts of prison life. *See id.* at PageID.4034 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). And they argued that the conditions do not inflict unnecessary and wanton pain. *Id.* (citing *Rhodes*, 452 U.S. at 346).[5]

The Supreme Court has repeatedly affirmed that "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Of course, "the Constitution does not mandate comfortable prisons." *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).

---

[5] To the extent that Defendants argued that some claims improperly rested on a respondeat superior theory of liability, the Court will address those arguments in Section II of the Discussion.

Here, the objective prong is satisfied. As alleged in the complaint, the conditions at Huron Valley—namely, the inadequate ventilation and exposure to various environmental hazards—have caused "respiratory infections, coughing, wheezing, rashes, dizziness, and fatigue." ECF No. 161, PageID.3374. For example, Clark alleged that it is hard for her to breathe *anywhere* at Huron Valley and that she was hospitalized for relentless coughing and breathing issues. *Id.* at PageID.3411. At least one doctor has confirmed that Clark's symptoms, which include constant wheezing, chest pain, and breathing difficulties, are due to mold exposure. *Id.* at PageID.3412. And the allegations by Bailey and Zentz are no less serious. *See id.* at PageID.3406–3410, 3414–3417. The allegations constitute an objectively serious harm.[6]

---

[6] The Court recognizes that most condition-of-confinement cases involving mold will fail to state a claim under the Eighth Amendment. *See, e.g.*, *Lapine v. Caruso*, No. 1:10-cv-1272, 2011 WL 588774, at *5 (W.D. Mich. Feb. 10, 2011) (canvassing cases holding that "mild to moderate symptoms from allergic reactions to common allergens like dust, mold and mildew do not rise to constitutional dimension."). Here, however, the alleged symptoms—like respiratory infections that require hospitalization—are far more severe than a run-of-the-mill allergy case. And many courts both within and outside of our circuit have concluded that exposure to black mold may, in an appropriate case, be sufficiently serious to satisfy the objective component of the Eighth Amendment. *See, e.g.*, *Patton v. Smith*, No. 5:23-cv-P94, 2023 WL 6879832, at *3 (W.D. Ky. Oct. 18, 2023); *Goff v. Mehr*, No. 1:21-01122, 2023 WL 11816590, at *4 (W.D. Tenn. Mar. 10, 2023); *Daniels v. Tharp*, No. 3:16-cv-2830, 2019 WL 400396, at *3 (N.D. Ohio Jan. 31, 2019), *aff'd*, No. 19-3190, 2020 WL 13561351 (6th Cir. June 22, 2020); *Stokelin v. A.C.J.F. Warden*, No. 17-cv-3484, 2018 WL 4357482 (D.N.J. Sept. 13, 2018); *Abrams v. Waters*, No. 3:17-cv-1659, 2018 WL 691717, at *8 (D. Conn. Feb. 2, 2018); *Jackson v. Ingham Cnty. Jail*, No. 1:17-cv-237, 2017 WL 2927484, at *6 (W.D. Mich. July 10, 2017); *Sumpter v. Crib*, No. 8:14-180, 2015 WL 3400437, at *6 (D.S.C. May 27, 2015); *cf. Smith v. Leonard*, 244 F. App'x 583, 583 (5th Cir. 2007).

Of course, after discovery, Defendants may present evidence to contradict Plaintiffs' assertion that the ventilation at Huron Valley is truly inadequate or that the environmental hazards are really so severe. Until then, however, the Court must accept the allegations in the complaint as true. And the allegations, in turn, require the Court to conclude that Plaintiffs have stated a claim that satisfies the objective prong.

      ii.   <u>Subjective Prong</u>

Under the subjective prong, the Court considers whether prison officials had a sufficiently culpable state of mind—*i.e.*, whether they "knew of and disregarded [the] excessive risk to the inmate's health or safety. *Finley*, 102 F.4th at 805. That said, "officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)).

Defendants argued that the complaint fails to show that they knew of and disregarded a substantial risk of serious harm. ECF No. 184, PageID.4036. But Plaintiffs alleged that Defendants knew about the harm, not only through the numerous grievances but, also, from personal observation and from reading internal reports about the dilapidated conditions at Huron Valley. *See, e.g.*, ECF No. 161, PageID.3400, 3434. Thus, the Court cannot conclude that Defendants did not know about the conditions.

Defendants also argued that they responded reasonably. ECF No. 184, PageID.4036. In support, they cited *Caraway v. CoreCivic of Tennessee, LLC*, in which the Sixth Circuit affirmed the dismissal of a conditions-of-confinement claim based, in part, on how prison officials responded to a staffing shortage. 98 F.4th 679, 687 (6th Cir. 2024). In that case, the prison officials started offering signing and relocation bonuses, staffed the facility in excess of the contract requirement, improved staffing at critical posts, and used a comparatively more detailed staff-monitoring system than other facilities. *Id.* On those facts, the Sixth Circuit concluded that the prison responded reasonably.

Here, Defendants argued that they responded reasonably because they took "ameliorative efforts." ECF No. 184, PageID.4036–4037. Among the efforts actually cited by Defendants in their motion were: failing to provide appropriate cleaning supplies to inmates, forcing some inmates to resort to using menstrual pads to clean cells and cell floors, and ordering inmates to scratch mold off tiles with their fingernails. ECF No. 161, PageID.3405–3405 (cited in ECF No. 184, PageID.4036–4037). The inmates, however, were not able to replace the half-century-old HVAC system, fix the leaky roof, order new filters, or remedy any of the structural issues at Huron Valley. After weighing these alleged and responsive facts, the Court cannot conclude that the Defendants' response was reasonable or that any objective officer could believe the response was reasonable.

13

B.     *Clearly Established Law*

As explained more below, the Court finds that Plaintiffs have stated a claim for violations of two clearly established constitutional rights. First, inmates have a clearly established right to be free from toxic environmental substances that pose an unreasonable risk of harm. Second, inmates have a clearly established right to adequate ventilation of fresh air.

i.     <u>Toxic Environmental Substances</u>

The Court previously determined that Plaintiffs failed to meet their burden to show a clearly established right in the Sixth Circuit "to be free from exposure to mold that poses a serious risk of harm to inmate safety." ECF No. 160, PageID.3361. But upon further review, the Court's conclusion needs some clarification and revision.

In 1993, in *Helling v. McKinney*, the Supreme Court held that exposure to environmental tobacco smoke in prisons can violate the Eighth Amendment. 509 U.S. 25, 32–36 (1993). Courts have read *Helling* as establishing the right to be free from toxic environmental substances that, like second-hand smoke, pose an unreasonable risk of harm. *See, e.g.*, *Vega v. Semple*, 963 F.3d 259, 274–77 (2d Cir. 2020) (radon); *Board v. Farnham*, 394 F.3d 469, 485–87 (7th Cir. 2005) (black mold and fiberglass dust).[7] And so, although there might not be a clearly established right to be free from *any exposure* to mold, there *is* a clearly established right to be free from toxic

---

[7] Although *Board* involved pretrial detainees rather than convicted prisoners, the Seventh Circuit noted that, in deliberate indifference cases, it applied "the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) without differentiation." 394 F.3d at 478.

environmental substances that pose an unreasonable risk of harm. *See Helling*, 509 U.S. at 32–36. The right was established in 1993, long before the allegations in the present complaint ripened.

Dangerous quantities of second-hand smoke, radon, and black mold would raise red flags for any reasonable officer. Although the Sixth Circuit has granted qualified immunity in deliberate indifference cases "where reasonable officials might not realize the significance of the risks at stake," *Finley*, 102 F.4th at 810, the level of mold alleged in the complaint—eating through bricks and doors, dripping from the ceilings, resulting in hospitalizations, causing MDOC's own employees to refuse to work in certain mold-infested buildings—would have been immediately significant.[8]

Some might say the Court's definition of the right is too lofty. But the Sixth Circuit has warned that, in determining whether a right is clearly established, courts

---

[8] If a prison official could reasonably believe that mold posed no serious risks to inmate health, then qualified immunity might be appropriate. But Americans have recognized the risks of mold exposure for some time. For example, in September 2008, the Environmental Protection Agency published a booklet on mold remediation, United States Environmental Protection Agency, *Mold Remediation in Schools and Commercial Buildings* (2008), https://www.epa.gov/sites/default/files/2014-08/documents/moldremediation.pdf [https://perma.cc/EB6K-Q8MX], that contained the following guidance:
- "Do not touch mold or moldy items with bare hands." *Id.* at 4.
- "Do not breathe in mold or mold spores." *Id.*
- "Do not run the HVAC system if you know or suspect that it is contaminated with mold." *Id.* at 7.
- "Always make sure to protect remediators and building occupants from exposure to mold." *Id.* at 12.
- "Whether dead or alive, mold is allergenic, and some molds may be toxic." *Id.* at 17.

And so, by the 2010s, prison officials cannot have been surprised by the risks of mold. Indeed, Defendants here instructed their guards to wear masks and gloves to protect against mold exposure. *See* ECF No. 161, PageID.3426.

should not be overly specific, especially with deliberate-indifference claims. *Finley*, 102 F.4th at 810 (noting that the appropriate level of generality for a deliberate-indifference claim will be less granular than the level of generality for an excessive force claim). For example, in 2021, in *Rhodes v. Michigan*, the Sixth Circuit rejected attempts to frame the right at-issue as "the right not to have a prison official recklessly fling a 400-pound laundry cart onto a prison laundry porter." 10 F.4th 665, 680 (6th Cir. 2021). Rather, the right was better defined as the right not to have a prison official "knowingly or recklessly disregard a known excessive risk to the prison worker's health and safety." *Id.*

In August 2023, the Court suggested that the right at-issue needed to be toxin-specific—*i.e.*, that Plaintiffs needed to show a clearly established right to be free from mold specifically rather than toxic substances *per se*. ECF No. 160, PageID.3361. Since then, however, the Sixth Circuit has clarified the appropriate level of generality. *See Finley*, 102 F.4th at 809. And it has explicitly acknowledged that qualified immunity functions uniquely in the deliberate indifference context:

> [D]eliberate indifference's subjective-culpability requirement arguably plays a role in choosing the appropriate level of generality for a given right. It justifies somewhat less granular principles than, say, Fourth Amendment cases involving split-second decisions where officials genuinely—but perhaps mistakenly—believe their actions to be appropriate. Relatively broad yet deep-rooted rights . . . are enough to place already culpable officials on notice that their actions were not only wrong but also unlawful.

*Id.* at 810. The Court now recognizes that its prior order took an overly narrow view of the right at-issue. *See Metroka-Cantelli v. Postmaster Gen.*, No. 3:12-cv-242, 2014 WL 197779, at *1 (N.D. Ohio Jan. 14, 2014) ("As long as this Court has jurisdiction

16

over the case, the Court possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by the Court to be sufficient.").[9]

For all of those reasons, the Court finds that the "broad yet deep-rooted right[]," *Finley*, 102 F.4th at 810, to be free from toxic environmental substances that pose an unreasonable risk of harm provided enough notice to Defendants about the unlawfulness of the alleged conditions. Plaintiffs have thus stated an Eighth Amendment claim for which Defendants are not, at the pleading stage, entitled to qualified immunity.

### ii.   Inadequate Ventilation

Inmates also have a clearly established right to adequate ventilation. But the Court needs to clear up some confusion on what cases clearly established that right.

Plaintiffs cited *Carver v. Knox County*, 887 F.2d 1287 (6th Cir. 1989) as the case that clearly established the right to adequate ventilation. In *Carver*, however,

---

[9] Since August 2023, Plaintiffs have also filed a new complaint with new allegations about mold in the ventilation systems at Huron Valley. For example, the old complaint did not contain allegations of black mold falling out of air vents into an inmate's cell. *Compare* ECF No. 73, *with* ECF No. ECF No. 161, PageID.3402. Nor did the old complaint contain the results from a December 2021 industrial hygienist's inspection, in which the hygienist allegedly found moderate to heavy fungal concentrations in air ducts at Huron Valley—which indicated that "fungal growth (biological amplification) had previously or was actively taking place" in the prison. ECF No. 161, PageID.3401. Air vents were visibly filthy, and some ducts had *never* been cleaned. *Id.* Because airborne mold is arguably more serious than surface mold, the new allegations justify reexamining the Court's prior reasoning. *See Reitmeyer v. Monroe*, No. 1:19-cv-25, 2019 WL 549058, at *3 (W.D. Mich. Feb. 12, 2019) ("Exposure to black mold that is airborne and can be inhaled into the lungs may be sufficiently serious to give rise to an Eighth Amendment claim . . . .").

the Sixth Circuit held that the district court wrongly used a "totality of the circumstances" test to conclude that unconstitutional conditions existed at Knox County penal facilities,[10] and that the district court wrongly concluded that overcrowding, in and of itself, can be a constitutional violation. *See id.* at 1294. To be sure, *Carver* did mention inadequate ventilation. *See id.* at 1293–94. But the Court does not understand the opinion to have held anything about whether inadequate ventilation could form an independent constitutional claim.

Even so, that's not the end of the inquiry. Plaintiffs can point to "a robust consensus of cases of persuasive authority" to overcome qualified immunity. *Guertin v. State*, 912 F.3d 907, 932 (6th Cir. 2019) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014)). Though Defendants claim that out-of-circuit case law cannot clearly establish a right, ECF No. 184, PageID.4031, Sixth Circuit precedent differs. *See Wenk v. O'Reilly*, 783 F.3d 585, 598 (6th Cir. 2015) ("A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, *or other circuits* that is directly on point.") (emphasis added) (quoting *Gaspers v. Ohio Dep't of Youth Servs.*, 648 F.3d 400, 417 (6th Cir. 2011)). Sure, it may be the rare situation where persuasive authority can provide fair notice for officers. *See Burnett v. Griffith*, 33 F.4th 907, 913 (6th Cir. 2022). But, given the extent of the consensus and the direct foreshadowing of direct authority like *Helling*, the Court finds that the right to adequate ventilation is clearly established.

---

[10] The case involved claims by both pretrial detainees and convicted prisoners, all of whom were confined at the Knox County Jail. *Carver*, 887 F.2d at 1288.

And so, even assuming that *Helling* did not sufficiently put prison officials on notice that air quality matters and that poor air quality can be a constitutional violation, a robust consensus of persuasive authority has ruled that inmates have a right to adequate ventilation. *Board v. Farnham*, 394 F.3d 469, 487 (7th Cir. 2005) ("For almost two decades this court, as well as other circuit courts, have continually espoused a prisoner's right to adequate ventilation."); *Chandler v. Crosby*, 379 F.3d 1278, 1294 (11th Cir. 2004) (holding that prisoners have a right to adequate ventilation); *Benjamin v. Fraser*, 343 F.3d 35, 52 (2d Cir. 2003) (holding that detainees have a right to adequate ventilation), *overruled in part on other grounds by Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009); *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998) (holding that "[i]nadequate ventilation and air flow violates the Eighth Amendment if it undermines the health of inmates and the sanitation of the penitentiary") (quotation and quotation marks omitted). The right was clearly established before any of the allegations in the complaint.[11]

Of course, there is a difference between inadequate ventilation of fresh air versus inadequate ventilation of cool air. *See Chandler*, 379 F.3d at 1295 n.26. But the above cases all determined that poor air quality can be the basis for an inadequate-ventilation claim. *See Board*, 394 F.3d 469, 485–87 (considering air filled

---

[11] Bailey entered Huron Valley in 2009, ECF No. 161, PageID.3406, Clark "developed her first symptoms in 2011 during her first year of incarceration," *id.* at PageID.3410, and Zentz has suffered from severe sinus issues since entering Unit 2 at Huron Valley in 2011. *Id.* at PageID.3415. And, although the complaint does not clearly specify when the alleged harm began, the relevant cases all predate 2009.

19

with black mold and fiberglass dust); *Chandler*, 379 F.3d at 1295 (holding that prisoners can make out an Eighth Amendment claim for either inadequate cooling or inadequate ventilation); *Benjamin*, 343 F.3d at 52 (considering "inoperable windows, clogged or dirty ventilation registers and exhaust vents in showers and cells, and poor air quality"); *Keenan*, 83 F.3d at 1090 (considering air filled with "the fumes of feces, urine, and vomit"). Accordingly, whether the right is defined as the right to adequate ventilation or the right to adequate ventilation of fresh air, qualified immunity does not bar Plaintiffs' claims here.

## II. Sufficient Facts

Second, Defendants argued that Plaintiffs failed to plead sufficient facts that demonstrate personal involvement by each of the Defendants. ECF No. 184, PageID.4040. The argument has two parts: (1) that Plaintiffs failed to comply with Federal Rule of Civil Procedure 8(a)(2) and (2) that Plaintiff failed to allege personal involvement by high-level decision-makers at MDOC. Neither argument, however, passes muster.

### A.    *Federal Rule of Civil Procedure 8(a)(2)*

Rule 8(a)(2) provides that pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Here, Plaintiff complied with the Rule via detailed, individually-tailored allegations in their complaint.

Plaintiffs' complaint sets forth, across more than fifty pages, detailed allegations against each Defendant. ECF No. 161, PageID.3418–3479. Sometimes, the complaint refers to Defendants *qua* Defendants. *See, e.g.*, *id.* at PageID.3425. For

20

the most part, however, the complaint calls out particular individuals. *See, e.g.*, *id.* at PageID.3490–3400 (alleging that each of the Defendants, except for Howard, personally observed the hazardous mold at Huron Valley), *id.* at PageID.3428 (alleging that Defendants Brewer, Johnson, and Osterhout ordered Defendants Treppa, Carter, Dreffs, and Bullard to cover up the mold). As a whole, the complaint satisfies Rule 8(a)(2) and puts Defendants on notice of the allegations against each of them.

### B.    Personal Involvement of High-Level MDOC Defendants

Liability under 42 U.S.C. § 1983 "must be based on more than respondeat superior, or the right to control employees." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). But defendants "may be liable where they 'implicitly authorized, approved, encouraged, condoned or knowingly acquiesced in' the actions of their subordinates." *Cook v. Martin*, 148 F. App'x 327, 339 (6th Cir. 2005) (quoting *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995)).

Defendants' motion claimed that "the entirety of Plaintiffs' amended complaint is based on a theory of respondeat superior." ECF No. 184, PageID.4045. But it goes on to quibble with just the allegations against six "higher-level administrative officials" who were not assigned to work at Huron Valley—Heidi Washington, Kenneth McKee, Jeremy Bush, Lia Gulick, Ed Vallad, and Toni Moore. *Id.* The motion does not take issue with the eight other Defendants—Jeremy Howard, Shawn Brewer, David Johnson, Karri Osterhout, Joseph Treppa, Dan Carter, Joel Dreffs,

21

and Richard Bullard. *See id.* And so, the Court will only consider the respondeat superior argument regarding the six "higher-level administrative officials."

Plaintiffs alleged that the six officials deliberately did not respond to the unconstitutional conditions. To begin, the complaint alleged that each of the six officials personally observed the hazardous conditions at Huron Valley, which were "readily visible." ECF No. 161, PageID.3399–3400; *see also id.* at PageID.3381–3393 (detailing visible conditions throughout the facility). The complaint also alleged that the six Defendants read the annual physical plant report that detailed the poor conditions at Huron Valley, *id.* at PageID.3461, 3464, 3467, 3470, 3473, 3477. And statements from Warden Brewer suggest that Heidi Washington, and presumably her office, both knew about the issues at Huron Valley and decided to do nothing. *See id.* at PageID.3432–3433 (telling inmates who complain about the mold and inadequate ventilation that he is "waiting on the call from Heidi"). In that way, the complaint only seeks to hold the higher-level administrative officials responsible for their own decisions—not those of anyone else. And the Court cannot find that the complaint improperly pleads a respondeat superior theory against the six defendants.

III.   Standing

Next, Defendants argued that Plaintiffs Clark and Zentz lack standing to seek injunctive relief. ECF No. 184, PageID.4045–4046. Defendants lodged several standing-related arguments, none of which are availing.

First, Defendants seemed to argue that Clark and Zentz lack standing because they failed to exhaust their administrative remedies. *See* ECF No. 184, PageID.4046.

But exhaustion (an affirmative defense) has nothing to do with Article III standing (a bedrock constitutional requirement). And the Court already determined that exhaustion does not bar these claims. ECF No. 223, ECF No. 229.

Second, Defendants argued that Clark and Zentz "cannot show an ongoing interest in conditions at [Huron Valley] or that they face a 'real and immediate threat' absent injunctive relief." ECF No. 184, PageID.4046 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). But Clark and Zentz have an obvious interest in prison conditions at Huron Valley because they are incarcerated at Huron Valley. ECF No. 161, PageID.3376. According to the complaint, Clark and Zentz also face real and immediate harm from the conditions at the prison. *See id.* at 3373 (alleging that women at Huron Valley have "suffered and continue to suffer ongoing exposure to excessive allergens, harsh cleaning chemicals, and harmful varieties of mold," and that such exposure, if left unchecked, will "lead to further and serious and long-lasting medical complications."). For example, Clark alleges that, because of improper ventilation and lack of mold remediation, she "continues to have difficulty breathing, suffers from constant wheezing, shortness of breath, chest pains, and headaches." *Id.* at 3413. The harm alleged is real, immediate, and ongoing.

Third, Defendants argued that the Court could not redress Clark and Zentz's injuries by a favorable ruling. ECF No. 184, PageID.4046. Clark and Zentz, however, want an injunction to remediate the hazardous conditions at Huron Valley. ECF No. 161, PageID.3491; ECF No. 187, PageID.4248. An injunction like the one sought

would provide redress for Clark and Zentz because, as alleged, their injuries are caused by the presently existing hazardous conditions.

For all of the foregoing reasons, the Court will deny the motion for judgment on the pleadings regarding injunctive relief.

## IV.    State-Law Official Capacity Claims

Defendants also sought to dismiss the state-law negligence claims against Defendants in their official capacities due to non-compliance with Michigan's Court of Claims Act. ECF No. 184, PageID.4046–4048. In response, Plaintiffs clarified that they are only pursing the state-law claims against Defendants in their individual capacities, and they assented to dismissal of the state-law claims against Defendants in their official capacities. ECF No. 187, PageID.4246–4247. The Court will therefore grant the motion for judgment on the pleadings regarding the state-law official capacity claims.

## V.    Gross Negligence

Finally, Defendants argued that they were not grossly negligent and were not the proximate cause of Plaintiffs' injuries.[12] ECF No. 184, PageID.4048. Michigan's Governmental Tort Liability Act (GTLA) grants immunity from tort liability to certain government actors "unless their conduct amounted to *gross negligence* that

---

[12] In the operative complaint, Plaintiffs did not bring a state-law negligence claim against Defendant Heidi Washington. *See* ECF No. 161, PageID.3487. Nor could they. Under § 691.1407(5) of the GTLA, Washington would be immune from suit. *See McKeown v. Ayotte*, No. 13-cv-11971, 2016 WL 1242277, at *2 (E.D. Mich. Mar. 30, 2016) (finding that the Director of MDOC qualifies as a "highest appointive elective official" under the GTLA and is thus immune from suit for actions within the scope of her executive authority).

was the proximate cause of a plaintiff's injuries." *In re Flint Water Cases*, 384 F. Supp. 3d 802, 871 (E.D. Mich. 2019).

The GTLA defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(8)(a). Gross negligence suggests "that the actor simply did not care about the safety or welfare of those in his charge." *Tarlea v. Crabtree*, 263 Mich. App. 80, 90 (2004). In addition, the GTLA uses "proximate cause" to mean "the one most immediate, efficient, and direct cause preceding an injury." *Robinson v. City of Detroit*, 462 Mich. 439, 446 (2000). Just being *a* proximate cause is not enough. *Id.*

For the following reasons, the Court finds that Plaintiffs have stated a claim for negligence that meets the requirements of the GTLA.

A.    *Gross Negligence*

First, because the Court has found that Plaintiffs stated a claim for deliberate indifference, it must also find that they stated a claim for gross negligence. *Burwell v. City of Lansing*, 7 F.4th 456, 477 (6th Cir. 2021) ("Since deliberate indifference is a very high standard of culpability that exceeds gross negligence, a deliberate indifference finding will necessarily entail a gross negligence finding, but not necessarily the other way around.") (quotation, quotation marks, and citation omitted).

B.    *Proximate Cause*

Second, Plaintiffs alleged facts to suggest that Defendants' gross negligence was the proximate cause of their injuries. *See* ECF No. 161, PageID.3488–3489. Even

assuming that the complaint alleged several negligent acts/omissions, any one of which could be the proximate cause of the alleged harms, Plaintiffs are not required to pin down a single proximate cause at the pleading stage. *See* Fed. R. Civ. P. 8(d) (allowing alternate and inconsistent statements in pleadings). Given the complexity of the allegations, requiring such specificity would very likely be premature. In addition, all of the alleged proximate causes—the non-remediation of the mold, the failing ventilation system with a half-century-old HVAC system, among others—are attributable to the Defendants. Going forward, discovery may help pinpoint the exact proximate cause. For now, however, the Court finds that the complaint states a claim for negligence under Michigan state law, even considering the GTLA.

## CONCLUSION

To conclude, the Court will reject most of Defendants' arguments. At this stage, Defendants are not entitled to qualified immunity. Plaintiffs pleaded sufficient facts to demonstrate personal involvement by the Defendants. Plaintiffs Clark and Zentz have standing for their injunctive relief claims. And Plaintiffs properly pleaded a negligence claim against Defendants that satisfied the requirements of Michigan's GTLA. That said, the Court will dismiss the state-law official capacity claims pursuant to Michigan's Court of Claims Act.

**WHEREFORE**, it is hereby **ORDERED** that the motion for judgment on the pleadings [184] is **GRANTED IN PART** regarding Plaintiffs' claims against Defendants in their official capacity under state law, which are **DISMISSED**. Otherwise, the motion is **DENIED**.

**IT IS FURTHER ORDERED** that discovery must be **COMPLETED no later than January 30, 2026**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: June 24, 2025

27